# EXHIBIT

# K

FILE NO. _AS - 1131_
Data: _6/01/15_ Time: _3:10_
Book: _17_ Page _68_

Commonwealth Recorder

---

*(Space Above for Recording Purposes Only)*

# COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
## SAIPAN, MARIANA ISLANDS

### LEASE AGREEMENT
### (LA 15-002S)

This Lease Agreement (hereinafter the "Lease") is made and entered into this _20th_ day of _April_, 2015, (hereinafter the "Commencement Date"), by and between the **DEPARTMENT OF PUBLIC LANDS** (hereinafter the "DPL"), established under Public Law 15-2, having authority and responsibility over the management, use and disposition of public lands in the Commonwealth, whose offices are presently located in Dandan, Saipan, Northern Mariana Islands, and **IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC, a CNMI Corporation** (hereinafter the "Lessee"), its successors and assigns.

### WITNESSETH THAT:

**WHEREAS,** the Lessee desires to lease public land in Garapan, Saipan, Commonwealth of the Northern Mariana Islands, for the purpose of constructing, developing, and operating its Initial Gaming Facility ("IGF"), which includes a luxury hotel, casino, and associated facilities; and

**WHEREAS,** the DPL requires a non-refundable application fee of $2,500.00 for investments greater or equal to $500,000.00, or for proposals encompassing more than one (1) hectare of public land, otherwise the non-refundable application fee is $1,250.00; and

*Lease Agreement*
*Imperial Pacific Int'l., (CNMI), LLC*
*Garapan, Saipan*
Page 1 of 39

CERTIFIED TRUE C[...]

P.O. Box 500380, Saipan, MP 96950

**WHEREAS,** on October 15, 2014, the Lessee paid the non-refundable $2,500.00 lease application fee; and

**WHEREAS,** the DPL requires a security deposit of $250,000 as good faith commitment to undertake and complete the lease project; and

**WHEREAS,** the DPL, being responsible for the management, use and disposition of public lands in the Commonwealth finds it desirable, beneficial and in the interest of the Commonwealth and public land beneficiaries to permit the Lessee to use public land for such a purpose.

**NOW THEREFORE,** in consideration of the mutual covenants and benefits to be derived herein, the parties agree as follows:

## ARTICLE 1: GRANT OF LEASE

The DPL leases to the Lessee the below-described public land (hereinafter the "Premises"), more particularly described as follows:

Tract No. 21049-R2 containing approximately 328 square meters, more or less, as shown on DLS Check No. 2021/15 recorded at the Commonwealth Recorder's Office on    March 18, 2015, as File No. 15-0542.

Lot Numbers 104 D 08, containing an area of approximately 720 square meters, more or less, Lot No. 104 D 10, containing an area of approximately 1,378 square meters, more or less, Lot No. 104 D 11R/W, containing an area of approximately 1,390 square meters, more or less, and Lot No. 104 D 12, containing an area of approximately 15,338 square meters, more or less, as shown on DLS Check No.  104 D 04 recorded at the Commonwealth Recorder's Office on  March 19, 2015, as File No. 15-0844.

Provided however that in the event Lessee ceases to hold an exclusive leasehold interest in Lot Number 21050, 21052, or 21054 this lease shall terminate with respect to Lot Number 104 D 11R/W and all right title and interest in Lot Number  104 D 11R/W shall automatically revert to the DPL without notice or action on the part of either party, and Lessee shall cease all use and occupancy thereof.

*P.O. Box 500380, Saipan, MP 96950*

**ARTICLE 2: PURPOSE**

The Lessee shall use the Premises to construct, develop and operate a resort including a luxury hotel, casino, and related facilities, which are more particularly described as its Initial Gaming Facility as hereinafter defined in this Lease. The IGF shall be a newly constructed complex consisting of two hundred and fifty (250) rooms with casino floor space of approximately 2,200 square meters (excluding back areas) and related amenities. The IGF guest rooms, services, and facilities shall be at the quality identified by the AAA Lodging Criteria for five star establishments.

Lessee agrees to use the Premises in a reasonably prudent manner, so as not to cause nuisance or hazards to the public, and to not allow, permit, or suffer, any waste or unlawful, improper or offensive use of the Premises.

**ARTICLE 3: TERM**

The term (hereinafter the "Term") of this Lease shall be for a period of twenty-five (25) years, unless otherwise terminated or cancelled pursuant to applicable provisions of this Lease. The Term of the Lease shall commence on the Commencement Date as set forth above.

Pursuant to P.L 15-2, the DPL may not transfer a leasehold interest in public lands that exceeds twenty-five years including renewal rights. An extension of not more than fifteen years may be given upon approval by three-fourths of the members of the legislature. Accordingly, after the first (1st) anniversary of the execution of this lease, Lessee may request a lease extension of up to fifteen (15) years.

**ARTICLE 4. RENTAL**

The Lessee, in consideration of the foregoing, shall pay to the DPL, in the manner prescribed herein, in lawful money of the United States. Lessee agrees to pre-pay rent in the amount of $250,000.00 upon the signing of this Lease for the first one (1) year period of the Lease. Thereafter the rent shall be paid annually in advance based upon the then

current appraised fair market value of the unimproved land of the Premises in the amounts set out in the Section A below. The parties agree and stipulate that the fair market value of the Premises upon lease signing and for the first five (5) year period of the Lease is $5,000,000.00. The Premises shall be appraised every five years during the term of the Lease and such appraisal shall be the basis for calculation of the Guaranteed Annual Minimum set forth in Section A below:

A.      **Rental Schedule.**

| PERIOD | GUARANTEED ANNUAL MINIMUM | ALTERNATIVE PERCENT OF GROSS RECEIPTS |
|---|---|---|

A. Rent Payment Schedule

| PERIOD | GUARANTEED ANNUAL MINIMUM | ALTERNATIVE PERCENT OF GROSS RECEIPTS | |
|---|---|---|---|
| 1st Five-Year Period | 5.0% of Appraised Value | Not Applicable | |
| 2nd Five-Year Period | 5.0% of Appraised Value | Not Applicable | |
| 3rd Five-Year Period | 5.0% of Appraised Value | Not Applicable | |
| 4th Five-Year Period | 2.5% of Appraised Value | or 0.50% | whichever is greater |
| 5th Five-Year Period | 3.0% of Appraised Value | or 1.00% | whichever is greater |

If the lease is extended the following Payment Schedule shall apply:

| PERIOD | GUARANTEED ANNUAL MINIMUM | ALTERNATIVE PERCENT OF GROSS RECEIPTS | |
|---|---|---|---|
| 6th Five-Year Period | 3.0% of Appraised Value | or 1.25% | whichever is greater |
| 7th Five-Year Period | 3.0% of Appraised Value | or 1.50% | whichever is greater |
| 8th Five-Year Period | 3.0% of Appraised Value | or 1.75% | whichever is greater |

The percent of gross receipts listed above shall be assessed against the gross receipts as defined in Article 40G. Should the Guaranteed Annual Minimum rental be less than the Alternative Percent of Gross, the Lessee shall pay to the DPL the difference within one-hundred eighty (180) days from the end of the lease year in which the difference occurs, such adjustment shall be based upon Lessee's annual certified and audited financial statements as provided in Article 11 hereof. A copy of the CNMI

*P.O. Box 500380, Saipan, MP 96950*

Business Gross Revenue Tax Monthly Return must be submitted each month, together with the computation of the monthly gross receipts.

The total area for the public land lease is approximately 19,154 square meters and the total area of private land acquired by Lessee is approximately 20,050 square meters. As a material inducement for the DPL to enter into this lease at the rates set forth in this Article 4, the Lessee has agreed to pay the above stated percentage of the gross receipts earned on both the public lands and the private lands acquired by Lessee. Moreover, DPL is cognizant of the statutory obligation pursuant to Public Law 18-56 (d)(1) and (e) and acknowledges it to be a great benefit to the CNMI and the people of Northern Marianas Descent. Therefore, to ensure success of Lessee's entire project, DPL has agreed to the above rates.

**B.    Manner of Payment.**  The Lessee shall discharge its obligation of payment by depositing the payments required under this Article with the DPL, presently located in Dandan, Saipan, Northern Mariana Islands, or in such manner as the DPL may from time to time designate in writing.

**C.    Time and Payment; Interest; Amortization.**  All rents payable pursuant to the terms of this Lease shall be deemed to have commenced on the first day of the month after the Commencement Date of this Lease, and shall be paid without prior notice or demand.  Past due rental payments shall bear interest at one percent (1%) per month compounded monthly, from the date it becomes due until paid.  This provision shall not be construed to relieve the Lessee from any default in making any rental payment at the time and in the manner herein specified, but is subject to the amortization provisions set forth herein.

## ARTICLE 5. APPRAISAL AND DETERMINATION OF RENTAL AFTER EACH FIVE YEAR PERIOD

At the end of the initial five (5) year period of this Lease and each succeeding five (5) year period, the Guaranteed Minimum Annual Rental payable by the Lessee to the DPL shall be based upon the percentage of the appraised fair market value of the unimproved land as of the commencement of each five-year period, or the percent of

P.O. Box 500380, Saipan, MP 96950

gross receipts pursuant to Article 4A and as defined in Article 40G, whichever is greater. The appraisal of the Premises for the term set forth above and any permitted extensions (but not lease renewals or replacements) shall be based on the fair market fee simple value of the unimproved land. The required appraisal report under this Article must be performed by an independent CNMI certified general real estate appraiser who is also licensed to practice real estate appraisal services in the CNMI to be selected by an agreement between the DPL and the Lessee. In the event that the DPL and the Lessee cannot reach an agreement on the selection of the appraiser, a committee of three (3) arbitrators selected by the Lessee and DPL shall select the appraiser. The cost of appraisal will be borne by the Lessee.

## ARTICLE 6. SECURITY DEPOSIT

The Lessee agrees that within thirty (30) days of Commencement Date of the Lease, the Lessee will deposit its payment of **$250,000.00** as a Security Deposit with the DPL. The Security Deposit will be held in an interest bearing account of the DPL as a security that the Lessee will comply with all the terms and conditions imposed by the Lease. The security deposit also indicates Lessee's good faith commitment to undertake and complete the construction, development and operation of a luxury integrated hotel and casino resort, and related amenities.

If the Lessee defaults on this Lease prior to the expiration of this Lease, the DPL shall keep the Security Deposit to cover unpaid rent, administrative costs, attorneys' fees, damage to the property, and/or other expenses.

At the expiration of this Lease, the DPL will inspect the public land and fully document the condition of the Premises to ensure that the Lessee has complied with all terms and conditions of this Lease before returning the **$250,000.00** Security Deposit to the Lessee together with accrued interest thereon. However, should the Lessee violate any provision of the Lease after the expiration date of this Lease, the DPL will provide the Lessee with a written notice including an itemized list as to why the full Security Deposit amount is not being returned and a check for any remaining Security Deposit owed to the Lessee after such deductions have been made.

*Lease Agreement*
*Imperial Pacific Int'l., (CNMI), LLC*
*Garapan, Saipan*
Page 6 of 39

Exhibit K of Second TRO

Page 7 of 40

P.O. Box 500380, Saipan, MP 96950

The DPL may use as much of the Security Deposit as necessary to pay for unpaid rent, administrative costs, attorneys' fees, damages, or other expenses resulting from Lessee's use of the Premises or from any default of the Lease by the Lessee. If the DPL uses all or part of the Security Deposit for the reasons set forth above, the DPL may demand that the Lessee replace the amount of the Security Deposit used by the DPL and the Lessee shall comply with such demand.

## ARTICLE 7. PERMITS, CONSTRUCTION PLANS, AND SPECIFICATIONS

**A.    Financing of Project.**   The Lessee agrees and covenants that within six (6) months from the Commencement Date of this Lease, it will submit to DPL evidence of its sources of financing for the proposed development of a first class hotel villa resort complex and associated amenities. The document listing the sources of financing must be drafted with sufficient specificity to be verifiable and acceptable to the DPL.

**B.    Construction Plans and Specifications.**    The Lessee agrees and covenants that within six (6) months from the Commencement Date of this Lease it will, at its own cost, risk and expense, submit to the DPL its complete construction plans and specifications, which must include a conceptual design of the development of the Premises. Upon submittal by the Lessee, the DPL shall have thirty (30) working days to review the submitted construction plans and specifications and to notify the Lessee of approval or disapproval of the plans. Approval or disapproval of Lessee's construction plans and specifications shall be subject to relevant laws and regulations. In the event that changes are necessary, the DPL shall give the Lessee reasonable time to make the necessary changes to the plans for re-submittal. If the DPL does not notify the Lessee in writing of the status of the submitted plan within the thirty (30) working day review period, then the plans and specifications are deemed approved.

**C.    Permits.**    The Lessee agrees and covenants that within nine (9) months from the Commencement Date of this Lease it will, at its own expense and risk, secure all required CNMI Government and applicable Federal permits for the development and construction to be completed on the Premises. Copies of such permits must be delivered to the DPL within fifteen (15) days of their issuance. If the Lessee is unable to secure and submit to DPL the required permits, then it must notify the DPL in

P.O. Box 500380, Saipan, MP 96950

*Lease Agreement*
*Imperial Pacific Int'l, (CNMI), LLC*
*Garapan, Saipan*
Page 7 of 39

*P.O. Box 500380, Saipan, MP 96950*

writing within the 15 day period of its reason for the delay in securing the necessary approval and its request for extension. The DPL shall have a period of fifteen (15) working days to approve or disapprove Lessee's request for an extension. If the DPL fails to respond to Lessee's request within the 15-day period, then Lessee's request for an extension shall be deemed approved.

## ARTICLE 8. CONSTRUCTION SCHEDULE

The Lessee agrees and covenants that within the time hereinafter stipulated in the Project Requirements (as hereinafter defined), it will, at its own cost, risk and expense, use its best efforts to build, construct, fully equip, and furnish, the basic structures of the Initial Gaming Facility as specified in the construction plans, specifications, and permits delivered to DPL pursuant to Article 7 above. Time is of the essence.

## ARTICLE 9. CONSTRUCTION, MAINTENANCE, REPAIR, ALTERATION

All improvements, renovations, and repairs placed on the Premises shall be constructed in good workmanlike manner and in compliance with applicable laws, regulations, ordinances, and building codes. All portions of buildings located upon the Premises exposed to perimeter properties or to the public view shall present a pleasant appearance, and all service areas shall be screened from public view. The Lessee shall, at all times during the Term of this Lease and at the Lessee's sole cost and expense, maintain the Premises and all improvements thereon in good order and repair and in a neat, sanitary and attractive condition.

Two (2) years prior to the expiration or termination of this Lease, the DPL shall retain (at Lessee's expense) an architectural and engineering firm of its own choosing to evaluate the as-built facility together with its approved engineering, blueprints and designs and estimate the future cost to segregate the Lessee's improvements upon public land from Lessee's improvements upon private land ("cost estimate" or "funding") in order to render the public land improvements freely operable and unimpaired ("segregation") upon the expiration or termination of the lease term. All costs related to such undertakings shall be the responsibility of Lessee.

Lessee's obligations with respect to the segregation and funding set forth herein shall be secured by a pledged security of Lessee's present and future interests beyond the term of this Lease, in Tract Nos. 21050, 21052, 21059, 21054, 21066, 21071, 21072 and Lot 2, Block 44 T.D. 1440 (the "Private Lands"), in the form attached hereto as Exhibit A. Such pledged security shall be executed and recorded simultaneously herewith. At such time as Lessee's obligations with respect to the segregation and funding are satisfied or if sufficient funds are deposited with the DPL to satisfy these obligations, the DPL shall release said private leasehold interests from the pledged security to Lessee within thirty (30) days of completion of segregation activities. In the event the DPL is forced to enforce its lien to raise funds for segregation as a result of Lessee's breach or otherwise, DPL's damages may be offset by the fair market value of the remaining leasehold interest in the Private Lands at the time of entry of a final judgment by a court of competent jurisdiction.

Immediately upon expiration or termination of the Lease, Lessee shall undertake all necessary permitting, demolition, and construction to ensure that when the DPL takes possession of the resort improvements, such improvements shall not be dependent upon adjacent private lands. The DPL will reasonably assist Lessee in the permit application process. The holdover provisions set forth herein shall apply until all work is done and the project including all improvements is surrendered and turned over to DPL.

Unless the same are to be promptly replaced with improvements having at least an equal value, no removal or demolition of improvements which have an aggregate value in any calendar year in excess of $50,000.00 shall take place without the prior written notice to DPL with details of the planned changes. Lessee may request the DPL for approval of additions and demolitions of improvements of the specified amounts stated herein, and such request for approval shall not be unreasonably withheld or delayed by the DPL. No removal, demolition, or additional improvements having a value in excess of $1,000,000.00 shall be effected on the Premises without the prior written consent of the DPL, which consent shall not be unreasonably withheld or delayed. The Lessee shall indemnify and hold harmless the DPL and the CNMI Government against liability for all claims arising from the Lessee's failure to maintain the Premises and the improvements situated thereon as hereinabove provided, or from the Lessee's violation of

*Lease Agreement*
*Imperial Pacific Int'L, (CNMI), LLC*
**Garapan, Saipan**
Page 9 of 39

P.O. Box 500380, Saipan, MP 96950

any law, ordinance, or regulation applicable thereto.

**ARTICLE 10  EXCUSED DELAY OF PERFORMANCE**

Whenever under this Lease a time is stated within which or by which original construction, repairs, reconstruction or other performance by the Lessee shall be commenced or be completed, and a failure or delay in such performance is due, in whole or in part, to fire, explosion, earthquake, storm, flood, drought or other unusually severe weather conditions, accident, breakdown of machinery or facilities, strike, lockout, combination of workmen, war, insurrection, riot, act of God or the public enemy, or any contingency or delay or failure or cause of any nature beyond the reasonable control of either party, whether or not the kind hereinbefore specified and whether or not any such contingency is presently occurring or occurs in the future, including but not limited to, the discovery of human remains, fossils, bones, and relics considered to be of historical importance or value, and such failure or delay does not result from the fault or negligence of the Lessee, the period of delay so caused shall be added to the period allowed herein for the completion of such work provided, however, that the Lessee shall notify the DPL in writing within thirty (30) days after it becomes aware of the occurrence of any of the above events.

**ARTICLE 11.  ANNUAL REPORTS AND AUDIT**

The Lessee shall, not later than  one hundred eighty (180) days after the end of Lessee's fiscal year during the Term of this lease submit to the DPL financial statements audited by public accountants certified  and licensed in the United States, which shall include a schedule of gross receipts indicating sources and deductions in support of the gross receipts rental requirement under Article  4A.  Any duly authorized representative of the DPL shall have access to and the right to examine and audit any or all pertinent books, documents, papers and records of the Lessee and  its sublessees and concessionaires relating to this Lease during the normal business hours of any working day.  Lessee shall insert a similar provision in all subleases pertaining to this right of access, examination, and audit, and shall make available to said representative(s) or agent(s) all books and records of the Lessee or its sublessees and concessionaires which

may be requested or may be necessary for completion of a special audit of any or all activities or enterprises conducted on the Premises. The DPL acknowledges that its activites pursuant to this provision may be monitored by the Casino Gaming Commission.

The Lessee shall keep and maintain its accounting and bookkeeping system in accordance with generally accepted accounting principles applicable to the industry. The Lessee shall keep its accounting books and records at all times in the English language.

## ARTICLE 12. PUBLIC BENEFIT OBLIGATION

### 1. Public Benefit

The Lessee, in consideration for granting of this Lease, covenants and agrees to provide the following benefit to the general public and residents of the CNMI:

A. **Protection, Maintenance and Public Access to Major Archaeological and Historic Sites.** The Lessee, at its own cost and risk, shall protect and maintain for the benefit of the general public those sites, objects and features possessing historic and/or archaeological significance which have been identified through appropriate professional archaeological surveys conducted in advance of the leased Premises development. These archaeological surveys, which shall be conducted at Lessee's expense, shall be developed and implemented in consultation with the Historic Preservation Office, Department of Community and Cultural Affairs. The Lessee shall also provide adequate corridors for reasonable public access to these sites.

B. **Shoreline Access.** The Lessee, at its own cost and risk, shall provide and construct reasonable public shoreline access through and along its leased Premises. The shoreline access plan must be coordinated with and be reasonably agreed upon by the Lessee and the Office of Coastal Resources Management and/or other agency responsible for such activity. In addition, Lessee, at its own cost and risk, shall either provide and construct facilities at beach areas within the Premises or permit the general public to utilize public restroom facilities upon the Premises. In connection with these requirements, and as additional consideration for this Lease, Lessee covenants and agrees to construct and improve a permeable parking lot on public land as more fully described on Schedule 12 B which is attached hereto and incorporated herein by reference.

P.O. Box 500380, Saipan, MP 96950

Temporary authorization will be granted to Lessee to permit it to undertake these improvements on land outside of the Premises.

 **C.  Local Rate and Accessibility of Hotel and Related Facilities.**  The Lessee shall provide for local rates to the hotel and related facilities for CNMI residents.  In the event that specified rates cannot be mutually agreed upon, each party shall appoint an arbitrator and the two arbitrators shall agree upon a third arbitrator, and the three arbitrators shall resolve any dispute between the parties.  All costs associated with any such arbitration shall be borne by Lessee.  In the event any of the above local rates are provided for by law, then that part of this section pertaining to that particular local rate shall be null and void.

 **2.  Guarantee of local employment and management training program**

The Lessee, in consideration for the granting of this Lease, covenants and agrees to the following:

 **A.  Local Employment.**  Lessee shall promote and ensure training and hiring of local residents in a proactive endeavor to achieve an objective maximizing a workforce of permanent United States and Freely Associated States citizens.  Lessee shall comply with all applicable immigration and labor laws, standards, and regulations including without limitation those set forth at 4 CMC §§ 4413 and 4436..

 **B.  Job Training.**  The Lessee shall develop and implement a job training program with such government agencies as the Workforce Investment Agency, Office of Personnel Management, and the Northern Marianas College, with the approval of the Secretary of Commerce and the Director of Labor, to train CNMI residents in the type of jobs required by the Lessee in the operation and maintenance of the Initial Gaming Facility.

*P.O. Box 500380, Saipan, MP 96950*

C.  **Management Opportunities.**  The Lessee shall undertake all reasonable efforts to encourage, induce and promote qualified United States and Freely Associated States citizens to positions of increasing responsibility and management levels in the operation and maintenance of the Initial Gaming Facility.  The Lessee shall make an annual report to the Secretary of Commerce and the Director of Labor on the status of the Lessee's efforts hereunder.

## ARTICLE 13. SUBLEASE, ASSIGNMENT, TRANSFER, CONCESSIONS

A.  **Consent Required.**  Except with the prior consent in writing of the DPL in each instance (which consent shall not be unreasonably withheld or delayed), Lessee shall not, with respect to development on the public land leased hereby:

(1) Assign, lease, sublease, sell, convey, mortgage, encumber, transfer or dispose of all or any part of Lessee's interest in or to the Premises, or permit the Premises to be used or occupied by others; or

(2) Enter into a management contract or other arrangement by which the activities engaged in on the Premises shall be managed and operated by anyone other than Lessee; or

(3) Grant concessions, permits, or otherwise contract for or permit any business or commercial enterprise or activities to be constructed or performed on the Premises by any person other than the Lessee.

Such approval and/or consent for any of the aforementioned transactions shall not be unreasonably withheld.

For the purposes of this condition, "concession, permit or enterprise" shall mean a privilege or right to sell products or perform services, which are peripheral to Lessee's proprietary use of the Premises.

Provided, however, Lessee may transfer, assign or sublease this Lease to any affiliate or subsidiary of the Lessee in existence at the time of execution of this Lease, without the consent of the DPL.  Provided further that such assignment or sublease does not result in a change of control as defined in Article 13B.

The consent by the DPL to an assignment, transfer, management contract, or subletting may be granted, denied or made subject to such conditions as the DPL finds it

in the best interest of its beneficiaries. Any purported assignment, lease, sublease, sale, conveyance, transfer, mortgage or encumbrance of this Lease, whether written or oral, or any other action for which DPL consent is needed as outlined above, to which the DPL has not given its prior consent is null and void and is of no force or effect and is a violation of this Lease. No sublease, assignment, transfer, or contract shall be valid without the approval of the DPL, and then only if the respective sublessee, assignee, transferee, or other contracting party agrees in writing that the provisions of this Lease bind such sublessee, assignee, transferee, or contracting party.

Once given, the DPL's consent shall not relieve Lessee, or any subsequent sublessees, assignees or transferees, in any way from obtaining the prior consent in writing of the DPL to any further assignment, transfer, management contract, or subletting.

For purposes of this section, "Premises" includes any portion of the leased premises or any improvement on the leased premises, and "Lessee" includes Lessee's employees, successors and assigns.

B. **Change in Control of Lessee.** If the sale, assignment, transfer, use, or other disposition of any of the issued and outstanding capital stock of Lessee (or of any successor or assignee of Lessee which is a corporation), or of the interest of any general partner in a partnership owning the leasehold estate created hereby, or of the interest of any member of a joint venture, syndicate, or other group which may collectively own such leasehold estate, shall result in changing the control of Lessee or such other corporation, partnership, joint venture, syndicate, or other group, then such sale, assignment, transfer, use, or other disposition shall be deemed an assignment of this Lease and shall be subject to all the provisions of this Lease with respect to assignments. Such approval and/or consent for any of the aforementioned transactions shall not be unreasonably withheld.

For purposes of this Article, if Lessee is a corporation or a limited liability company, "change of control" shall mean any dissolution merger, consideration, or other reorganization of Lessee, or the sale or other transfer of a controlling percentage of the capital stock of the Lessee, or the sale of at least fifty-one percent (51%) of the value of the assets of the Lessee. The term "controlling percentage" means the ownership of, and the right to vote, stock possessing at least fifty-one percent (51%) of the combined total

P.O. Box 500380, Saipan, MP 96950

voting power of all classes of Lessee's capital stock issued, outstanding and entitled to vote for the election of directors.

For purposes of this Article, if Lessee is a partnership, joint venture, syndicate or other group which collectively holds this Lease, "change of control" means a withdrawal or change, voluntary or involuntary or by operation of law, of any partner, individual or entity owning more than fifty-one percent (51%) of the beneficial interest in the partnership, joint venture, syndicate or other group.

For the purposes of this Article, "control" of any corporation shall be deemed to be vested in the person or persons owning more than fifty-one percent (51%) of the voting power for the election of the Board of Directors of such corporation, and "control" of a partnership, joint venture, syndicate, or other group shall be deemed to be vested in the person or persons owning more than fifty-one percent (51%) of the general partner's interest in such partnership or of the total interest in such joint venture, syndicate, or other group. For purposes of determining control by a person, members of the family of any assignor or transferor shall be included. For purposes of this section, "members of the family" include a person's spouse, grandparents, parents, brothers and sisters, nephews and nieces, and children by adoption and by blood. Lessee shall furnish an annual statement to the DPL that includes the names and addresses of all stockholders in any corporation or general partners in any partnership holding this lease, showing the number of shares of stock owned by each stockholder of such corporation, or the respective interest of the partners in such partnership, as the case may be. Such statement shall be signed under oath by an officer of each corporation and by a general partner of each partnership holding this lease.

C. **Reorganization of Lessee**. Notwithstanding Article   13B above in connection with any reorganization of Lessee, Lessee may, subject to the DPL's prior written consent, assign this Lease to a corporation, company, general partnership or limited partnership if 1) Lessee, or any parent subsidiary or other affiliate of Lessee, is a general partner, in the case of a partnership, or is the owner of a controlling percentage of the corporate or company assignee, and 2) the assignee executes an agreement assuming Lessee's obligations hereunder and 3) the DPL is given sixty (60) days prior written notice of such assignment. Such approval and/or consent for any of the aforementioned transactions shall not be unreasonably withheld.

*Lease Agreement*
*Imperial Pacific Int'l., (CNMI), LLC*
**Garapan, Saipan**
Page 15 of 39

P.O. Box 500380, Saipan, MP 96950

**D. Notice to DPL.** Lessee shall furnish a statement of ownership/control to the DPL prior to the Commencement Date of this Lease, and on the same date annually thereafter. If Lessee is a corporation, such statement shall include the names and addresses of all principal stockholders and officers in any corporation acting as Lessee, which stockholder(s) own more than ten percent (10%) of the total combined voting power of all classes of Lessee's capital stock issued, outstanding and entitled to vote for the election of directors. If the Lessee is a partnership, joint venture, syndicate or other group, such statement shall include the name, address and respective interest of each person or entity with an interest in the partnership, joint venture, syndicate or other group.

**E. Assignee's Duties.** No assignment, sublease or transfer made with DPL's consent shall be effective until there shall have been delivered to DPL an executed counterpart of such assignment, sublease or transfer containing an agreement, in recordable form, executed by the assignor, sublessor or transferor and the proposed assignee, sublessee or transferee in which the latter assumes due performance of the obligations on the former's part to be performed under this Lease to the end of the leasehold term.

**F. Assignment Fee.** If the DPL consents to an assignment or other transfer, it shall assess a fee of fifteen percent (15%) of the capital gain attributable to the leased land. The term "capital gain attributable to the leased land" is defined as the sale amount less the book value of the property including all the improvements and fixtures. Lessee shall pay the fee at closing of the assignment.

## ARTICLE 14.   STATUS OF SUBLEASES

Termination of this Lease, in whole or in part, by cancellation or otherwise, shall not serve to terminate subleases, concessions, or sub-tenancies, but shall operate as an assignment to the DPL of any and all such subleases, concessions, and sub-tenancies.

## ARTICLE 15.   AGREEMENTS FOR UTILITY LINES

The Lessee shall have the right to enter into agreements with public utility

companies or with the Government of the Commonwealth of the Northern Mariana Islands and/or any of its agencies to provide utility services, including water, electricity, telephone, television, and sewer lines necessary to the full enjoyment of the Premises and the development thereof in accordance with the provisions of this Lease. Subject to prior consultation with Lessee, the DPL reserves the authority to grant utility rights-of-way across the Premises. The Lessee shall furnish to the DPL executed copies thereof together with a plat or diagram showing the true location of the utility lines to be constructed in accordance therewith. Nothing herein contained shall be deemed to imply an obligation on the part of DPL to furnish Lessee with any water services or other utilities whatsoever. It is expressly understood that the Lessee shall obtain such services at its sole cost and expense.

## ARTICLE 16.   RIGHT OF MORTGAGE

The Lessee, its successors and assigns may, subject to the express prior written approval of the DPL, mortgage this Lease and the Lessee's interest hereunder, provided that no holder of any mortgage of this Lease or the Lessee's interest hereunder, or any one claiming by, through or under any such mortgage shall, by virtue thereof, except as provided herein, acquire any greater rights hereunder than the Lessee, and no mortgage of this Lease or the Lessee's interest hereunder, in whole or in part, by the Lessee or the Lessee's successors or assigns shall be valid, unless: (i) at the time of the making of such mortgage, there shall be no default under any of the agreements, terms, covenants and conditions to be performed by the Lessee under this lease; (ii) such mortgage shall be subject to all the agreements, terms, covenants and conditions of this Lease, (iii) any such mortgage shall reserve to the DPL prior right, in the event of Lessee's default under the same and after notice of the same character and duration as required to be given to Lessee, to correct the default or to purchase the same and terminate this Lease; and (iv) such mortgage shall contain the following provisions:

> This instrument is executed upon condition that (unless this condition be released or waived by the DPL or its successors in interest by an instrument in writing), no purchaser or transferee of said Lease at any foreclosure sale hereunder, or other transfer authorized by law by reason of a default hereunder where no foreclosure sale is required, shall, as a result of such sale

*P.O. Box 500380, Saipan, MP 96950*

or transfer, acquire any right, title or interest in or to said Lease or the leasehold estate hereby mortgaged unless (i) the DPL shall receive written notice of such sale or transfer of said Lease within fifteen (15) days after the effective date of such sale or transfer and (ii) a duplicate original copy of the instrument or instruments used to effect such sale or transfer shall be delivered to the DPL within thirty (30) days after the execution and delivery thereof.

Any mortgage entered into shall be in strict compliance with all applicable laws and regulations, including mortgage security instrument laws, or applicable constitutional provisions, in order to be valid and enforceable. All funds received pursuant to any mortgage of the leasehold property shall be expended only for leasehold improvements within the Northern Mariana Islands.

## ARTICLE 17.   RIGHTS OF LEASEHOLD MORTGAGEES

If the Lessee or the Lessee's successors or assigns shall mortgage this Lease or its interest in the Premises, in accordance with the provisions of this Lease, then so long as any such leasehold mortgage, as hereinafter defined, shall remain unsatisfied of record, the following provisions shall apply:

**A. Notice to Mortgagee.** The DPL shall serve upon the Lessee any notice of default pursuant to the provisions of Article   27 or any other notice under the provisions of or with respect to this Lease. The Lessee shall thereafter serve a copy of such notice upon the holder of the then existing mortgage of this Lease of the Premises. Service of such notice of default upon the Lessee shall be deemed as service on the mortgagee who shall thereafter have the same period as the Lessee for remedying the default or causing the same to be remedied, as is given the Lessee after service of such notice upon it.

**B. Remedy.** Such leasehold mortgagee of this Lease or the Premises, in case the Lessee shall be in default hereunder, shall, within the period and otherwise as herein provided have the right to remedy such default, or cause the same to be remedied, and the DPL shall accept such performance by or at the instigation of such leasehold mortgagee as if the same had been performed by the Lessee.

**C. Diligent Prosecution.** No default on the part of Lessee in the performance of work required to be performed, or acts to be done, or conditions to be remedied, shall be

P.O. Box 500380, Saipan, MP 96950

deemed to exist, if steps shall, in good faith, have been commenced promptly to rectify the same and shall be prosecuted to completion with diligence and continuity in accordance with Article 27 hereof, on "Default", unless otherwise specified in this Lease.

**D. Termination.** Notwithstanding while the leasehold mortgage remains unsatisfied of record, if any event or events shall occur which shall entitle the DPL to terminate this Lease, and if before the expiration of thirty (30) days after the date of service of notice of termination by the DPL all rent and other payments herein provided for then in default is fully paid, and the Lessee shall have complied or shall be engaged in the work of complying with all the other requirements of this Lease, if any, then in default, then in such event the DPL shall not be entitled to terminate this Lease, and any notice of termination theretofore given shall be void and of no force or effect, provided, however, nothing herein contained shall in any way affect, diminish or impair the right of DPL to terminate this Lease or to enforce any other subsequent default in the performance of any of the obligations of the Lessee hereunder.

**E. Notice of Termination.** In the event of the termination of this Lease prior to the natural expiration of the term hereof, whether by summary proceedings to dispossess, service of notice to terminate or otherwise, due to default of the Lessee as provided in Article 27 hereof, or any other default of the Lessee, the DPL shall serve upon the holder of the then existing mortgage on this Lease or the Premises written notice of such termination. Nothing herein contained shall release the Lessee from any of its obligations under this Lease, which may not have been discharged or fully performed by any mortgagee of this Lease or the Premises, or its designee.

**F. First Mortgage Only.** Whenever reference is made herein to the holder of the mortgage on this Lease or the Premises, the same shall be deemed to refer only to the holder of the first record mortgage on this Lease or the Premises, if any, as shown by the records of the Commonwealth Recorder's office. Notice of such mortgage shall be sent to the DPL by certified or registered mail, and include a copy of the recorded mortgage certified by the Commonwealth Recorder's office as to the date and time of recordation. Any notice or other communication to any such mortgagee by the DPL shall be in writing and shall be served either personally or by certified or registered airmail address to such

P.O. Box 500380, Saipan, MP 96950

holder or mortgagee at his/her address appearing on such records or at such other address as may have been designated by notice in writing from such holder or mortgagee to the party serving such notice of communications. Nothing in this Article shall be construed so as to require the DPL to serve notices upon or recognize any leasehold mortgagees other than the holder or such first mortgage on this Lease or the Premises, as aforesaid.

## ARTICLE 18.   RIGHTS-OF-WAY FOR UTILITY LINES

The DPL hereby agrees to grant rights-of-way on or across public lands for utility lines necessary to the full enjoyment of the Premises and the full development thereof.   Such rights-of-way are to be granted by the DPL in accordance with the approved general development and construction plans.

## ARTICLE 19.   FIRE AND DAMAGE INSURANCE

The Lessee shall procure upon the completion of construction of the Initial Gaming Facility, and maintain in force during the entire Term of this Lease or any extension thereof, fire and damage insurance for the Premises in a company or companies authorized to do business in the Northern Mariana Islands, with extended coverage endorsements jointly in the names of the Lessee and the DPL, covering the full insurable value of all permanent improvements on the Premises, subject to appropriate co-insurance provisions. The policy shall contain a clause requiring that the DPL be given thirty (30) days notice prior to any cancellation or termination of the policy. A copy of such policy or policies or an acceptable certificate shall be deposited with the DPL within thirty (30) days of the same obtained by the Lessee.  The Lessee shall pay all premiums and other charges payable in connection with insurance carried by the Lessee.  In the event of damage to any permanent improvement on the premises, the Lessee shall reconstruct such improvement in compliance with applicable laws, ordinances, and regulations and in accordance with the applicable provisions of this Lease. Such reconstruction shall commence within six (6) months after the damage occurs and shall be pursued diligently and completed within one (1) year of the occurrence. In the event of damage to the extent of seventy-five percent (75%) or more

P.O. Box 500380, Saipan, MP 96950

of the total value of all permanent improvements on the Premises during the last five (5) years of the term of this Lease, the Lessee for ninety (90) days shall have the option to agree to reconstruct the damaged improvements.   Should the Lessee fail to notify the DPL in writing of the exercise of its option to reconstruct within ninety (90) days of the occurrence of damage, the Premises shall be cleared at the Lessee's expense and upon completion of such clearing this Lease shall terminate. In the event Lessee shall elect not to rebuild damaged improvements during the last five-year term of the Lease, all insurance proceeds accruing as a result of the fire or damage, shall be for the sole benefit of and made payable to the DPL, or its lawful successors and assigns. Any damages incurred or suffered by any sublessee, assignee, mortgagee or otherwise as a result of such termination shall be borne solely by the Lessee.

**ARTICLE  20.   LIABILITY INSURANCE**

The Lessee shall, from the Commencement Date of this Lease, procure and maintain in force during the entire term of this Lease or any extension thereof, at its sole expense, commercial general liability insurance for the Premises and Operation defined herein, with the DPL and the CNMI Government as named co-insureds, in a company or companies authorized to do business in the Northern Mariana Islands, with a minimum coverage of $50,000.00 for wrongful death, $100,000.00 per person for other tortuous occurrences, and $200,000.00 per occurrence (the limits established by Public Law No. 15-22, § 5), or such higher amounts as the DPL and the Lessee may otherwise agree. Copies of such policies shall be delivered to the DPL within thirty (30) days of their issuance, and shall contain a clause stating that at least thirty (30) days' written notice shall be given to the DPL prior to cancellation or refusal to renew any such policies. Lessee agrees that if such insurance policies are not kept in force during the entire term of this Lease, the DPL may procure the necessary insurance, pay the premium therefore, and such premium shall be repaid to the DPL immediately upon the DPL's demand.

All insurance obtained by the Lessee in compliance with this Lease shall be

obtained from reputable companies acceptable to the DPL.

## ARTICLE 21. NOTICES

Except as otherwise specified herein, all notices required or permitted under this Lease shall be in writing and shall be delivered in person or deposited in the United States mail in an envelope addressed to the proper party, certified or registered mail, postage prepaid as follows:

      DPL:            Department of Public Lands
                         P.O. Box 500380
                         Saipan, MP 96950

      LESSEE:     Imperial Pacific International (CNMI), LLC
                         P.M.B. 918 PPP Box 10000
                         Saipan, MP 96950

or at such other address as the DPL or Lessee may from time to time specify in writing. All notices shall be deemed delivered (1) on the date personal delivery is made, or (2) on the date falling three (3) days after the date of the post mark by the U.S. Post Office of any mail or notice properly addressed and containing sufficient postage.

## ARTICLE 22: RESERVATION OF EASEMENTS/MINERAL RIGHTS

This Lease shall be subject to all existing easements, roadways, and rights-of-way across or through the Premises. The DPL and the CNMI Government retain the right at all times to cause the construction, maintenance, operation or repair of public utilities or parts thereof on the premises, including, but not necessarily limited to, electric power transmission, telegraph, telephone and pipelines, and for roads and other community projects. Lessee shall be entitled to no compensation from the DPL or the CNMI government for such uses of the Premises. The DPL hereby reserves all rights to minerals and resources on the Premises, including the right of access to and use of such parts of the surface of the Premises as may be necessary for the mining and saving of said minerals. The right of ingress to and egress from the Premises upon which public utilities and other improvements have been constructed, and for the purposes of inspection by the

DPL, as well as for the performance of official duties in the maintenance, operation and repair of such utilities and other improvements is hereby reserved.

## ARTICLE 23. RIGHT OF INSPECTION; INGRESS/EGRESS

A.     The DPL and its agents shall have, upon reasonable notice, the right to enter the Premises at any time for inspection purposes in order to determine whether the provisions of the Lease are being complied with by the Lessee, to serve notices required under this Lease or for any other purpose deemed necessary by the DPL.  In addition, DPL shall have the right to inspect and examine all the books, records, documents, and accounts of the Lessee or its sublessees, from time to time.

B.     The DPL reserves to the CNMI Government the right to order cessation of all operations on the Premises until further notice should the CNMI Government, any agency thereof, or the DPL determine the Lessee is not exercising a high degree of care in protecting the safety of persons and property in the conduct of its activities on the Premises.

Regardless of the above provisions, it always remains the sole responsibility and duty of the Lessee to ensure that the operation is operated in a safe and healthful manner.

## ARTICLE  24.  CONDEMNATION

The DPL and Lessee covenant and agree that in the event the whole property hereby leased shall be taken in condemnation proceedings or by any right of eminent domain, or otherwise, for public purposes, then and on the happening of any such event, the DPL or Lessee, may terminate this Lease and the Term hereby granted and all the rights of the Lessee hereunder, and the rent shall be paid up to the date of such condemnation or termination and any unearned rent paid in advance by the Lessee shall be refunded pro rata.  In the event any portion of the property hereby leased is condemned or taken by right of eminent domain or otherwise for public purposes, thereby rendering the leased property unsuitable for the purpose of Lessee as stated in Article 2 above, then and on the happening of such event Lessee may terminate this Lease and the Term hereby granted, and all the rights of the Lessee hereunder and the rent shall be paid up to the date of such termination or condemnation and any unearned rent paid in advance by the

P.O. Box 500380, Saipan, MP 96950

Lessee shall be refunded pro rata.  If Lessee does not terminate this Lease upon such event, then the rent shall be reduced in proportion to the land taken as such bears to the total area of land leased. The DPL and the Lessee may each independently file separate claims in such proceedings for the purpose of having the value of their respective interests determined, and the award shall be paid accordingly; but if the public or governmental authorities shall object or refuse to permit separate claims to be proved and/or distributed in such manner, the DPL will prosecute all claims for damages to the Premises on behalf of both the DPL and the Lessee (and authority to do so is hereby granted), and after deducting all reasonable expenses incurred by the DPL incident thereto, the balance of said award shall be divided between the DPL and the Lessee as established in that proceeding.  In the event the DPL prosecutes the claim on behalf of both parties hereto, all such awards shall be paid to the DPL for the account of the DPL and Lessee as hereinbefore provided.

**ARTICLE  25. COVENANT AGAINST DISCRIMINATION**

The use and enjoyment of the Premises shall not be in support of any policy which discriminates against anyone based upon race, creed, sex, color, national origin, or a physical handicap, or as provided by Commonwealth or Federal laws.

**ARTICLE  26. ABANDONMENT OF PREMISES**

Should the Lessee fail to use the Premises for the purpose set forth in this Lease for a consecutive period of ninety (90) days without securing the written consent of the DPL, the Lessee shall be deemed to have abandoned the Premises, so that in such event this Lease may, at the option of the DPL, be terminated pursuant to the provisions of Article 28 hereof without further notice to the Lessee.

**ARTICLE  27. DEFAULT**

Time is of the essence and Lessee shall automatically be in default of this Lease if:

**A. Failure to pay.**  Lessee shall fail to pay any installment or rent hereby reserved or shall fail to pay any taxes or other charges required to be paid by Lessee within thirty (30) days after the due date under the terms of this Lease.

P.O. Box 500380, Saipan, MP 96950

**B. Other Breach of Lease.**   Lessee shall breach any term, provision or covenant of this lease, other than the payment of rent, taxes, or other charges, and fails to cure such breach within thirty (30) days from and after written notice from the DPL.

**C. Insolvency or Bankruptcy.**   Lessee, its successors and assigns, becomes insolvent or file for relief under the United States Bankruptcy Code.

**D. Abandonment.** Lessee abandons the Premises as provided in Article 26.

Upon the occurrence of Lessee's default of this Lease as described above, all Lessee's rights under this Lease are terminated, including, but not necessarily limited to Lessee's right to use the Premises. Any notices, as may be required by law or this Lease, shall be delivered as provided by Article 20 of this lease.

## ARTICLE. 28. REMEDIES

Upon termination of Lessee's rights under this Lease pursuant to Article 27, the DPL may terminate this Lease and may, upon fifteen (15) days written notice, enter in, into and upon the leased premises and take possession of all buildings, fixtures and improvements except Lessee's removable personal property, trade fixtures and equipment, and evict Lessee without liability of trespass. The remedies herein shall not prejudice the DPL's other rights and remedies at law or equity.

## ARTICLE 29. ACCORD AND SATISFACTION

No payment by Lessee or receipt by the DPL of a lesser amount than the annual rent herein stipulated shall be deemed to be other than on account of rents due, nor shall any endorsement or statement on any check or any letter accompanying any check or payment of rent be deemed an accord and satisfaction, and the DPL may accept such check or payment without prejudice to the DPL's right to recover the balance of such rent or pursue any other remedy provided in this lease. In the event that the rent or any other monies which are due hereunder by Lessee are delinquent, the DPL may, upon the receipt of any payments, apply them to any account or period it shall determine in its discretion.

P.O. Box 500380, Saipan, MP 96950

### ARTICLE 30.  WAIVER OF BREACH

Waiver by the DPL of any breach of any term, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent breach of the same or any other term, covenant or condition herein contained.  The acceptance of rent by the DPL shall not be deemed to be a waiver of any of the terms or conditions including the remedies of DPL hereof.  No covenant herein shall be deemed waived by the DPL unless such waiver is in writing by the DPL.

### ARTICLE 31.  EXPENSE OF ENFORCEMENT

If an action is brought by the DPL for rent or any other sums of money due under this Lease, or if any action is brought by either the DPL or Lessee to enforce performance of any of the covenants and/or conditions of this Lease, the losing and defaulting party shall pay reasonable attorney's fees to be fixed by the Court as a part of the costs in any action.

### ARTICLE 32.  INDEMNIFY, DEFEND AND HOLD HARMLESS

As a part of the consideration hereof, the Lessee hereby releases and forever discharges and agrees to indemnify and hold harmless the DPL, the CNMI Government, their successors, employees and assigns, from any and all injury or loss and all liability for injury or loss to persons or property which occur on the Premises or which arise out of or in connection with any activities under this Lease during the Term of this Lease, any extension thereto or during any holdover by Lessee.

As part of the consideration hereof, the Lessee also agrees to defend the DPL, the CNMI Government, their successors, employees and assigns, from and against any claim, demand or lawsuit with respect to the subject of the indemnity contained herein, whether or not such claims, demands or actions are rightfully or wrongfully brought or filed and against all costs incurred by the DPL, the CNMI Government, their successors, employees and assigns therein.  In case a claim should be brought or an action filed with respect to the subject of indemnity herein, Lessee agrees the DPL, the CNMI Government, their successors, employees and assigns may employ attorneys of their own

selection to appear and defend the claim or action on their behalf, at the expense of the Lessee. The DPL, the CNMI Government, their successors, employees and assigns, at their own option, shall have the sole authority for the direction of the defense, and shall be the sole judge of the acceptability of any compromise or settlement of any claims or actions against them.

## ARTICLE 33. COVENANT AND ENJOYMENT

The DPL covenants that the Lessee, upon paying the rent required herein and upon fulfilling all the conditions and agreements required of the Lessee, shall and may lawfully, peacefully and quietly have, hold, use, occupy and possess and enjoy the property during the Term agreed upon without any suit, hindrance, eviction, ejection, molestation, or interruption whatsoever of or by the DPL, or by any other person lawfully claiming by, from, under or against the DPL.

## ARTICLE 34. GOVERNMENT REQUIREMENT

Lessee shall procure all licenses, certificates, permits, and other required authorizations from any other governmental authorities having jurisdiction over the Operation of the Lessee under this Lease.  Lessee shall provide the DPL with copies of all such licenses, certificates, permits and other required authorizations from other governmental authorities no later than the Commencement Date of this Lease.

## ARTICLE 35. UNLAWFUL USE AND COMPLIANCE WITH LAWS

Lessee covenants and agrees not to use or cause or permit to be used any part of the Premises for any unlawful conduct or purpose. Lessee agrees to comply with all property, building, health, sanitation, safety and other laws and regulations of the Commonwealth of the Northern Mariana Islands, which are in effect or which may hereafter become effective.

## ARTICLE 36. HOLDOVER CLAUSE

If the Lessee fails to vacate the Premises upon the expiration, termination or

cancellation of this Lease, Lessee shall be deemed a holdover Lessee. Such holdover Lessee shall be obligated to pay the DPL a holdover fee during the holdover period of not less than 115% of the monthly-prorated Guaranteed Annual Minimum Rental for the Five Year Period immediately preceding the holder period, or the alternative percentage of gross receipts as provided in Article 4A. Payment of such liquidated damages shall in no way constitute a limitation upon any other rights or remedies the DPL may be entitled to pursue for violation of the Lease, for trespass or illegal possession or for any other cause of action arising out of holdover Lessee's failure to vacate the Premises including the right to evict the Lessee without court action, and the cost thereof to be paid by the Lessee.

## ARTICLE 37. CONDITION OF PREMISES

The Lessee acknowledges that it has examined the Premises prior to the making of this Lease and knows the conditions thereof, and that no representation other than those expressed herein have been made by the DPL, and the Lessee hereby accepts the Premises in its present condition at the Commencement Date of this Lease.

## ARTICLE 38. VACATING THE PREMISES

Subject to the provisions of Article 9 above, upon the expiration or earlier termination or cancellation of the Lease, the Lessee shall quietly and peacefully vacate the Premises and surrender the possession thereof. The DPL may, at its option, require the removal of all improvements and property on the Premises, or it may require all improvements, except removable personal property, trade fixtures and equipment, remain on the Premises and become the property of the DPL after termination of this Lease. Upon the failure or neglect of the Lessee to remove its property from the Premises or restore the Premises, the DPL, its officers or agents, may enter the Premises and remove all persons and property therefrom without recourse to any action or proceeding at law or in equity. Such removal and/or restoration shall be at the cost and expense of the Lessee, and no claim for damages of any nature whatsoever against the DPL, the CNMI Government or any officer or agent thereof shall be created by or made on account of such removal.

P.O. Box 500380, Saipan, MP 96950

## ARTICLE 39. PUBLIC AUDITOR

This Lease is subject to 1 CMC § 7845. The Lessee shall provide, upon request of the Public Auditor of the Commonwealth all records and reports, and shall allow audit, inspection, access and the right to copy its books, records, documents, correspondence, and any other data and material relating to this Lease, to the Public Auditor, and do any other acts required under 1 CMC § 7845. This right of access, inspections, and copying shall continue until the expiration of three (3) years after the final payment under the Lease is made, or such other time as set forth in 1 CMC § 7845.

## ARTICLE 40. GENERAL PROVISIONS AND DEFINITIONS

**A. Waiver.** No waiver of any default of the Lessee hereunder shall be implied from any omission by the DPL to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect the default other than the default specified in the express waiver, and that only for the time and to the extent therein stated. One or more waivers of any covenant, term or condition of this Lease by the DPL shall not be construed as a waiver of any subsequent breach of the same covenant, term or condition. The consent or approval by the DPL to or of any act by the Lessee requiring the DPL's consent or approval shall not be deemed to waive or render unnecessary the DPL's consent or approval to or of any subsequent or similar acts by the Lessee. The acceptance of Lease fees by the DPL shall not be deemed to be a waiver of any of the terms or conditions, including the remedies of the DPL. No covenant of this Lease shall be deemed waived by either party unless such waiver is in writing and signed by the party waiving the covenant.

**B. Agreement Complete.** It is hereby expressly agreed that this Lease, together with the exhibits attached hereto, contains all of the terms, covenants, conditions and agreements between the parties hereto relating in any manner to the use and occupancy of the Premises, and that the execution hereof has not been induced by either of the parties by representations, promises or understandings not expressed herein and that there are no collateral agreements, stipulations, promises or understandings of any nature whatsoever between the parties hereto relating in any manner to the use

and occupancy of the Premises, and none shall be valid or of any force or effect, and that the terms, covenants, conditions and provisions of this Lease cannot be altered, changed, modified or added to except in writing signed by the parties hereto.

     **C. Interpretation.** The language in all parts of this Lease shall be in all cases construed simply, according to its fair meaning, and not strictly for or against the DPL or the Lessee.  Captions and paragraph headings contained herein are for convenience and reference only, and shall not be deemed to limit or in any manner restrict the contents of the paragraph to which they relate.

     **D. DPL's Representative.** The authorized representative of the DPL for purposes of this Lease shall be the Secretary of the Department of Public Lands or his/her designee.

     **E. Lessee's Representative.** The authorized representative of the Lessee for purposes of this Lease shall be CAI, Lingli, President of the Corporation, or whomever the Board of Directors of the Lessee may from time to time designate in writing.

     **F. Law Governing.** This Lease shall be governed by the laws of the Commonwealth of the Northern Mariana Islands, both as to performance and interpretation therein.  If any provision of this Lease shall be held invalid under the laws of the Commonwealth of the Northern Mariana Islands for any reason, the same shall in no way impair the validity of the remaining provisions of this Lease, and the remaining provisions of the Lease shall otherwise remain in full force and effect.

     **G. Gross Receipts.** "Gross Receipts", as that term is used herein, means all income or revenue whatsoever, including money and any other thing of value, received by or paid to the Lessee, its sublessees or concessionaires, or received by or paid to others for the use and benefit of any of the aforementioned, derived from business done, sales made or services rendered directly from or on the leased Premises or the Initial Gaming Facility outside of the Premises, or derived from the subleasing, sub-renting, permitting, contracting, or other use of the same. The Lessee shall not directly or indirectly divert from inclusion in Gross Receipts any income or revenue whatsoever derived from the leased Premises to any other business or enterprise located elsewhere. For the avoidance of doubt, revenue derived from activities on private land upon which a

P.O. Box 500380, Saipan, MP 96950

portion of the Initial Gaming Facility is constructed shall be considered Gross Receipts for all purposes of this Lease.

The following items may be deducted from the gross receipts:

1)   credits for the exchange of goods or merchandise from the premises to another store or stores owned or operated by the Lessee, its parent or affiliate, where such exchange is made solely for the convenience of business and not for the purpose of consummating a sale previously made directly or indirectly from or upon the Premises;

2)   to the extent the same shall have been included in "Gross Receipts", there shall be deducted credits to customers for returned merchandise, merchandise trade-ins, exchanges, merchandise cancellations, allowances and discounts, and any and all credits to customers of a similar nature;

3)   the amount derived from the sale or other disposition of fixtures, goodwill, improvements, furnishings, equipment, accessory, appliance, utensils or any other item of property: (i) which is either sold outside the ordinary course of the Lessee's business; or (ii) which is not acquired or held by the Lessee as a stock-in-trade or inventory for resale in the ordinary course of the Lessee's business;

4)   to the extent the same has been counted in the "Gross Receipts", there shall be deducted an amount equal to all income or revenue accruing or paid to the Lessee or for its benefit which is derived from the rental, leasing, or grant of facilities on the Premises to any sublessee or concessionaire primarily for the purpose of operating on the Premises a retail or wholesale sales or service facility whose income or revenue is counted as a part of the "Gross Receipts" of this Lease.

For the avoidance of doubt, no capital gains earned upon the assignment or transfer of the Premises shall be included in the definition of "Gross Receipts" for purposes of calculating the rent due from Lessee pursuant to Article 4 hereof.

H.   Initial Gaming Facility.   "Initial Gaming Facility" shall mean a newly constructed complex consisting of two hundred and fifty (250) rooms with casino floor space of approximately 2,200 square meters (excluding back areas) and related amenities. The IGF guest rooms, services, and facilities shall be at the quality identified by the AAA Lodging

P.O. Box 500380, Saipan, MP 96950

Criteria for five star establishments.

## ARTICLE 41.  LEASE AGREEMENT BINDING

This Lease and the covenants, conditions and restrictions hereof shall extend to and be binding upon the parties hereto, their heirs, successors and assigns and to any other person claiming to hold or to exercise any interest by, under or through any of the parties hereto.

## ARTICLE 42.  PARENT GUARANTEE

In further consideration for this Lease, Lessee's parent corporations Best Sunshine International Limited, Imperial Pacific International Holdings Limited, and Inventive Star Limited jointly and severally guarantee full performance of all terms and conditions to be performed under this Lease including but not limited to, prompt payment of any and all obligations that may arise under this lease as follows:

A. Guarantors, jointly and severally, will in all respects guarantee the due and proper performance of the Lease and the due observance and prompt performance of all obligations, duties, undertakings, covenants, warranties, and conditions by or on the part of the Lessee contained therein and to be observed and performed by Lessee, which guarantee shall extend to include any variation or addition to the Lease throughout its Term and any permitted extension thereof.

B. If Lessee fails to carry out, observe or perform any of such obligations, duties undertakings, covenants, warranties and/or  conditions under the Lease (unless relieved from the performance of any part of the Lease by statute or by the decision of a court or tribunal of competent jurisdiction) the Guarantors will be jointly and severally liable for and shall indemnify the DPL against all losses, damages, costs and expenses, whatsoever which the Beneficiary may incur.

C. The Guarantors,  (or any one of them), shall not be discharged or released from this Guarantee by the occurrence of any one or more of the following:-

    1.    Any alteration to the nature of extent of the Lease;

    2.    Any allowance of time, forbearance, indulgence or other

*Lease Agreement*
*Imperial Pacific Int'l., (CNMI), LLC*
*Garapan, Saipan*
Page 32 of 39

Exhibit K of Second TRO

Page 33 of 40

concession granted to the Lessee under the Lease or any other compromise or settlement of any dispute between the DPL and the Lessee

3.     The liquidation, bankruptcy, administration, absence of legal personality, dissolution, incapacity or any change in the name, composition or constitution of the Lessee or the Guarantor(s).

D.  This Guarantee is a continuing guarantee and accordingly shall remain in operation until all obligations, duties, undertakings, covenants, conditions and warranties now or hereafter to be carried out or performed by the Lessee under the Contract shall have been satisfied or performed in full and is in addition to and not in substitution for any other security which the DPL may at any time hold for the performance of such obligations and may be enforced without first having recourse to any such security and without taking any other steps or proceedings against the Lessee.

E.  So long as any sums are payable (contingently or otherwise) by the Lessee to the DPL under the terms of the Lease then the Guarantors shall not exercise any right of set off or counterclaim against the Lessee or any other person or prove in competition with the DPL in respect of any payment by the Guarantors hereunder and in case either Guarantor receives any sum from the Lessee or any other person in respect of any payment of the Guarantors hereunder the respective Guarantor shall hold such monies in trust for the DPL so long as any sums are payable (contingently or otherwise) under this Guarantee.

F.  Guarantors will not, without prior written consent of the DPL hold any security from the Lessee or any other person in respect of the Guarantors' liability hereunder or in respect of any liabilities or other obligations of the Lessee to the Guarantors. The Guarantors will hold any security held by it in breach of this provision in trust for the DPL.

G. This Guarantee is in addition to and not in substitution for any present and future guarantee lien or other security held by the DPL. The DPL's rights under this Guarantee are in addition to and not exclusive of those provided by law.

Guarrantors each agree to waive any corporate protection under the law pertaining to such guarantee of full performance hereunder.

## ARTICLE 43.   COUNTERPARTS

This Lease may be executed in separate counterparts, each counterpart when so executed shall be deemed an original, and all counterparts when take together shall constitute one and the same Lease.

**IN WITNESS WHEREOF**, the parties hereunto set their respective hands, the date and year first written above.

**LESSOR:**

**DEPARTMENT OF PUBLIC LANDS**

By: _____          Date: 4/29/15

PEDRO A. TENORIO
Secretary

*P.O. Box 500380, Saipan, MP 96950*

*Lease Agreement*
*Imperial Pacific Int'l., (CNMI), LLC*
*Garapan, Saipan*
Page 34 of 39

COMMONWEALTH OF THE )
NORTHERN MARIANA ISLANDS )                    ACKNOWLEDGMENT
)
)
SAIPAN, NORTHERN MARIANA ISLAND )

On this ⟨2?th⟩ day of April , 2015, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared **Pedro A. Tenorio, Secretary of the Department of Public Lands**, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the purpose set forth therein.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.



JEMIMA F. NOGIS
P.O. Box 500380 Saipan, MP 96950
**Notary Public** Reg. No. 722A
BY AND FOR THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS
My Commission Expires 9/8/15

_____
Notary Public

**APPROVED AS TO FORM AND LEGAL CAPACITY:**

By: _____      Date: 4-29-15

EDWARD MANIBUSAN
Attorney General

P.O. Box 500380, Saipan, MP 96950

LESSEE:

**IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC**

By: _____          Date: 4-29-15
    Mark Brown
    Chief Executive Officer

| | |
|---|---|
| COMMONWEALTH OF THE     ) | |
| NORTHERN MARIANA ISLANDS   ) | ACKNOWLEDGMENT |
|                  ) | |
| SAIPAN, NORTHERN MARIANA ISLAND  ) | |

On this 29th day of April, 2015, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared Mark Brown, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed on behalf Chief Executive Officer of Imperial Pacific International (CNMI), LLC, a Limited Liability Company established under the laws of the Commonwealth of the Northern Mariana Islands for the purpose set forth therein.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
Notary Public

JEMIMA F. NOGIS
P.O. Box 500380 Saipan, MP 96950
Notary Public Reg. No. 722A
BY AND FOR THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS
My Commission Expires: 4/8/15

*P.O. Box 500380, Saipan, MP 96950*

*Lease Agreement*
*Imperial Pacific Int'l, (CNMI), LLC*
*Garapan, Saipan*
Page 36 of 39

NOW IN CONSIDERATION OF THE SUM OF ONE UNITED STATES DOLLAR ($1.00)
(THE RECEIPT AND SUFFICIENCY OF WHICH THE GUARANTORS HEREBY
ACKNOWLEDGE) THE GUARANTORS HEREBY COVENANT WITH THE DPL AS IS
SET FORTH IN ARTICLE 42 ABOVE.


GUARRANTORS

**INVENTIVE STAR LIMITED**

By: _____

Mark Brown
Authorized Signatory


COMMONWEALTH OF THE                    )
NORTHERN MARIANA ISLANDS               )          ACKNOWLEDGMENT
                                       )
SAIPAN, NORTHERN MARIANA ISLAND        )


On this 20th day of April, 2015, before me, a Notary Public in and for
the Commonwealth of the Northern Mariana Islands, personally appeared  Mark Brown,
known to me to be the person whose name is subscribed to the foregoing instrument and
acknowledged to me that he executed the same as his free and voluntary act and deed on
behalf and as authorized signatory of Inventive Star Limited, a company established
under the laws of the British Virgin Islands for the purpose set forth therein.


IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official
seal the day and year first above written.


_____
Notary Public

JEMIMA F. NOGIS
P.O. Box 500380 Saipan, MP 96950
Notary Public Reg. No. 721A
BY AND FOR THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS
My Commission Expires 4/20/15

P.O. Box 500380, Saipan, MP 96950

**IMPERIAL PACIFIC INTERNATIONAL HOLDINGS, LIMITED**

By: _____

      Mark Brown
      Authorized Signatory

| | |
|---|---|
| COMMONWEALTH OF THE )<br>NORTHERN MARIANA ISLANDS )<br>)<br><u>SAIPAN, NORTHERN MARIANA ISLAND</u> ) | ACKNOWLEDGMENT |

On this 29th day of April, 2015, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared Mark Brown, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed on behalf and as authorized signatory of Imperial Pacific International Holdings, Limited, a company established under the laws of the British Virgin Islands for the purpose set forth therein.

      IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
Notary Public

JEMIMA F. NOGIS
P.O. Box 500380 Saipan, MP 96950
Notary Public Reg. No. 722A
BY AND FOR THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS
My Commission Expires: 9/9/16

*P.O. Box 500380, Saipan, MP 96950*

*Lease Agreement*
*Imperial Pacific Int'l., (CNMI), LLC*
***Garapan, Saipan***
Page 38 of 39

**BEST SUNSHINE INTERNATIONAL, LIMITED**

By: _____

Mark Brown

Authorized Signatory

| COMMONWEALTH OF THE | ) | |
| NORTHERN MARIANA ISLANDS | ) | ACKNOWLEDGMENT |
| | ) | |
| SAIPAN, NORTHERN MARIANA ISLAND | ) | |

On this ____ day of _____, 2015, before me, a Notary Public in and for the Commonwealth of the Northern Mariana Islands, personally appeared  Mark Brown, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed on behalf and as authorized signatory of Best Sunshine International, Limited, a company established under the laws of the British Virgin Islands for the purpose set forth therein.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

_____
Notary Public

JEMIMA F. NOGIS
P.O. Box 500380 Saipan, MP 96950
Notary Public Reg. No. 722A
BY AND FOR THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS
My Commission Expires

*P.O. Box 500380, Saipan, MP 96950*

*Lease Agreement*
*Imperial Pacific Int'l., (CNMI), LLC*
**Garapan, Saipan**
Page 39 of 39