F I L E D
Clerk
District Court

APR 05 2024

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| Imperial Pacific International (CNMI) LLC, | Case No. 1:24-cv-00001 |
| Plaintiff, | |
| v. | |
| Commonwealth of the Northern Mariana Islands, Arnold Palacios, governor of CNMI, in his official and personal capacities; Edward C. Deleon Guerrero, Chairman of CCC, in his official and personal capacities; Rafael S. Demapan, Vice Chairman of CCC, in his official and personal capacities; Mariano Taitano, Commissioner of CCC, in his official and personal capacities; Martin Mendiola, Commissioner of CCC, in his official and personal capacities; Ramon M. Dela Cruz, Commissioner of CCC, in his official and personal capacities; Andrew Yeom, Executive Director of CCC, in his official and personal capacities; | **DECISION AND ORDER DENYING PLAINTIFF'S SECOND EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER** |
| Defendants. | |

On February 23, 2024, Plaintiff Imperial Pacific International (CNMI), LLC ("IPI"), brought this civil action against Defendants Commonwealth of the Northern Mariana Islands ("CNMI"), Governor Arnold Palacios, Commonwealth Casino Commission ("CCC" or "Commission") Chairman Edward Deleon Guerrero, CCC Vice Chairman Rafael Demapan, CCC Commissioner Mariano Taitano, CCC Commissioner Martin Mendiola, CCC Commissioner

Ramon Dela Cruz, and CCC Executive Director Andrew Yeom in their official and personal capacities (collectively, "Defendants"). (Compl., ECF No. 1.) Three days later, IPI filed its first motion for a temporary restraining order restraining Defendants from conducting a revocation hearing on February 28, 2024, on IPI's casino license ("TRO"). (First TRO Mot., ECF No. 2.) After reviewing the parties' filings and a hearing on the motion, the Court denied IPI's first motion for a TRO. (Mins, ECF No. 8; Mem. Decision, ECF No. 9.)

IPI filed its second motion for a TRO on March 27, 2024, requesting the Court to restrain Chairman Guerrero, Chairman Demapan, Commissioner Dela Cruz, Commissioner Taitano, and Commissioner Mendiola from deliberating and voting on the charges against IPI that were the subject of the revocation hearing on February 28, 2024. (Pl.'s Points & Authorities 5, ECF No. 23-1.) The Court has reviewed IPI's filings in support of its motion for a second TRO (ECF Nos. 23–24-11), Defendant's Oppositions (ECF Nos. 27-30), and IPI's Reply (ECF No. 31). The Court finds that IPI has failed to meet its burden and DENIES IPI's second motion for a TRO as detailed herein.

I.     **BACKGROUND**

In IPI's second motion for a TRO, there are few new facts from those presented in IPI's first motion for a TRO that are relevant to this Court's analysis. Further, the Court previously identified the background relevant to IPI's first motion for a TRO, which is adopted herein. (Mem. Decision 1-5.) The Court further identifies new facts IPI presents below.

IPI clarifies who the decisionmakers are for the revocation of IPI's casino license, which includes Chairman Guerrero and Commissioners Demapan, Cruz, Taitano, and Mendiola. (Pl.'s Points & Authorities 11-12.)

At the February 28, 2024, revocation hearing, IPI made several motions to disqualify the hearing commissioners. (*Id.* at 12.) Also, "[a]fter the adjournment of the revocation hearing, on the agenda for the monthly meeting of CCC, which is scheduled to take place on March 28, 2024, CCC plans to begin to deliberate and render decision for the revocation hearing on April 2, 2024." (*Id.* at 13.)

On April 1, 2024, the Court issued an order to show cause why emergency relief was required by April 2, 2024, and the Commissioner Defendants to confirm the date of deliberation and voting on the revocation hearing. (Order Show Cause, ECF No. 33.) IPI confirmed that if the deliberation and voting date was moved, there was not a need to grant relief by April 2, 2024. (Pl.'s Response, ECF No. 34.) Commissioner Defendants confirmed that the deliberation and voting by the CCC was moved to April 9, 2024. (Def.'s Response Order Show Cause, ECF No. 35.)

## II.     LEGAL STANDARD

The Court has previously outlined the standard for a TRO in its memorandum decision. (Mem. Decision 5-6.) However, the Court again states the standard herein. Federal Rule of Civil Procedure 65 governs TROs. "The standard for issuing a TRO is the same as that for issuing a preliminary injunction . . . ." *Blain v. Cal. Dep't of Transp.*, 616 F. Supp. 3d 952, 956 (N.D. Cal. 2022). A "preliminary injunction is not a preliminary adjudication on the merits, but a device for

preserving the status quo and preventing the irreparable loss of rights before judgment." *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001). "[It] is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689 (2008)). Courts apply a four-factor test to determine whether to grant a preliminary injunction or TRO. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. at 20. This is the same for TROs. *Blain*, 616 F. Supp. 3d at 956.

"Alternatively, the court may issue a preliminary injunction if the plaintiff demonstrates that 'serious questions going to the merits' have been raised and 'the balance of hardships tips sharply in the plaintiff's favor' in addition to satisfying the other *Winter* factors." *Cmmw. Utils. Corp. v. Johnson*, 218 F. Supp. 3d 1136, 1142 (D. N. Mar. I. 2016) (citing *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011)). This approach is commonly called the "serious questions test": "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135. "Serious questions" are questions that "cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions . . . by altering the status quo."

*Gilder v. PGA Tour, Inc.,* 936 F.2d 417, 422 (9th Cir. 1991) (quoting *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc)). Serious questions "need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.'" *Id.* (quoting *Nat'l Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)).

## III.    DISCUSSION

In addressing the *Winter* factors, the Court focuses on IPI's due process cause of action as that is the focus of IPI's second motion for a TRO.

There are two main categories of due process challenges that focus on structural bias. *Alpha Epsilon Phi Tau Chapter Hous. Ass'n v. City of Berkeley*, 114 F.3d 840, 844 (9th Cir. 1997). Due process is violated if decisionmakers have a "'direct, personal, substantial pecuniary interest' in the proceedings." *Id.* (citing *Tumey v. Ohio*, 273 U.S. 510, 523 (1927)). Even if decisionmakers do not stand to gain personally, "due process may also be offended where the decisionmaker, because of his institutional responsibilities, would have 'so strong a motive' to rule in a way that would aid the institution." *Id.* (citing *Tumey*, 273 U.S. at 532).

IPI's due process claim is premised on their argument that "Defendants have a direct, substantial, arguably pecuniary interest in finding IPI in violation of the CLA, given the fact that CCC is funded exclusively by the regulatory fees that are ordered to be paid by IPI and its affiliates to the CCC." (Compl. ¶ 63.) Additionally, IPI argues that

> [e]ven for matters that are outside the scope of the CLA, CCC has a direct,
> substantial, arguably personal, pecuniary interest in finding IPI in violation of
> the CCC Rules and Regulation, given the fact that the finding of violation would
> directly result in fines and penalties payable to CCC and give CCC additional
> leverages over IPI that were not available to CCC under the CLA.

(*Id.* ¶ 64.)

   In IPI's second motion for a TRO, IPI contends that it has a strong likelihood of success on the merits for its due process cause of action because Chairman Guerrero and Hearing Commissioners Demapan, Cruz, Taitano, and Songao have a "direct, substantial, arguably personal, pecuniary interest[] in the outcome of the revocation hearing." (Pl.'s Points & Authorities 18.) IPI supports this contention through stating a number of issues it raised at its revocation hearing including: a force majeure defense, the executive director's lack of evidence to substantiate a charge against IPI, the unconstitutionality of the regulatory fee statute, and that suspension of its license would excuse payment of the regulatory fee under the CLA. (*Id.* at 19.) IPI asserts that its due process rights to an impartial and disinterested trier of fact are violated because pursuant to 4 CMC § 2309 (a), the CCC derives all its revenue from the annual regulatory fee that IPI challenges as unconstitutional. (*Id.* at 19.)

   IPI seeks a TRO against Edward C. Deleon Guerrero, Chairman of CCC; Rafael S. Demapan, Vice and Acting Chairman of CCC; Ramon M. Dela Cruz, Commissioner and Secretary of CCC; Mariano Taitano, Commissioner and Treasurer of CCC; and Martin T. Mendiola, Commissioner and Public Affairs of CCC. (*Id.* at 5.)

First, as to Chairman Guerrero, IPI does not specify what role Chairman Guerrero plays in the deliberation and voting on the revocation hearing and therefore does not support this Court restraining him from deliberation and voting on the revocation hearing. In fact, IPI states in its second motion for a TRO that Chairman Guerrero did not act at the revocation hearing in a quasi-judicial capacity and only participated as "citizen Guerrero." (*Id.* at 5, 12.)

As to the other Defendants IPI requests the Court restrain Vice and Acting Chairman Demapan and Commissioners Cruz, Taitano, and Mendiola from deliberating and voting on the revocation hearing. (*Id.* at 5.)

To support IPI's due process cause of action, IPI makes a series of contradicting arguments regarding possible incentives and biases the CCC Commissioner's may have when they are deciding whether or not to revoke IPI's casino license for IPI's failure to pay the regulatory fee.

On one hand, IPI argues that the Commissioners that will deliberate and vote as to the revocation of IPI's casino license are biased because the "CCC itself is entirely funded from th[e] annual regulatory fee from IPI and its affiliates." (*Id.* at 6, 19.) However, IPI admits that it has failed to pay the regulatory fee, along with other fees "for a few years." (*Id.* at 7.) This indicates that the CCC is not funded solely on IPI's payment of the regulatory fee each year as the CCC has continued to exist without IPI's payments.

IPI then contends that "[b]ased upon information and belief, CCC is operating on funds borrowed from CNMI treasury." (*Id*. at 21.) IPI does not provide any support for this assertion.

Additionally, this assertion contradicts IPI's first argument for bias by the Commissioners because if true, then the CCC may be funded through other means.

Finally, when IPI discusses that public interest is supported by the Court issuing a TRO, IPI argues that the resumption of its business operations will increase CNMI's tax revenues and allow IPI to pay fees due to the CNMI. (*Id.* at 27.) This indicates that IPI is not presently capable of paying fees due to the CNMI unless it were able to resume operation. The Court finds that this contradicts IPI's assertion that the Commissioner's would be incentivized to revoke IPI's casino license as there would not be means for IPI to pay outstanding fees and penalties without resumption of its operation.

Additionally, IPI is not clear of the roles the Commissioners play in the upcoming deliberation and voting on the revocation hearing. For example, although IPI seeks the Court to restrain Commissioner Mendiola from deliberating and voting on IPI's revocation hearing in its second motion for a TRO (*id.* at 5), later in the same motion, IPI does not include Commissioner Mendiola in its assertion that the four hearing commissioners have direct, substantial, arguably personal pecuniary interest in the outcome of the revocation hearing (*id.* at 18). Instead, IPI includes Commissioner Diego M. Songao who is not a named defendant, nor is IPI asking to enjoin Commissioner Songao. (*Id.*)

Despite IPI's apparent issues in properly identifying the parties' roles in the deliberation and voting on its revocation hearing, the Court hereafter addresses the likely success on the merits of IPI's due process claim.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

A court determines whether the doctrine of res judicata bars a suit by looking to the res judicata rules of the state from which the original judgment arises. *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Under CNMI law, the Supreme Court of the CNMI set forth the general rule of res judicata:

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." *Cromwell v. County of Sac*, 94 U.S. 351, 352 [24 L.Ed 195]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

*Santos v. Santos*, No. 90-041, 1992 WL 135876, at *48-49 (N. Mar. I. Mar. 25, 1992) (citing *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948)).

Further, "[t]he res judicata effect of a prior judgment depends on the scope of the cause of action in that suit." *Id.* at 49 (citing Wright, Miller & Cooper, § 4406). Therefore, in defining the claim or cause of action in the prior suit, the court focuses on what both might and should have been advanced in the first litigation. *Id.* "Under res judicata, a final judgment on the merits of an action precludes the parties *or their privities* from relitigating issues that were or could have been raised in that action." *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

Here, IPI has previously appealed the CCC's decision in Order No. 2021-002 in which the CCC suspended IPI's gaming license, ordered IPI to pay $18.65 million due under IPI's annual

license and regulatory fee, and imposed an additional $6.6 million in penalties. (Pl.'s Points & Authorities 8.) The CNMI Supreme Court ruled that the sanctions the CCC imposed against IPI for Complaints 2020-003, 2020-004, and 2020-005 were proper. *Commonwealth Casino Comm'n v. Imperial Pac. Int'l (CNMI), LLC*, No. 2022-SCC-0006-CIV, 2023 WL 5526679, at *13 (N. Mar. I. Aug. 25, 2023). Of particular importance is Complaint 2020-003: "failure to maintain the required cash or cash equivalents in a CNMI or United States bank" and Complaint 2020-005: "failure to pay the Casino Regulatory Fee." *Id.* at *1. In this prior CNMI case, IPI did not raise a due process claim on the grounds stated in its Complaint in the present case nor in its second motion for a TRO. Instead, IPI claimed the CCC violated its due process rights "by considering evidence outside the record." *Id.* at *12.

The CNMI Supreme Court decision constitutes a final judgment on the merits of an action. Further, IPI is the same party that brought the case in the CNMI Supreme Court. Last, IPI could have raised its due process claim it now contends in its Complaint and second motion for a TRO in its earlier action in the CNMI Supreme Court—and IPI did in fact raise a due process claim on other grounds. *See id.* For these reasons, the Court does not find IPI has met its burden that it will likely be successful on the merits of its due process cause of action because of the res judicata effect under CNMI law.

The Court does not address the likelihood of success on the merits for IPI's contract impairment cause of action because IPI alleges a new basis for its contract impairment cause of

action then that alleged in its Complaint, and the Court concludes that it is not properly before the Court.

Finally, IPI now argues that public interest will be served through the issuance of a TRO because of judicial economy and job creation. The Court previously addressed IPI's argument regarding job creation and IPI has not provided any new support beyond IPI's speculation and those who work for IPI. As to IPI's new argument that issuance of a TRO will support public interest through judicial economy, the Court finds this argument lacks support due to the likelihood of success on the merits of its due process cause of action for which IPI seeks its second TRO.

In the Court's memorandum decision, the Court found that IPI did not meet its burden to demonstrate a likelihood of success on its due process cause of action, IPI would likely suffer irreparable harm, the balancing of equities did not support issuance of a TRO, and the public interest would not be served through the issuance of a TRO. (Mem. Decision 3-19.)

Because the Court previously found that IPI would suffer irreparable harm and no new facts have arisen pertaining to this factor, the Court need not analyze that factor again herein. (*Id.* at 16.) As explained above, the Court finds that IPI has again failed to meet its burden of likelihood of success on the merits for its due process cause of action, nor has IPI established that the issuance of this second TRO is in the public's best interest. Therefore, the Court finds that the balancing of equities again does not support the issuance of a TRO.

/ / /

/ /

IV.    CONCLUSION

        Based on the foregoing, the Court finds that IPI has not met its burden such that the Court

denies its second emergency motion for a TRO.


     IT IS SO ORDERED this 5th day of April 2024.


                                        _____/s/_____
                                        David O. Carter
                                        Designated Judge