Stephen J. Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950
Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
(*Pro Hac Vice*)

*Attorneys for Plaintiff IPI (CNMI) LLC*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| Imperial Pacific International (CNMI) LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Commonwealth of the Northern Mariana Islands, et. al.<br><br>Defendants. | **CASE NO. 1:24-cv-00001**<br><br>**OPPOSITION TO DEFENDANTS CNMI, DEMAPAN, AND TAITANO'S MOTION TO DISMISS**<br><br>**CONCURRENTLY FILED WITH FIRST AMENDED COMPLAINT**<br><br><br>**Hearing Date:**<br>**Time:**<br>**Judge: Hon. David O. Carter** |

//
//
//
//
//
//
//
//

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 1

II.  FACTUAL BACKGROUND .......................................................................................... 2

III. MOTION TO DISMISS LEGAL STANDARD ............................................................. 5

   A.   Rule 12(b)(6) Standard ............................................................................................. 5

IV.  LEGAL ARGUMENTS ................................................................................................... 6

   A.   IPI's current claims are not barred by res judicata effect of decision made by CCC. ................................................................................................................................. 6

      i.    Legal standard ................................................................................................. 6

      ii.   There is no final judgment on the merits ....................................................... 6

      iii.  The claims are not identical. .......................................................................... 7

      iv.   Affording the Commission's decision res judicata effect to bar IPI's constitutional claims in this action would result in a manifest injustice and contravene an overriding public policy of judicial impartiality ............................................................................................ 8

   B.   IPI's claims are not barred by res judicata effect of decision made by CNMI Judiciaries. ............................................................................................................................ 11

   C.   CNMI waived its 11th Amendment Sovereign Immunity for claims under 42 USC §1983 .................................................................................................................................... 14

V.   CONCLUSION .............................................................................................................. 15

# TABLE OF AUTHORITIES

**CASES**

*Alabama v. Pugh*, 438 U.S. 781, 782, 57 L. Ed. 2d 1114, 98 S. Ct. 3057 (1978) (per curiam) ... 17

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) ...................................................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 6

*Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000) .................. 6

*Caperton v. A. T. Massey Coal Co.,* 556 U.S. 868, 129 S. Ct. 2252, 173 L. Ed. 2d 1208, (2009), ................................................................................................................................................ 12

*Chao v. A–One Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir.2003) ............................................ 13

*City of Martinez v. Texaco Trading & Transp.*, 353 F.3d 758, 762 (9th Cir. 2003) ...................... 7

*Congregation Etz Chaim v. City of Los Angeles*, 2011 WL 12462883, at *7 (C.D.Cal.,2011) .... 11

*Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. at 99, (1957) ............................................................ 6

*Contasti v. City of Solana Beach,* 2012 WL 4109207 (S. D. Cal., Sept.18, 2012) ......................... 9

*Fleming v. Department of Public Safety*, 837 F.2d 401 (9th Cir. 1988) ...................................... 17

*French v. Jones*, 876 F.3d 1228, 1237 (C.A.9 (Mont.), 2017) .................................................... 12

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). ......................................... 6

*Guru Nanak Sikh Society of Yuba City v. Cnty. of Sutter*, 326 F.Supp.2d 1128, 1133 (E.D.Cal.2003) ......................................................................................................................... 12

*In re Estate of Dela Cruz,* 2 N.M.I. at 11 .................................................................................. 10

*In re Estate of Ogumoro*, 1994 WL 725951, at *3 (N. Mariana Islands,1994) ............................. 9

*Jensen v. City of Sonoma,* 2008 WL 5048203 (N.D.Cal.2008) ..................................................... 9

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595, 206 L. Ed. 2d 893 (2020) ............................................................................................................................. 13

*Madrid v. Concho Elementary School Dist. No. 6 of Apache Cnty.*, 2008 WL 45410, at *2 (D.Ariz.,2008) ........................................................................................................................... 11

*Marshall v. Jerrico*, 446 U.S. 238, 242 (1980) ........................................................................... 11

*Misischia v. Pirie,* 60 F.3d 626, 629 (9th Cir.1995) .......................................................................... 10

*Moloaa Farms LLC v. Kauai Planning Commission*, 2020 WL 7389741, at *12 (D. Hawaii, 2020) ............................................................................................................................................ 8

*Mpoyo v. Litton Electro-Optical Sys*., 430 F.3d 985, 987 (9th Cir. 2005) .................................... 13

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-99, 79 L. Ed. 2d 67, 104 S. Ct. 900 (1984) .............................................................................................................................. 17

*PennyMac Corp v. Godinez*, 474 P.3d 264, 269-70 (Haw. 2020) ..................................................... 8

*Royal Crown Ins. Corp. v. Northern Mariana Islands*, 447 Fed. Appx. 760, 763 (C.A.9 (N. Mariana Islands), 2011) ............................................................................................................... 10

*Spirit of Aloha Temple v. Cnty. of Maui*, 409 F.Supp.3d 889, 903–04 (D. Hawaii, 2019) ............. 8

*Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) ......................... 11

*U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) .............................................................. 7

*United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). ................................................................................................................................... 10

*Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) ..................................................... 14

## STATUTES

1 CMC § 9109 (e) (2) .................................................................................................................... 14

4 C.M.C. Section 2309 (a) ............................................................................................................... 2

4 CMC§ 2313 (c). ............................................................................................................................ 3

## PUBLIC LAW

Public Law 19-24 ............................................................................................................................. 2

## RULES

8(e). ................................................................................................................................................... 5

Fed. R. Civ. P. 12(b)(6), ................................................................................................................... 5

Fed. R. Civ. P. 8(a). ......................................................................................................................... 5

Rule 201 of the Federal Rules of Evidence ............................................................................... 3, 4, 5

Rule 201 of the Federal Rules of Evidence. ................................................................................ 3, 4

**REGULATIONS**

NMIAC § 175-10.1-1410.................................................................................................................. 14

**MICHAEL CHEN LAW OFFICE**
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

# MEMORANDUM OF POINTS AND AUTHORITIES

COMES NOW Plaintiff Imperial Pacific International (CNMI) LLC, ("IPI") by and through its counsels, which hereby opposes the Motion to Dismiss (ECF No. 19) filed by Defendant Commonwealth of the Northern Mariana Islands, Defendant Rafael S. Demapan, ("Demapan") in his personal and official capacities as commissioner of Commonwealth Casino Commission ("CCC"), and Defendant Mariano Taitano, ("Taitano") in his personal and official capacities as commissioner of CCC.

## I. INTRODUCTION

In its complaint, (ECF No. 1) Plaintiff alleged four causes of actions: 1. Violation of the contracts clauses of the U.S. and CNMI constitutions, 2. Violation of the Due Process clauses of the U.S. and CNMI Constitutions, 3. Violation of Article IV of CNMI Constitution, and 4. Breach of the Casino License Agreement. Plaintiff sought declaratory, injunctive and equitable relieves.

Defendants (CNMI, Demapan, and Taitano) moved to dismiss the Complaint pursuant to Rules 12 (b) (6) of the Federal Rules of Civil Procedure. Defendants argue that the Complaint should be dismissed under Rule 12(b) (6) due to the doctrine of *res judicata*. Defendant CNMI further argues that the Complaint brought under 42 USC §1983 should be dismissed against CNMI because CNMI enjoys sovereign immunity with respect to claims brought under 42 USC §1983 in federal court.

Defendants' argument as to *res judicata* must fail because there has been no final order or judgment, the constitutional claims brought in this action are distinct from the claims litigated before the Commission (and indeed arise from the Commission's hearing and decision-making process in year 2024), and affording the Commission order *res judicata* effect would be a manifest injustice and offend the important public interest of judicial impartiality. Simply put, the Commission cannot be expected to impartially rule on constitutional challenges against the very statutory scheme that funds the Commission and renders its existence possible.

Although Defendants do not allege that IPI's causes of actions in this Action are precluded by the decision made by CNMI Supreme Court under the doctrine of *res judicata*, IPI is prepared to argue that the decision made by CNMI Supreme Court does not preclude the claims made by IPI in this Action because the doctrine of *res judicata* simply has no applicability here.

Defendant CNMI's argument as to its sovereign immunity contradicts with the settled legal precedents.

## II.   FACTUAL BACKGROUND

On or about August 12, 2014, IPI entered into a Casino License Agreement (CLA) with the Governor and the Commonwealth Lottery Commission. Under CLA, among other obligations, IPI would pay a fifteen million dollar annual Casino License Fee. IPI paid the annual license fee each year between 2014 and 2019.

On December 4, 2015, CNMI promulgated Public Law 19-24, which imposes a new obligation on IPI to pay CCC an annual "Casino Regulatory Fee" of three million dollars on or before October 1 of each year beginning October 1, 2015 ("Regulatory Fee Statute").

The Regulatory Fee is due to CCC "regardless of the actual costs incurred by the [CCC]." 4 C.M.C. Section 2309 (a). IPI paid the Casino Regulator Fee each year from 2015 through 2019.

Before Public Law 19-24 was signed by then Acting Governor, Ralph DLG. Torres, the CNMI legislature's statutory language provided for a "Nonrefundable Credit" to the Regulatory Fee such that IPI could apply the $3 million Regulatory Fee to CCC as a credit against taxes on general revenue as imposed by 4 C.MC. Section 1301. However, the Acting Governor vetoed the provision of "Nonrefundable Credit" with the stated reason that, "the cost of regulating casino gaming activities on Saipan are to be paid in full by the licensee."

Due to the onset of the Covid-19 pandemic and the government mandated shutting of the casino and all travel to Saipan, IPI was unable to make its October 1, 2020, Regulatory Fee payment. The Commission commenced several enforcement actions, including Complaint No. 20-005 with regard to IPI's failure to pay the Regulatory Fee on October 6, 2020. See **Exhibit A.**

(Plaintiff requests the court to take judicial notice of Exhibit A under Rule 201 of the Federal Rules of Evidence.)

In response to Complaint No. 20-005, IPI asserted in its affirmative defenses that the Regulatory Fee is unconstitutional, including for the reasons that it is an unlawful taxation disguised as a fee, it deprives IPI of property without due process and is arbitrary and excessive, it violates IPI's right to equal protection, and it is an unconstitutional executive impoundment of funds. See **Exhibit B ¶¶ H, I, J, and K. (**Plaintiff requests the court to take judicial notice of Exhibit B under Rule 201 of the Federal Rules of Evidence.)

Following what are claimed to have been "evidentiary hearings,"[1] on March 2, 2021, the Commission issued Order 2021-002 on April 22, 2021. With respect to Complaint No. 20-005, the Order contains one, short, conclusory paragraph simply finding that IPI "offered no defense" to the claims and thus violated the Regulatory Fee requirements. See **Exhibit C ¶17. (**Plaintiff requests the court to take judicial notice of Exhibit C under Rule 201 of the Federal Rules of Evidence.) The Order overlooks IPI's affirmative defenses related to its constitutional challenge to the Regulatory Fee, and offers no analysis or finding on these constitutional claims. There are two signatories to the Order: CCC Chairman Edward C. Deleon Guerrero and Defendant Demapan. ECF No. 1-3 at 6. The Chairman is a signatory as to Enforcement Action 2020-003 (consolidated). ECF No. 1-3 at 6. Defendant Demapan is a signatory as to Enforcement Action 2020-001 (consolidated). Defendant Taitano voted for Commission Order.

Notably, the Commissioners are not lawyers, and instead the qualifications of a commissioner include the following: "A Commission member must be an adult, and possess a good moral character, a bachelor's degree in any field of study from a postsecondary educational institution accredited in the United States or must have at least five years of work experience in the following areas: business management, government management, or financial management." 4 CMC§ 2313 (c).

---

[1] The rules for evidence at the hearing are that "Any relevant evidence, not subject to a claim of privilege, may be admitted regardless of any rule of evidence which would bar such evidence in judicial matters." NMIAC § 175-10.1-1415 (d) (2).

More importantly, and by admission of attorney for the CCC in a related case, case No. 23-cv-00014, "although the Commission has an account separate from the central government pursuant to P.L. 19-24, the funds [for the Commission] were dependent *solely on Plaintiff's payment of the Casino Regulatory Fee*." (emphasis added) (ECF No. 4 of 23-cv-00014 at 24).

In fact, IPI acknowledges that the $3M is not the only source of income for the Commission, but it is clearly the lion's share of the revenue of CCC. Here is a table of the revenue of the Commission since year 2018 to 2022:

|  | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|
| Casino Regulatory Fees | $3,000,000 | $3,000,000 | $3,000,000 | $0 | $0 |
| Other Regulatory Fees | $151,242 | $100,328 | $106,500 | $20,214 | $15,000 |
| General Fund | $0 | $1 | $1 | $1 | $1 |

ECF No. 24-10 Exhibit J. Commission Annual Reports.

It would be fair to say CCC may not survive much longer or function properly without the payment of the annual regulatory fee.

On March 15, 2022, the Superior Court for the Commonwealth of the Northern Mariana Islands issued its order affirming the Commission Order. See **Exhibit D.** (Plaintiff requests the court to take judicial notice of Exhibit D under Rule 201 of the Federal Rules of Evidence.) As the constitutional issues were clearly not within the scope of the underlying Commission Order, the court ruling similarly does not address any of the constitutional concerns raised in IPI's initial affirmative defense before the Commission.

Likewise, the Commonwealth Supreme Court's Order issued on August 25, 2023, primarily addresses the *force majeure* issue, and does not address any such constitutional arguments. See **Exhibit E.** (Plaintiff requests the court to take judicial notice of Exhibit E under Rule 201 of the Federal Rules of Evidence.)

Notably, however, the CNMI Supreme Court affirms in part, reverses in part, and remands the matter back to the Commission for further proceedings consistent with the opinion.

On October 16, 2023, CNMI Superior Court thus issued its order "return[ing] this matter to CCC for proceedings consistent with the NMI Supreme Court's" order. See **Exhibit F.** (Plaintiff requests the court to take judicial notice of Exhibit F under Rule 201 of the Federal Rules of Evidence.)

On November 30, 2023, without any hearing or notice to IPI, the Commission issued a "Notice of Payment Deadline" letter in which it reasoned that "Many contracts provide a thirty-day cure period for monetary default to provide sufficient time for the party to perform its obligations of making payments" and, therefore, "Thirty days is sufficient time" for IPI to pay $62,010,280, which includes the accrued Regulatory Fees. The Commission has not issued any other order on this matter and it thus remains open before the Commission.

Between February 28, 2024, and March 1, 2024, CCC conducted an evidentiary hearing for the purpose of revoking the casino license of IPI. Defendants Demapan and Taitano served as the hearing commissioners at the revocation hearing, after counsel for IPI made four oral motions at the hearing to ask the commissioners to disqualify themselves. It is anticipated that Defendants Demapan and Taitano would serve as the voting commissioner scheduled to take place on April 9, 2024.

### III.  MOTION TO DISMISS LEGAL STANDARD

**A. Rule 12(b) (6) Standard**

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *See, e.g., Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248-49 (9th Cir. 1997). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to merely "'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.'"

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. at 99, (1957)).

The Supreme Court in *Twombly* has adopted a "plausibility standard," in which the complaint must simply "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." *Twombly, supra*, 550 U.S. at 556. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 570). "[A]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

Rule 12(b)(6) motions are disfavored, and should rarely be granted if there is a possibility of amendment. *U.S. v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981) (Rule 12(b)(6) relief is only appropriate in extraordinary circumstances).

## IV. LEGAL ARGUMENTS

**A. IPI's current claims are not barred by res judicata effect of decision made by CCC.**

### i. Legal standard

"*Res judicata* applies where there is (1) a final judgment on the merits, (2) an identity of claims, and (3) identity or privity between parties. *Id*. If any of these three factors are not met, *res judicata* is inapplicable. *City of Martinez v. Texaco Trading & Transp.*, 353 F.3d 758, 762 (9th Cir. 2003)."

### ii. There is no final judgment on the merits

The record is clear that there is no final judgment on the merits with respect to Commission Order 2021-002. Although Defendants rest its argument on the finality of the CCC's own decision (Order 2021-002 concerning Complaint No. 20-005 regarding the Regulatory Fee), as Defendants acknowledge, that decision was appealed to the Superior Court and then to the Commonwealth Supreme Court, and those courts have only recently remanded the matter back to the Commission for further proceedings. Since this remand, the Commission has not held any further proceedings other than issuing its unilateral "Notice of Payment

Deadline," and no final order or judgment has been issued, with the matter remaining open before the Commission.

Indeed, as detailed above, IPI *has* asserted and thereby preserved its constitutional arguments in its initial answer before the Commission, however those issues have never been given their day in court or litigated.

Furthermore, for the reasons set forth further below, it would not be appropriate to litigate those issues before the Commission itself, and instead they should be litigated in court.

For this reason alone, Defendants' *res judicata* argument should be rejected. *See Moloaa Farms LLC v. Kauai Planning Commission*, 2020 WL 7389741, at *12 (D. Hawaii, 2020) ("*res judicata* does not apply unless the administrative proceedings were completed before the federal suit was filed"); *PennyMac Corp v. Godinez*, 474 P.3d 264, 269-70 (Haw. 2020) (explaining that ongoing or continuing proceedings are not final for purposes of *res judicata*).

### iii. The claims are not identical.

Setting aside the lack of finality, the Commission decision upon which Defendants rely upon should not be given *res judicata* effect for the additional reason that IPI's constitutional due process claim asserted in this action did not arise until the revocation hearing took place in February 2024.

Contrary to Defendants' suggestion in its motion, either at the Commission or in the subsequent appeals at CNMI's judiciary, the issue whether IPI's due process right was violated by Defendants Demapan and Taitano at the February 2024 revocation hearing did not even arise until the hearing concluded on March 1st 2024, therefore it was never litigated before; nor it could have been raised by IPI before. Therefore, there is no identity of claims between the instant Action and any prior actions.

Constitutional claims which arise, in part, on the administrative agency's own decision-making are necessarily distinct from claims asserted in the agency proceedings and thus such agency decision cannot have *res judicata* effect on those claims. *Spirit of Aloha Temple v. Cnty. of Maui*, 409 F.Supp.3d 889, 903–04 (D. Hawaii, 2019) (plaintiff's first amendment constitutional claim could not have been adjudicated by a planning commission because plaintiff

had no first amendment violation to allege until the planning commission had concluded its proceedings and denied their permit application); *Contasti v. City of Solana Beach,* 2012 WL 4109207 (S. D. Cal., Sept.18, 2012) ("The Court finds that the primary right presented by Plaintiffs in this action is outside the scope of the issue that was litigated during the City Council hearings. The Court concludes that the preclusive effect of the City Council's decision does not extend to the substantive due process claim presented in this federal action."); *Jensen v. City of Sonoma,* 2008 WL 5048203 (N.D.Cal.2008) (concluding that a state administrative decision did not preclude Plaintiff's alleged constitutional claims as those claims arose out of conduct at the administrative hearing).

IPI's current constitutional claims, therefore, are distinct from the claims actually litigated at the Commission and CNMI judiciaries, which primarily involved issues related application of the *force majeure* clause. IPI's current constitutional claims are also distinct from other constitutional claims that could have been raised by IPI based upon events occurred prior to year 2021. Here, in contrast, the claims and evidence would involve IPI's constitutional rights to due process at the revocation hearing took place between February 28, 2024, and March 1, 2024.

### iv. **Affording the Commission's decision res judicata effect to bar IPI's constitutional claims in this action would result in a manifest injustice and contravene an overriding public policy of judicial impartiality.**

With respect to an administrative agency's decision in particular, a further ground for not affording it *res judicata* effect is where "it was (1) void when issued, or (2) the record is patently inadequate to support the agency's decision, or if according the ruling *res judicata* effect would (3) ***contravene an overriding public policy*** or (4) ***result in a manifest injustice***." *In re Estate of Ogumoro*, 1994 WL 725951, at *3 (N. Mariana Islands,1994) (emphasis added, citing *In re Estate of Dela Cruz,* 2 N.M.I. at 11).   Thus, "the policy of according *res judicata* effect to administrative rulings which appear final, must be tempered with "fairness and equity." *Ogumoro*, 1994 WL 725951, at *4 (citing *Dela Cruz*, at 11 n.7). "Neither collateral estoppel nor *res judicata* is rigidly applied. Both rules are qualified or rejected when their application would

contravene an overriding public policy or result in a manifest injustice." *Id.*, (citing *Dela Cruz* at 12 n. 7) (holding that to afford administrative decision with *res judicata* would result in manifest injustice where the administrative record was patently inadequate to support the decision).

Therefore, for an agency administrative determination to have preclusive effect in federal court, the agency must have "complied with the fairness requirements of federal common law." *Royal Crown Ins. Corp. v. Northern Mariana Islands*, 447 Fed. Appx. 760, 763 (C.A.9 (N. Mariana Islands), 2011) (citing *Misischia v. Pirie,* 60 F.3d 626, 629 (9th Cir.1995)) (additional citations omitted).[2]   To have preclusive effect in federal court, the state administrative determination must satisfy the requirements of fairness set out in *United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). *Misischia*, 60 F.3d at 629. These requirements are: (1) that the administrative agency act in a judicial capacity, (2) that the agency resolve disputed issues of fact properly before it, and (3) that the parties have an adequate opportunity to litigate. *Id.*, citing *Utah Constr.,* 384 U.S. at 422, 86 S.Ct. at 1560.

Judicial impartiality and due process are essential in this analysis. See *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980) (the neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law and preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him). *Hardesty Id*. at 1052 ("Preclusion law 'is, of course, subject to due process limitations[,]" citing *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008).

---

[2] These cases and other cases where courts afford *res judicata* effect to an administrative decision involve the administrative body acting in a true judicial capacity where it is deciding a dispute between two other parties and hearing evidence on specific issues and applying law to the evidence.   Here, in contrast, the constitutional claims asserted in this action concern the Commissions' own decision-making and call into question the statute that underpins the Commissions' own funding, meaning the Commission cannot sit in a true judicial capacity on these issues, and posing significant due process concerns with giving *res judicata* effect to any Commission decision on these issues.

OPPOSITION TO MOTION TO DISMISS BY CNMI, DEMAPAN AND TAITANO

9

Accordingly, courts **do not** afford *res judicata* to administrative decisions lacking in due process on account of a ***conflict of interest or lack of impartiality***. *Madrid v. Concho Elementary School Dist. No. 6 of Apache Cnty.*, 2008 WL 45410, at *2 (D.Ariz.,2008) (denying motion to dismiss based on *res judicata* from administrative decision where plaintiff asserted "that conflicts of interest and bias precluded the Board from properly considering his termination and precluded him from having an adequate opportunity to litigate his concerns" and thus plaintiff raised factual issues with respect to the *Utah Construction* elements that made dismissal inappropriate); *Congregation Etz Chaim v. City of Los Angeles*, 2011 WL 12462883, at *7 (C.D.Cal.,2011) (improper to give preclusive effect to administrative decision because the constitutional claim raised by the lawsuit "could not have been before [administrative agency] because it was [their] ultimate decision . . . and the allegedly discriminatory nature of that decision, that gave rise to plaintiff's claims…it would be counterintuitive, to say the least, for a federal court to shield local government officials from scrutiny under the Constitution and federal civil rights laws by giving preclusive effect to their allegedly discriminatory decisions. Federal common law does not command such an abdication of judicial responsibility." (citing *Guru Nanak Sikh Society of Yuba City v. Cnty. of Sutter*, 326 F.Supp.2d 1128, 1133 (E.D.Cal.2003) ("the lawsuit before the court challenges the Board's own actions and therefore could not possibly have been decided by the Board in a manner warranting preclusion.")).

Here, the problem with Defendants' argument is that CCC Commissioners received and are expecting significant income from the annual three million dollar regulatory fee that IPI is challenging as unconstitutional. This is an inherent conflict of interest that raises a significant due process concern. When Defendants Demapan and Taitano were personally and directly involved in issuing the CCC's decision and to afford the same CCC's decision *res judicata* effect over IPI's constitutional challenge to the regulatory fee would, therefore, be manifestly unjust.

It would also contravene the overriding public policy in favor of an impartial judiciary. *Caperton v. A. T. Massey Coal Co.,* 556 U.S. 868, 129 S. Ct. 2252, 173 L. Ed. 2d 1208, (2009)*,* noting important policy of protecting "public confidence in the fairness and integrity of the nation's elected judges" and holding that a judge who had received a three million dollar

campaign contribution from a party should have recused himself from a case involving that party); See, also *French v. Jones*, 876 F.3d 1228, 1237 (C.A.9 (Mont.), 2017) (recognizing important public interest in preserving actual and perceived judicial impartiality).

### B. **IPI's claims are not barred by res judicata effect of decision made by CNMI Judiciaries.**

IPI previously appealed CCC's decision in which CCC suspended IPI's casino license to CNMI Superior Court and Supreme Court. The CNMI Supreme Court ruled that the license suspension sanctions were proper because previous counsels for IPI failed to raise the *force majeure* defenses at CCC proceedings and also failed to raise a due process claim[3] based upon lack of impartiality of the decision makers at the prior CNMI court's proceedings.

*Res judicata* applies when "there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties." See *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713–14 (9th Cir. 2001).

There is an identity of claims where the claims "arise from the same transaction" or where the claims "involve a common nucleus of operative facts." See *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595, 206 L. Ed. 2d 893 (2020); See also *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) ("Whether the two suits involve the same claim or cause of action requires us to look at four criteria, which we do not apply mechanistically: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.") (citing *Chao v. A–One Med. Servs., Inc.*, 346 F.3d 908, 921 (9th Cir.2003)

As to the first test: whether the two suits arise out of the same transactional nucleus of facts, IPI draws court's attention to the application of "transaction test" in the *Mpoyo* case:

---

[3] IPI is exploring the possibility of vacating the decision made by CNMI Supreme Court based upon alleged gross negligence for failure to raise similar due process claims made by its legal counsels in the CNMI proceedings.

"Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." *Western Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (citing Restatement (Second) Judgments § 24(2) (1982)).

By applying the "same transaction action" test, the due process claims made by IPI in suspension proceedings and revocation proceedings cannot "conveniently be tried together", because the two proceedings are different proceedings under CCC regulations and rules, they have different impact upon IPI's interests. IPI is entitled to seek judicial review separately against each CCC proceeding.

Arguably, IPI could have raised a due process claim based upon lack of impartial decision maker during the suspension proceeding and the subsequent judicial review; if IPI did raise the same claim during the suspension hearing, the factual basis for IPI's claim would be the personal interests of the commissioners in the outcome of the suspension hearing, which is relatively weak. Comparing with the suspension hearing, where the defense of unconstitutionality[4] of the $3M annual fee statute was on the record but ignored by CCC and was not presented before CNMI's judiciaries during its subsequent appeals; the constitutionality of the $3M annual fee statute is the front and center issue for the revocation hearing, it would be "professional suicide" for the commissioners to be persuaded by IPI's argument on this issue, the potential bias of the hearing and voting commissioners are much more acute and apparent.

As to the second test: whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action, IPI argues that in the instant action, as far as its due process cause of action is concerned, is only related to the revocation hearing, it would not be related back to the suspension hearing. Therefore, the prosecution of the instant action will not destroy or impair CCC rights or interests established by the prior judgment on suspension proceedings. [5]

---

[4] IPI disputes that it did not raise the constitutionality of the $3M regulatory fee statue at the CCC suspension hearing, since the records indicate that IPI's attorney, Michael Dotts did raise that issue in the Notice of Defenses, but this defense was completely ignored by CCC.

[5] IPI reserves the right to petition to vacate the license suspension order based upon alternative legal theories.

With respect to the third test: whether the two suits involve infringement of the same right, IPI argue that two suits do not involve infringement of the same right. License suspension and license revocation are two distinct penalties. License suspension hearing and license revocation hearing are two distinct proceedings. License revocation is not an unavoidable consequence of license suspension. See Transcript of Evidential Hearing Conducted on March 2, 2021 at 50. **Exhibit G.** The suspension proceedings involved IPI right as an exclusive licensee whose license has been infinitely suspended, but the revocation proceeding involved a loss of IPI status of exclusive licensee. The difference is obvious. In the first suit, IPI is still a license holder whose exclusive rights are still protected by the CLA. In the second suit, IPI has lost all its rights under the CLA.

On the issue of constitutional law, IPI claimed that CCC violated its due process rights "by considering evidence outside the record" in its first suit. In comparison, in the second suit, IPI claimed that CCC violated its due process right by having the revocation hearing heard and decided by biased commissioners who have direct, personal and pecuniary interests in the outcome of the hearing. Two suits do not involve infringement of the same right.

On the fourth test: whether substantially the same evidence is presented in the two actions. Evidence to be presented is substantially different in the two suits. In the first suit, on the issue of due process violation, evidence would involve how CCC considered evidence outside the record. For the second suit, as to the due process cause of action, evidence would be related to whether the commissioners have direct, personal and pecuniary interests in the outcome of the revocation hearing and what roles they played at the revocation hearing and voting process.

The constitutional due process claims in this Action are instigated from events took place long after the decision made by CNMI Supreme Court in year 2023, the doctrine of *res judicata* could not possibly bar IPI from raising its current due process claim since the events giving rise to its current claims did not materialize until March 1, 2024. It is unimaginable for IPI to raise its year 2024 due process claim when it litigated before CNMI Superior and Supreme Court in year 2021 and 2022.

As the Court recognized earlier, (ECF No. 9 at 11), CNMI regulation permits the commissioners of CCC to designate a third party, supposedly an impartial party, to be the hearing officer at the revocation hearing, see NMIAC § 175-10.1-1410. and the hearing officer can disqualify himself/herself at any time during the hearing. See 1 CMC § 9109 (e) (2).

Prior to conclusion of the revocation hearing, even if the commissioners themselves sat through the entire hearing as the hearing officers, it would be a mere speculation that the commissioners violated IPI's due process right by assuming the roles as the hearing officers because they could disqualify themselves at the last minute of the revocation hearing under the applicable CNMI statue and regulation. IPI's due process claim only cemented when the revocation hearing was adjourned.

Defendants failed to cite any authority that would prevent IPI from raising the due process claim in this action merely because its failure to raise similar claim in an earlier action. The failure for IPI to raise the issue whether CCC commissioners are impartial decision makers in the license suspension hearing and the appeals thereafter cannot bar IPI to raise whether CCC commissioners are impartial decision makers in any future proceedings. An analogue can be made is that the failure for a litigant to seek disqualification of a judge in an earlier case does not foreclose the same litigant from seeking disqualification of the same judge in a later case.

There is no prior CNMI court's decision that ruled on the issue whether CCC commissioners are impartial decision makers in the license suspension hearing, leaving alone whether CCC commissioners are impartial decision makers in the license revocation hearing. The doctrine of *res judicata* simply has no room for application with respect to decisions made by CNMI judiciaries either.

C. **CNMI waived its 11th Amendment Sovereign Immunity for claims under 42 USC §1983.**

Under *Fleming v. Department of Public Safety*, 837 F.2d 401 (9th Cir. 1988), it is clear that "under section 1983, a citizen sues a state in its own name in federal court, the suit cannot proceed unless the state has waived its sovereign immunity and thereby consented to the suit. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 98-99, 79 L. Ed. 2d 67, 104 S.

Ct. 900 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782, 57 L. Ed. 2d 1114, 98 S. Ct. 3057 (1978) (per curiam)." However, it is a settled law that "[a] close examination of the Covenant convinces us that its drafters intended that the Commonwealth not enjoy such immunity." See *Fleming* at 404.

Therefore, Defendant CNMI is a proper party to the instant action.

## V. CONCLUSION

For all of the foregoing reasons, Plaintiff IPI respectfully requests that Defendants' Motion to Dismiss be DENIED in its entirety.

Dated: April 6th, 2024
Saipan, CNMI

Respectfully submitted,

By: /s/ Stephen Nutting
Stephen Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950

Michael Chen
By: /s/ Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
*Pro Hac Vice*

Attorneys for Plaintiff
IMPERIAL PACIFIC INTERNATIONAL (CNMI), LLC