# EXHIBIT

# G

Exhibit B



*Commonwealth Casino Com...*

**E-FILED**
**CNMI SUPERIOR COURT**
Date: Sep 14 2021 01:35PM
Clerk Review: Sep 27 2021 01:47PM
Filing ID: 66928158
Case Number: 21-0173-CV
Eva  Calvo



*Evidentiary Hearing, Complaint 2020-00...*

*(consolidated)*

*March 2, 2021*

1

1          MR. GUERRERO:  -- the Commonwealth Casino

2    Commission.  Are we ready for the -- before we, uh,

3    begin, I asked our Executive Assistant Soca Recorder

4    (phonetic) to, uh, make copies, uh, filed previously by

5    IPI legal c- -- uh, counsel, Complaint Number, uh,

6    20-003.  This is the, uh, petitioner's motion in limine

7    for an order excluding evidence related to any defense

8    predicated on the existence of video poker or

9    electronic gaming, uh, in Saipan.  Uh, we will be

10   discussing that, uh, today.

11          Ian, are we, uh -- are we online?

12          MR. MORRELL:  Yes, sir.

13          MR. GUERRERO:  Uh, before I -- I begin,

14   uh, I'd like to introduce myself.  I'm, uh, Edward

15   DeLeon Guerrero.  I will be the presiding officer for

16   this hearing.  To my immediate right, uh, is

17   Commissioner Mario Taitano.  To his right is

18   Commissioner Diego Songao.  To my immediate left is

19   Commissioner Raf Demapan and to his immediate left,

1    Commissioner Ray, uh, Dela Cruz.  This constitutes the

2    tribunal for -- for this morning.

3              Uh, we are here to basically hear the

4    Consolidated, uh, Complaint 20-003.  This, uh, is

5    basically -- what was consolidated was, uh, C- --

6    Complaint Number 20-003, failure to comply with

7    Commission Order Number 2020-003.  I think it might be

8    appropriate to, uh -- uh, Chix (phonetic), you want to

9    pass this to both legal counsels so they can kind of

10   like go through with me?

11             Uh, the other complaint is, uh, 20-004.

12   This is failure to comply with Commission Order 2020-

13   004 -- and Complaint Number 20-005, this is failure to

14   pay the annual Casino Commission Regulatory Fee.  All

15   of these three complaints have been consolidated, uh,

16   into Complaint Number 20-003.

17             Uh, I just -- the one I just passed out

18   are some of my, uh, procedural requests that we -- that

19   we follow.  And, uh, let me just see if we have enough

20   copies made.

1          MR. TAITANO:  (Inaudible 00:02:39).

2          MR. GUERRERO:  Huh?  Uh, I don't have

3   (inaudible 00:02:42).  I -- I'll share with you.

4          MR. TAITANO:  (Inaudible 00:02:42) share

5   with me -- and share it?

6          MR. GUERRERO:  -- I'll share with you --

7   yeah.  Uh, before we actually go through the hearing

8   procedure, this motion that I made reference to, uh, at

9   the beginning, uh, is hereby granted.

10          MR. ERNEST:  (Inaudible 00:02:56) Your

11   Honor --

12          MR. GUERRERO:  Yeah.

13          MR. ERNEST:  -- before I could, uh -- may

14   it please the Commonwealth Casino Commission (inaudible

15   00:03:02), good morning Chairman, Commissioners,

16   Assistant Attorney General Michael Ernest on behalf of

17   the Executive Director in his official capacity as

18   Executive Director.  Uh, Director Yeom is present in

19   court this morning.  Uh, Your Honor, at this time given

20   the subsequent, uh, events and developments in the

1  case, I believe the motion in limine is mooted by the

2  evidence that will be presented today and at this time

3  is, uh, withdrawn, uh, subject to a right to refile

4  should, uh, it become necessary predicated on any

5  defense to be offered by IPI.  But at this time, it's

6  no longer necessary and is withdrawn.

7        MR. GUERRERO:  Okay.  Granted.  Consider

8  that on the record there's a motion being withdrawn.

9        MR. ERNEST:  Thank you, Mr. Chairman.

10        MR. GUERRERO:  Okay.  So are we ready,

11  then, to proceed before I go to the -- we're ready?

12  Uh, I, uh, passed out this, uh -- both counsels so

13  that, uh -- just for procedurally, uh, I'd like to

14  start out by having both parties simply introduce your

15  -- yourself, uh, starting with, uh, CCC Legal Counsel

16  and then, uh -- hang on -- uh, after that, uh, we'll

17  have brief opening statements, uh, from -- from both

18  sides.

19        Uh, immediately after that, uh, we'll

20  allow the presentation of evidence, starting with the

1  petitioner.  Uh, at that point in time you are allowed

2  to present evidence, testimonies, or witnesses.  All

3  witnesses will be using that table.

4              Uh, if there are any witnesses presented,

5  the, uh, counsel for, uh, respondent IPI, uh, is

6  allowed to question, examine, or re-examine, or

7  rebuttal, who -- uh, whatever witnesses is, uh,

8  presented.  Uh, following, uh, CCC's presentation, we

9  will allow IPI, since IPI reasonably requested for the

10  hearing, to present their case, uh, in support or in

11  defense of -- of the, uh, complaints.  Similarly, if

12  you bring any uh, uh, testimony, evidence, or

13  witnesses, CCC, uh, Legal Counsel have the -- the right

14  to cross-examine or rebuttal.

15              Uh, immediately after that, uh, you have

16  closing statements by both parties starting with, uh,

17  CCC.  Uh, at the conclusion of that -- and this is

18  something that we had previously discussed among our

19  commissioners regarding -- uh, requiring submittal of

20  closing arguments -- written closing arguments.  It's

1   my understanding that this might be a little difficult.

2   Uh, if it is, uh, that's something that probably we

3   could discuss when we get to that point.

4              But we also ask that both parties submit,

5   uh, written proposed orders based on how you -- you see

6   what your recommendations are.  Uh, CCC will then

7   deliver it, and we'll come up with a decision in no

8   less than 90 days.  That -- that's -- that's clear for

9   procedure?

10             MR. MOCANU:  Yes.

11             MR. GUERRERO:  We ask you for your

12  cooperation and do not disrupt presentations when --

13  when they -- they're presented by -- by either party.

14  Okay.  Are the Commonwealth Commissioners -- are we

15  ready to proceed?  No?

16             MR. TAITANO:  We're ready.

17             MR. GUERRERO:  Uh --

18             UNIDENTIFIED MALE:  Yeah.

1          MR. GUERRERO:  So, uh, counsel for CCC,

2    you may proceed, sir, based on these, uh, hearing

3    procedures.

4          MR. ERNEST:  Thank you, Your Honor, uh.

5    Briefly, again, Assistant Attorney General Michael

6    Ernest on behalf of Andrew Yeom, Executive Director who

7    appears in his official capacity as Executive Director

8    of the Commonwealth Casino Commission.  Good morning,

9    Chairman.  Good morning, Commissioners.

10         MR. MOCANU:  Good morning, Chairman.

11   Good morning, Commissioners, Tiberius Mocanu on behalf

12   of IPI.

13         MR. GUERRERO:  Thank you, sir.

14         MR. ERNEST:  Uh, thank you.  A brief

15   opening statement -- uh, at the end of the Executive

16   Director's evidence we will prove beyond a

17   preponderance of the evidence and actually beyond a

18   reasonable doubt that IPI has committed, uh, all of the

19   violations charged in all of the claims in, uh,

20   Complaint Number 2020-003, 2020-004, 2020-005.  And we

1  will -- we will prove that, and then we will petition

2  the Commission for an appropriate remedy.  Thank you.

3            MR. GUERRERO:  Thank you, counsel.

4            MR. MOCANU:  Chairman, I'm not sure if

5  you were able to hear it on the last, uh, uh -- to

6  watch the video from the last hearing, but IPI, um, is

7  gonna do the exact same thing.  We don't dispute the

8  charges against IPI as outlined by Mr. Ernest.  Um,

9  what we do come here today, uh, to do is explain

10  ourselves after the fact and ask, uh, that the -- the

11  fines and the -- the path forward that the Casino

12  Commission, uh, creates is -- is one that allows IPI to

13  succeed.  That -- that will be our presentation today.

14  Thank you.

15            MR. GUERRERO:  Thank -- thank you,

16  counsel.  Uh, you may proceed with the presentation of

17  evidence.

18            MR. ERNEST:  Thank you, uh, Mr. Chairman.

19  At this time, I would ask the Commonwealth Casino

20  Commission to take judicial notice of the laws of the

TranscriptionEtc.
www.transcriptionetc.com

1    Commonwealth and the regulations of the Commission

2    generally and also as -- as, uh, without limitation,

3    uh, the -- the ones I'll be presenting to the

4    Commission.  May I approach?

5            MR. GUERRERO:  Yes, yes, please.

6            MR. ERNEST:  I'm giving the Commissioner

7    and his legal cou- -- Commission's counsel uh, a packet

8    of the relevant applicable controlling legal authority.

9    Let the record show that I've given that same packet to

10   opposing counsel.

11           Um, thank you, Mr. Chairman.  At this

12   time, I would offer a stipulation concerning the

13   evidence, which states that the exhibits listed in --

14   in the stipulation are to be admitted without

15   objection.  May I approach?

16           MR. GUERRERO:  Ye- -- yes, please.

17           MR. ERNEST:  I'm presenting the

18   Commission with the stipulation signed by both counsels

19   and a copy for their counsel.  Opposing counsel has

20   been provide a copy of that stipulation.

1          UNIDENTIFIED MALE:   (Inaudible 00:09:05).

2          MR. ERNEST:  Uh, given that stipulation,

3   Your Honor, the Executive Director moves that Exhibits

4   1 through 13 be exhibi- -- uh, be entered into evidence

5   -- accepted into evidence, and published to the trier

6   of fact without objection.  So moved?  Let the record

7   reflect that I've given the Chairman Exhibits 1 through

8   13 inclusive with copies to Commission's counsel.  And

9   opposing counsel has been provided a copy of each

10  exhibit.

11          Finally, Your Honor, there's one more

12  stipulation.  Um, it's concerning facts not in dispute.

13  May I approach?

14          MR. GUERRERO:  Yes, yes.

15          MR. ERNEST:  Let the record reflect I'm

16  giving the -- the Chairman the first stipulation as to

17  the evidence, and the first stipulation is the facts

18  not in dispute.  Opposing counsel has been given a

19  copy.  Now, uh, I've asked that the stipulations be

20  accepted into evidence as well.

1          MR. GUERRERO:  Yes, are you done with

2     those, uh, stipulation doc- -- documents -- stipulated

3     documents?  If they are, uh --

4          MR. ERNEST:  I -- I have extra copies if

5     the Commission would like it.  I will be referring to

6     it.

7          MR. GUERRERO:  No.

8          MR. ERNEST:  But I --

9          MR. GUERRERO:  But you can -- you can

10    hang on.  Uh, just about to say that all of the

11    stipulations are hereby approved -- accepted.

12         MR. ERNEST:  Thank you.  Would the

13    Commission like -- I have three extra copies of the --

14         MR. GUERRERO:  Uh, please.  Thank --

15    thank you.

16         MR. ERNEST:  Thank you.  Mr. Chairman, as

17    Exhibits 1 through 13 have been accepted into evidence

18    and published to the trier of fact as have the

19    stipulations of evidence and fact today, as the case

20    stands on each complaint, there are no triable issues

1   of material fact, and all that remains is to affix the

2   proper penalty, if any.  If you compare Exhibit 1 and

3   Exhibit 2 and Exhibit 3 and Exhibit 4 and Exhibit 5 and

4   Exhibit 6 along with today's stipulations, you'll see

5   that IPI is be- -- has admitted all the facts necessary

6   to find beyond a preponderance of the evidence and, in

7   fact, beyond a reasonable doubt that they should be

8   punished for each and every claim and each and every

9   complaint, number 2020-003, 2020-004, and 2020-005.

10          Uh, just briefly I'd like to highlight

11  today's stipulation -- only three paragraphs --

12  paragraphs C, G, and I.  Paragraph C, "Respondent IPI

13  (CNMI) LLC has violated Commission Order 2020-003 every

14  day since August 8th, 2020 up through and including

15  March 2nd, 2021."  Paragraph G, "Respondent Imperial

16  Pacific International (CNMI) LLC has violated

17  Commission Order 2020-004 every day since August 8th,

18  2020, up through and including March 2nd, 2021."  And

19  Paragraph I, "Respondent Imperial Pacific (CNMI) LLC

20  has violated Commission -- Commonwealth law, Commission

1    Order 2019-004, Commission Order 2020-004, and the

2    stipulated agreement Enforcement Action 2019-001 every

3    day since October 1st, 2020, up through and including

4    March 2nd, 2021."

5              Uh, with this stipulation and the -- the

6    facts and admissions in the complaints and answers,

7    there simply is no triable issue of material fact as

8    to, uh, the respondent's liability for the infractions

9    and the violations claimed in each complaint.  The only

10   thing left to decide is should they be -- be penalized,

11   and if so, what should the -- the penalty be?

12             So at this time, Mr. Chairman, given that

13   IPI has admitted that it has violated the orders and

14   statutes as charged and there being no triable issue of

15   material facts, the Executive Director rests his case

16   in chief on the exhibit -- exhibits and stipulations,

17   reserving the right to recall rebuttal witnesses should

18   IPI put on a defense.  If IPI will offer no defense,

19   the Director moves for judgement on each claim of each

1 complaint and is ready to argue for the appropriate

2 penalty.  Thank you very much.

3             MR. GUERRERO:  Thank you, uh, legal

4 counsel.

5             MR. MOCANU:  Uh, IPI will not be mounting

6 a defense.

7             MR. GUERRERO:  Thank -- thank you, sir.

8 Uh --

9             MR. ERNEST:  At this time, the Executive

10 Director would move for judgement on each co- -- claim

11 of each complaint  --

12             MR. GUERRERO:  Okay.

13             MR. ERNEST:  -- and move on to the

14 penalty phase.

15             MR. GUERRERO:  Okay.  You want to do

16 your, uh, closing statement or closing argument?

17             MR. ERNEST:  Well, we'd like to argue for

18 the appropriate penalty, Your Honor.

19             MR. GUERRERO:  Okay.  Okay.  Do you want

20 to --

Transcripti⊙nEtc.
**www.transcriptionetc.com**

1          MR. ERNEST:  So I'm assuming the

2     Commission is going to find --

3          MR. GUERRERO:  You want to set those, uh

4     -- the recommended remedies?

5          MR. ERNEST:  Yes, Your Honor.

6          MR. GUERRERO:  Okay.  You may proceed.

7          MR. ERNEST:  First, we'd like to move for

8     judgement on the complaints that finding IPI is guilty

9     as charged.

10          UNIDENTIFIED MALE:  If IPI is guilty,

11     there's no defense raised.

12          MR. GUERRERO:  Uh, at this point in time,

13     since IPI does not object to those charges that you

14     have presented, uh, seeing all these stipulations, uh,

15     we will go ahead and -- and grant a judgement, uh, in

16     favor of the plaintiffs.

17          MR. ERNEST:  Thank you, Your Honor.

18     Thank you, Mr. Chairman.

19          MR. GUERRERO:  Uh-huh.

1          MR. ERNEST:  Uh, un- -- under the penalty

2   phase, um, first, the Executive Director moves that the

3   Commission issue the declaratory orders sought by

4   Complaints -003, -004, and -005 as the factual and

5   lesel ba- -- legal basis for each has been proven

6   beyond a preponderance of the evidence and, uh, beyond

7   a reasonable doubt.  Next, the Executive Director seeks

8   the imposition of casino gaming license revocation, uh,

9   an order revoking the gaming license -- excuse me --

10  suspending the gaming license -- I apologize --

11  suspending the gaming license in each complaint -003,

12  -004, and -005 as the factual legal basis for each has

13  been proven beyond a preponderance of the evidence and

14  again, we would argue, beyond a reasonable doubt.

15          At this time, I would like to apologize

16  to the Commission.  Um, I am having a -- a slight

17  medical issue that I'm under treatment for, but my

18  medication is a little screwy.  So if I seem like I'm

19  sweaty or nervous, it has nothing to do with the

20  quality of the -- the complaints.  I'm just not at my

1  best 100 percent.  And I do apologize for my

2  misstatements today.

3            Um, so again, we're asking for a license

4  suspension of indeterminate amount, uh, until they

5  fully comply with the orders that they have violated.

6  And -- and finally, regarding monetary sanctions, uh,

7  if any, um, each violation of each complaint that deals

8  with the violation of an order of the Commission has

9  been a major violation per the CCC's regulations.

10            The Executive Director asserts that all

11  the remaining violations should also be found to be

12  major violations as well.  Given the harm to the

13  public, the licensee's failure to accept responsibility

14  until last week, and the willful nature of the actions

15  and the admissions charged and -- and for which they

16  were found guilty, uh, assuming the Commission agrees,

17  the Executive Director seeks a monetary penalty

18  somewhere between the minimum and maximum fine in the

19  sound judgement of -- of the Commission.

1            The minimum available fine is $0 for all.

2    Uh, any major violation can be punished with -- by no

3    penalty or no fine, uh, up to $50,000.  And all major

4    violations can also, uh, include license suspension.

5    And if they find numerous repeated major violations, it

6    could be license revocation.  The Executive Director

7    does not seek revocation at this time.  He seeks merely

8    the suspension of indef- -- indeterminate length.

9            Again, the minimum fine available is $0

10   for each violation and -- and in total.  The Executive

11   Director asserts this would be wildly inappropriate

12   given the posture of this case.  Uh, the maximum

13   possibilities are actually quite interesting.  Uh,

14   Complaint 2020-003 Claim 1, there's one initial

15   violation and then 52 violations since January 8th,

16   including 53 major violations.  At $50,000 a violation,

17   that'd be a -- a maximum fine of $2,650,000 -- uh, the

18   exact same numbers for Claim Number 2 of 2020-003.

19           So the range available in claim -- in

20   Complaint Number 2020-003 is a fine of $0 up to

1    $5,300,000 for 106 total violations.  Um, likewise,

2    2020-005 has similar math.  Claim 1 has one additional

3    violation and then 52 additional claims since January

4    8th, leading to 53 major violations.  Uh, it's the

5    exact same numbers except there's an additional claim.

6    So it would be 159 violations at $50,000.  That's a

7    maximum fine of $7,950,000.

8                    MR. GUERRERO:  For --

9                    MR. ERNEST:  For -005.

10                   MR. GUERRERO:  Uh, so let me -- let me go

11   back to -003.  What is your recommended maximum

12   monetary sanctions?

13                   MR. ERNEST:  We, uh -- we'll -- we'll be

14   coming to that in a second --

15                   MR. GUERRERO:  Okay.

16                   MR. ERNEST:  -- Your Honor.  Mr.

17   Chairman, I'd just like to explain to you the breadth

18   of the remedies available.  (Loud sound in background.)

19                   MR. GUERRERO:  Okay.

20                   MR. ERNEST:  That happened, right?

1          MR. GUERRERO:  Yes.

2          MR. ERNEST:  Okay.  (Inaudible 00:19:10).

3  I'm a little (inaudible 00:19:13).

4          MR. GUERRERO:  Yeah.

5          MR. ERNEST:  -- not at my best today.

6          MR. GUERRERO:  I just need to know the --

7  your recommended, uh, maximum monetary sanction for

8  each one.

9          MR. ERNEST:  Y- -- yes, Your Honor.

10          MR. GUERRERO:  Okay.

11          MR. ERNEST:  And I think, Mr. Chairman,

12  we'll be making that, I think, after we hear --

13          MR. GUERRERO:  Okay.

14          MR. ERNEST:  -- uh, IPI's presentation of

15  its argument.  Um, 2020-004 seems like the no- -- most

16  innocuous of complaints, but it really is the one with

17  the most astounding potential penalties.  Um, Claim 1

18  is the same as all the other complaints -- one initial

19  violation, 52 claims since January 8th so a possible at

20  50,000 of $2,650,000.  But instead of one instance, uh,

1    for a violation of Claim 1, there's actually 300

2    separate violations for each -- each, uh, vendor not

3    paid.

4              So the maximum for Claim 1, counting each

5    unsettled account, is actually multiplied by 300.  So

6    for Claim 1 of 2020-004, the initial violation plus 52

7    a- -- additional violations times 300 instances is

8    15,900 major violations.  At $50,000 a violation,

9    that's $795 million in potential violations.

10             MR. TAITANO:  795?

11             MR. ERNEST:  Yes, I have your attention

12   Commissioner -- which seems wildly inappropriate, but

13   we are talking about a $2 billion required investment.

14   Claim 2 is not as bad, uh, one initial violation, 52

15   claims since January 8th, 53 major violations, except

16   there are 5 certifications not made.  Each failed

17   certification being a separate violation, that's, uh,

18   the -- the -- the -- the base rate of times five, so

19   it's 265 major violations at $50,000 a violation.

20   That's $13,250,000.

TranscriptionEtc.
www.transcriptionetc.com

1          Uh, a grand total of all the complaints,

2    the -- the -- the maximum possible that we've

3    alleged -- there -- there actually are more violations

4    but f- -- for what we've alleged, the theoretical

5    maximum for all fines, assuming the Commission finds

6    that they are all major violations and they punish them

7    by the maximum fine, is 16,165 la- -- violations --

8    16,165 violations.  At $50,000 a violation, that's

9    $808,250,000.

10          The Executive Director does not request

11   that and frankly does not expect the CCC to impose

12   that.  Quite frankly, the Executive Director seeks the

13   imposition of a fine that in the Commission's judgement

14   will impress upon IPI that, for once, it has to take

15   the CNMI's laws and the CCC's regulations seriously.  I

16   don't know what that number is.  Maybe Mr. Mocanu can

17   shed some -- some light on that.  I'm hoping he will.

18          But it's time for me to express a

19   difficult truth, knowing that you're the boss of my

20   boss and knowing that you're not gonna want to hear

1  this and knowing that it's culturally insensitive for a

2  relatively younger guy like me to give harsh truths to

3  more experienced gentlemen like yourselves, but the

4  fact is the evidence shows that IPI has absolutely zero

5  respect for you.  I hate to say it.  It gives me no

6  pleasure to say it.  But I have to say it.

7          If IPI respected the Commission, it would

8  have done the bare minimum.  They're going to say "We

9  have no money."  I'm assuming they're going to say

10  force majeure.  They're going to say "We have a federal

11  receivership."

12          One of the claims is that they didn't

13  even take the time to make required certifications to

14  you.  Their CEO had to make certifications:  "We're a

15  going concern.  We're solvent.  We have enough money to

16  finish -- finish the IGF."

17          That's all they had to do.  Doesn't cost

18  any money, zero dollars, and they didn't even do that.

19  Clearly, they have better things to do than follow your

20  orders.  And again, that gives me no great pleasure to

1   say that -- maybe a little bit of pleasure to say it.

2   But it is uncomfortable for me to say it.

3                 So what is the proper punishment?  I

4   don't know.  If you want to be very punitive about it,

5   it -- the proper punishment is $808 million.  But

6   that's not what we're asking for.  We're asking for the

7   Commission to impose a penalty that impresses upon IPI

8   the need to start following Commonwealth law and to

9   start respecting the Commonwealth Casino Commission.

10  And perhaps Mr. Mocanu can shed some light as to what

11  that number is.

12                Uh, until we hear from Mr. Mocanu, the

13  Executive Director leaves the determination of the

14  final penalty, if any, to the sound judgement of the

15  Commonwealth Casino Commission.  If the Commission has

16  any questions, I'd be happy to address them.

17  Otherwise, I --

18                MR. GUERRERO:  You -- you recommended,

19  uh, that the casino license be suspended for an

20  indeterminate amount of time.

1          MR. ERNEST:  Until -- wise --

2          MR. GUERRERO:  What do you recommend, uh,

3  would be your maximum time?

4          MR. ERNEST:  I- -- i- -- indeterminate i-

5  -- is until they -- they comply.

6          MR. GUERRERO:  With conditions that --

7  set forth in the previous orders?

8          MR. ERNEST:  Yes.

9          MR. GUERRERO:  Okay.

10          MR. ERNEST:  They need to comply with

11  2019-004, 2020-003, 2020-004.  They have to comply with

12  Commonwealth law regarding the casino regulatory fee.

13  Uh, and until they're in full compliance with those,

14  they -- we -- we seek revocation -- su- -- suspension

15  of their casino gaming license.  Um, to be frank,

16  what's going to happen is there's going to be, I'm

17  assuming, some sort of a suspension and some sort of a

18  fine.

19          The question, as I see it, is what does

20  IPI do after today?  Does IPI just take the loss here,

1    rack up whatever order you say, and then do nothing

2    about it?  Do they not try and give $1 in regulatory

3    fee?  Do they just try to survive this, get your order,

4    and then deal with the chief judge, throw all the money

5    at the district court -- whatever Chief Judge Manglona

6    says?  If they do that, I would submit that the

7    Executive Director is probably going to follow up with

8    complaints in the future quite quick, next time seeking

9    revocation.

10            I think IPI has a great chance here to

11   argue for mercy or argue for whatever the -- the

12   appropriate penalty is.  And then once that is imposed

13   by the Commission, IPI has a chance to actually

14   demonstrate that it's acting i- -- in good faith.  It

15   has a chance to start making the payments that -- that

16   is required in this case and in, uh -- I'll refer to

17   the previous case.  I'm not arguing on that case.  But

18   they have an opportunity to make right before the

19   Commission.  And if they do that, I -- I think going

20   forward there is a going forward.

1          But I think if IPI just takes whatever

2    order the Commission gets and does nothing, I -- I

3    don't think -- I think the -- the suspension would be

4    of a rather short time because the Director would

5    probably be filing actions for revocation.  Today, it's

6    up to the Commission, but, ultimately, it's up to IPI.

7          MR. GUERRERO:  I don't foresee another

8    hearing for revocation.  I foresee that if the

9    Commission decides to proceed with the suspension and

10   we identify a period, that at the end of the period, if

11   IPI does not comply with those suspension, uh,

12   conditions, that revocation would be automatic.

13          MR. ERNEST:  Um --

14          MR. GUERRERO:  Is that -- is that --

15          MR. ERNEST:  -- I don't foresee that.  I

16   -- I think that the Commission would have to vote

17   unanimously for the revocation.  I -- I think that --

18   the -- the Executive Director would have a burden of

19   proving that whatever order was imposed was not

20   followed.

1              I think we would have another one of

2    these.  I imagine it would be quite quick.  I -- I

3    imagine it would be quite easy.  I don't imagine we

4    would file it in May and hear it in -- in February,

5    like we did with 2020-001.  I imagine it would be

6    almost routine but not knee-jerk.  And -- and I think

7    there would have to be -- uh, a- -- and respectfully

8    that's just how I see it.  Uh, I think there would have

9    to be another hearing.  I see counsel for IPI is

10   probably silently agreeing with me.  Uh --

11             MR. GUERRERO:  So are you -- are you

12   done, sir?

13             MR. ERNEST:  Unless there are any other

14   questions.

15             MR. GUERRERO:  Okay.  Any -- any

16   questions from -- (inaudible 00:28:05).

17             MR. ERNEST:  Thank you.

18             MR. GUERRERO:  Yeah, thank you.

19             MR. ERNEST:  Sorry.

1          MR. MOCANU:  Just to go along with that

2    last discussion about, um, the sentence issued by this

3    tribunal, uh, effecting revocation on its own terms, I

4    think the reason another -- it wouldn't work because it

5    wouldn't be an agreement between IPI and the

6    Commission.  It would a be sentence imposed.  So the

7    punishment of that sentence then, like Mr. Ernest said,

8    would have issues of fact that would need to be brought

9    before another hearing where IPI was given due process

10   and in order for Mr. Ernest and the Executive Director

11   to make its case.  So I -- I don't think it could be

12   effectuated on its own terms.

13          With that being said, that is logically

14   the -- the sentence that this Commission would do if

15   IPI does not s- -- stick to the terms of -- of whatever

16   fines and -- and benchmarks this Commission will set,

17   uh, in lieu of the five different complaints that were

18   filed against it.

19          UNIDENTIFIED MALE:  (Inaudible 00:29:02)

20          MR. MOCANU:  Um --

1          MR. GUERRERO:  Are you saying, sir, that

2     the Commission, as we stand today, does not have the

3     authority, right now as of today, issue a judgement of

4     revocation, even if the petitioner is seeking only

5     suspension?

6          MR. MOCANU:  I would argue it ought not.

7          MR. GUERRERO:  Ought not?

8          MR. MOCANU:  Ought not.

9          MR. GUERRERO:  But it doesn't say that

10    legally we do not have the authority.

11         MR. MOCANU:  I would -- I would, uh, rely

12    on your counsel for that ability or non-ability.  I

13    would argue that there's -- there's a different burden

14    and -- and a different, um, due process that needs to

15    be afforded if what was sought was revocation, wh- --

16    which is a finality.  I'm -- I'm not disputing that you

17    have the delegated power from the Legislature to come

18    to these sorts of decisions.  I would argue that

19    process requires that -- that IPI be confronted with,

TranscriptionEtc.
www.transcriptionetc.com

1  um, the decision by the Executive Director to seek

2  revocation and prepare for such a hearing.

3          If the prayer for relief would have

4  sought revocation, then I would assent it had been well

5  within the jurisdiction and the power of this tribunal

6  to -- to seek revocation.  But since it did not and the

7  hearing was styled differently, I would say that that

8  does offend due process.

9          That being said, I understand where Mr.

10  Ernest was getting for with the idea of respect.  That

11  judgements in federal court get paid, judgements here,

12  uh, get delayed, uh, and that this tribunal is

13  frustrated with that idea.  I am new, um, and I'm here.

14  And I tried to show the utmost -- utmost respect for

15  this tribunal by not wasting any of your times by

16  stipulating to, uh, facts that were undisputed, by not

17  coming here and arguing, um, and wasting everybody's

18  time when it is clear that ro- -- regulatory fee wasn't

19  paid, that the amount in reserve that needed to be

20  there in order to pay vendors and payroll was not there

1    -- um, that, uh, we have accounts that have been over

2    90 days delinquent.

3              So we come here, as I stated earlier, of

4    the posture of this is where we are now and the reality

5    of this situation, and how do we move forward?  I think

6    it's indicative by Mr. Ernest only seeking suspension

7    and not revocation that there's a desire by the

8    Executive Director's Office and, I think, the Saipan

9    and CNMI community as a whole that IPI succeed, that

10   IPI come back from this situation and do well.

11             Now, that's not to say that -- that fines

12   or -- or, uh, an imposition of sentence by this

13   tribunal isn't necessary to assure that, to create a

14   structure for that success.  But it should not be one

15   that is punitive, as Mr. Ernest, uh, described.  It

16   should not be one that carries an $808 million burden.

17   It should be one that creates a system through which

18   IPI has the ability to regroup and begin to come on

19   board with, um, its payments and to be, uh, squarely

1    under the law and the regulations of -- of this

2    Commission as it tries to regain its gaming license.

3               Um, it was -- it was mentioned

4    dismissively about force majeure.  Um, and I didn't

5    raise it as an affirmative defense in the defense

6    section but wanted to just bring it up as a mitigating

7    circumstance that I think this Commission ought to take

8    into consideration when framing whatever plan that is

9    that's gonna be imposed on IPI.  Um, certainly as Mr.

10   Ernest demonstrated last week, IPI was in dire

11   financial, um -- in a dire financial place even coming

12   up to the beginning of the pandemic.  But the pandemic

13   desolated that -- decimated that.  So when it now tries

14   to regroup, it's a -- it's against that backdrop of no

15   tourists have been here for over a year.

16              Um, it has 30 different cases across, uh,

17   state and federal court.  It -- it is actively looking,

18   as Mr. Tao said last time, for investors and -- and,

19   uh, the ability to -- to bring in new money so that it

20   regroups from this situation.  But it cannot do so, um,

1  while it's staring down the barrel of a gun.  It has to

2  be given some breathing room, and it has to be able to,

3  uh, execute a plan that's reasonable and sets them up

4  for success.  I welcome any questions.

5           UNIDENTIFIED MALE:  52 times.

6           MR. GUERRERO:  Thank you, uh, Mr. Mocanu.

7  I understand that, uh, you're -- you're new with this

8  particular, um, uh, activity.  But I'm sure you have

9  reviewed or you had the, uh, opportunity to review

10  Public Law 18-56.  This is the original law that, uh,

11  authorized existence of, uh, the casino here in the

12  Third Senatorial District.  In that law, it requires

13  the licensee to be financially suitable.  CCC did not

14  enter that.  That's in the law that they must be

15  financially suitable.  The definition provided to us

16  through a legal opinion from the Office of Attorney

17  General have defined financial suitability to be in the

18  summary --

19           UNIDENTIFIED MALE:  (Inaudible 00:33:45)

20  to each claim.

1          MR. GUERRERO:  -- the ability of IPI to

2   pay --  its vendors when the bills become due -- when

3   the services become due.  You already expressed that

4   they were not able to pay that.

5          CCC doesn't only have -- being the

6   regulatory entity for that law -- doesn't only have the

7   authority but has the obligation to enforce.  So if the

8   law says you must be financially suitable and there are

9   evidence -- clear evidence -- that you are not paying

10  your debt as they become due, don't you think it's the

11  CCC's not only authority but obligation on behalf of

12  the Commonwealth people to enforce the requirement to

13  be financially suitable?  And the proposal that you're

14  suggesting is to be lenient --

15          UNIDENTIFIED MALE:  To Page 7 (inaudible

16  00:34:31).

17          MR. GUERRERO:  -- give consideration,

18  allow IPI to regroup.  Up until now I have not heard

19  any serious discussion on how that regrouping is going

20  to come about.  We see new faces every couple of weeks

1    talking about something completely that the previous

2    management were not even able to come close to

3    answering -- this issue of financial suitability.  This

4    is a requirement of the law.

5               MR. MOCANU:  I think -- I think your

6    recitation of the law and, uh, moving pieces that's

7    guiding your decision is exactly correct.  Um, I do

8    believe that the CCC has the obligation to enforce the

9    law.  And I think the law, as you've explained it, is

10   clear.

11              That being said, I think you have

12   discretion in how you go about enforcing that law.  As

13   -- as Mr. Ernest said, you have -- you have a ceiling

14   and a floor of punishments that's available to you.

15   And you have different reme- -- remedies at your

16   disposal.

17              Um, I like Mr. Er- -- Ernest's honesty,

18   so I'll be quite honest as well.  We're in the last

19   chapter of this story pretty clearly.  Um, the CCC's

20   gonna get to write the ending, and it's gonna write one

1   where IPI came back after regrouping and did very, very

2   well or IPI is no longer here.  I think that's clear.

3   I think that's evident.  I think to call it anything

4   else is disingenuous.  So we're there now.  So you get

5   to write it.

6              We're asking that you create, uh, systems

7   of checks and balances and hold IPI accountable but

8   with the understanding of the economic crisis that it's

9   being faced with and its ability to incrementally make

10  progress.  Taking that into account, I think there's a

11  framework that's feasible and that it ends better.  If

12  it doesn't and those benchmarks aren't -- aren't met,

13  nobody would call you unreasonable for dropping the

14  hammer down and writing it the other way.  There has

15  been plenty that has happened.  But here we are.

16             MR. GUERRERO:  Thank -- thank you, sir,

17  for your -- for your honesty too on this matter.  Any

18  questions from the Commission?  You got a question?

19             UNIDENTIFIED MALE:  Well, let's make the

20  decision, uh, the later date?

1              MR. GUERRERO:  Yeah, yeah.

2              UNIDENTIFIED MALE:  Uh, I -- I --

3              MR. DEMAPAN:  Did you place an offer -- a

4    -- a recommendation that takes (inaudible 00:36:45) --

5              MR. GUERRERO:  Yeah.

6              UNIDENTIFIED MALE:  -- and talks about

7    that (inaudible 00:36:47)?

8              MR. GUERRERO:  On these, uh, issues, uh,

9    o- -- obviously some of the maximum recommended, uh,

10   has been laid out, um, from zero to 800 million

11   monetary fines and indeterminate amount of time for

12   suspension.  But you made references to benchmarks.  Do

13   you have any recommendations on what those benchmarks

14   might be?

15             MR. MOCANU:  I do.  And I appreciate the

16   Commission's, um, allowing us to write proposed orders.

17             MR. GUERRERO:  Okay.

18             MR. MOCANU:  Uh, I'd actually like -- I

19   know I shouldn't be asking for anything -- but I'd like

1   more than three working days, um, just to be able to

2   work --

3                   MR. GUERRERO:  How much time would you

4   need for the, uh, proposed orders?

5                   MR. MOCANU:  If -- if I could -- if I

6   could have it back to you by, uh, a week from today --

7                   MR. GUERRERO:  Oh.

8                   MR. MOCANU:  -- following Tuesday?

9                   MR. ERNEST:  No objection.

10                  MR. GUERRERO:  Okay.  Okay.

11                  MR. MOCANU:  Uh, that would be better.

12  In fact, ideally, um, maybe I could even work with, uh,

13  Mr. Ernest in -- in at least agreeing to certain things

14  so -- if that would get us on the same page.  But,

15  um --

16                  MR. GUERRERO:  Hey, uh, Chix, can you

17  pull up the calendar?  I think you have a calendar.

18  Uh, we're gonna be having our Casino Commission meeting

19  on August 24.

20                  MR. TAITANO:  Mm-hmm.

1              MR. GUERRERO:  So can we move up --

2              MR. TAITANO:  August?

3              MR. GUERRERO:  -- uh, -- I mean --

4              MR. TAITANO:  August?

5              MR. GUERRERO:  -- uh --

6              MR. TAITANO:  March.  March.

7              MR. GUERRERO:  -- uh, March --

8              UNIDENTIFIED MALE:  March 24th.

9              MR. GUERRERO:  -- March -- March 24.

10             UNIDENTIFIED FEMALE:  March 24th.

11             MR. TAITANO:  Mr. Chairman, March 24 is a

12   holiday.

13             MR. ERNEST:  That's a holiday.

14             MR. GUERRERO:  It's a holiday?

15             MR. TAITANO:  Yeah, Commonwealth Day.

16             MR. ERNEST:  It's my birthday, Your

17   Honor.

18             MR. GUERRERO:  Oh, that's a good day to

19   meet then -- good day to meet.

20             MR. TAITANO:  Oh.  All right.

1          UNIDENTIFIED MALE:  (Inaudible 00:38:06).

2          MR. GUERRERO:  So what's the 25th?  25th

3    is Thursday?

4          UNIDENTIFIED FEMALE:  That's a Thursday.

5          UNIDENTIFIED MALE:  Thursday.

6          MR. GUERRERO:  Okay.  So what's 10 days

7    move -- moving up, uh, 10 days before that for the

8    deadline for submission of that?

9          UNIDENTIFIED MALE:  Ten days will be

10   11th.

11         MR. GUERRERO:  Okay.  11th.  What day is

12   that?

13         UNIDENTIFIED MALE:  Uh, that's a

14   Thursday.

15         UNIDENTIFIED FEMALE:  Ten days --

16         MR. GUERRERO:  So Thursday?

17         UNIDENTIFIED FEMALE:  -- before the

18   meeting, that would be the 15th.

19         MR. GUERRERO:  Uh, for -- yeah, yeah,

20   before the meeting?

1                    UNIDENTIFIED FEMALE:  Yeah.

2                    MR. GUERRERO:  What -- what --

3                    UNIDENTIFIED FEMALE:  The meeting on the

4    25th?

5                    MR. GUERRERO:  Yeah.

6                    UNIDENTIFIED FEMALE:  So 10 days before

7    that will --

8                    MR. GUERRERO:  15th.

9                    UNIDENTIFIED FEMALE:  -- be the 15th.

10                   MR. GUERRERO:  15th.

11                   UNIDENTIFIED FEMALE:  That's a Monday.

12                   MR. GUERRERO:  So would you be able to

13   submit the written order by no later than the 15th?

14                   MR. ERNEST:  Uh, I -- I'm happy to get

15   something, uh, i- -- if Mr. Mocanu is looking for a

16   collaborator or a collaborator.

17                   MR. MOCANU:  Not necessarily but maybe

18   there's some things --

19                   MR. GUERRERO:  Okay.

20                   MR. MOCANU:  -- we might -- we may be --

1           MR. ERNEST:  Uh, we get along fairly

2   well.  We work together fairly well.  It's just I am

3   having a medical issue, and I don't --

4           MR. GUERRERO:  Okay.

5           MR. ERNEST:  -- know what my availability

6   is going to be.

7           MR. GUERRERO:  Yeah.

8           MR. ERNEST:  So I -- I will promise to

9   get it to you whenever you want.

10          MR. GUERRERO:  You should --

11          MR. ERNEST:  But I might be asking for an

12  extension.

13          MR. GUERRERO:  You should turn it as soon

14  as possible but not to exceed 15 days from today.  Is

15  that reasonable?

16          MR. MOCANU:  Yes, sir.  (Inaudible

17  00:39:03).

18          MR. GUERRERO:  Uh, and can we make sure

19  that in the drafting of those benchmarks that it's time

20  that IPI take all of this very seriously?  There shall

1  be no benchmark agreed to by IPI that is not followed.

2  All of the agreements that's in question have been

3  agreed to by IPI -- openly agreed to but then ignored.

4  So in your proposed benchmark, please let them

5  understand that there will be no more additional

6  benchmark if they do not comply with the agreed upon --

7  or to be agreed upon benchmarks.

8           Uh, any other, uh -- so is that -- that's

9  okay, no?  15 days?  I'll put in a date of 15 days from

10 today.

11          MR. TAITANO:  Monday.

12          UNIDENTIFIED FEMALE:  15 days from today

13 is --

14          MR. GUERRERO:  Yeah.

15          UNIDENTIFIED MALE:  17th.

16          UNIDENTIFIED FEMALE:  -- the 17th?

17          UNIDENTIFIED MALE:  Seven --

18          MR. GUERRERO:  March 7 -- March 17th --

19          MR. TAITANO:  17.

1            MR. GUERRERO:  -- that's, uh, Saint

2  Patrick's?

3            UNIDENTIFIED FEMALE:  That's a Wednesday.

4            MR. MOCANU:  That's my wife's birthday.

5  Everyone's birthday (inaudible 00:39:53).

6            MR. TAITANO:  All right.

7            UNIDENTIFIED MALE:  So that's great.

8  We'll just -- (inaudible 00:39:55) the meeting now?  So

9  that's (inaudible 00:39:57).

10            MR. GUERRERO:  I wrote that should be 10

11  days in advance of your order and then -- the discuss

12  before that.

13            MR. ERNEST:  Okay.  How --

14            UNIDENTIFIED MALE:  So, Mr. Chairman?

15            MR. GUERRERO:  Sure.

16            UNIDENTIFIED MALE:  So are we meeting,

17  uh, on --

18            MR. GUERRERO:  On -- in, uh -- on --

19            UNIDENTIFIED MALE:  -- (inaudible

20  00:40:04) meet March (inaudible 00:40:05)?

1                    MR. GUERRERO:  -- March -- March 25th.

2                    UNIDENTIFIED MALE:  That's our meeting?

3                    MR. GUERRERO:  Yeah.

4                    MR. TAITANO:  That's a Monday.

5                    MR. GUERRERO:  It's just to submit -- for

6    them to submit that and then --

7                    UNIDENTIFIED MALE:  Uh --

8                    UNIDENTIFIED MALE:  Maybe we can get the

9    benchmark maybe before that.

10                   MR. GUERRERO:  Yeah.

11                   MR. TAITANO:  (Inaudible 00:40:14).

12                   MR. GUERRERO:  The benchmark before --

13                   UNIDENTIFIED MALE:  -- this Monday.

14                   MR. ERNEST:  And this -- this gives you

15   an opportunity --

16                   MR. GUERRERO:  (Inaudible 00:40:16) --

17                   MR. ERNEST:  -- to review the orders

18   before your (inaudible 00:40:17).

19                   MR. GUERRERO:  Just to review?

1                    UNIDENTIFIED MALE:  No.  But I mean, uh,

2    of when we're meeting?

3                    MR. GUERRERO:  We're gonna be meeting,

4    uh, uh -- not -- uh, as a separate tribunal --

5                    UNIDENTIFIED MALE:  Okay.

6                    MR. GUERRERO:  -- to -- to look at that.

7    Not as part of monthly meeting.

8                    MR. ERNEST:  He didn't get (inaudible

9    00:40:28).

10                   UNIDENTIFIED MALE:  Oh, so we will be

11   meeting, then?

12                   MR. GUERRERO:  Yeah.  Yeah, separate --

13                   MR. MOCANU:  So it doesn't matter at this

14   point.

15                   MR. GUERRERO:  -- separate.  Uh, sorry

16   for the interruptions.  Uh, Mocanu, you may proceed,

17   sir, on your --

18                   MR. MOCANU:  March 17th.

19                   MR. GUERRERO:  Yeah.

20                   MR. MOCANU:  Thank you.

1           MR. GUERRERO:  March 17, no later than.

2           MR. MOCANU:  Okay.  And it should be --

3    it -- it's -- it's gonna be styled not as, uh, arguing

4    for a position  but simply outlining this proposal,

5    correct?

6           MR. GUERRERO:  Okay.

7           MR. MOCANU:  Oh, thank you, Your Honor

8    and, uh, Commission.

9           MR. GUERRERO:  So you're -- you're done

10   for your (inaudible 00:40:53)?

11          MR. MOCANU:  Yes, yes.

12          UNIDENTIFIED MALE:  (Inaudible 00:40:54)

13   one down.

14          UNIDENTIFIED MALE:  (Inaudible 00:40:55).

15          MR. GUERRERO:  So we are not then

16   requesting for the closing orders because Mr. Ernest is

17   -- uh, not able to comply with that within a reasonable

18   time.  The closing statement written?

1          MR. ERNEST:  Right.  I was just -- I

2   promise the Commission that we would come up with the

3   Executive Director's recommendation after hearing --

4          MR. GUERRERO:  Yeah.

5          MR. ERNEST:  -- Mr. Mocanu speak.

6          MR. GUERRERO:  Yeah.

7          MR. ERNEST:  And after consi- -- hearing

8   him and considering what he said and -- and listening

9   to the Commission's questions, um, our position is that

10  the Commission probably could revoke right now if it

11  wanted to.  I -- I believe there's regulatory authority

12  for it.

13          Uh, but having said with that, I agree

14  with counsel for IPI that it would not be appropriate

15  at this time.  Uh, first, the Executive Director, in

16  all five complaints, made quite clear he -- in fact,

17  affirmatively stated he didn't believe that revocation

18  was proper at that time.  I don't believe his opinion

19  has changed.  I would point out that the notices of

20  complaint that accompanied the -- the complaints, I

1  don't believe mentioned revocation.  I believe they

2  mentioned suspension and -- and penalties.

3           And, again, the complaints don't mention

4  revocation directly.  They do say any other relief the

5  Commission deems just.  So, I guess, generally or

6  obliquely, they did allow for the possibility.  But,

7  um, that would be very backhanded.  That would be a

8  backhanded way to win, and -- and I think the

9  Commission is about integrity and -- and -- and playing

10 the game right.  I mean, our whole -- our whole purpose

11 is to make sure that people play the games right.

12 Right?  That's what we're supposed to do.  And so I

13 think it would be, uh, a sharp practice.

14           I -- I think we should give them ample

15 notice.  We should be screaming from the treetops:

16 "We're gonna revoke your license.  We're gonna revoke

17 your license."  Uh, the good news is I think they are

18 hearing that message right now:  "We're going to revoke

19 your license in the future.  We're going to revoke your

20 license in the future."  They -- they can't say they

1    don't have notice going forward.  But I -- I think it

2    would very -- be arguable that they didn't have proper

3    notice should that occur -- yeah -- in -- in -- as a

4    result of today's hearing.

5              Um, in lieu of revocation, if the

6    Commission is really set on that -- and again, I hope

7    you're not -- uh, just bump up the fine.  Bumping up

8    the fine is basically a de facto revocation anyway

9    because they're financially unsuitable.  So give them a

10   $20 m- -- million fine.  They'll never be able to make

11   it, and that's the same as a revocation.  It just won't

12   happen automatic.

13             A- -- again -- and it is up to the

14   Commission whatever you want to happen can happen.  The

15   -- the Executive Director does not seek revocation.

16   The Executive Director seeks suspension until they

17   comply and -- and they get -- they get it drilled into

18   them that they have to follow our laws and they have to

19   follow our regulations.  And, uh, what -- whatever

20   remedy the Commission --

1          MR. GUERRERO:  Okay.

2          MR. ERNEST:  -- feels is best.  Uh, in

3    support of that, Executive Director for Complaint 2020-

4    003, would ask for a lump sum of $1.5 million;      -

5    004, a lump sum of $2 million; and -005, a lump sum of

6    $1.5 million for a grand total of $5 million.  That's

7    well short of the $808 million possible.  So there's a

8    legal basis for it.  There's a factual basis for it.

9    And that's what would -- would -- would satisfy the

10   Executive Director.

11          MR. GUERRERO:  Please submit your

12   separate proposed orders to CCC.  (Inaudible 00:44:31).

13          MR. ERNEST:  From -- you want a combined

14   one or separate ones?

15          MR. GUERRERO:  Separate one.

16          UNIDENTIFIED MALE:  Separate.

17          MR. GUERRERO:  Separate.

18          MR. ERNEST:  Okay.

19          MR. GUERRERO:  As soon as possible, not

20   to exceed March 17th.

1          MR. ERNEST:  Yes, sir.

2          MR. GUERRERO:  Okay.  Uh, before we

3   adjourn or go on recess, uh, I'd like to give IPI any

4   last-minute comment from what was just presented by --

5          MR. MOCANU:  No, Chairman.

6          MR. GUERRERO:  Yeah.  Okay.  Any other

7   questions from the Commission before we, uh, recess and

8   go into deliberations?  Yeah.

9          UNIDENTIFIED MALE:  No.

10         MR. GUERRERO:  Okay.  Hearing none, uh,

11  this, uh, evidentiary hearing, uh, will go on recess,

12  uh, so we can enter into deliberation in -- in -- in

13  private.  And we'll, uh, probably continue to look into

14  this thing.  We'll wait for your proposed orders and,

15  uh, we'll also be doing our own research on this.  And

16  we will come up with a decision, uh, no later than 90

17  days, hopefully sooner.  Any --

18         MR. MOCANU:  Yeah.  Would -- would, um,

19  this, uh, Commission like to fold in Complaint 1 and 2

20  into our --

1          MR. GUERRERO:  The for the first two?

2          MR. MOCANU:  -- proposed order?  So it

3  could be a global of all five?

4          MR. GUERRERO:  I -- I -- I -- yeah, I

5  think that would be appropriate, uh --

6          COUNSEL FOR CCC:  I think that would be

7  inappropriate, Chairman, because you have been recused

8  from (inaudible 00:45:44).

9          MR. GUERRERO:  Yeah.  No, but on the --

10 on the proposed -- on the proposed, uh -- or do you

11 want to do a separate proposed, uh, (inaudible

12 00:45:50)?

13         COUNSEL FOR CCC:  Uh, i- -- I think a

14 separate (inaudible 00:45:51).

15         MR. ERNEST:  Normally I would object

16 given the recusal but because the facts were all

17 stipulated and because there's nothing that needs to be

18 tried, as long as they're willing to waive it, uh,

19 there is, uh, th- -- the fact that the Chairman was

20 recused from the first two complaints.

1                    MR. MOCANU:  But he was -- I think he was

2    recused as a fact finder.

3                    MR. ERNEST:  Correct.

4                    MR. MOCANU:  Yes, yeah.

5                    MR. GUERRERO:  Yeah.

6                    MR. MOCANU:  I -- I --

7                    COUNSEL FOR CCC:  If they waive it and

8    the Ch- -- Executive Director has no objection, then

9    (inaudible 00:46:17).

10                   MR. ERNEST:  Just putting on the record

11   this is entirely their idea.

12                   MR. MOCANU:  Well, because if we're gonna

13   come up with a plan that's gonna be different, 1 and 2

14   are outliers and 3, 4, and 5 are dealt with through

15   this, it just makes sense that we would -- that we

16   would state a comprehensive plan.

17                   MR. GUERRERO:  Kind of global -- global,

18   --

19                   MR. MOCANU:  That was the --

1                  MR. GUERRERO:  -- uh, (inaudible

2    00:46:32).

3                  MR. MOCANU:  Yeah.

4                  MR. GUERRERO:  I have no objection.

5    Counsel, is that --

6                  COUNSEL FOR CCC:  Yeah, i- -- if -- if

7    the Executive Director has no objection and IPI is

8    willing to waive your --

9                  MR. GUERRERO:  Yeah.  Yeah.

10                 COUNSEL FOR CCC:  -- recusal, then I

11   think you could -- then I think you have the authority,

12   yes.

13                 MR. GUERRERO:  So when you submit

14   those -- the -- they -- they would need separating and

15   --

16                 MR. ERNEST:  Uh, procedurally, though,

17   uh, the Vice Chairman and the rest of the Commission

18   hasn't made a finding --

19                 COUNSEL FOR CCC:  Yeah.

20                 MR. GUERRERO:  Yeah.  Yeah.

TranscriptionEtc.
www.transcriptionetc.com

1                    MR. ERNEST:  -- explicit regarding the

2      liability of IPI on the first complaint.

3                    MR. GUERRERO:  So I think your proposed

4      order, they will meet separately to -- to entertain it.

5                    UNIDENTIFIED MALE:  No.

6                    UNIDENTIFIED MALE:  Okay.

7                    MR. GUERRERO:  No?  (Inaudible 00:47:01).

8      Yeah.

9                    COUNSEL FOR CCC:  I think -- I think what

10     can happen probably is -- is the orders could be

11     combined as to penalt- -- as to the penalty question.

12                    MR. GUERRERO:  Uh, yeah.

13                    COUNSEL FOR CCC:  But that anything

14     related to finding --

15                    MR. ERNEST:  Yeah.

16                    COUNSEL FOR CCC:  -- liability --

17                    MR. ERNEST:  Yeah.

18                    COUNSEL FOR CCC:  -- would have to be

19     different.

1           MR. GUERRERO:  Okay.  Okay.  Uh,

2    that's -- that's clear.  So we are now on recess until,

3    uh, further notice.  Thank you.  Thank you, gentlemen.

4           MR. TAITANO:  (Inaudible 00:47:28)?

5           MR. GUERRERO:  Yeah.  Uh, Ian, you can

6    shut down now.  Thank you.

7           BACKGROUND VOICES:  (Inaudible 00:47:33).

8           MR. MORRELL:  Sir, I was shut down but I

9    (inaudible 00:47:34) --

10           BACKGROUND VOICES:  (Inaudible 00:47:35).

11           MR. GUERRERO:  Uh, (inaudible 00:47:36)

12    now?  Shall we meet now?

13           BACKGROUND VOICES:  (Inaudible 00:47:38).

14           UNIDENTIFIED MALE:  Yeah, all now.

15           UNIDENTIFIED MALE:  I mean, that means --

16           MR. TAITANO:  Will you meet now?

17           UNIDENTIFIED MALE:  I think we'll meet --

18           UNIDENTIFIED MALE:  I mean --

19

20           **END OF RECORDING**