1  Stephen J. Nutting
   Law Office of Stephen J. Nutting
2  6th Floor Marianas Business Plaza
   P.O. Box 5093 Saipan, MP 96950
3  Michael Chen
   Michael Chen Law Offices
4  7330 Edna Ave.
   Las Vegas, NV 89117
5  *Pro Hac Vice*
6
   *Attorneys for Plaintiff IPI (CNMI) LLC*
7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **FOR THE NORTHERN MARIANA ISLANDS**

10

11   Imperial Pacific International (CNMI) LLC,      Case No. 1:24-cv-00001

12            Plaintiff,

13                                                   **FIRST AMENDED COMPLAINT FOR**
              Vs.
14
                                                     1. **UNCONSTITUTIONAL**
15   Commonwealth of the Northern Mariana               **IMPAIRMENT OF CONTRACT**
     Islands, Commonwealth Casino                       **AND VIOLATION OF THE**
16   Commission, Arnold Palacios, governor of           **CONTRACTS CLAUSE OF**
     CNMI, in his official capacities; Edward C.        **THE U.S AND CNMI**
17   Deleon Guerrero, Chairman of CCC, in his           **CONSTITUTIONS;**
     official and personal capacities; Rafael S.    2. **VIOLATION OF THE DUE**
18   Demapan, Vice Chairman of CCC, in his              **PROCESS CLAUSES OF THE**
     official and personal capacities; Mariano         **U.S. AND CNMI**
19   Taitano, Commissioner of CCC, in his               **CONSTITUTIONS;**
     official and personal capacities; Martin       3. **VIOLATION OF ARTICLE IV**
20   Mendiola,   Commissioner of CCC, in his            **OF CNMI CONSTITTION;**
     official and personal capacities; Ramon M.     4. **BREACH OF CASINO**
21   Dela Cruz,   Commissioner of CCC, in his           **LICENSE AGREEMENT**
     official and personal capacities;             5. **DECLARATORY RELIEF,**
22                                                      **INJUNCTION AND**
                                                        **RESTITTUION.**
23            Defendants.
24
                                                     **DEMAND FOR JURY TRIAL**
25

26

27

28

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

1        1.       Plaintiff, Imperial Pacific International (CNMI), LLC; (hereinafter referred to

2   as "IPI"), by and through its undersigned counsels, as and for its complaint against

3   Commonwealth of the Northern Mariana Islands ("CNMI"), Arnold Palacios, governor of

4   CNMI, in his official capacities; Edward C. Deleon Guerrero, Chairman of CNMI

5   Commonwealth Casino Commission ("CCC"), in his official and personal capacities; Rafael S.

6   Demapan, Vice Chairman of CCC, in his official and personal capacities; Mariano Taitano,

7   Commissioner of CCC, in his official and personal capacities; Martin Mendiola, Commissioner

8   of CCC, in his official and personal capacities; Ramon M. Dela Cruz, Commissioner of CCC, in

9   his official and personal capacities; Andrew Yeom, Executive Director of CCC, in his official

10   and personal capacities; and Commonwealth Casino Commission; alleges as follows:

**JURISDICTION**

11

12        2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal

13   question) and 1367 (supplemental), and 42 U.S.C. § 1983.

**VENUE**

14

15        3.    Venue is proper in the federal district court for the Northern Mariana Islands in that

16   Defendants reside and do business in this District, including business related to the claims

17   asserted herein, 28 U.S.C. Section 1391 (b) (1), the events on which the claims are based

18   occurred in this District, 28 U.S.C. Section 1391(b) (2), and the property which is the subject of

19   this action is located in this District, 28 U.S.C. Section 1391 (b) (2).

**IDENTIFICATION OF PARTIES**

20

21        4.    Plaintiff IPI is a limited liability company organized under the law of the

22   Commonwealth of the Northern Mariana Islands, with its principal place of business at PMB 895

23   Box 10001, Saipan, 96950, Northern Mariana Islands. Its sole member is Best Sunshine

24   International Ltd. (BVI). ("hereinafter referred to as "Best Sunshine"). Best Sunshine is a

25   corporation organized under the law of the British Virgin Islands, with its principal place of

26   business at P.O Box 957. Offshore Incorporation Centre, Road Town, Tortola, British Virgin

27   Islands. Best Sunshine is a wholly owned subsidiary of Imperial Pacific International Holdings

28

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

Ltd., a publicly traded company on the Hong Kong Stock Exchange and was incorporated under the laws of Hong Kong, China.

5.     Defendant COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS ("CNMI") is a government entity lawfully created by the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America.

6.     Defendant Commonwealth Casino Commission ("CCC") is the casino gaming regulatory agency of the Commonwealth of the Northern Mariana Islands ("CNMI") government that oversees and regulates the activities of the exclusive casino licensee operating in Saipan. CCC was established pursuant to 4 CMC Section 2313 under PL 18-56 on July 11, 2014.

7.     Defendant Arnold Palacios ("Palacios") is a United States citizen, residing in Saipan, CNMI. As of January 22, 2024, defendant Palacios is the Governor of the CNMI. Defendant Palacios is being sued in his official capacities.

8.     Defendant Edward C. Deleon Guerrero ("Guerrero"), who is a United States citizen, residing in Saipan, CNMI. As of January 22, 2024, Defendant Guerrero is a commissioner and Chairman of CCC. Defendant Guerrero is being sued in his official and individual capacities.

9.     Defendant Rafael S. Demapan ("Demapan"), who is a United States citizen, residing in Saipan, CNMI. As of January 22, 2024, Defendant Demapan is a commissioner and Vice Chairman of CCC. Defendant Demapan is being sued in his official and individual capacities.

10.     Defendant Mariano Taitano ("Taitano"), who is a United States citizen, residing in Saipan, CNMI. As of January 22, 2024, Defendant Taitano is a commissioner of CCC. Defendant Taitano is being sued in his official and individual capacities.

11.     Defendant Martin Mendiola ("Mendiola"), who is a United States citizen, residing in Saipan, CNMI. As of January 22, 2024, Defendant Mendiola is a commissioner of CCC. Defendant Mendiola is being sued in his official and individual capacities.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

12.    Defendant Ramon M. Dela Cruz ("Cruz"), who is a United States citizen, residing in Saipan, CNMI. As of January 22, 2024, Defendant Cruz is a commissioner of CCC. Defendant Cruz is being sued in his official and individual capacities.

13.    Defendant Andrew Yeom ("Yeom"), who is a United States citizen, residing in Saipan, CNMI. As of January 22, 2024, Defendant Yeom is the Executive Director of CCC. Defendant Yeom is being sued in his official and individual capacities.

## **FACTUAL ALLEGATIONS**

14.    On or about August 12, 2014, IPI entered into a Casino License Agreement (CLA) with the Commonwealth Lottery Commission. See **Exhibit A.**

15.    Under Article 25 of the CLA, "Licensee shall not be in default for any failure or delay in the performance due under this License Agreement if such failure or delay is due to causes beyond reasonable control including, but not limited to: … ("Force Majeure Event"). Invocation of force majeure by the Licensee shall not excuse any payment obligations to the Commonwealth where the grounds and or purposes for such payments have already accrued."

16.    Under Article 33 of the CLA, "[t]his License Agreement is to be interpreted under the laws of the Commonwealth of the Northern Mariana Islands and the exclusive jurisdiction of the courts thereof."

17.    Under the CLA, among other obligations, IPI would pay $20 million annually to a Community Benefit Fund. IPI dutifully paid the $20 million contribution to the Community Benefit Fund each year prior to 2018.

18.    Under the CLA, among other obligations, IPI would pay a fifteen million dollars ($15,000.000.00) annual Casino License Fee. IPI dutifully paid the annual license fee each year between 2014 and 2019.

19.    On July 11, 2014, CNMI promulgated Public Law 18-56, which created CCC. Public Law 18-56 granted certain powers and duties to CCC and it was codified as 4 CMC § 2314.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

20.     Under 4 CMC § 2314, CCC assumed judicial functions and has jurisdiction over certain cases and controversies, including cases involving the interpretation and adjudication of the CLA.

21.     On December 4, 2015, CNMI promulgated Public Law 19-24, which imposes a new obligation on IPI to pay CCC an annual "Casino Regulatory Fee" of three million dollars ($3,000.000.00) on or before October 1 of each year beginning October 1, 2015 ("Regulatory Fee Statute"). That fee is due to CCC "regardless of the actual costs incurred by the [CCC]." 4 C.M.C. Section 2309 (a). IPI dutifully paid the Casino Regulatory Fee each year from 2015 through 2019.

22.     By the operation of PL 19-24, the funding of CCC is almost completely originated from the payment of the annual regulatory fee by IPI and its affiliates. See **Exhibit B.**

23.     On or about October 28, 2016, CCC issued Commonwealth Casino Commission Rules and Regulation, which is codified as NMIAC § 175 -10.1.

24.     Due to a number of force majeure events and the suspension of the casino license by CCC, IPI has been unable to make the payment for the annual regulatory fee, annual license fees and Community Benefit Fund contribution for a few years.

25.     Pursuant to NMIAC § 175 -10.1-601, failure to comply with the requirements set forth in the CLA is an unsuitable method of operation and a major offense subject to penalty, including but not limited to license revocation.

26.     Pursuant to NMIAC § 175 -10.1-105, CCC has the "sole authority to amend or revoke the license granted to" IPI for "operating in an unsuitable manner due to violations of law, breaches of the license or violations of the regulations promulgated by the Commission, as well as any other reason for revocation or termination stated in the License."

## 2020 CCC ENFORCEMENT ACTIONS

27.     The Executive Director of the CCC initiated five complaints against IPI in 2020. Later consolidated into Enforcement Action 2020-001 (encompassing actions 2020-001 and

2020-002) and Enforcement Action 2020-003 (encompassing actions 2020-003, 2020-004 and 2020-005), as follows:

    a.   Complaint 2020-001 included claims for violations of the CLA based on IPI's failure to make Community Benefit Contributions;

    b.   Compliant 2020-002 included claims for violations of Commonwealth law and the CLA based on IPTs failure to pay the Annual License Fee for 2020;

    c.   Complaint 2020-003 included claims for violation of a prior CCC order (2020-003) requiring IPI to maintain at least $4.2 million in cash or cash equivalents in a bank in the CNMI or United States and for IPTs executives to detail the means by which they would comply with that order;

    d.   Complaint 2020-004 included claims for violations of a prior CCC order (2020-004) requiring IPI to pay accounts payable over 89 days old and to certify compliance with that order;

    e.   Complaint 2020-005 included claims for violation of Commonwealth law and the CLA for IPTs failure to pay the Casino Regulatory Fee of $3,150,000.00 for 2020.

28.   On April 22, 2021, the CCC held a hearing on these enforcement actions and issued Order No: 2021-002. **See Exhibit C**. In the Order, CCC assumed the jurisdiction to interpret and adjudicate the claims filed by the Executive Director of CCC, and made the finding that IPI violated the CLA.

29.   The Order suspended IPI's gaming license, ordering IPI to pay a total of $18.65 million that it found was due under the CLA's Annual License Fee and Annual Regulatory Fee, and imposing a total of $6.6 million in penalties against IPI. The Order also required IPI to comply with previous Orders issued by the CCC.

30.   On Nov. 5, 2021, IPI appealed the CCC's Order in the Superior Court for the Commonwealth of the Northern Mariana Islands, arguing that the CCC's Order was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and unwarranted by the facts. IPI's primary argument was that the CCC failed to recognize the doctrine of force

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

majeure despite the presence of the force majeure provision in the CLA and the clear, severe impact of a force majeure event, the COVID-19 pandemic, on IPI's ability to comply with its obligations.

31.    On March 15, 2022, the Superior Court of CNMI affirmed the CCC's order, applying a very deferential standard of review.

32.    On April 11, 2022, IPI appealed the Order issued by the Superior Court of CNMI to the Supreme Court of CNMI.

33.    On September 25, 2022, CNMI Supreme Court affirmed the trial court's ruling in part and reversed in part and asked CCC to "decide on a reasonable deadline for IPI to pay" the annual license fees for 2020 and the following years.

34.    On November 30, 2023, CCC issued a "Notice of Payment Deadline" and determined that a "reasonable deadline" for IPI to pay the $62,010.280.00 is "30 days from receipt of this notice." See **Exhibit D.**

## 2021 ENFORCEMENT ACTIONS

35.    On or about September 17, 2021, Andrew Yeom, in his official capacity as Executive Director of CCC, filed five complaints against IPI with CCC.

a.    Complaint No. 2021-001 alleges breach of the CLA by IPI for its failure to pay the annual license fee for year 2020 under the CLA. **See Exhibit E.**

b.    Complaint No. 2021-002 alleges that IPI failed to maintain minimum capital requirements set by CCC. **See Exhibit F.**

c.    Complaint No. 2021-003 alleges that IPI failed to pay the annual regulatory fee for year 2020. See **Exhibit G.**

d.    Complaint No. 2021-004 alleges breach of the CLA by IPI for its failure to pay the annual license fee for year 2021 under the CLA. **See Exhibit H.**

e.    Complaint No. 2021-005 alleges that IPI failed to pay the annual regulatory fee for year 2021. **See Exhibit I.**

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

36. Proceedings for Complaints No. 2021-001 to 2021-005 was stayed since May 23, 2022, because the Court issued a TRO. See ECF No. 11 of Case No. 1:22-cv-00007.

37. The stay was later lifted due to the reversal by the United States Court of Appeals for the Ninth Circuit. See ECF No. 38-1 of Case 22-16630.

38. For case 22-16630, IPI filed a petition for a writ of certiorari with the U.S. Supreme Court on November 20, 2023, with a case number of 23-522. See ECF No. 59 of Case No. 1:22-cv-00007. U.S. Supreme Court did not grant the petition for a writ of certiorari.

### 2023 ENFORCEMENT ACTIONS

39. On or about December 13, 2023, Andrew Yeom, in his official capacity as Executive Director of CCC filed a motion with CCC and requested CCC to issue an order setting a Revocation Hearing for Complaints No. 2021-002 and 2021-003. See **Exhibit J.**

40. On December 27, 2023, IPI filed an action before this Court against CCC, with Case No. 1:23-cv-00016.

### 2024 ENFORCEMENT ACTIONS

41. On January 26, 2024, IPI and CCC stipulated to dismiss the case No. 1:23-cv-00016 without prejudice.

42. Since January 26, 2024, IPI and CCC engaged in active settlement negotiation and stipulated to postpone the revocation hearing till February 28, 2024. See **Exhibit K.**

43. However, despite these ongoing settlement discussions, CCC proceeded with the revocation hearing scheduled for February 28, 2024.

44. On February 23, 2024, IPI filed the instant action, 1:24-cv-00001, (ECF No. 1) before this Court. On February 26, 2024, IPI filed an emergency motion for TRO (ECF No. 2).

45. On February 27, 2024, the Court conducted a hearing where counsels for IPI and Assistant Attorney General Keisha Blaise of CNMI, and John Brendan Layde, counsel for the Governor, appeared at the hearing. At the conclusion of the hearing, the court denied the motion for TRO and issued a Memorandum Decision on February 29, 2024. ECF No. 9.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

46.     After the motion for TRO was denied, the revocation hearing started on February 28, 2024, and stretched three days from February 28, 2024, to March 1, 2024.

47.     At the revocation hearing, Executive Director of CCC, Andrew Yeom, was represented by Assistant Attorney General of CNMI, Keisha Blaise and Alison Nelson; IPI was represented by Michael Chen. The presiding hearing commissioner was Vice Chairman Rafael S. Demapan, who was also the Acting Chairman of CCC due to the absence of Chairman Guerrero from the island. In addition to Vice/Acting Chairman Demapan, the other three commissioners, Commissioners Cruz, Taitano and Mendiola all functioned as the hearing commissioners at the revocation hearing. Chairman Guerrero participated at the revocation hearing remotely as "citizen Guerrero" at the hearing.

48.     Media was permitted to attend the hearing throughout and a number of news articles about the proceeding were posted online and in print in CNMI.

49.     During the revocation hearing, attorney Michael Chen made four oral motions to disqualify the four hearing commissioners and gave the following reasons for the motion for disqualifications:

a.  All four hearing commissioners are paid by CCC, which is financed exclusively by the regulatory fee, a major defense by IPI is the constitutionality of the underlying regulatory fee statue and regulations, it would be "professional suicide" for the commissioners to rule that the underlying regulatory fee statue is unconstitutional.

b.  Based upon the testimony produced at the hearing, all five commissioners, through the official monthly CCC public meetings and private communication with the executive director of CCC, had prior knowledge about the underlying claims, i.e. the alleged failure of IPI to maintain the minimum capital requirement and the failure to pay the regulatory fees in year 2020.

**MICHAEL CHEN LAW OFFICE**
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

c. All five commissioners[1]  were involved in issuing Commission Orders 2020-003 and 2021-002. The current complaints before the Commission are seeking to enforce Commission Orders 2020-003 and 2021-002. The Commissioners are asked to self-affirm decisions they made earlier.

d. The disqualification of the five commissioners as the hearing commissioners would not cripple the Commission, as provided by the regulation and cited by the Memorandum Decision for the TRO, (which became available in the midst of the revocation hearing), the commissioners could appoint a non-commissioner hearing officer to conduct the revocation hearing, which is a quasi-judicial proceeding.

50.   The oral motions to disqualify the commissioners were brought at least three times, once when the grounds for disqualification became clear, once at the closing argument for each complaint. Commissioners did not make a ruling on the motions to disqualify during the proceeding and continued to proceed with the revocation hearing until it was adjourned on March 1, 2024.

---

[1]  Attorney Chen misspoke at the hearing about the involvement of Commissioner Martin Mendiola of the two commission orders. Commissioner Mendiola was not involved in Commission Order 2020-003 and 2021-002.

51.     There were a garden variety of irregularities took place at the hearing. Here are just a few examples:



Executive Director of CCC conversed ex parte with the hearing commissioner.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x



Hearing Commissioner was browsing his phone extensively during the proceeding.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

52. After the adjournment of the revocation hearing, on March 6, 2024, Governor Arnold I. Palacios caused to publish an article on local newspapers. In the article, Mr. Palacios made remarks to contradict the testimony of IPI's witness, Mr. Howyo Chi and put the credibility of Chi into question. See **Exhibit L.**

53. On March 25, 2024, IPI learned that CCC announced that it planned to conduct a deliberation and voting on the casino license revocation hearing on April 2, 2024.

54. On March 27, 2024, IPI filed a second Emergency Motion for a TRO. ECF No. 24.

55. On March 28, 2024, IPI learned from CCC that CCC postponed the deliberation and voting till April 9, 2024.

56. On April 5, 2024, the Court denied the second Emergency Motion for TRO. ECF No. 36.

57. On April 8, 2024, IPI filed a motion to disqualify before CCC, and a motion to ask CCC to declare the Feb 2024 Revocation Hearing invalid. See **Exhibit M.**

## APPARENT AND POTENTIAL CONFLICT OF INTERESTS

58. The $3M annual regulatory fee paid by IPI to CCC is the lion's share of CCC's revenue. Here is a table of the revenue of the Commission from year 2018 to 2022:

|  | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|
| Casino Regulatory Fees | $3,000,000 | $3,000,000 | $3,000,000 | $0 | $0 |
| Other Regulatory Fees | $151,242 | $100,328 | $106,500 | $20,214 | $15,000 |
| General Fund | $0 | $1 | $1 | $1 | $1 |

ECF No. 24-10 Exhibit J. Commission Annual Reports.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

59. It is clear that the Commission cannot survive financially without the $3M annual license fee paid by IPI. It would be "professional suicide" for the Commissioners to be persuaded by IPI's argument that the $3M annual regulatory fee statute is unconstitutional.

60. It is also clear that the legislative appropriation process has not worked very well for the Commission and the Commissioners when the annual regulatory fee is not paid.

61. Based upon the reports filed by CCC, the board of commissioners were paid $313,774.00 in year 2018, $324,996.00 in year 2019, $316,871.00 in year 2020, $322,234.00 in year 2021, $272,461.00 in year 2022.

62. Based upon information and belief, the Commissioners have not been paid for their services in year 2023 and 2024.

63. Based upon information and belief, the revocation hearing is used as a leverage to pressure IPI to pay the annual regulatory fees, because "Plaintiff could moot the revocation issues by simply remitting the owed amounts." ECF No. 27.

## CONSTITUTION AND STATUTORY GROUNDS

64. The Contracts Clause of the United States Constitution (U.S. Const. Art. I. Section 10, cl. 1) prohibits any state from passing a "law impairing the obligation of contracts."

65. Article 1, Section 1 of the CNMI Constitution likewise states that "[n]o law shall be made that is a bill of attainder, an ex post facto law, a law impairing the obligation of contracts…"

66. Under the Due Process Clause of the Fourteenth Amendment to the U.S Constitution, the government shall not deprive any person of property, without due process of law, or deny to any person the equal protection of the laws.

67. Article 1, Section 5 of the CNMI Constitution also provides that "No person shall be deprived of life, liberty or property without due process of law."

68. In 1975, the United States and the CNMI entered into the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant"), providing that the CNMI would have Commonwealth status, the

Covenant was signed into law by the U.S. Congress in 1976 and fully implemented in November 1986.

69. Under Section 501(a) of the Covenant, the Contracts Clause, the Due Process Clause of the United States Constitution are applicable to the CNMI.

70. Article IV, Section 1 of CNMI Constitution vested the judicial power of the Commonwealth in a judiciary of the Northern Mariana Islands which shall include those trial and appeals courts established by the legislature under this article.

71. Article IV, Section II of CNMI Constitution granted the Commonwealth trial court with original jurisdiction in all cases in equity and in all cases at law which involve land in the Commonwealth, and in all other civil actions.

72. 42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

## FIRST CAUSE OF ACTION

### (Against Defendants CNMI and CCC for Unconstitutional Impairment of the Contracts Clause of the United States and CNMI Constitutions)

73. Plaintiff incorporates herein by this reference the allegations contained in the preceding paragraphs.

74. Plaintiff hereby seeks declaratory, injunctive and equitable relief to prevent Defendants from violating and continuing to violate, the Contracts Clauses of the United States Constitution and CNMI Constitution.

75. CNMI and IPI had an existing contractual relationship that provides IPI with certain contractual and property rights to operate a casino in CNMI in exchange for substantial compensation to CNMI.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

76.   The annual regulatory fee statute, as applied to IPI during the Covid-19 period when its business was shut down with zero revenue for the sakes of public health and welfare, would be an unconstitutional impairment of its contractual right under the force majeure clause within the CLA.

77.   IPI believes that the application of the annual regulatory fee statute, without giving due consideration to an apparent and significant force majeure event and the force majeure clause in the CLA, is unconstitutional because it deprives IPI of a bargained for right: right to be free from default for any failure or delay in paying the fees in the event of force majeure. The impairment is substantial.

78.   The requirement for IPI to maintain a minimum capital under applicable CCC regulations, as applied to IPI during the Covid-19 period where its business was shut down with zero revenue for the sakes of public health and welfare, would be an unconstitutional impairment of its contractual right under the force majeure clause within the CLA.

79.   IPI believes that the application of the minimum capital requirement, without giving due consideration to an apparent and significant force majeure event and the force majeure clause in the CLA, is unconstitutional because it deprives IPI of a bargained for right: right to be free from default for any failure or delay in the performance due [under statute and regulation enacted in accordance with the CLA] in the event of force majeure. The impairment is substantial.

80.   CNMI and IPI had an existing contractual relationship that provides that the interpretation of the CLA and the adjudication of disputes arising from the CLA shall be subject to "the exclusive jurisdiction of the courts thereof."

81.   Acting under color of Commonwealth law, Defendants, individually and collectively, have caused IPI to suffer a substantial deprivation of its contract rights in violation of the federal and commonwealth constitutions. The Statute, 4 CMC §2314 gives CCC broad and sometimes exclusive authority to interpret the CLA and adjudicate disputes arising from the CLA, which constitutes a substantial and unconstitutional impairment of the CLA.

82.     Commonwealth Casino Commission Rules and Regulation, which is codified as NMIAC § 175 -10.1, prescribe the detailed rules and procedures to give CCC broad and sometimes exclusive authority to interpret the CLA and adjudicate disputes arising from the CLA, which constitutes a substantial and unconstitutional impairment of the CLA.

83.     IPI was and is still required by CCC to participate in proceedings initiated by CCC and heard by CCC to interpret the CLA and adjudicate claims arising from the CLA. The later imposed regulatory scheme where CCC functions as both an interested party, prosecutor, judge and jury for disputes that was reserved for the exclusive jurisdiction of CNMI courts effectively nullifies the explicit terms of the CLA and imposes completely unexpected and new liabilities and limitations on the operation of IPI.

84.     IPI has incurred and will continue to incur attorney's fees and costs because of these proceedings, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. Section 1988 (b).

### SECOND CAUSE OF ACTION

### (42 U.S.C. §1983: Against Defendants CCC, Edward C. Deleon Guerrero, Rafael S. Demapan, Mariano Taitano, Martin Mendiola, Ramon M. Dela Cruz; for Violation of the Due Process Clauses of the United States Constitution and CNMI)

85.     Plaintiff incorporates herein by this reference the allegations contained in the preceding paragraphs.

86.     Plaintiff hereby seeks declaratory, injunctive and equitable relief to prevent Defendants from violating and continuing to violate the Due Process Clauses in the Fourteenth Amendment to the United States Constitution, made applicable to CNMI by the Section 501 (a) of the Covenant, as well as Article 1, Section 5 of CNMI Constitution.

87.     The Due Process Clause requires that the decision to deprive a person of a protected interest be entrusted to an impartial decision maker. This rule applies to both criminal and civil cases. The Supreme Court of the United States has explained that the neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

distorted conception of the facts or the law and preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.

88.    The Statute, 4 CMC §2314, gives CCC broad and sometimes exclusive authority to interpret the CLA and adjudicate disputes arising from the CLA. The Statute also gives CCC broad policing power to regulate IPI as a casino operator. CCC is acting in a judicial or quasi-judicial capacity when interpreting the CLA and adjudicating disputes arising from the CLA. Defendants have a direct, substantial, arguably personal, pecuniary interest in finding IPI in violation of the CLA, given the fact that CCC is funded exclusively by the regulatory fees that are ordered to be paid by IPI and its affiliates to CCC. Even for matters that are outside the scope of CLA, CCC has a direct, substantial, arguably personal, pecuniary interest in finding IPI in violation of the Statute, given the fact that the finding of violation would directly result in fines and penalties payable to CCC, which is the only funding source for CCC.

89.    Commonwealth Casino Commission Rules and Regulation, which is codified as NMIAC § 175 -10.1, prescribe the detailed rules and procedures which give CCC broad and sometimes exclusive authority to regulate the operations of IPI. Even for matters that are outside the scope of CLA, CCC has a direct, substantial, arguably personal, pecuniary interest in finding IPI in violation of the CCC Rules and Regulation, given the fact that the finding of violation would directly result in fines and penalties payable to CCC and give CCC additional leverages over IPI that were not available to CCC under the CLA.

90.    4 CMC §2314 and NMIAC § 175 -10.1 deprive IPI of due process to have its claims and defenses heard before a disinterested and impartial arbiter as guaranteed by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and the Constitution of CNMI.

91.    Acting through CCC, Defendants have demonstrated such predisposed tenancy to find against IPI in the 2020 enforcement actions. For example:

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

a) CCC excluded IPI from introducing evidence of force majeure in the 2020 enforcement actions when "a reasonable mind would not accept its conclusion."

b) CCC interpreted the "suspension and revocation proceeding exception to arbitration" clause in the CLA to achieve an "absurd" result.

c) CCC determined that thirty days after notification is a "reasonable deadline" for IPI to come up with $62 million dollars after IPI was ordered to close its business since early 2020.

92.    Despite the apparent conflict of interests where CCC commissioners have personal, direct, and pecuniary interests in the outcome of the revocation hearing conducted between February 28, 2024 and March 1, 2024; despite an available procedural alternative by appointing an impartial hearing officer to conduct the revocation hearing, despite multiple motions for disqualification made by IPI's attorney at the hearing and post hearing, Defendants Demapan, Cruz, Taitano, and Mendiola refused to disqualify themselves as the hearing commissioners.

93.    Despite the apparent conflict of interests where CCC commissioners have personal, direct, and pecuniary interests in the outcome of the revocation hearing conducted between February 28, 2024 and March 1, 2024; despite multiple motions for disqualification made by IPI's attorney at the hearing and post hearing, Defendants Guerrero, Demapan, Cruz, Taitano, and Mendiola refused to disqualify themselves as the voting commissioners to deliberate and vote on the renovation hearing.

94.    IPI has incurred and will continue to incur attorney's fees and costs because of these proceedings, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. Section 1988 (b).

**THIRD CASUE OF ACTIONS**

**(42 U.S.C. §1983: Against Defendants CNMI, CCC, Edward C. Deleon Guerrero, Rafael S. Demapan, Mariano Taitano, Martin Mendiola, Ramon M. Dela Cruz for Violation of Article IV of CNMI Constitution)**

95.   "The Commonwealth Constitution provides for a tripartite system of government," which "gives rise to the separation of powers doctrine" Marine Revitalization Corp. v. Dep't of Land & Natural Res. 2010 MP 18.

96.   Under Article IV of CNMI Constitution, the judicial power of the Commonwealth shall be vested in the judiciary of the Northern Mariana Islands, The Commonwealth trial court shall have original jurisdiction in all cases in equity and in all cases at law which involve land in the Commonwealth, and in all other civil actions.

97.   Commonwealth Casino Commission Rules and Regulation, which is codified as NMIAC § 175 -10.1, prescribe the detailed rules and procedures which give CCC broad and sometimes exclusive authority to regulate many aspects of the operations of casino operation.

98.   The license revocation and suspension hearings conducted by CCC inevitably would interpret the laws of CNMI and adjudicate disputes arising out of the CLA, which are reserved to the judicial branch of CNMI government.

99.   By granting itself the power to adjudicate disputes arising out of the CLA and to make rulings on issues related to the CLA, NMIAC § 175 -10.1 encroaches upon the judiciary by exercising those powers that are judicial in character.

100.   IPI suffered and is still suffering harms due to the unconstitutional exercise of judicial powers by CCC.

101.   IPI has incurred and will continue to incur attorney's fees and costs because of these proceedings, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. Section 1988 (b).

### FOURTH CAUSE OF ACTIONS

### (Against All Defendants for Breach of Casino License Agreement)

102.   Plaintiff incorporates herein by this reference the allegations contained in the preceding paragraphs.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

103.  IPI and CNMI entered into the CLA which has a forum selection clause to have courts within CNMI to have exclusive jurisdiction to adjudicate all claims arising out of the CLA.

104.  CNMI breached the CLA by bestowing powers upon CCC to function as a judicial office to interpret the terms of the CLA and adjudicate issues related to the CLA under the cloak of "suspension and revocation proceedings."

105.  IPI and CNMI entered into the CLA which has a force majeure clause, which would excuse IPI from default for any failure or delay in the performance due under CLA.

106.  Defendants breached the CLA by exercising their power to suspend and revoke IPI's casino license while ignoring the force majeure clause in the CLA.

107.  IPI has fulfilled its obligations under the CLA or is excused from performing such obligations.

108.  IPI is injured by the breach of the CLA by Defendants, through the operation of CCC under the direction and management of the Defendants, individually and collectively.

109.  Plaintiff hereby requests declaratory, injunctive and equitable relief pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure.

110.  Actual controversies have arisen between IPI and Defendants with regard to whether the interpretation of the CLA and adjudication of claims arising out of the CLA by Defendants violate the terms of the CLA.

111.  CCC's assumption of jurisdiction to function as a judicial or quasi-judicial entity to interpret the CLA and adjudicate claims arising out of the CLA constitutes a breach of the CLA and an improper unilateral modification of the CLA.

112.  Defendants breached the CLA by acting under the cover of "suspension and revocation" and suspended IPI's license without complying with the force majeure clause.

113.  Defendants breached the CLA by acting under the cover of "suspension and revocation" and sought to revoke IPI's license without giving due consideration to the force majeure clause.

114.  IPI seeks declaratory relief and a judicial determination, pursuant to 28 U.S.C. Section 2201 and Rule 57 of the Federal Rules of Civil Procedure:

(a). that the interpretation of the CLA and adjudication of claims arising out of the CLA by CCC the is in contravention of the CLA;

(b). the regulatory scheme where CCC assumes jurisdiction to decide issues related to the interpretation of the CLA is unconstitutional;

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff IPI prays for judgment against Defendants, as follows:

1. For the Court to issue a declaration that the current regulatory scheme established by 4 CMC §2314 and NMIAC § 175 -10.1, where CCC is not and cannot function as an impartial decision maker, is unconstitutional;

2. For the Court to issue a declaration that the current regulatory scheme established by 4 CMC §2314 and NMIAC § 175 -10.1, when its enforcement violates the force majeure clause of the CLA , is unconstitutional;

3. For the court to issue an injunction that Defendants may not exercise any power granted by 4 CMC §2314 and NMIAC § 175 -10.1, as long as CCC, as an instrument under the control of the Defendants, is not and cannot function as an impartial decision maker;

4. For the Court to issue an injunction against Defendants preventing the assumption of jurisdiction by CCC to interpret the terms of CLA and/or to adjudicate claims arising out of the CLA, including not but limited to Complaints 2021-001, 002, 003, 004, and 005;

5. For the Court to issue a declaration stating that the assumption of jurisdiction by CCC, under the direction of the Defendants, to interpret the terms of CLA and/or to adjudicate claims arising out of the CLA, either standing alone, or in connection with a suspension or revocation proceeding, or other enforcement actions, as applied to IPI, is unconstitutional;

6. For the Court to order Defendants to vacate, nullify any and all adverse administrative decisions against IPI that were based upon the assumption of jurisdiction by CCC to

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

interpret the terms of CLA and/or to adjudicate claims arising out of the CLA, including but not limited to Commission Order No. 2021-002;

7. For the Court to order Defendants to vacate, nullify any and all adverse administrative decisions against IPI that failed to comply with the force majeure clause of the CLA, including but not limited to Commission Order No. 2021-002;

8. For the Court to issue an injunction against Defendants preventing the enforcement of any CCC Order, including but not limited to Commission Order No. 2021-002, when such Orders are the fruits of an unconstitutional regulatory scheme;

9. For all costs of suit incurred herein;

10. For reasonable attorney's fees incurred herein;

11. For such other and further relief as the Court may deem just and proper.

Dated:          April 8, 2024
                Las Vegas, NV

Respectfully submitted,

By:/s/ Stephen Nutting
Stephen Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950

Michael Chen
By: /s/ Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
*Pro Hac Vice*
Attorneys for Plaintiff
IMPERIAL PACIFIC INTERNATIONAL
(CNMI), LLC