OFFICE OF THE ATTORNEY GENERAL
EDWARD MANIBUSAN
Attorney General
Carl F. Dela Cruz (F0525)
Assistant Attorney General
Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
Caller Box 10007, Capital Hill
Saipan, MP 96950
Telephone: 670-237-7500
Email: carl_delacruz@cnmioag.org
Attorneys for Defendants
*Commonwealth Casino Commission, Edward C. Deleon Guerrero, Rafael S. Demapan, Mariano Taitano, Martin Mendiola, and Ramon M. Dela Cruz, in their official and personal capacities*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC,<br><br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, et. al.,<br><br>Defendants. | Case No. 1:24-cv-00001<br><br>**DEFENDANTS COMMONWEALTH CASINO COMMISSION, EDWARD C. DELEON GUERRERO, RAFAEL S. DEMAPAN, MARIANO TAITANO, MARTIN MENDIOLA, AND RAMON M. DELA CRUZ's MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FEDERALRULE OF CIVIL PROCEDURE 12(b)(6)** |

Defendants Commonwealth Casino Commission, Edward C. Deleon Guerrero, Rafael S. Demapan, Mariano Taitano, Martin Mendiola, and Ramon M. Dela Cruz, in their official and personal capacities, collectively referred to herein as "Defendants," respectfully submit this memorandum in support of their motion to dismiss Plaintiff Imperial Pacific International (CNMI) LLC's ("IPI") First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**1. INTRODUCTION**

1

The First Amended Complaint alleges four causes of action:

1. <u>First Cause of Action.</u>  The first cause of action accuses Defendant Commonwealth Casino Commission ("CCC") (and the Commonwealth of the Northern Mariana Islands ("CNMI")) of "Unconstitutional Impairment" of the Contracts Clauses of the U.S. and CNMI Constitutions (ECF No. 38 at 15).

2. <u>Second Cause of Action</u>.  The Second Cause of Action accuses Defendants of violating the Due Process Clauses of the U.S. and CNMI Constitutions and is brought under 42 U.S.C § 1983 (ECF No. 38 at 17);

3. <u>Third Cause of Action</u>.  The Third Cause of Action accuses Defendants (and the CNMI) of violating Article IV of the CNMI Constitution and is brought under 42 U.S.C § 1983. ECF No. 38 at 19 (ECF No. 38);

4. <u>Fourth Cause of Action.</u>  The Fourth Cause of Action accuses Defendants (and the CNMI) of breaching the Casino License Agreement (ECF No. 38 at 20-21).

In deciding Defendants' motion to dismiss, the court is presented with one simple issue: the doctrine of Res Judicata.  Under the doctrine, federal courts give "preclusive effect" to the litigation of claims the "parties or their privies" raised or could have raised in a prior proceeding—including a state-court proceeding—where there is a judgment on the merits.

Should the court dismiss this above-captioned suit based on res judicata?  Because IPI attempts to relitigate issues that were or could have been raised in a prior state-court proceeding involving the same "parties or their privies," and which led to a judgment on the merits, the suit is barred under res judicata.

## II.    BACKGROUND

1. **The 2020 Enforcement Actions**

In 2020, the CCC initiated five enforcement actions against Plaintiff:

    i.    <u>Enforcement Action 2020-001</u>, alleging the following claims:

        (1) IPI failed to pay the Community Benefit Fund contribution required by Amendment #3 to the Casino License Agreement ("CLA"), in violation of Commonwealth Casino Commission Regulations § 175-10.1-675(b)(1) and § 175-10.1-1805(b)(15); and

        (2) and (2) IPI violated the CLA by failing to pay the Community Benefit Fund contribution required by Amendment #5 to the CLA, in violation of Commonwealth Casino Regulations § 175-10.1-675(b)(1) and § 175-10.1-1805(b)(15) (ECF No. 38-3 at 2);

    ii.    <u>Enforcement Action 2020-002</u>, alleging the following claims:

        (1) IPI violated 4 CMC § 2306(b) by failing to pay the annual license fee due August 12, 2020;

        (2) IPI violated the CLA by failing to pay the annual license fee when due for more than 12 hours, in violation of § 175-10.1-610(b);

        (3) IPI violated § 175-10.1-1805(b)(15) by breaching the CLA by failing to make the required annual license fee for more than 12 hours after payment was due;

        (4) that the CCC should issue a declaratory order declaring that IPI's failure to pay the annual license fee "is an unsuitable method of operation" and that IPI "immediately" pay the fee on the effective date of the order (ECF No. 38-3 at 3-4);

    iii.    <u>Enforcement Action 2020-003</u>, alleging the following claims:

        (1) IPI failed violated Commission Order 2020-003 by failing to maintain required cash or cash equivalents in a "restricted" CNMI or United States bank,

        (2) IPI violated Commission Order 2020-003 "when its highest-ranking executives failed to detail the means by which it would comply with the Order,"

        (3) that the CCC should issue a declaratory order declaring that IPI's failure to comply with the required cash or cash equivalents and detail the means by which it would comply with the capital requirements under Commission Order 2020-003 "amount to unsuitable methods of operation and requiring immediate compliance,"

        (4) that the CCC should declare IPI's "fiscal and financial capability as owner and operator of the casino has significantly diminished such that the public interest is no longer protected" and the IPI be required to cure the financial deficiency sufficient to "pay all debts as they become due" (ECF No. 38-3 at 5);

    iv.    <u>Enforcement Action 2020-004,</u> alleging the following claims:

        (1) Plaintiff violated Commission Order 2020-004 by failing to pay accounts payable that were over 89 days old;

        (2) IPI violated Commission ORDER 2020-004 by failing to make required certifications under the Order,

        (3) that CCC should issue a declaratory order declaring that IPI's failure to comply the payment and certification requirements under Commission Order 2020-004 "are unsuitable methods of operation" and that IPI is required to "pay all amounts required by Commission Order 2020-004" upon the effective date of the requested order,

        (4) that CCC should issue a declaratory order declaring that IPI is insolvent and is unable to "fully construct the entirety of the Initial Gaming Facility located in Garapan, Saipan, CNMI in accordance with applicable laws, regulations and codes" (ECF No. 38-3 at 5-6); and

    v.    <u>Enforcement Action 2020-005</u>, alleging the following claims:

        (1) IPI violated 4 CMC § 2309 by failing to pay for more than 12 hours the Casino Regulatory Fee when due,

        (2) IPI violated CCC Regulation § 175-10.1-1225 by failing to pay the Casino Regulatory Fee when due for more than 12 hours,

        (3) IPI breached the CLA by failing to pay the casino license fee when due for more than 12 hours,

        (4) that CCC should issue a declaratory order declaring that IPI's failure to pay the Casino Regulatory Fee when due "amounts to an unsuitable method of operation" and that IPI is required to pay the Casino Regulatory Fee "immediately upon the effective date" of the requested order (ECF No. 38-3 at 6).

ECF No. 38-3 at 2-6. Enforcement Actions 2020-001 and 2020-002 were consolidated into Enforcement Action 2020-001. ECF No. 38-3 at 2. Enforcement Actions 2020-003, 2020-004, and 2020-005 were consolidated into Enforcement Action 2020-003. ECF No. 38-3 at 2.

4

### 2.     Commission Order No. 2021-002

On April 22, 2021, the CCC issued Order No: 2021-002—"**Final Order for Enforcement Actions 20-001 (consolidated) and 20-003 (consolidated).**"  The Order references two hearings:  (1) a February 25, 2021 evidentiary hearing on Enforcement Action 2020-001 (consolidated), and (2) a March 2, 2021 evidentiary hearing on Enforcement Action 2020-003 (consolidated).  ECF No. 38-3.  Based on the hearings, CCC granted the requested relief under each of the enforcement actions. ECF No. 38-3.  This includes $18.65 million towards the Annual License Fee and Annual Regulatory due under Enforcement Actions 2020-002 and 2020-005, respectively, in addition to $6.6 million in fines and the suspension of IPI's casino gaming license.  ECF No. 38 at 6.

### 3.     The State Court Proceedings

On November 5, 2021, IPI appealed the Commission Order No. 2021-002 to the Commonwealth of the Northern Mariana Islands Superior Court. ECF No. 38 at 6.  IPI alleged the Order was "arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and unwarranted by the facts."  ECF No. 38 at 6. On March 15, 2022, the Superior Court affirmed the Order.  ECF No. 38 at 7.

The Superior Court found that IPI "offered no defense and did not contest any of the claims alleged in Enforcement Actions 2020-003, 2020-004, or 2020-005." *Commonwealth Casino Comm'n v. Imperial Pac. Int'l*, 2023 MP 8 ⁋ 50 (citing *Commonwealth Casino Comm'n v. Imperial Pac. Int'l (CNMI), LLC*, No. 21-0173 (NMI Super. Ct. Mar. 15, 2022) (Order Affirming the Casino Commission's Suspension of Petitioner's Exclusive Casino License and Monetary Penalties at 25).

On April 11, 2022, IPI appealed the Superior Court's order to the CNMI Supreme Court. ECF No. 38 at 7. The Court affirmed in part and reversed in part. ECF No. 38 at 7.

As to Enforcement Action 2020-001 (Community Benefit Fund contributions due in 2018 and 2019), the Court found that "CCC erred in finding IPI liable for the violations contained in Complaint 001 and imposing sanctions." *Commonwealth Casino Comm'n v. Imperial Pac. Int'l*, 2023 MP 8 ⁋ 33.

As to Enforcement Action 2020-002, the Court held that while "4 CMC § 2306 does not expressly contain a force majeure clause," the clause is applicable to the Annual License Fee because the Commonwealth Lottery Commission was granted statutory authority to negotiate the terms of the gaming license, which "Clause 5 of the CLA" represents. *Commonwealth Casino Comm'n v. Imperial Pac. Int'l*, 2023 MP 8 ⁋ 36.

As to Enforcement Actions 2020-003, 2020-004, and 2020-005, the Court affirmed both the CCC's finding under Commission Order No. 2021-002 and the Superior Court's finding that IPI "offered no defense" to the claims alleged under the enforcement actions. *Commonwealth Casino Comm'n v. Imperial Pac. Int'l*, 2023 MP 8 ⁋ 50. The Court also affirmed the CCC's sanctions under Commission Order No. 2021-002 as to the enforcement actions, reasoning that IPI admitted to the violations at the administrative hearing and "stated multiple times that it was not raising any defense, and even asked to be held accountable." *Commonwealth Casino Comm'n v. Imperial Pac. Int'l*, 2023 MP 8 ⁋ 62.

Notably, the Court held that the Annual License Fees for 2020 and the following years have accrued and continue to accrue, and CCC must now decide on a reasonable deadline for IPI to pay them. *Commonwealth Casino Comm'n v. Imperial Pac*. Int'l, 2023 MP 8 ⁋ 64. With respect sanctions the Order imposed on IPI involving Enforcement Actions 2020-003, 2020-004, and

2020-005, the Court affirmed—finding that "substantial evidence supports them because IPI admitted to the violations and offered no defense." *Commonwealth Casino Comm'n v. Imperial Pac. Int'l*, 2023 MP 8 ⁋ 62, 64.

### III. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required under the rule, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is insufficient for a pleading to offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). 550 U.S., at 555, 127 S.Ct. 1955. The same goes for "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, 127 S.Ct. 1955.

A complaint must state a "plausible claim for relief" to "survive[] a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See also Id*. ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

*"*The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Dismissal under Federal Rule of Civil Procedure 12(b)(6) on the basis of res judicata is appropriate when "the defense raises no disputed issues of fact." *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). ("The defendants raised *res judicata* in their motion to dismiss under Rule 12(b)(6), rather than in a responsive pleading. Ordinarily affirmative defenses may not be raised by motion to dismiss…but this is not true when, as here, the defense raises no disputed issues of fact.").

In deciding Defendants' motion to dismiss, the court is not confined to the allegations in the complaint where the complaint is "accompanied by attached documents," and which the court may consider as to whether "the plaintiff can prove any set of facts in support of the claim." *Roth v. Garcia Marquez,* 942 F.2d 617, 625 n. 1(1991) (quoting *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987)). See also *Murillo v. Taylor*, No. 14CV876-WQH WVG, 2015 WL 4488060, at *14 (S.D. Cal. July 22, 2015) ("If a complaint is accompanied by attached documents, the court is not limited by the allegations contained in the complaint. These documents are part of the complaint and may be considered in determining whether the plaintiff can prove any set of facts in support of the claim."). Citing *Roth v. Garcia Marquez,* 942 F.2d 617, 625 n. 1(1991) (quoting *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987)).

A plaintiff's conclusions "are not entitled to deference" where they are "undermined" by "external, albeit integral or incorporated, sources. *Murillo v. Taylor*, No. 14CV876-WQH WVG, 2015 WL 4488060, at *14 (S.D. Cal. July 22, 2015).

### IV. ARGUMENT

**1. Res Judicata Precludes the Instant Suit**

Federal courts generally follow the doctrines of res judicata and collateral estoppel. *Allen v. McCurry*, 449 U.S. 90, 94–96 (1980). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 414, 66 L. Ed. 2d 308 (1980) (citing *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876). Res judicata also precludes "litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (citing *Chicot County Drainage Dist. v. Baxter State Bank,* 308 U.S. 371, 378, 60 S.Ct. 317, 320, 84 L.Ed. 329 (1940)).

Res judicata applies when "there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.*"* *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713–14 (9th Cir. 2001). The term "privities" is broadly construed—provided that where "new parties represent the same interests," there is privity between the parties. *See Murillo v. Taylor*, No. 14CV876-WQH WVG, 2015 WL 4488060, at *18 (S.D. Cal. July 22, 2015). There is an identity of claims where the claims "arise from the same transaction" or where the claims "involve a common nucleus of operative facts." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595, 206 L. Ed. 2d 893 (2020).

Res judicata is applicable to suits under § 1983. *Migra v. Warren City Sch. Dist. Bd. of Educ*, 465 U.S. 75, 84 (1984). *E.g.*, *Allen v. McCurry*, 449 U.S. 90, 95, 101 S. Ct. 411, 415, 66 L. Ed. 2d 308 (1980) ("The federal courts generally have also consistently accorded preclusive effect to issues decided by state courts."); *Scoggin v. Schrunk*, 522 F.2d 436, 437 (9th Cir. 1975) (Holding that Res Judicata bars the litigation of "federal constitution" claims based on an asserted causes of action that were the "subject of a state action, and where the parties are the same,"—irrespective of whether the causes of action were "asserted in state court or not"—"for the reason that the state judgment on the merits serves not only to bar every claim that was raised in support of the granting of the desired relief."

Federal courts look to the res judicata rules of the state from which the original judgment was rendered to determine whether the claim is "entitled to the same preclusive effect in a subsequent federal § 1983 suit" in the state court. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 83 (1984). The CNMI Supreme Court described the res judicata rule:

> The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound *"not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose." Cromwell v. County of Sac*, 94 U.S. 351, 352 [24 L.Ed 195]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment.

ECF No. 36 at 9 (citing *Santos v. Santos*, No. 90-041, 1992 WL 135876, at *48-49 (N. Mar. I. Mar. 25, 1992) (emphasis added) (citing *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948)).

Here, the asserted causes of action arise from the same transaction—Commission Order No. 2021-002. As stated in the First Amended Complain, IPI appealed Commission Order No. 2021-002 to the CNMI Superior Court. ECF No. 38 at 6-7. After the Superior Court affirmed the Order, IPI appealed to the Supreme Court. ECF No. 38 at 7. There is also privity or identity

10

between the parties Defendants Edward Guerrero, Rafael Demapan, Mariano Taitano, Martin Mendiola, and Ramon Dela Cruz are members of the Commonwealth Casino Commission.

Furthermore, each of the asserted causes of actions raises claims that were or could have been raised in the state-court proceedings.  For example, with respect to the First Cause of Action, IPI challenges the annual regulatory fee statute 4 CMC § 2309(a); the minimum capital requirements pursuant to CCC Regulations codified under NMIAC § 175-10.1; and the CCC's statutory authority to interpret and adjudicate disputes arising from the CLA pursuant to 4 CMC § 2314. ECF No. 38 at 15-17.  The cited authorities were the among the authorities the CCC relied upon in issuing Commission Order No. 2021-002.    For example, the CCC found that IPI violated 4 CMC § 2306(b) by failing to pay, for more than twelve hours, the annual license fee when due on August 12, 2020.  ECF No. 38-3 at 3.  IPI proffers that application of the statute during the Covid-19 period constituted an "unconstitutional impairment of its contractual right under the force majeure clause" of the Casino License Agreement."  ECF No. 38 at 16.  Yet, IPI raised the force majeure issue in its appeals from the Commission Order No. 2021-002 to the Superior Court and Supreme Court, arguing that CCC erred in ruling that force majeure defense is inapplicable to IPI's failure to pay the Annual License Fee during the force majeure event. *Commonwealth Casino Comm'n v. Imperial Pac. Int'l*, 2023 MP 8 ¶ 46 ("While IPI would like us to find that the COVID-19 pandemic excused its obligation to pay outright, that would contradict the plain language of the CLA, which excuses IPI's default during a force majeure event, but not its obligation to pay.").

Furthermore, the First Amended Complaint points to no other Commonwealth Casino Commission order from which IPI seeks relief.  There is simply no question that IPI—after having its day in court—wishes to relitigate the claims raised or claims it could have raised in

11

the prior state-court proceedings. In fact IPI admits as much in wishing for the court to "order Defendants to vacate, nullify any and all adverse administrative decisions against IPI that failed to comply with the force majeure clause of the CLA, including but not limited to Commission Order No. 2021-002." ECF No. 38 at 23.

Res Judicata, of course, preserves the "finality of orders and judgments" where the parties "have had a full and fair opportunity to litigate their claims." *Friends of Gualala River v. Gualala Redwood Timber, LLC*, 552 F. Supp. 3d 924, 933 (N.D. Cal. 2021). Courts have reasoned that such parties "should not be" allowed to "undermine the finality of judicial proceedings by raising" challenges in a subsequent proceeding "arising from the same material facts" that existed "at the time of prior judgment or order." *Id.*

There is no reason to believe that IPI was prevented or did not have a fair opportunity to litigate the issues or claims under each of the asserted causes of actions or raise affirmative defenses. IPI did not dispute and did not raise any affirmative defense for Enforcement Actions 2020-003, 2020-004, and 2020-005. ECF No. 3-3 at 4. In fact, IPI raised due process claims on other grounds. *Commonwealth Casino Comm'n v. Imperial Pac. Int'l*, 2023 MP 8 ¶ 63. Furthermore, IPI fails to allege that it was deprived of an opportunity to litigate the causes of action in the prior state-court proceeding. Indeed, IPI already had its "day in court." Further

**2. Defendants Are not persons within the meaning of 42 U.S.C. § 1983**

The above-captioned suit against the Defendants in their official capacity must be dismissed because persons sued in their official capacities are not persons within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). Government official sued in their official capacities is essentially a suit against the governmental entity. *Id.* (Holding that "a suit against a state official in his or her

12

official capacity is not a suit against the official but rather is a suit against the official's office."). Further, section 1983 does not allow a person to file suits against the state given that such suits are not permitted unless the state waives its Eleventh Amendment immunity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309, 105 L. Ed. 2d 45 (1989). .

Accordingly, the Defendants sued in their official capacities is essentially a suit against the state and because the state is not a person within the meaning of section 1983, each of the suit against the Defendants in their official capacities is barred by the Eleventh Amendment and must be dismissed. Defendant CCC must also be dismissed from this suit.

Whether a Commonwealth entity can be sued in federal court depends on Commonwealth law. *Norita v. Commonwealth of the Northern Mariana Islands Department of Public Safety* et al., WL 150875 at *2 (D. N. Mar. I. Jan.10, 2019). Id. ("The capacity of a governmental entity to be sued in federal court is determined by the law of the state where the district court is located.") (citing Fed. R. Civ. P. 17(b)).  The Commonwealth law does not allow Defendant CCC to be sued in federal court.  And while the Commonwealth waived its sovereign immunity with respect to certain claims, it does not consent to be sued upon those claims in federal court. 7 CMC § 2251. The Commonwealth also granted the Commonwealth Trial Court "exclusive original jurisdiction" to hear them. *Id*.   Thus the CCC must also be dismissed from this suit.

## V.   CONCLUSION

For the foregoing reasons, the court should dismiss this suit with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

                          OFFICE OF THE ATTORNEY GENERAL
                          EDWARD MANIBUSAN
                          Attorney General

Date:  April 25, 2024                    /s/ Carl Dela Cruz
                                         Carl F. Dela Cruz (F0525)
                                         Assistant Attorney General
                                         Attorney for Defendants
                                         Commonwealth Casino Commission;
                                         Edward C. Deleon Guerrero;
                                         Rafael S. Demapan;
                                         Mariano Taitano;
                                         Martin Mendiola; and
                                         Ramon M. Dela Cruz