Stephen J. Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950

Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
*Pro Hac Vice*
*Attorneys for Plaintiffs IPI (CNMI) LLC*
*Best Sunshine International Ltd*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| Imperial Pacific International (CNMI) LLC, Best Sunshine International Ltd (BVI); | Case No. 1:24-cv-00001 |
|---|---|
| Plaintiffs, | **[PROPOSED] SECOND AMENDED COMPLAINT FOR** |
| Vs. | |
| Commonwealth of the Northern Mariana Islands, Commonwealth Casino Commission, CNMI Governor Arnold Palacios, in his official and personal capacities; Edward C. Deleon Guerrero, Chairman of CCC, in his official and personal capacities; Rafael S. Demapan, Vice Chairman of CCC, in his official and personal capacities; Mariano Taitano, Commissioner of CCC, in his official and personal capacities; Martin Mendiola, a former Commissioner of CCC, in his personal capacity; Ramon M. Dela Cruz, a former Commissioner of CCC, in his personal capacity, Does 1-10, Inclusive; | **1. UNCONSTITUTIONAL IMPAIRMENT OF CONTRACT AND VIOLATION OF THE CONTRACTS CLAUSE OF THE U.S CONSTITUTION;**<br>**2. VIOLATION OF THE DUE PROCESS CLAUSES OF THE U.S. CONSTITUTION;**<br><br>**DEMAND FOR JURY TRIAL** |
| Defendants. | |

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

**MICHAEL CHEN LAW OFFICE**
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

1.     Plaintiffs, Imperial Pacific International (CNMI), LLC; (hereinafter referred to as "IPI"), and Best Sunshine International Ltd (BVI). (hereinafter referred to as "Best Sunshine") by and through their undersigned counsels, as and for its complaint against Commonwealth of the Northern Mariana Islands ("CNMI"), Commonwealth Casino Commission ("CCC"), Arnold Palacios, Governor of CNMI, in his official and personal capacities; Edward C. Deleon Guerrero, Chairman of CCC, in his official and personal capacities; Rafael S. Demapan, Vice Chairman of CCC, in his official and personal capacities; Mariano Taitano, Commissioner of CCC, in his official and personal capacities; Martin Mendiola, a former Commissioner of CCC, in his personal capacity; Ramon M. Dela Cruz, a former Commissioner of CCC, in his personal capacity, and Does 1-10, inclusive; alleges as follows:

## JURISDICTION

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), and 42 U.S.C. § 1983.

## VENUE

3.     Venue is proper in the federal district court for the Northern Mariana Islands in that Defendants reside and do business in this District, including business related to the claims asserted herein, 28 U.S.C. Section 1391 (b) (1), the events on which the claims are based occurred in this District, 28 U.S.C. Section 1391(b) (2), and the property which is the subject of this action is located in this District, 28 U.S.C. Section 1391 (b) (2).

## IDENTIFICATION OF PARTIES

4.  Plaintiff IPI is a limited liability company organized under the law of the Commonwealth of the Northern Mariana Islands, with its principal place of business at PMB 895 Box 10001, Saipan, 96950, Northern Mariana Islands. Its sole member is Best Sunshine International Ltd. (BVI).

5. Plaintiff Best Sunshine is a corporation organized under the law of the British Virgin Islands, with its principal place of business at P.O Box 957. Offshore Incorporation Centre, Road Town, Tortola, British Virgin Islands. Best Sunshine is a wholly owned subsidiary of Imperial Pacific International Holdings Ltd., a publicly traded company on the Hong Kong Stock Exchange and was incorporated under the laws of Hong Kong, China.

6. Defendant COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS ("CNMI") is a government entity lawfully created by the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America.

7. Defendant Commonwealth Casino Commission ("CCC") is the casino gaming regulatory agency of the Commonwealth of the Northern Mariana Islands ("CNMI") government that oversees and regulates the activities of the exclusive casino licensee operating in Saipan. CCC was established pursuant to 4 CMC Section 2313 under PL 18-56 on July 11, 2014. Under 4 CMC Section 2414 (q), CCC has the capacity to "sue civilly."

8. Defendant Arnold Palacios ("Palacios") is a United States citizen, residing in Saipan, CNMI. Defendant Palacios is the Governor of the CNMI. Defendant Palacios is being sued in his official and personal capacities.

9. Defendant Edward C. Deleon Guerrero ("Guerrero"), who is a United States citizen, residing in Saipan, CNMI. Defendant Guerrero is a commissioner and Chairman of CCC. Defendant Guerrero is being sued in his official and personall capacities.

10. Defendant Rafael S. Demapan ("Demapan"), who is a United States citizen, residing in Saipan, CNMI. Defendant Demapan is a commissioner and Vice Chairman of CCC. Defendant Demapan is being sued in his official and personal capacities.

11. Defendant Mariano Taitano ("Taitano"), who is a United States citizen, residing in Saipan, CNMI. Defendant Taitano is a commissioner of CCC. Defendant Taitano is being sued in his official and personal capacities.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

**MICHAEL CHEN LAW OFFICE**
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

12.     Defendant Martin Mendiola, who is a United States citizen, residing in Saipan, CNMI. Defendant Mendiola is a former commissioner of CCC. Defendant Mendiola is being sued in his personal capacity.

13.     Defendant Ramon M. Dela Cruz, who is a United States citizen, residing in Saipan, CNMI. Defendant Cruz is a former commissioner of CCC. Defendant Cruz is being sued in his personal capacity.

14.     The true names and capacities of Defendants Does 1-10, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each defendant designated herein as a fictitiously named defendant is in some manner responsible for the events and happenings herein referred to, and caused the damage to the Plaintiffs as herein alleged. When Plaintiffs ascertain the true names and capacities of Does 1 -10, inclusive, it will ask leave of this Court to amend its Complaint by setting forth the same.

## FACTUAL ALLEGATIONS

15.     In March 2014, the CNMI announced that it would hold a competitive bidding process for the first ever casino license to be issued by the CNMI. On July 8, 2014, the CNMI enacted Public Law 18-56 to allow for the issuance of an exclusive gaming license for the operation of a Casino in the Commonwealth.

16.     The CNMI decided to issue such a license because it "was faced with significant economic challenges including a significant reduction of government revenues, unfunded government retirement obligations, reduction of the economy, and lack of economic opportunity for residents" and it determined that "the issuance of an exclusive casino license on the island of Saipan with specific development requires that are meant to provide immediate economic stimulus and long-term benefits to the community" was necessary to address the economic challenges facing the CNMI. **Exhibit A** (CLA). The CNMI's authority to issue the license derived from Public Law 18-56.

17.     The CNMI looked abroad to solve its economic woes. It did so by "publicly solicit[ing] proposals from qualified proposers and establish[ing] a selection procedure that properly and carefully evaluate these proposals based on the promised benefits to the community[.]" **Exh. A**. Only two proposals were submitted, both by foreign companies.

18.     The first proposal was submitted by Best Sunshine International Limited (BVI). As noted above Best Sunshine is incorporated in the British Virginia Islands. It is wholly owned by Imperial Pacific International Holdings Ltd., a Chinese investment holding company listed on the Hong Kong stock exchange. The second proposal was submitted by Marianas Stars Entertainment, another Hong Kong based investment group.

19.     Of the two proposals, the CNMI chose the proposal submitted by Best Sunshine as the proposal that best responded to the CNMI's needs and "[Best Sunshine] were chosen to be the licensee." **Exh. A**. The CNMI was aware that all of the funds for the development project would ultimately come from Imperial Pacific International Holdings Ltd. through Best Sunshine.

20.     CNMI recognized that "the granting of a long-term exclusive casino license provide[d] an extremely valuable significant government benefit to [Best Sunshine]. **Exh. A**. Although CMNI chose Best Sunshine "to be the licensee," it determined that the license awarded to Best Sunshine should "be held by a Commonwealth entity and required Best Sunshine to form a domestic entity, [IPI], which shall be the designated licensee ("Licensee") and who shall assume all promises obligations and agreements previously made [by] Best Sunshine International Limited in this matter."

21.     Accordingly, Best Sunshine formed IPI to enter into the CLA with CNMI. IPI, through one of its directors, Ms. Cai Ling Li, executed the CLA on August 12th, 2014. The Lottery Commission executed the CLA for the CNMI. The Acting Attorney General of the CNMI, Mr. Gilbert Birnbrich, signed the CLA as well.

22.     Paragraph 1 of the CLA expressly provided that "This License Agreement is intended to implement and supplement the terms of the Act." Paragraph 1 defined the "Act" as Public Law 18-56, which is the law that empowered the CNMI to issue a casino license. The

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

CNMI and IPI made the Act a part of the CLA through inclusion of a copy of the Act as Attachment A. Section 7 of the Act empowers the CCC "to promulgate such rules and regulations ... to ensure the suitability and compliance with the . . . contractual obligations of owners, operators and employees of casinos."

23.     In recognition of the fact that it was Best Sunshine and Imperial Pacific International Holdings Ltd. who ultimately stood behind this development project, the CNMI and IPI also included the "Casino License Application of Best Sunshine International Limited" as Attachment E to the CLA and the "Business Plan of Best Sunshine International Limited" as Attachment F to the CLA.

24.     Paragraph 2 of the CLA provided that "[u]pon issuance of the Casino License the authority of the Lottery Commission over this License shall cease and the Office of the Governor shall have authority for enforcement of the terms and conditions of this License Agreement except for enforcement of the terms and conditions this License Agreement except for the elements specifically identified for control by the Casino Commission, as identified in section 3 below. **Exh. A**. Section 3 identifies the "Commonwealth Casino Commission" (or "CCC") as a commission established pursuant to the Act that "shall have authority for the approval of all casino operations and gaming activities conducted under the Casino License... The authority of the Casino Commission includes the ability to suspend or revoke the Casino License, in accordance with the requirements of the Commonwealth Administrative Procedure Act, for violation of the Rules." In essence, the CCC replaced the Lottery Commission as the government entity charged with authority over the License and the CLA as far as the gaming operation of the licensee is concerned.

25.     Under Article 25 of the CLA, "Licensee shall not be in default for any failure or delay in the performance due under this License Agreement if such failure or delay is due to causes beyond reasonable control including, but not limited to: … ("Force Majeure Event"). Invocation of force majeure by the Licensee shall not excuse any payment obligations to the Commonwealth where the grounds and or purposes for such payments have already accrued."

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

26. Under the CLA, among other obligations, IPI would pay $20 million annually to a Community Benefit Fund. IPI dutifully paid the $20 million contribution to the Community Benefit Fund each year prior to 2018.

27. Under the CLA, among other obligations, IPI would pay a fifteen million dollars ($15,000.000.00) annual Casino License Fee. IPI dutifully paid the annual license fee each year between 2014 and 2019.

28. On July 11, 2014, CNMI promulgated Public Law 18-56, which created CCC. Public Law 18-56 granted certain powers and duties to CCC and it was codified as 4 CMC § 2314.

29. Under 4 CMC § 2314, CCC assumed judicial functions and has jurisdiction over certain cases and controversies, including cases involving the interpretation and adjudication of the CLA.

30. On December 4, 2015, CNMI promulgated Public Law 19-24, which imposes a new obligation on IPI to pay CCC an annual "Casino Regulatory Fee" of three million dollars ($3,000.000.00) on or before October 1 of each year beginning October 1, 2015 ("Regulatory Fee Statute"). That fee is due to CCC "regardless of the actual costs incurred by the [CCC]." 4 C.M.C. Section 2309 (a). IPI paid the Casino Regulatory Fee each year from 2015 through 2019.

31. By the operation of PL 19-24, the funding of CCC is almost completely originated from the payment of the annual regulatory fee by IPI and its affiliates. See **Exhibit B.**

32. On or about October 28, 2016, CCC issued Commonwealth Casino Commission Rules and Regulation, which is codified as NMIAC § 175 -10.1.

33. Due to a number of force majeure events and the suspension of the casino license by CCC, IPI has been unable to make the payment for the annual regulatory fee, annual license fees and Community Benefit Fund contribution for a few years.

34. Pursuant to NMIAC § 175 -10.1-601, failure to comply with the requirements set forth in the CLA is an unsuitable method of operation and a major offense subject to penalty, including but not limited to license revocation.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

35.     Pursuant to NMIAC § 175 -10.1-105, CCC has the "sole authority to amend or revoke the license granted to" IPI for "operating in an unsuitable manner due to violations of law, breaches of the license or violations of the regulations promulgated by the Commission, as well as any other reason for revocation or termination stated in the License."

## 2020 CCC ENFORCEMENT ACTIONS

36.     The Executive Director of the CCC initiated five complaints against IPI in 2020. Later consolidated into Enforcement Action 2020-001 (encompassing actions 2020-001 and 2020-002) and Enforcement Action 2020-003 (encompassing actions 2020-003, 2020-004 and 2020-005), as follows:

37.     Complaint 2020-001 included claims for violations of the CLA based on IPI's failure to make Community Benefit Contributions;

38.     Compliant 2020-002 included claims for violations of Commonwealth law and the CLA based on IPTs failure to pay the Annual License Fee for 2020;

39.     Complaint 2020-003 included claims for violation of a prior CCC order (2020-003) requiring IPI to maintain at least $4.2 million in cash or cash equivalents in a bank in the CNMI or United States and for IPTs executives to detail the means by which they would comply with that order;

40.     Complaint 2020-004 included claims for violations of a prior CCC order (2020-004) requiring IPI to pay accounts payable over 89 days old and to certify compliance with that order;

41.     Complaint 2020-005 included claims for violation of Commonwealth law and the CLA for IPTs failure to pay the Casino Regulatory Fee of $3,150,000.00 for 2020.

42.     On April 22, 2021, the CCC held a hearing on these enforcement actions and issued Order No: 2021-002. See **Exhibit C**. In the Order, CCC assumed the jurisdiction to interpret and adjudicate the claims filed by the Executive Director of CCC, and made the finding that IPI violated the CLA.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

43.     The Order suspended IPI's gaming license, ordering IPI to pay a total of $18.65 million that it found was due under the CLA's Annual License Fee and Annual Regulatory Fee, and imposing a total of $6.6 million in penalties against IPI. The Order also required IPI to comply with previous Orders issued by the CCC.

44.     On May 21, 2021, IPI appealed the CCC's Order in the Superior Court for the Commonwealth of the Northern Mariana Islands, arguing that the CCC's Order was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and unwarranted by the facts. IPI's primary argument was that the CCC failed to recognize the doctrine of force majeure despite the presence of the force majeure provision in the CLA and the clear, severe impact of a force majeure event, the COVID-19 pandemic, on IPI's ability to comply with its obligations.

45.     On March 15, 2022, the Superior Court of CNMI affirmed the CCC's order, applying a very deferential standard of review.

46.     On April 11, 2022, IPI appealed the Order issued by the Superior Court of CNMI to the Supreme Court of CNMI.

47.     On August 25, 2023, CNMI Supreme Court affirmed the trial court's ruling in part and reversed in part and asked CCC to "decide on a reasonable deadline for IPI to pay" the annual license fees for 2020 and the following years.

48.     After the ruling of CNMI Supreme Court was published, IPI informed Defendant CCC, as an agent for CNMI, that it disputed it was obligated to pay the annual license fees after its casino license was suspended by CCC in April 2021.

49.     After the ruling of CNMI Supreme Court was published, IPI informed Defendant CCC, as an agent for CNMI, that it disputed it was obligated to pay the annual regulatory fees after its casino license was suspended by CCC in April 2021.

50.     On November 30, 2023, CCC issued a "Notice of Payment Deadline" and determined that a "reasonable deadline" for IPI to pay the $62,010.280.00 casino license fees for

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com  |Call: 626.249.2002x

year 2020 to 2023 at $15,502.570 annually is "30 days from receipt of this notice." See **Exhibit D.**

51. Under the CLA, Article 2 "Authority for Enforcement of this License Agreement" states that the Office of the Governor shall have authority for enforcement of the terms and conditions of the CLA.

52. Under the CLA, Article 30 "Disputes" states that all disagreements between the Parties as to the terms or requirements of CLA shall be resolved through a defined nine steps dispute resolution process, including Presentation of Dispute, Meet and Confer, Non-binding yet arbitration, and Litigation.

53. IPI has a bona fide argument that the annual license fee accrued during the period when its business was shut down due to covid-19 as force majeure should be excused rather than delayed.

54. IPI has a bona fide argument that 30 days would be not a reasonable time to make the annual license fee payment, if it has such obligations to pay.

55. IPI has a bond fide argument that CCC has no jurisdiction to resolve dispute between IPI and CNMI with respect to whether annual license fee accrued during the period when its business was shut down due to covid-19 as force majeure should be excused rather than delayed.

56. IPI has a bond fide argument that IPI did not waive its right under the CLA to have dispute over the annual license fee payment resolved through the bargained for dispute resolution process outlined in the CLA.

57. IPI has a bona fide argument that the annual license fee accrued during the period when its business was shut down due to suspension by CCC on April 22, 2021, should be excused, and any dispute thereof should be resolved through the bargained for dispute resolution process outlined in the CLA.

58. Under the CLA, CCC may not enforce the terms of the CLA when it is not related to the gaming operation, therefore it is beyond CCC's authority to demand IPI to make payment

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

for the annual license fees and threat to revoke IPI's license based upon the unresolved dispute related to annual license fee payment.

## 2021 ENFORCEMENT ACTIONS

59.     On or about September 17, 2021, Mr. Andrew Yeom, in his official capacity as Executive Director of CCC, filed five complaints against IPI with CCC.

60.     Complaint No. 2021-001 alleges breach of the CLA by IPI for its failure to pay the annual license fee for year 2020 under the CLA. **See Exhibit E.**

61.     Complaint No. 2021-002 alleges that IPI failed to maintain minimum capital requirements set by CCC. **See Exhibit F.**

**62.**     Complaint No. 2021-003 alleges that IPI failed to pay the annual regulatory fee for year 2020. See **Exhibit G.**

**63.**     Complaint No. 2021-004 alleges breach of the CLA by IPI for its failure to pay the annual license fee for year 2021 under the CLA. **See Exhibit H.**

**64.**     Complaint No. 2021-005 alleges that IPI failed to pay the annual regulatory fee for year 2021. **See Exhibit I.**

65.     Proceedings for Complaints No. 2021-001 to 2021-005 was stayed since May 23, 2022, because the Court issued a TRO. See ECF No. 11 of Case No. 1:22-cv-00007.

66.     The stay was later lifted due to the reversal by the United States Court of Appeals for the Ninth Circuit. See ECF No. 38-1 of Case 22-16630.

67.     For case 22-16630, IPI filed a petition for a writ of certiorari with the U.S. Supreme Court on November 20, 2023, with a case number of 23-522. See ECF No. 59 of Case No. 1:22-cv-00007. U.S. Supreme Court did not grant the petition for a writ of certiorari.

## 2023 ENFORCEMENT ACTIONS

68.     On or about December 13, 2023, Mr. Andrew Yeom, in his official capacity as Executive Director of CCC filed a motion with CCC and requested CCC to issue an order setting a Revocation Hearing for Complaints No. 2021-002 and 2021-003. See **Exhibit J.**

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

69.     On December 27, 2023, IPI filed an action before this Court against CCC, with Case No. 1:23-cv-00016.

### 2024 ENFORCEMENT ACTIONS

70.     On January 26, 2024, IPI and CCC stipulated to dismiss the case No. 1:23-cv-00016 without prejudice.

71.     Since January 26, 2024, IPI and CCC engaged in active settlement negotiation and stipulated to postpone the revocation hearing till February 28, 2024. See **Exhibit K.**

72.     However, despite these ongoing settlement discussions, CCC proceeded with the revocation hearing scheduled for February 28, 2024.

73.     On February 23, 2024, IPI filed the instant action, 1:24-cv-00001, (ECF No. 1) before this Court. On February 26, 2024, IPI filed an emergency motion for TRO (ECF No. 2).

74.     On February 27, 2024, the Court conducted a hearing where counsels for IPI and Assistant Attorney General Keisha Blaise of CNMI, and John Brendan Layde, counsel for the Governor, appeared at the hearing. At the conclusion of the hearing, the court denied the motion for TRO and issued a Memorandum Decision on February 29, 2024. ECF No. 9.

75.     After the motion for TRO was denied, the revocation hearing started on February 28, 2024, and stretched three days from February 28, 2024, to March 1, 2024.

76.     At the revocation hearing, Executive Director of CCC, Mr. Andrew Yeom, was represented by Assistant Attorney General of CNMI, Keisha Blaise and Alison Nelson; IPI was represented by Michael Chen. The presiding hearing commissioner was Vice Chairman Rafael S. Demapan, who was also the Acting Chairman of CCC due to the absence of Chairman Guerrero from the island. In addition to Vice/Acting Chairman Demapan, the other three commissioners, Commissioners Cruz, Taitano and Mendiola all functioned as the hearing commissioners at the revocation hearing. Chairman Guerrero participated at the revocation hearing remotely as a private citizen at the hearing.

77.     Media was permitted to attend the hearing throughout and a number of news articles about the proceeding were posted online and in print in CNMI.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com  |Call: 626.249.2002x

78.     During the revocation hearing, attorney Michael Chen made four oral motions to disqualify the four hearing commissioners and gave the following reasons for the motion for disqualifications:

- All four hearing commissioners are paid by CCC, which is financed exclusively by the regulatory fee, a major defense by IPI is the constitutionality of the underlying regulatory fee statue and regulations, it would be "professional suicide" for the commissioners to rule that the underlying regulatory fee statue is unconstitutional.

- Based upon the testimony produced at the hearing, all five commissioners, through the official monthly CCC public meetings and private communication with the executive director of CCC, had prior knowledge about the underlying claims, i.e. the alleged failure of IPI to maintain the minimum capital requirement and the failure to pay the regulatory fees in year 2020.

- All five commissioners[1]  were involved in issuing Commission Orders 2020-003 and 2021-002. The current complaints before the Commission are seeking to enforce Commission Orders 2020-003 and 2021-002. The Commissioners are asked to self-affirm decisions they made earlier.

- The disqualification of the five commissioners as the hearing commissioners would not cripple the Commission, as provided by the regulation and cited by the Memorandum Decision for the TRO, (which became available in the midst of the revocation hearing), the commissioners could appoint a non-commissioner hearing officer to conduct the revocation hearing, which is a quasi-judicial proceeding.

79.     The oral motions to disqualify the commissioners were brought at least three times, once when the grounds for disqualification became clear, once at the closing argument for each

---

[1]  Attorney Chen misspoke at the hearing about the involvement of Commissioner Martin Mendiola of the two commission orders. Commissioner Mendiola was not involved in Commission Order 2020-003 and 2021-002.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

complaint. Commissioners did not make a ruling on the motions to disqualify during the proceeding and continued to proceed with the revocation hearing until it was adjourned on March 1, 2024.

80.     There were a garden variety of irregularities took place at the hearing. Here are just a few examples:



Executive Director of CCC conversed ex parte with the hearing commissioner.

**MICHAEL CHEN LAW OFFICE**
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x



Hearing Commissioner was browsing his phone extensively during the proceeding.

81.     After the adjournment of the revocation hearing, on March 6, 2024, Governor Arnold I. Palacios caused to publish an article on local newspapers. In the article, Mr. Palacios made remarks to contradict the testimony of IPI's witness, Mr. Howyo Chi and put the credibility of Chi into question. See **Exhibit L.**

82.     On March 25, 2024, IPI learned that CCC announced that it planned to conduct a deliberation and voting on the casino license revocation hearing on April 2, 2024.

83.     On March 27, 2024, IPI filed a second Emergency Motion for a TRO. ECF No. 24.

84.     On March 28, 2024, IPI learned from CCC that CCC postponed the deliberation and voting till April 9, 2024.

85.     On April 5, 2024, the Court denied the second Emergency Motion for TRO. ECF No. 36.

86.     On April 8, 2024, IPI filed a motion to disqualify before CCC, and a motion to ask CCC to declare the Feb 2024 Revocation Hearing invalid. See **Exhibit M.** The motion is currently pending before CCC.

## APPARENT AND POTENTIAL CONFLICT OF INTERESTS

87.     The $3M annual regulatory fee paid by IPI to CCC is the lion's share of CCC's revenue. Here is a table of the revenue of the Commission from year 2018 to 2022:

|  | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|
| Casino Regulatory Fees | $3,000,000 | $3,000,000 | $3,000,000 | $0 | $0 |
| Other Regulatory Fees | $151,242 | $100,328 | $106,500 | $20,214 | $15,000 |
| General Fund | $0 | $1 | $1 | $1 | $1 |

ECF No. 24-10 Exhibit J. Commission Annual Reports.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

88.     It is clear that the Commission cannot survive financially without the $3M annual license fee paid by IPI. It would be "professional suicide" for the Commissioners to be persuaded by IPI's argument that the $3M annual regulatory fee statute is unconstitutional.

89.     It is also clear that the legislative appropriation process has not worked very well for the Commission and the Commissioners when the annual regulatory fee is not paid.

90.     Based upon the reports filed by CCC, the board of commissioners were paid $313,774.00 in year 2018, $324,996.00 in year 2019, $316,871.00 in year 2020, $322,234.00 in year 2021, $272,461.00 in year 2022.

91.     Based upon information and belief, the Commissioners have not been paid for their services in year 2023 and 2024.

92.     Based upon information and belief, under the direction of Governor Palacios, in recent months, CNMI loaned certain money to CCC to cover its expenses, including payments to the Commissioners of CCC.

93.     Based upon information and belief, the revocation hearing is used as a leverage by Defendant CCC, to pressure IPI to pay the annual regulatory fees, because "Plaintiff could moot the revocation issues by simply remitting the owed amounts," as argued by CNMI. (ECF No. 27.)

**94.**     Based upon information and belief, Defendant CNMI and Defendant Palacios in his official and personal capacity colluded with CCC and its commissioners, to initiate and maintain the revocation proceeding against IPI and use CCC as the collection agent to collect the unpaid and disputed annual license fees by exercising the power to revoke as a threat.

**95.**     Based upon information and belief, Defendants CNMI and Palacios conspired with CCC and its commissioners to conduct the revocation hearing by refusing to allow the commissioners to recuse from the revocation hearing as the hearing and voting commissioners.

## CONSTITUTION AND STATUTORY GROUNDS

96.     The Contracts Clause of the United States Constitution (U.S. Const. Art. I. Section 10, cl. 1) prohibits any state from passing a "law impairing the obligation of contracts."

97.     Under the Due Process Clause of the Fourteenth Amendment to the U.S Constitution, the government shall not deprive any person of property, without due process of law, or deny to any person the equal protection of the laws.

98.     In 1975, the United States and the CNMI entered into the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant"), providing that the CNMI would have Commonwealth status, the Covenant was signed into law by the U.S. Congress in 1976 and fully implemented in November 1986.

99.     Under Section 501(a) of the Covenant, the Contracts Clause, the Due Process Clause of the United States Constitution are applicable to the CNMI.

100.    42 U.S.C. § 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."

**FIRST CAUSE OF ACTION**

**(Against All Defendants for Unconstitutional Impairment of the Contracts Clause of the United States Constitution)**

101.    Plaintiffs incorporate herein by this reference the allegations contained in the preceding paragraphs.

102.    Plaintiffs hereby seek declaratory, injunctive and equitable relief to prevent Defendants from violating and continuing to violate, the Contracts Clauses of the United States Constitution.

103.    CNMI and IPI had an existing contractual relationship that provides IPI with certain contractual and property rights to operate a casino in CNMI in exchange for substantial compensation to CNMI.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

104.    The annual regulatory fee statute, as applied to IPI during the Covid-19 period when its business was shut down with zero revenue for the sakes of public health and welfare, is an unconstitutional impairment of its contractual right under the force majeure clause within the CLA.

105.    IPI believes that the application of the annual regulatory fee statute, without giving due consideration to an apparent and significant force majeure event and the force majeure clause in the CLA, is unconstitutional because it deprives IPI of a bargained for right: right to be free from default for any failure or delay in paying the fees in the event of force majeure. The impairment is substantial.

106.    The requirement for IPI to maintain a minimum capital under applicable CCC regulations, as applied to IPI during the Covid-19 period where its business was shut down with zero revenue for the sakes of public health and welfare, would be an unconstitutional impairment of its contractual right under the force majeure clause within the CLA.

107.    IPI believes that the application of the minimum capital requirement, without giving due consideration to an apparent and significant force majeure event and the force majeure clause in the CLA, is unconstitutional because it deprives IPI of a bargained for right: right to be free from default for any failure or delay in the performance due [under statute and regulation enacted in accordance with the CLA] in the event of force majeure. The impairment is substantial.

108.    The annual regulatory fee statute, as applied to IPI during the period when its casino license was suspended, is an unconstitutional impairment of its contractual right because it frustrates the very purpose of the CLA for lack of consideration.

109.    IPI believes that the application of the demand for payment of the annual regulatory fee, accrued during the period when IPI's casino license was suspended is unconstitutional because it frustrates the very purpose of the CLA. The impairment is substantial.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

110.   CNMI and IPI had an existing contractual relationship that provides that the interpretation of the CLA and the resolution of disputes arising from the CLA shall be subject to a defined nine steps dispute resolution process under Article 30 of the CLA.

111.   The CLA grants the Governor's Office the right to enforce the terms and conditions of the CLA, the CLA also outlines the nine steps dispute resolution process to resolve disputes related to the terms of the CLA. The issue whether IPI is obligated to pay, rather than merely delay, the annual license fee payment accrued during the force majeure event is an issue should be resolved through the nine-step resolution process by interacting with the Governor's office.

112.   Under the direction and/or in collusion with CNMI and the Governor, CCC and its Commissioners demand the payment of the disputed annual license fees accrued during the force majeure event, for the benefits of CNMI, by exercising CCC's regulatory power to revoke, is an impairment of the CLA.

113.   The CLA grants the Governor's Office the right to enforce the terms and conditions of the CLA, the CLA also outlines the nine steps dispute resolution process to resolve disputes related to the terms of the CLA. The issue of when would be a "reasonable deadline" for IPI to pay the annal license fee accrued during the force majeure event is an issue should be resolved through the nine-step resolution process by interacting with the Governor's office.

114.   Under the direction and/or in collusion with CNMI and the Governor, CCC and its Commissioners demanded immediate payment from IPI for annual license fees accrued during the force majeure event for the benefits of CNMI, through exercising its regulatory power to revoke, is an impairment of the CLA.

115.   The CLA grants the Governor's Office the right to enforce the terms and conditions of the CLA, the CLA also outlines the nine steps dispute resolution process to resolve disputes related to the terms of the CLA. The issue whether IPI is obligated to pay the annual license fee payment accrued during the period when IPI's license was suspended is an issue should be resolved through the nine-step resolution process by interacting with the Governor's office.

116.     Under the direction and/or in collusion with CNMI and the Governor, CCC and its Commissioners attempted to collect the disputed annual license fees accrued during the period when IPI's license was suspended by CCC itself, for the benefits of CNMI, by exercising CCC's regulatory power to revoke, is an impairment of the CLA.

117.     Acting under color of Commonwealth law, Defendants, individually and collectively, have caused IPI to suffer a substantial deprivation of its contract rights under the CLA in violation of the U.S. Constitution.

118.     IPI has incurred and will continue to incur attorney's fees and costs, in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. Section 1988 (b).

**SECOND CAUSE OF ACTION**

**(42 U.S.C. §1983: Against all Defendants for Violation of the Due Process Clauses of the United States Constitution)**

119.     Plaintiffs incorporate herein by this reference the allegations contained in the preceding paragraphs.

120.     Plaintiffs hereby seek declaratory, injunctive and equitable relief to prevent Defendants from violating and continuing to violate the Due Process Clauses in the Fourteenth Amendment to the United States Constitution, made applicable to CNMI by the Section 501 (a) of the Covenant.

121.     The Due Process Clause requires that the decision to deprive a person of a protected interest be entrusted to an impartial decision maker. This rule applies to both criminal and civil cases. The Supreme Court of the United States has explained that the neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law and preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him.

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

122. The Statute, 4 CMC §2314, gives CCC broad and sometimes exclusive authority to interpret the CLA and adjudicate disputes arising from the CLA. The Statute also gives CCC broad policing power to regulate IPI as a casino operator. CCC is acting in a judicial or quasi-judicial capacity when interpreting the CLA and adjudicating disputes arising from the CLA. Defendant CCC and its commissioners have a direct, substantial, arguably personal, pecuniary interest in finding IPI in violation of the CLA, given the fact that CCC is funded exclusively by the regulatory fees that are ordered to be paid by IPI and its affiliates to CCC.

123. 4 CMC §2314 and NMIAC § 175 -10.1 deprive IPI of due process to have its claims and defenses heard before a disinterested and impartial arbiter as guaranteed by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

124. Acting through CCC, CCC commissioners have demonstrated such predisposed tenancy to find against IPI in the 2020 enforcement actions. For example:

- CCC determined that thirty days after notification is a "reasonable deadline" for IPI to come up with $62 million dollars after IPI was ordered to close its business since early 2020.

- Despite the apparent conflict of interests where CCC commissioners have personal, direct, and pecuniary interests in the outcome of the revocation hearing conducted between February 28, 2024 and March 1, 2024; despite an available procedural alternative by appointing an impartial hearing officer to conduct the revocation hearing, despite multiple motions for disqualification made by IPI's attorney at the hearing and post hearing, Defendants Demapan, Taitano, Mendiola and Cruz refused to disqualify themselves as the hearing commissioners.

- Despite the apparent conflict of interests where CCC commissioners have personal, direct, and pecuniary interests in the outcome of the revocation hearing conducted between February 28, 2024 and March 1, 2024; despite multiple motions for disqualification made by IPI's attorney at the hearing and post hearing, Defendants

Guerrero, Demapan, Taitano, Mendiola and Cruz refused to disqualify themselves as the voting commissioners to deliberate and vote on the renovation hearing.

125.   Based upon information and belief, the refusal to disqualify themselves by the Commissioners from the revocation hearing and deliberation was at the direction of CNMI and Governor Palacios.

126.   IPI has incurred and will continue to incur attorney's fees and costs in amounts that cannot yet be ascertained, which are recoverable in this action under the provisions of 42 U.S.C. Section 1988 (b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, as follows:

1. For the Court to issue a declaration that the current regulatory scheme established by 4 CMC §2314 and NMIAC § 175 -10.1, where CCC is not and cannot function as an impartial decision maker, is unconstitutional violation of IPI's due process rights;

2. For the Court to issue a declaration that the current regulatory scheme established by 4 CMC §2314 and NMIAC § 175 -10.1, when its enforcement violates the force majeure clause and dispute resolution clause of the CLA is unconstitutional impairment of the CLA;

3. For the Court to issue a declaration that the current regulatory scheme established by 4 CMC §2314 and NMIAC § 175 -10.1, when its enforcement frustrates the purposes of the CLA by imposing regulatory fees for the period when IPI's casino license was suspended, is unconstitutional impairment of the CLA;

4. For the court to issue an injunction that Defendants may not exercise any power granted by 4 CMC §2314 and NMIAC § 175 -10.1, as long as CCC, as an instrument under the control or undue influence of the Defendants CNMI and Governor Palacios , is not and cannot function as an impartial decision maker;

5. For the Court to issue an injunction against Defendants preventing the assumption of jurisdiction by CCC to interpret the terms of CLA and/or to adjudicate claims arising

MICHAEL CHEN LAW OFFICE
7330 EDNA AVE LAS VEGAS NV 89117
www.michaelchenlaw.com |Call: 626.249.2002x

out of the CLA, when such disputes are not related to the gaming operation of IPI, and the scope of such disputes shall be narrowly construed;

6. For the Court to order Defendants to vacate, nullify any and all adverse administrative decisions against IPI that were based upon the assumption of jurisdiction by CCC to interpret the terms of CLA and/or to adjudicate claims arising out of the CLA, when such disputes are not related to the gaming operation of IPI, and the scope of such disputes shall be narrowly construed;

7. For all costs of suit incurred herein;

8. For reasonable attorney's fees incurred herein;

9. For such other and further relief as the Court may deem just and proper.

Dated:

May 17, 2024
Saipan MP

Respectfully submitted,

By:/s/ Stephen Nutting
Stephen Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950

Michael Chen
By: /s/ Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117
*Pro Hac Vice*
Attorneys for Plaintiff
IMPERIAL PACIFIC INTERNATIONAL
(CNMI), LLC