# EXHIBIT E




**COMMONWEALTH CASINO COMMISSION**
Commonwealth of the Northern Mariana Islands
P.O. Box 500237
Saipan, MP 96950
Tel: 1 (670) 233-1857/58
Fax: 1 (670) 233-1856
Email: info@cnmicasinocommission.com

Edward Manibusan
Attorney General
Keisha Blaise (T0151)
Assistant Attorney General
Hon Juan A. Sablan Mem. Bldg., 2nd Floor
Capitol Hill
Caller Box 10007 Saipan, MP 96950
Tel: (670) 237-7500 Fax: (670) 664-2349



**BEFORE THE COMMONWEALTH CASINO COMMISSION**

| | |
|---|---|
| **ANDREW YEOM,** in his official capacity as Executive Director of the Commonwealth Casino Commission, | **COMPLAINT NO. 2021-001_** |
| Petitioner, | |
| v. | **COMPLAINT** |
| **IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC** | |
| Respondent. | |

**COMES NOW,** the Petitioner, Andrew Yeom, in his official capacity as Executive Director of the Commonwealth Casino Commission (the "CCC"), by and through undersigned counsel, and alleges as follows:

## JURISDICTION

1. The CCC has jurisdiction over the Petitioner's claims pursuant to 4 CMC §2314(a) and NMIAC §175-10.1-1501 *et seq*.

## PARTIES

2. Petitioner Andrew Yeom is the Executive Director of the CCC.

3. Imperial Pacific International (CNMI) LLC ("IPI") is a limited liability company

organized under the laws of the Commonwealth of the Northern Mariana Islands.

## FACTS

4. IPI is required by Commonwealth law, the casino license agreement, and the regulations promulgated by the CCC, to pay an annual license fee.

Commonwealth Law

5. Commonwealth law requires payment of an annual license fee of at least fifteen million dollars per year, subject to adjustment to reflect changes in the consumer price index. 4 CMC § 2306(b).

6. Commonwealth law contains no provisions for waiver or reduction of the Annual License Fee to an amount lower than fifteen million dollars per year.

7. IPI has a statutory obligation to pay the Annual License Fee.

8. IPI has a statutory obligation to pay the Annual License Fee in full.

9. IPI has a statutory obligation to pay the Annual License Fee on the date it is due.

10. IPI has a statutory obligation to pay the Annual License Fee in full on the date it is due.

Casino License Agreement

11. The Casino License Agreement between the Commonwealth of the Northern Mariana Islands Lottery Commission and IPI (the "Casino License Agreement") was entered on or about August 12, 2014.

12. Per the Casino License Agreement, the "Annual License Fee" shall be fifteen million dollars, subject to adjustment every five years based on the Consumer Price Index. Casino License Agreement § 5.

13. The Casino License Agreement expressly provides that "Notwithstanding anything in this section 5, the Annual License Fee shall not be less than fifteen million dollars

($15,000,000)."

14. Per the Casino License Agreement, the Annual License Fee shall be paid to the Commonwealth Treasurer every year on the anniversary of the date the license was issued.

15. Per the Casino License Agreement, the Annual License Fee is due on August 12th each year.

16. Per the Casino License Agreement, the Annual License Fee for the seventh year of the license term was due on August 12, 2020.

17. IPI has a contractual obligation to pay the Annual License Fee.

18. IPI has a contractual obligation to pay the Annual License Fee in full.

19. IPI has a contractual obligation to pay the Annual License Fee on the date it is due.

20. IPI has a contractual obligation to pay the Annual License Fee in full on the date it is due.

CCC Regulations

21. One of the CCC's statutory responsibilities is to promulgate regulations which provide for "[s]upervision, monitoring and investigation or other means to ensure the suitability and compliance with the legal, statutory and contractual obligations of owners, operators, and employees of casinos and other persons licensed under" the gaming act. 4 CMC § 2314.

22. The CCC promulgated regulation NMIAC §175-10.1-601, which requires the licensee to comply with the Casino License Agreement and punishes violations thereof:

"The casino licensee shall comply with the requirements as set forth in the Casino License Agreement, and all amendments made thereto, entered into between the Commonwealth Lottery Commission and the casino gaming licensee. Failure to comply is an unsuitable method of operation and a major offense subject to penalty, including but not limited to license revocation."

23. IPI has a regulatory obligation to pay the Annual License Fee.

24. IPI has a regulatory obligation to pay the Annual License Fee in full.

3

25. IPI has a regulatory obligation to pay the Annual License Fee on the date it is due.

26. IPI has a regulatory obligation to pay the Annual License Fee in full on the date it is due.

Failure to Pay

27. Per commonwealth law, the Annual License Fee was adjusted in 2019 based on the cumulative change in the Consumer Price Index announced by the Commonwealth Department of Commerce for the island of Saipan.

28. As adjusted, the Annual License Fee amount to be paid on August 12, 2020 was $15,502,570.00.

29. IPI did not pay $15,502,570.00 to the Commonwealth Treasurer on August 12, 2020.

30. IPI did not pay fifteen million dollars to the Commonwealth Treasurer on August 12, 2020.

31. IPI did not pay in part the Annual License Fee on August 12, 2020.

32. IPI did not pay in full the Annual License Fee on August 12, 2020.

33. IPI made no payment for the Annual License Fee on August 12, 2020.

34. The Annual License Fee was not paid in full for more than twelve hours from the time it was due as of August 12, 2020 and was not paid in full for more than twelve hours from the time it was due each day thereafter.

35. On information and belief, at the July 30, 2020 meeting of the CCC, then-IPI CEO Donald Browne made statements about the Annual License Fee, in essence: that it was non-negotiable; that in the 13 days of him being CEO, the Annual License Fee was one of his top issues; that he was in constant communication with IPI Corporate regarding the Annual License Fee; that IPI has some funding to satisfy the Annual License Fee; and that IPI has to work on the

4

method to draw the funds.

Enforcement Action 2020-002

36. Then-Executive Director caused to be filed Enforcement Action 2020-002 because IPI failed to pay the Annual License Fee that was due in August 2020.

37. Enforcement Action 2020-002 contained four claims. Claim One alleged that the casino licensee violated Commonwealth law, specifically 4 CMC §2306(b), by failing to pay, for more than twelve hours, the Annual License Fee when due on August 12, 2020. Claim Two alleged that the casino licensee violated the Casino License Agreement by failing to pay, for more than twelve hours, the required Annual License Fee payment in violation of §175-10.1-610(b). Claim Three alleged that the casino licensee violated §175-10.1-1805(b)(15) by breaching a contract by failing to make the required Annual Licensee Fee payment for more than twelve hours. Claim Four sought an Order declaring that the casino licensee's failure to pay the Annual License Fee in full when due was an unsuitable method of operation constituting grounds for disciplinary action and requiring the licensee to pay the Annual Licensee Fee immediately upon the effective date of the CCC's Order.

38. In its Answer to Complaint 2020-002, IPI specifically admitted paragraph 84, thereby specifically admitting that: "the relative harm suffered by the Commonwealth to be great in that the public's confidence in general and the gaming public specifically, is greatly harmed when the licensee violates law and regulations, and breaches contracts."

39. The CCC issued a final Order on or about April 22, 2021 resolving enforcement action 2020-002.

40. In Order 2021-002, the CCC found, by clear and convincing evidence, that the casino licensee committed one initial violation of Claim One of Enforcement Action 2020-002 and additional violations every day from January 8, 2021 through February 25, 2021 for a total of forty

nine major violations for that claim[1]; one initial violation of Claim Two of Enforcement Action 2020-002 and additional violations every day from January 8, 2021 through February 25, 2021 for a total of forty nine major violations for that claim; one initial violation of Claim Three of Enforcement Action 2020-002 and additional violations every day from January 8, 2021 through February 25, 2021 for a total of forty nine major violations for that claim.

41. In Order 2021-002, the CCC ordered the IPI to pay the Annual License Fee in full immediately upon the effective date of the Order, among other penalties.

Subsequent Violations

42. IPI did not pay $15,502,570.00 to the Commonwealth Treasurer on February 26, 2021.

43. IPI did not pay fifteen million dollars to the Commonwealth Treasurer on February 26, 2021.

44. IPI did not pay in part the Annual License Fee on February 26, 2021.

45. IPI did not pay in full the Annual License Fee on February 26, 2021.

46. IPI made no payment for the Annual License Fee on February 26, 2021.

47. The Annual License Fee was not paid in full for more than twelve hours as of February 26, 2021 and was not paid in full for more than twelve hours from the time it was due each day thereafter.

48. Each day from February 26, 2021 through the filing of the Complaint that IPI has failed to pay (for more than 12 hours) the Annual License Fee is a separate violation of the Regulations.

---

[1] The order mistakenly references the year 2020 for 2021 when referring to the additional violations alleged and found between January and February for every additional violation noted herein.

6

49. IPI has repeatedly committed numerous offenses by failing to pay the Annual License Fee in August, 2020 and January 8, 2021 through February 25, 2021.

50. IPI has repeatedly committed numerous offenses by failing to pay the Annual License Fee for more than 12 hours from February 25, 2021 through the filing of this Complaint (inclusive).

51. Since August 12, 2020, IPI has made payments to employees, vendors, and litigants but has not paid the Annual License Fee in whole.

52. Since August 12, 2020, IPI has made payments to employees, vendors, and litigants but has not paid the Annual License Fee in part.

53. IPI has knowingly and willfully failed to pay the Annual License Fee in whole for more than 12 hours every day since February 26, 2021 through and including the filing of this Complaint.

54. IPI has knowingly and willfully failed to pay the Annual License Fee in part every day since February 26, 2021 through and including the filing of this Complaint.

**FIRST CLAIM**
**MAJOR OFFENSE OF FAILING TO MAKE ANY FEE PAYMENT WHEN DUE (FOR MORE THAN 12 HOURS) IN VIOLATION of 4 CMC 2306(b)(3)**

55. Petitioner incorporates herein by reference paragraphs 1-54 as hereinabove alleged as if set forth here in full.

56. IPI is the holder of the exclusive license for casino gaming in the Third Senatorial District contemplated by the Gaming Act.

57. 4 CMC § 2306(b) requires the holder of the exclusive license to pay the license fee.

58. 4 CMC § 2306(b)(3) mandates payment of the Annual License Fee "when the fees for the sixth year is due; and $15,000,000 for each year thereafter."

7

59. Payment of the Annual License Fee for the seventh year was due on August 12, 2020.

60. IPI failed to pay the required amount in full on August 12, 2020.

61. The Annual License Fee remained due and unpaid every day for more than 12 hours from February 26, 2021 through the filing of this Complaint (inclusive).

62. By failing to pay the Annual License Fee when due, IPI violated 4 CMC §2306(b)(3).

63. The violation of a commonwealth statute is an "offense" pursuant to §175-10.1-2510(a) which subjects the casino licensee to discipline.

64. On information and belief, IPI has knowingly and willfully violated Commonwealth law by failing to pay the Annual License Fee in whole or part every day since February 26, 2021 (inclusive).

65. The above actions and omissions which were, on information and belief, committed by IPI are actions or inactions which are inimical to the public health, safety, morals, good order and general welfare of the people of the Commonwealth, or that would reflect or tend to reflect discredit upon the Commonwealth or the gaming industry, and the Commonwealth is damaged thereby.

66. The relative harm suffered by the Commonwealth by IPI's failure to pay the Annual License Fee required by law from February 26, 2021 through the filing of this Complaint (inclusive) as alleged above is great in that the public's confidence in general and the gaming public specifically, is greatly harmed when the licensee violates law and regulations, and breaches contracts.

67. The failure to timely pay the amount required by 4 CMC §2306(b)(3) for more than twelve hours is a violation of the CCC's Regulations, §175-10.1-2540, and should be penalized as a major offense for each day unpaid after February 26, 2021.

## SECOND CLAIM
## MAJOR OFFENSE OF FAILING TO MAKE ANY FEE PAYMENT WHEN DUE (FOR MORE THAN 12 HOURS) IN VIOLATION of §175-10.1-601

68. Petitioner incorporates herein by reference paragraphs 1-67 as hereinabove alleged as if set forth here in full.

69. IPI did not pay the required Annual License Fee in full on August 12, 2020 as required by the Casino License Agreement and the Regulations.

70. The Annual License Fee remained due and unpaid every day from February 26, 2021 through the filing of this Complaint (inclusive).

71. By failing to pay the Annual License Fee when due every day from February 26, 2021 through the filing of this Complaint (inclusive) IPI violated §175-10.1-601.

72. The violation of a regulation is an "offense" pursuant to §175-10.1-2510(a) which subjects the casino licensee to discipline.

73. The violation of §175-10.1-601 is also punishable by §175-10.1-601, which provides that the authority of the Commission includes the ability to suspend or revoke the casino license for violation of the regulations or the Casino License Agreement.

74. On information and belief, IPI has knowingly and willfully violated Commonwealth law by failing to pay the Annual License Fee in whole or part every day since February 26, 2021 (inclusive).

75. The above actions and omissions which were, on information and belief, committed by IPI are actions or inactions which are inimical to the public health, safety, morals, good order and general welfare of the people of the Commonwealth, or that would reflect or tend to reflect

9

discredit upon the Commonwealth or the gaming industry, and the Commonwealth is damaged thereby.

76. The relative harm suffered by the Commonwealth by IPI's failure to pay the Annual License Fee required by law from February 26, 2021 through the filing of this Complaint (inclusive) is great in that the public's confidence in general and the gaming public specifically, is greatly harmed when the licensee violates law and regulations, and breaches contracts.

77. The failure to timely pay the amount required by the Casino License Agreement is a violation of the CCC's regulations, §§175-10.1-601 and 2540(c), and should be penalized as major offenses.

### THIRD CLAIM
### MAJOR OFFENSE OF VIOLATING AN ORDER OF CCC IN VIOLATION OF §175-10.1-2510(a)

78. Plaintiff realleges and incorporates by reference paragraphs 1 through 77 of the Complaint as if alleged in full.

79. CCC Order 2021-002 was published in the Commonwealth Register on April 28 2021 and became effective ten days after such publication

80. CCC Order 2021-002 ordered IPI to pay the Annual License Fee "in full immediately upon the effective date of" CCC Order 2021-002.

81. IPI failed to pay the Annual License Fee "in full immediately upon the effective date of" CCC Order 2021-002.

82. On information and belief, IPI failed to pay the Annual License Fee in part immediately upon the effective date of CCC Order 2021-002.

83. Each day from the effective date of CCC Order 2021-002 through the filing of this Complaint (inclusive) that IPI failed to pay the Annual License Fee in whole is a violation of CCC Order 2021-002.

10

84. On information and belief, IPI has knowingly and willfully violated CCC Order 2021-002 by failing to pay the Annual License Fee in whole every day since the effective date of CCC Order 2021-002 (inclusive).

85. The above actions and omissions which were, on information and belief, committed by IPI are actions or inactions which are inimical to the public health, safety, morals, good order and general welfare of the people of the Commonwealth, or that would reflect or tend to reflect discredit upon the Commonwealth or the gaming industry, and the Commonwealth is damaged thereby.

86. The relative harm suffered by the Commonwealth by IPI's failure to pay the Annual License Fee required by law and CCC Order 2021-002 from the effective date of said Order through the filing of this Complaint (inclusive) is great in that the public's confidence in general and the gaming public specifically, is greatly harmed when the licensee violates law and regulations, and breaches contracts.

87. IPI's failure to timely pay the amount required by 4 CMC §2306(b)(3) and the CCC Order 2021-002 for more than 12 hours is a violation of the CCC's regulations, §175-10.1-2540, and should be penalized as a major offense, §175-10.1-2540.

**FOURTH CLAIM**
**MAJOR OFFENSE OF BREACHING A CONTRACT IN VIOLATION OF §175-10.1-1805(b)(15)**

88. Plaintiff realleges and incorporates by reference paragraphs 1 through 87 of the Complaint as if alleged in full.

89. The Casino License Agreement is an enforceable agreement between IPI and the CNMI.

11

90. On information and belief, IPI has materially breached the terms of the Casino License Agreement by failing to make required payment in full of the Annual License Fee every day from February 26, 2021 through the filing of this Complaint (inclusive).

91. The Commonwealth has suffered damages as a result of IPI's breach of the Casino License Agreement.

92. Regulation §175-10.1-1805(b)(15) states that "breaching any contract" is an unsuitable method of operation which is grounds for disciplinary action pursuant to Regulation §175-10.1-1805(a).

93. The Casino License Agreement is a contract as contemplated by Regulation §175-10.1-1805(b)(15).

94. IPI's material breach of the Casino License Agreement constitutes breaches of a contract as those terms are used in Regulation §175-10.1-1805(b)(15), and the Commonwealth has been damaged because of IPI's material breaches of contract.

95. The actions described above violated §175-10.1-1805(b)(15).

96. The above actions which were, on information and belief, committed by IPI are actions or inactions which are inimical to the public health, safety, morals, good order and general welfare of the people of the Commonwealth, or that would reflect or tend to reflect discredit upon the Commonwealth or the gaming industry, and the Commonwealth was damaged thereby.

97. The Commonwealth has suffered damages as a result of IPI's breach of the Casino License Agreement.

98. The relative harm suffered by the Commonwealth by IPI's failure to pay the Annual License Fee required by law, CCC Order 2021-002, and the Casino License Agreement from the February 26, 2021 through the filing of this Complaint (inclusive) is great in that the

public's confidence in general and the gaming public specifically, is greatly harmed when the licensee violates law and regulations, and breaches contracts.

## FIFTH CLAIM
## DECLARATORY ORDER FINDING VIOLATIONS CONSTITUTE UNSUITABLE METHOD OF OPERATION FOR PURPOSES OF §175-10.1-1805

99. Petitioner incorporates herein by reference paragraphs 1-98 as hereinabove alleged as if set forth here in full.

100. Petitioner seeks an Order from the CCC declaring that IPI's failure to pay the Annual License Fee in full when due as alleged in Claims One, Two, Three, and Four above amounts to an unsuitable method of operation per §175-10.1-1805(b)(15) or §175-10.1-1805(a), or otherwise, and requiring Respondent Imperial Pacific International (CNMI) LLC to pay the Annual License Fee immediately upon the effective date of the Commission's Order.

## SIXTH CLAIM
## DECLARATORY ORDER

101. Petitioner incorporates herein by reference paragraphs 1-100 as hereinabove alleged as if set forth here in full.

102. Petitioner seeks a Declaration from the CCC that, due to the numerous major violations of law and regulations that IPI has repeatedly committed, the Casino License Agreement is terminated and revoked.

## SELF-REPORTING DETERMINATION

103. Petitioner incorporates herein by reference paragraphs 1-102 as hereinabove alleged as if set forth here in full.

104. Regulation §175-10.1-2530 is entitled "Self-reporting Determination". It reads: "The CCC, the Executive Director, or the hearing examiner, as the case may be, shall determine whether the licensee immediately, promptly or belatedly self-reported the offense (and the facts giving rise

thereto) to the CCC, or whether the licensee failed to report the offense in a timely manner or at all."

105. IPI did not immediately report the facts resulting in the above-alleged violations. IPI did not affirmatively inform the CCC in writing of each daily violation.

## DETERMINATION OF OFFENSE LEVEL

106. Petitioner incorporates herein by reference paragraphs 1-105 as hereinabove alleged as if set forth here in full.

107. Mandatory offense levels for certain offenses are established by Regulation § 175-10.1-2540.

108. For each offense not listed in §175-10.1-2540, the Commission, the Executive Director, or the hearing examiner, as the case may be, shall determine whether the offense should be penalized as a minor offense, and intermediate offense. § 175-10.1-2535(a).

109. The offenses alleged in Counts One and Two of this Complaint (failing to make any fee payment when due) are listed in §175-10.1-2540(c) as major offenses such that a determination of offense level need not be made pursuant to §175-10.1-2535(a). Notwithstanding the foregoing, Petitioner alleges that the violations alleged in Counts One and Two of this Complaint are major offenses pursuant to §175-10.1-2535(a), §175-10.1-2540, or otherwise.

110. The offenses alleged in Count Three of this Complaint (violating any Order of the Commission) are listed in §175-10.1-2540(c) as major offenses such that a determination of offense level need not be made pursuant to §175-10.1-2535(a). Notwithstanding the foregoing, Petitioner alleges that the violations alleged in Count Three of this Complaint are major offenses pursuant to §175-10.1-2535(a), §175-10.1-2540, or otherwise.

111. On information and belief, the offense alleged in Claim Four (breach of contract) is not listed in §175-10.1-2540.

112. Petitioner alleges that the violations listed in Claim Four are major offenses.

113. In making a determination of offense level pursuant to § 175-10.1-2535, the CCC alleging that the violations alleged in Claim Four are major offenses, the Executive Director shall consider the totality of the circumstances, including but not limited to: whether the offense was an act of commission or omission; the self-reporting determination required by §175-10.1-2130; whether the licensee promptly accepted responsibility for the offense; whether the licensee has committed any previous offenses in the Commonwealth; whether the licensee has committed any previous offenses in any other jurisdiction; the relative harm suffered by the Commonwealth; the relative harm suffered by the gaming industry generally; and any other aggravating or mitigating factor deemed relevant.

114. Petitioner alleges that the violations alleged in Claim Four are acts of omission, in that no action was taken when required. The Executive Director further alleges that IPI's material breaches of contract by failing to pay the Annual License Fee as required by the Casino License Agreement were knowingly and willfully made in that IPI has prioritized other payments at the expense of the Annual License Fee.

115. Petitioner alleges that the IPI did not self-report each of the violations (or the facts resulting in the violations) as required by §175-10.1-2530. IPI did not immediately inform the CCC in writing of each daily violation.

116. Petitioner alleges that IPI has not accepted responsibility for the conduct underlying the offense, in that IPI has not yet corrected the violations by paying the Annual License Fee as required

117. Petitioner alleges that IPI has committed numerous previous violations in the Commonwealth. The CCC Order finds that IPI violated numerous laws and Regulations as of the date of the CCC Order. Petitioner is aware of and alleges numerous administrative enforcement

15

actions and civil lawsuits involving IPI pending by other Commonwealth agencies, including but not limited to the Bureau of Environmental and Coastal Quality. Petitioner is aware of allegations of federal and local labor law violations.

118. Petitioner alleges the relative harm suffered by the Commonwealth to be great in that the public's confidence in general and the gaming public specifically, is greatly harmed when the licensee violates law and regulations, and breaches contracts.

119. Petitioner alleges the relative harm suffered by the gaming industry generally to be moderate, in that IPI is persisting to continue violating controlling legal authority.

120. Petitioner alleges, on information and belief, aggravating factors that violating duties specifically required by law, regulation, and contract by a casino licensee is extremely deleterious to the image of gaming in the Commonwealth, and that the harm caused by IPI is great in that the public's confidence in general and the gaming public specifically is greatly harmed when the licensee violates law and regulations and breaches contracts.

121. Petitioner acknowledges as mitigating factors that IPI's business was affected somewhat by a recent super typhoon and the Coronavirus pandemic, but notes that IPI has had issues with mismanagement which predate those occurrences.

## PENALTIES

122. Petitioner incorporates herein by reference paragraphs 1-121 as hereinabove alleged as if set forth here in full.

123. Each minor offense may be punished by: no punishment; a written warning; a fine not to exceed ten thousand dollars; and/or (in the case of a licensee not the casino operator) suspension of the license for a period not to exceed one month. § 175-10.1-2545(a).

124. Each intermediate offense may be punished by: a fine not to exceed twenty thousand dollars and/or (in the case of a licensee not the casino operator) suspension of the license for a period not to exceed six months. § 175-10.1-2545(b).

125. Each major offense may be punished by: no punishment; a written warning; a fine not to exceed fifty thousand dollars; and/or (in the case of a licensee not the casino operator) suspension of the license for any period of time up to and including license revocation. § 175-10.1-2545(c).

126. The casino operator license may be suspended or modified at the discretion of the CCC upon a finding that one or more major offenses have occurred. § 175-10.1-2545(d).

127. The casino operator license may be terminated at the discretion of the CCC upon a finding that major offenses have repeatedly occurred. § 175-10.1-2545(e).

128. The violations herein are major offenses as established in paragraphs 1-98 above.

129. Due to the number of violations, the duration of IPI's non-compliance, and IPI's continued failure to achieve compliance, Petitioner alleges that IPI's violations as alleged in Counts One, Two, Three, and Four warrant (a) a revocation and termination of the casino operator license, and (b) a penalty of a $50,000 fine per violation per day the fee went unpaid for each of the violations alleged in Counts One, Two, Three, and Four.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner requests the following:

A. That the CCC finds and declares that IPI committed the violations alleged in this Complaint and that IPI did not immediately self-report to the CCC the facts which gave rise to the violation(s) prior to being contacted by the CCC's enforcement staff;

B. That the CCC declares that the violations committed by IPI: in Counts One, Two, Three, and Four were major offenses pursuant to CCC Regulation;

C. That the CCC finds, declares and orders that IPI's failure to pay the Annual License Fee in full when due amounts to an unsuitable method of operation per §175-10.1-1805(b)(15) or §175-10.1-1805(a), or otherwise, and requiring IPI to pay Annual License Fee immediately upon the effective date of the CCC's Order.

D. That the CCC finds, declares and Orders that IPI's license to conduct gaming operations in the Third Senatorial District be immediately revoked and terminated as disciplinary action in accordance with the CCC Regulations;

E. That the CCC Orders IPI to pay a fine of $50,000 per violation per day the Annual License Fee went unpaid for the major violations alleged in Counts One, Two, Three, and Four.

F. Such other or further relief as the CCC may deem just and proper under the circumstances.

DATED this 17th day of September 2021.

/s/
Keisha Blaise (T0151)
Assistant Attorney General
Attorney for Petitioner

18