# EXHIBIT M

Stephen J. Nutting
Law Office of Stephen J. Nutting
6th Floor Marianas Business Plaza
P.O. Box 5093 Saipan, MP 96950
Michael Chen
Michael Chen Law Offices
7330 Edna Ave.
Las Vegas, NV 89117

*Attorneys for Respondent Imperial Pacific International (CNMI) LLC*

**BEFORE THE COMMONWEALTH CASINO COMMISSION**

| | |
|---|---|
| ANDREW YEOM, in his official capacity as Executive Director of the Commonwealth Casino Commission,<br><br>Petitioner,<br><br>v.<br><br>Imperial Pacific International (CNMI) LLC<br><br>Respondent. | Complaint: 2021-002, 2021-003<br><br>**RESPONDENT'S MOTION FOR DISQUALIFICTION OF COMMISSIONERS AS HEARING COMMISSIONERS AND VOTING COMMISSIONERS FOR REVOCATION HEARING**<br><br>**RESPONDENT'S MOTION FOR ORDER TO DISREGARD OUT OF HEARING STATEMENT AND DECLARE THE REVOCATION HEARING INVALID** |

Respondent Imperial Pacific International (CNMI) LLC, (hereinafter referred to as "IPI") , through the undersigned and pursuant to 1 CMC § 9109 (e) (2), moves the Commission to declare the revocation hearing conducted between February 28, 2024 and March 1, 2024 invalid due to violation of IPI's due process rights, and order all five commissioners ( Edward C. Deleon Guerrero, Chairman of CCC , Rafael S. Demapan, Vice and Acting Chairman of CCC; Ramon M. Dela Cruz, Commissioner and Secretary of CCC; Mariano Taitano, Commissioner and Treasurer of CCC; Martin T. Mendiola, Commissioner and Public Affairs of CCC) to disqualify themselves from deliberating and voting for the revocation hearing.

This motion is based upon the files, records, transcripts, documents related to this matter, Memorandum of Points and Authorities, and the concurrently filed affidavit of Howyo Chi in support thereof.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF RELEVANT FACTS**

**From 2014 to 2020**

On or about August 12, 2014, IPI entered into a Casino License Agreement (CLA) with the Commonwealth Lottery Commission. CLA has a force majeure clause which would excuse IPI from default for any failure or delay in the performance of its obligation under the CLA in the event of force majeure.

Under the CLA, among other obligations, IPI would pay a fifteen million dollar ($15,000.000.00) annual Casino License Fee. IPI dutifully paid the annual license fee each year between 2014 and 2019.

On July 11, 2014, CNMI promulgated Public Law 18-56, which created CCC. Public Law 18-56 granted certain powers and duties to CCC and it was codified as 4 CMC § 2314.

On December 4, 2015, CNMI promulgated Public Law 19-24, which imposes a new obligation on IPI to pay CCC an annual "Casino Regulatory Fee" $3 million dollars on or before October 1 of each year beginning October 1, 2015 ("Regulatory Fee Statute"). Notably, that fee is due to CCC "regardless of the actual costs incurred by the [CCC]." 4 C.M.C. Section 2309 (a). IPI paid the Casino Regulatory Fee each year from 2015 through 2019.

By the operation of PL 19-24, CCC itself is entirely funded from this annual regulatory fee from IPI and its affiliates.

On or about October 28, 2016, CCC issued the Commonwealth Casino Commission Rules and Regulation, which are codified as NMIAC § 175 -10.1.

2

Due to several *force majeure* events and the suspension of the casino license by CCC, IPI has been unable to make the payment for the annual regulatory fee, annual license fees and Community Benefit Fund contribution for a few years.

Pursuant to NMIAC § 175 -10.1-601, failure to comply with the requirements set forth in the CLA is deemed to be an unsuitable method of operation and a major offense subject to penalty, including but not limited to license revocation.

Pursuant to NMIAC § 175 -10.1-105, CCC has the "sole authority to amend or revoke the license granted to" IPI for "operating in an unsuitable manner due to violations of law, breaches of the license or violations of the regulations promulgated by the Commission, as well as any other reason for revocation or termination stated in the License."

**2020 CCC ENFORCEMENT ACTIONS**

The Executive Director of the CCC initiated five complaints against IPI in 2020. Later consolidated into Enforcement Action 2020-001 (encompassing actions 2020-001 and 2020-002) and Enforcement Action 2020-003 (encompassing actions 2020-003, 2020-004 and 2020-005), as follows:

Complaint 2020-001 included claims for violations of the CLA based on IPI's failure to make Community Benefit Contributions; Compliant 2020-002 included claims for violations of Commonwealth law and the CLA based on IPTs failure to pay the Annual License Fee for 2020; Complaint 2020-003 included claims for violation of a prior CCC order (2020-003) requiring IPI to maintain at least $4.2 million in cash or cash equivalents in a bank in the CNMI or United States and for IPI's executives to detail the means by which they would comply with that order; Complaint 2020-004 included claims for violations of a prior CCC order (2020-004) requiring IPI to pay accounts payable over 89 days old and to certify compliance with that order; Complaint 2020-005 included claims for violation of Commonwealth law and the CLA for IPI's failure to pay the Casino Regulatory Fee of $3,150,000.00 for 2020.

1   On April 22, 2021, CCC held a hearing on these enforcement actions and issued Order
2   No: 2021-002. In the Order, CCC assumed the jurisdiction to interpret and adjudicate the claims
3   filed by the Executive Director of CCC, and made the finding that IPI violated the CLA.
4   The Order suspended IPI's gaming license, ordering IPI to pay a total of $18.65 million
5   that it found was due under the CLA's Annual License Fee and Annual Regulatory Fee, and
6   imposing a total of $6.6 million in penalties against IPI. The Order also required IPI to comply
7   with previous Orders issued by the CCC.
8   On Nov. 5, 2021, IPI appealed the CCC's Order in the Superior Court for the
9   Commonwealth of the Northern Mariana Islands, arguing that the CCC's Order was arbitrary,
10  capricious, an abuse of discretion and otherwise not in accordance with law and unwarranted by
11  the facts. IPI's primary argument was that the CCC failed to recognize the doctrine of *force*
12  *majeure* despite the presence of the *force majeure* provision in the CLA and the clear, severe
13  impact of a *force majeure* event, the COVID-19 pandemic, on IPI's ability to comply with its
14  obligations.
15  On March 15, 2022, the Superior Court of CNMI affirmed the CCC's order, applying a
16  very deferential standard of review.
17  On April 11, 2022, IPI appealed the Order issued by the Superior Court of CNMI to the
18  Supreme Court of CNMI.
19  On September 25, 2023, the CNMI Supreme Court affirmed the trial court's ruling in part
20  and reversed it in part, and asked CCC to "decide on a reasonable deadline for IPI to pay" the
21  annual license fees for 2020 and the following years. The CNMI Supreme Court remanded the
22  matter back to the Commission for further proceedings consistent with the opinion.
23  On October 16, 2023, CNMI Superior Court thus issued its order "return[ing] this matter
24  to CCC for proceedings consistent with the CNMI Supreme Court's" order.
25  On November 30, 2023, without any further hearing or proceedings, CCC issued a
26  "Notice of Payment Deadline" and unilaterally determined that a "reasonable deadline" for IPI to
27  pay the $62,010.280.00 is "30 days from receipt of this notice."
28

4

## 2021 ENFORCEMENT ACTIONS

On or about September 17, 2021, Andrew Yeom, in his official capacity as Executive Director of CCC, filed five complaints against IPI with CCC.

Complaint No. 2021-001 alleges breach of the CLA by IPI for its failure to pay the annual license fee for year 2020 under the CLA. Complaint No. 2021-002 alleges that IPI failed to maintain minimum capital requirements set by CCC. Complaint No. 2021-003 alleges that IPI failed to pay the annual regulatory fee for year 2020.Complaint No. 2021-004 alleges breach of the CLA by IPI for its failure to pay the annual license fee for year 2021 under the CLA. Complaint No. 2021-005 alleges that IPI failed to pay the annual regulatory fee for year 2021.

Proceedings for Complaints No. 2021-001 to 2021-005 were stayed on May 23, 2022, because the federal District Court issued a TRO and a preliminary injunction. The stay was later lifted due to the reversal by the United States Court of Appeals for the Ninth Circuit.

For Case 22-16630, IPI filed a petition for a writ of certiorari with the U.S. Supreme Court on November 20, 2023, with a case number of 23-522. The U.S. Supreme Court did not grant the petition for a writ of certiorari.

## 2023 LEGAL PROCEEDINGS

On or about December 13, 2023, Andrew Yeom, in his official capacity as Executive Director of CCC filed a motion with CCC and requested CCC to issue an order setting a Revocation Hearing for Complaints No. 2021-002 and 2021-003.

Complaint No. 2021-002 sought to enforce Commission Order 2020-003, which was ordered on June 25, 2020. Commission Order 2020-003 was signed by Chairman Edward Deleon Guerrero of CCC. When Commission Order 2020-003 was ordered, CCC was constituted with the following commissioners: Edward C. Deleon Guerrero, Rafael Demapan, Ramon M. Dela Cruz, Mariano Taitano, and Diego M. Songao. See **¶29 of Decl. of Chi.** Other than the fact Chairman Guerrero signed the Commission Order 2020-003, what roles the other commissioners played in issuing Commission Order 2020-003 was unclear at this point. See **Exhibit A of Decl. of Chi.**

5

Complaint No. 2021-003 sought to enforce Commission Order 2021-002, which was ordered on April 22, 2021 by Chairman Edward C. Deleon Guerrero and Vice Chairman Rafael S. Demapan. When Commission Order 2021-002 was ordered, CCC was constituted with the following commissioners: Edward C. DeLeon Guerrero, Rafael Demapan, Ramon M. Dela Cruz, Mariano Taitano, and Diego M. Songao. Based upon the record, all five commissioners unanimously voted for Commission Order 2021-002. See **Exhibit B of Decl. of Chi.**

**2024 LEGAL PROCEEDINGS**

After a few court battles, the revocation hearing started on February 28, 2024 and stretched three days from February 28, 2024, to March 1, 2024.

At the revocation hearing, Executive Director of CCC, Andrew Yeom, was represented by Assistant Attorney General of CNMI, Keisha Blaise and Alison Nelson; IPI was represented by Michael Chen. The presiding hearing commissioner was Vice Chairman Rafael S. Demapan, who was also the Acting Chairman of CCC due to the absence of Chairman Guerrero from the island. In addition to Vice/Acting Chairman Demapan, the other three commissioners, Commissioners Cruz, Taitano and Mendiola all functioned as the hearing commissioners at the revocation hearing. Chairman Guerrero participated at the revocation hearing remotely as "citizen Guerrero" at the hearing. Media was permitted to attend the hearing throughout and a number of news articles about the proceeding were posted online and in print in CNMI.

During the revocation hearing, attorney Michael Chen made four oral motions to disqualify the four hearing commissioners and gave the following reasons for the motion for disqualifications:

1. All four hearing commissioners are paid by CCC, which is financed exclusively by the regulatory fee, a major defense by IPI is the constitutionality of the underlying regulatory fee statue and regulations, it would be "professional suicide" for the commissioners to rule that the underlying regulatory fee statue is unconstitutional.
2. Based upon the testimony produced at the hearing, all five commissioners, through the official monthly CCC public meetings and private communication with the

6

executive director of CCC, had prior knowledge about the underlying claims, i.e. the alleged failure of IPI to maintain the minimum capital requirement and the failure to pay the regulatory fees in year 2020.

3. All five commissioners[1] were involved in issuing Commission Orders 2020-003 and 2021-002. The current complaints before the Commission are seeking to enforce Commission Orders 2020-003 and 2021-002. The Commissioners are asked to self-affirm decisions they made earlier.

4. The disqualification of the five commissioners would not cripple the Commission, as provided by the regulation and cited by the Memorandum Decision for the TRO, (which became available in the midst of the revocation hearing), the commissioners could appoint a non-commissioner hearing officer to conduct the revocation hearing, which is a quasi-judicial proceeding.

The oral motions to disqualify the commissioners were brought at least three times, once when the grounds for disqualification became clear, once at the closing argument for each complaint. Commissioners did not make a ruling on the motions to disqualify during the proceeding and continue to proceed with the revocation hearing until it was adjourned on March 1, 2024.

Shortly after the conclusion of the revocation hearing, Governor Arnold I. Palacios caused to publish an article on local newspapers. In the article, Mr. Palacios made remarks to contradict the testimony of IPI's witness, Mr. Howyo Chi. See **Exhibit C of Decl. of Chi.**

### LEGAL ARGUMENT

A. THE FOUR HEARING COMMISSIONERS HAVE PERSONAL INTERESTS IN THE OUTCOME OF THE HEARING

Under 1 CMC § 9109 (e) (2), "[t]he function of persons presiding at hearings and of persons participating in orders or decisions in accordance with this chapter shall be conducted in an impartial manner."

---

[1] Attorney Chen misspoke at the hearing about the involvement of Commissioner Martin Mendiola of the two commission orders. Commissioner Mendiola was not involved in Commission Order 2020-003 and 2021-002.

7

IPI has a right to resolve in an impartial, disinterested, and competent forum whether the $3 million annual regulatory fee statute (upon which the revocation effort is based) is constitutional, and whether force majeure would be a valid defense for its failure to make the annual regulatory fee payment in year 2020.

The revocation hearing conducted by CCC from February 28 to March 1, 2024, where four of the five commissioners sat through the proceeding as the hearing commissioners, despite four oral motions for disqualification raised by IPI during the revocation proceeding. The four hearing commissioners have significant, direct, pecuniary and arguably personal interests in the outcome of the proceeding, as such, the proceeding took place in the past has already violated IPI's constitutional due process rights.

Under 4 CMC § 2314 (h), suspension and revocation of casino license, unanimous vote of all commissioners is required. The deliberation process to be conducted by CCC on April 9, 2024, where all five commissioners will be the decisionmakers to decide on the revocation of IPI's casino license, if the five commissioners proceed with the deliberation and decision currently scheduled for April 9th, 2024, the revocation of IPI's license would be a virtual certainty because it would be "professional suicide" for the five commissioners to decide otherwise. IPI's fundamental rights guaranteed by the constitution will suffer irreversible harm.

The Due Process Clause requires that the decision to deprive a person of a protected interest be entrusted to an impartial decision maker. This rule applies to both criminal and civil cases. The Supreme Court of the United States has explained that the neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law and preserves both the appearance and reality of fairness . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him. See *Marshall v. Jerrico*, 446 U.S. 238, 242 (1980).

"The requirement of neutrality has been jealously guarded" by this Court. In *Tumey v. Ohio*, 273 U.S. 510 (1927), the Court reversed convictions rendered by the mayor of a town when the mayor's salary was paid in part by fees and costs levied by him acting in a judicial

8

capacity. The Court stated that the Due Process Clause would not permit any "procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear and true between the State and the accused." *273 U.S., at 532*." See *Marshall* at 242.

"That officers acting in a judicial or quasi judicial capacity are disqualified by their interest in the controversy to be decided is, of course, the general rule." See *Tumey v. Ohio*, 273 U.S. 510, 522 (1927). The *Tumey* court went on to say: "All questions of judicial qualification may not involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion. *Wheeling v. Black*, 25 W. Va. 266, 270 (W. Virginia, 1884). But it certainly violates the Fourteenth Amendment, and deprives a defendant in a criminal case of due process of law, to subject his liberty or property to the judgment of a court the judge of which has a direct, personal, substantial, pecuniary interest in reaching a conclusion against him in his case." *Id*. 523.

Here, CCC is acting in a judicial or quasi-judicial capacity when conducting an evidentiary hearing on a contested matter. The question is whether the five commissioners have a direct, substantial, arguably personal, pecuniary interest in finding IPI in violation of the CLA and CNMI statute and regulations.

The hearing for a contested case, such as the revocation hearing took place between February 28 to March 1, 2024, is judicial or quasi judicial in nature. CCC's hearing must be conducted in compliance with 1 CMC§ 9109, which is the CNMI's version of APA.

Under 1 CMC§ 9109, "the function of persons presiding at hearing and of persons participating in order or decisions in accordance with this chapter shall be conducted in an impartial manner," and "[t]he hearing officers could disqualify himself or herself at any time."

At the revocation hearing, IPI alleged force majeure as an affirmative defense to both charges; IPI pointed out that the executive director has not produced any evidence to substantiate his charge of IPI's failure to maintain a minimum capital; IPI challenged the constitutionality of

9

the $3M regulatory fees statue; IPI also made the argument that the suspension of its license would excuse itself from making the regulatory fee payment for lack of consideration under the CLA.

It would be against their self-interests for the four hearing commissioners and all five voting commissioners to accept the constitutionality defense raised by IPI. By doing so, they are voting for the financial demise of CCC and forfeiting the probability of receiving compensation for their past and future services rendered to CCC.

Based upon the reports filed by CCC, the board of commissioners were paid $313,774.00 in year 2018, $324,996.00 in year 2019, $316,871.00 in year 2020, $322,234.00 in year 2021, $272,461.00 in year 2022.

Although it is unknown to IPI yet whether and how much the commissioners were paid in year 2023, but it is clear that the likelihood that they will get paid for their services for CCC in the past and future would diminish greatly should they agree with IPI that the regulatory fee statue and regulations are unconstitutional.

Under 4 CMC §2309 (a), CCC derives most of its revenue from the annual $3 million dollar plus regulatory fee that IPI is challenging as unconstitutional. There is an inherent conflict of interest that raises a significant due process concern. The four hearing commissioners and the five voting commissioners (including the four hearing commissioners) received significant payment for their services as the commissioners of CCC in the past and are expecting more in the future, their self-interests conflict with their duty as impartial hearing officers and decision makers for the revocation hearing.

As for the force majeure defense raised by IPI, although CNMI Supreme Court has ruled Covid 19 does qualify as a force majeure event, and that force majeure would excuse IPI from the default, but not from making the payment. However, CNMI Supreme Court did not address the issue whether the suspension of IPI's license would excuse IPI from making the regulatory fee payment for lack of consideration under the CLA. It would be against the self-interests of the commissioners to rule that the force majeure event would excuse or postpone the regulatory fee

10

1  payment; it would also be against the self-interests of the commissioners to rule that IPI was
2  excused from making the regulatory fee payment while its license was suspended.

3      B. <u>THE FIVE VOTING COMMISSIONERS ALSO HAVE PERSONAL INTERESTS IN
4         THE OUTCOME OF THE REVOATING HEARING</u>

5      Unlike conducting an evidentiary hearing at CCC, where the commissioners may
6  delegate the duty to a hearing officer, CCC regulation does not envision the scenario where the
7  commissioners may delegate the power to vote on a hearing to a third impartial party. Past
8  CCC's practice indicates that it would be safe to assume that the revocation hearing will be voted
9  by at least three of the five commissioners as a quorum under NMIAC § 175.10.1-101 (i).

10      Commissioners of CCC may recognize that killing IPI – the proverbial goose that lays
11  gold eggs – would not benefit CCC and CNMI in the long run, however, by wielding the power
12  to revoke IPI's license, the five commissioners and the executive director of CCC, are gaining
13  undue influence and unfair leverage over IPI in the ongoing settlement negotiations.

14      That is the "circumstances 'in which experience teaches that the probability of actual bias
15  on the part of the judge or decision maker is too high to be constitutionally tolerable.'" *Caperton
16  v. A. T. Massey Coal Co.*, 556 U.S. 868, 877 (2009).

17      "This concern with conflicts resulting from financial incentives was elaborated in *Ward
18  v. Monroeville*, 409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972), which invalidated a
19  conviction in another mayor's court. In *Monroeville*, unlike in *Tumey*, the mayor received no
20  money; instead, the fines the mayor assessed went to the town's general fisc. The Court held that
21  "[t]he fact that the mayor [in *Tumey*] shared directly in the fees and costs did not define the limits
22  of the principle." 409 U.S., at 60, 93 S. Ct. 80, 34 L. Ed. 2d 267. The principle, instead, turned
23  on the "possible temptation" the mayor might face; the mayor's "executive responsibilities for
24  village finances may make him partisan to maintain the high level of contribution [to those
25  finances] from the mayor's court." *Ibid*. As the Court reiterated in another case that Term, "the
26  [judge's] financial stake need not be as direct or positive as it appeared to be in Tumey. *Gibson v.
27  Berryhill*, 411 U.S. 564, 579, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973).

28

Based upon information and belief, CCC is operating on funds borrowed from CNMI treasury, the question is whether there is "possible temptation" the commissioners might face to revoke IPI's license blindly in order to set the table for a more favorable license reinstatement discussion in the post revocation negotiation with IPI, in order to repay the loan borrowed from CNMI treasury.

"The Due Process Clause has been implemented by objective standards that do not require proof of actual bias. See *Tumey*, 273 U.S., at 532, *Mayberry, supra*, at 465-466, 91 S. Ct. 499, 27 L. Ed. 2d 532; *Lavoie*, 475 U. S., at 825. In defining these standards, the question is whether, under a realistic appraisal of psychological tendencies and human weakness, the interest poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented. *Withrow*, 421 U.S., at 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712" *Caperton* at 883-884. (Internal citation and quotation omitted).

IPI is not required to prove actual bias of the commissioners, and it would be very difficult for it to do so; IPI can only present the scenario and ask the Commission to evaluate whether the risk of actual bias or prejudgment by the hearing and voting commissioners is constitutionally tolerable, given their personal and pecuniary interests in the outcome of the revocation hearing, as well as their conducts and behaviors observed at the revocation hearing.

C. FOUR COMMISSIONERS [Guerrero, Demapan, Cruz, Taitano ] WERE PERSONALLY INVOLVED IN RELATED PRIOR ACTIONS

Complaint No. 2021-002 sought to enforce Commission Order 2020-003, which was ordered on June 25, 2020. Commission Order 2020-003 was signed by Chairman Edward Deleon Guerrero of CCC. When Commission Order 2020-003 was ordered, CCC was constituted with the following commissioners: Edward C. Deleon Guerrero, Rafael Demapan, Ramon M. Dela Cruz, Mariano Taitano, and Diego M. Songao.

Complaint No. 2021-003 sought to enforce Commission Order 2021-002, which was ordered on April 22, 2021 by Chairman Edward C. Deleon Guerrero and Vice Chairman Rafael S. Demapan. When Commission Order 2021-002 was ordered, CCC was constituted with the following commissioners: Edward C. DeLeon Guerrero, Rafael Demapan, Ramon M. Dela Cruz,

Mariano Taitano, and Diego M. Songao. Based upon the record, all five commissioners unanimously voted for Commission Order 2021-002.

Four Commissioners (Edward C. Deleon Guerrero, Rafael Demapan, Ramon M. Dela Cruz, Mariano Taitano) were personally involved in the issuance of Commission Order 2020-003 and 2021-002, to the extent that the current revocation hearing requires reconfirmation of prior commission orders made by the four commissioners, the four commissioner shall disqualify themselves from participating in the revocation hearing.

D. OUT OF HEARING PROCEEDING STATEMENT MUST BE DISREGARDED AND NEW HEARING SHALL BE CONDUCTED DUE TO ITS PREJUDICIAL EFFECT.

Under 1 CMC§ 9109 (l), "[f]indings of fact shall be based exclusively on the evidence and on matters officially noticed.

The statement made by Governor Palacios was not introduced as evidence at the hearing and was not officially noticed, therefore, the statement made by Governor shall be excluded when the Commission reaches its findings of facts.

Because the out of hearing statement made by Governor Palacios calls the credibility of Mr. Chi as the testifying witness of IPI into question, and such statement has a strong prejudicial effect against IPI, given the influential political power of the Governor, IPI moves the Commission to declare the hearing invalid. See *U.S. v. Hagege*, 437 F.3d 943 (9th Cir. 2006).

**RELIEF REQUESTED**

IPI is entitled to due process and have its claims and defenses heard before a disinterested and impartial trier of fact as guaranteed by the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution and the due process clause of the constitution of CNMI. This is a compelling case where the conflicts are acute and apparent, and, therefore, IPI moves the Commission to declare the revocation hearing conducted between February 28, 2024, and March 1, 2024 invalid.

The prejudicial statement made by the Governor outside the revocation hearing on the credibility of IPI's sole testifying witness, Howyo Chi, also tainted the minds of any decision makers, therefore, it serves as an additional ground to declare the hearing invalid.

As stated above, all five commissioners have personal, direct and pecuniary interests in the outcome of the revocation hearing, IPI moves the Commission to order the five commissioners to disqualify themselves from participating in the deliberation and voting on the revocation hearing, that is currently scheduled for April 9, 2024.

Dated: April 8, 2024
Las Vegas, Nevada

Respectfully submitted,

By: /s/ Stephen Nutting
Stephen Nutting
Michael Chen
By: /s/ Michael Chen

14

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 2975 Huntington Dr. Ste 101, San Marino, CA 91108. On **April 7, 2024**, I served:

**RESPONDENT IPI'S MOTION TO DISQUALIFY AND REQUEST TO DISREGARD**

on all interested parties:

| | |
|---|---|
| Commonwealth Casino Commission<br><br>Executive Director<br>Andrew Yeom | |

__X__  By Email:

| | |
|---|---|
| Carl F. Dela Cruz<br><br>carl_delacruz@cnmioag.org | |

Executed on **April 7, 2024,** at Las Vegas, Nevada. I declare under the penalty of perjury under the laws of the State of California that the above is true and correct.

            */S/ Wen Jiang*
            Wen Jiang