OFFICE OF THE ATTORNEY GENERAL
EDWARD MANIBUSAN
Attorney General
J. Robert Glass, Jr. (F0523)
Assistant Attorney General
Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
Caller Box 10007, Capital Hill
Saipan, MP 96950
Telephone: 670-237-7500
Email: robby_glass@cnmioag.org
Attorney for Defendant Commonwealth of the
Northern Mariana Islands

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC,<br>            Plaintiff,<br>    vs.<br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, the COMMONWEALTH CASINO COMMISSION, ARNOLD PALACIOS, GOVERNOR OF CNMI, in his official and personal capacities, et. al.,<br><br>            Defendants. | CIVIL CASE NO. 1:24-CV-0001<br><br>**DEFENDANT COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS REPLY**<br><br>**Hearing Date:**<br>**Hearing Time:**<br>**Judge: Hon. Judge David Carter** |

Defendant Commonwealth of the Northern Mariana Islands, respectfully submits this REPLY in support of its motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

## I.    Background

On April 25, 2024, the Commonwealth of the Northern Mariana Islands filed a Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") as the initial motion to dismiss was directed at Plaintiff's Original Complaint. Plaintiff filed its Opposition, but concurrently filed for leave to amend and create a Second Amended Complaint which would moot the current round of briefing on the Motion to Dismiss the First Amended Complaint. This continuing carousel of mooting Motions to Dismiss through Amending its Complaints is also pervasive in a related case. *See IPI v. Commonwealth, et. al.*, Case No. 1:24-sc-00002, which also recently had a First Amended Complaint filed to moot its round of Motions to Dismiss. Each of these Amendments

are brought by Plaintiff all the while arguing for attorney's fees and litigation costs. *See* FAC at ¶¶ 84, 94, 101 and Prayer for Relief at ¶¶ 9-10.

Nevertheless, the Commonwealth timely files its Reply to Plaintiff's Opposition to argue that Plaintiff agrees res judicata principles apply when a party should raise an argument, but fails to do so; that Plaintiff abandoned and clearly failed to raise its arguments in the NMI Superior Court and NMI Supreme Court; that inherent sovereign immunity outside the Eleventh Amendment does apply to the Commonwealth for both claims arising under CNMI law and federal law; and that the Commonwealth Casino Commission ("CCC") is not a sue and be sued entity and Plaintiff grossly misconstrues the statute.

## II. Argument

**1. Res Judicata Bars Plaintiff's Suit.**

### a. Plaintiff's "Bright Line" Facts Are Belied By Its FAC.

Plaintiff argues facts in its Opposition which are belied by its First Amended Complaint. Plaintiff argues that the claims in its FAC accrued after the initial cases began and thus could not have been brought any earlier. Opp. at 9. However, its First Amended Complaint seeks relief not solely related to those narrow issues, but seeks to undo everything prior that has been litigated. *See* FAC at Prayer for Relief (requesting declarations that statutes are unconstitutional and to "vacate, nullify and all adverse administrative decisions against IPI that were based upon the assumption of jurisdiction by CCC to interpret the terms of the CLA and/or to adjudicate claims arising out of the CLA" and "vacate, nullify any and all adverse administrative decisions against IPI that failed to comply with the force majeure clause of the CLA, including but not limited to Commission Order 2021-002" and " issue an injunction against Defendants preventing the enforcement of any CCC Order, including but not limited to Commission Order No. 2021-002, when such Orders are the fruits of an unconstitutional regulatory scheme.").

Plaintiff's FAC plainly argues that the passage of Public Laws 18-56 and 19-24 are the basis for its causes of action. FAC at ¶¶ 19-21 (ECF 38). These laws were passed well before any litigation occurred. FAC at ¶ 19 (PL 18-56 promulgated on July 11, 2014) and ¶ 21 (PL 19-24 promulgated on December 4, 2015) (ECF 38). It is the imposition of these laws that form the basis for every claim brought by Plaintiff. FAC at ¶¶ 76-77 (regulatory fee unconstitutionally impaired its contract rights); ¶ 88 (due process violated because CCC is funded by regulatory fee and created to act judicially as an agency conducting hearings); and ¶ 98 (inability of CCC to

decide constitutionality of laws as power is given to the NMI Courts); ¶ 104 (breach of contract by having CCC function in capacity to conduct hearings in compliance with 4 CMC § 2314). Further, the FAC seeks to have the laws declared unconstitutional. FAC at Prayer for Relief. Thus, to the extent it is seeking to have these laws declared unconstitutional, the actions giving rise to their claims occurred long ago. FAC at ¶¶ 18 and 21 (admitting to paying the fees in prior years and ¶¶ 27-34 (2020 enforcement actions); ¶¶ 35-38 (2021 enforcement actions). At no point during either of these enforcement actions did they raise and pursue these issues which accrued in 2014 and 2015 respectively.

Plaintiff argues that the thirty days to pay deadline is "central to IPI's constitutional claims in this action." Opp. at 9. The only time IPI argues the thirty-days as a fact in its FAC is in its Second Cause of Action where it is solely used as support for the larger claim of an alleged due process violation for finding against IPI in enforcement actions. FAC at ¶ 91. To the extent Plaintiff wishes to argue that the thirty-day deadline to pay was insufficient, it is litigating such in the wrong forum and the claim has yet to accrue as it has not paid or been revoked on failure to pay. Regardless, whether or not thirty days was sufficient time to pay is a far cry from being the "central" issue of constitutionality of a statute which could and should have been raised prior to the 2024 litigation. *See Brown v. Felsen*, 442 U.S. 127, 131 (1979) (citation omitted) ("Res judicata prevents litigation of all grounds for, or defenses to, recovery **that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding**." (emphasis added). Likewise, the issue of whether the Commissioners could sit as an adjudicative body to make determinations regarding the casino license was ripe at the time of the suspension. The claims made by Plaintiff alleging that the passing of two laws created a scheme that was unconstitutional was available for Plaintiff to raise in the prior litigations; they failed to raise and pursue them and thus should be precluded from raising them now. To the extent they wish to argue thirty-days was not sufficient time or that there were procedural issues in the revocation hearing, this is the wrong forum and the issues are not ripe as no final agency action has taken place.

    **b. Plaintiff Blames The Court For Its Failure To Raise The Issues.**

To begin, it is necessary to dispel the myth Plaintiff has created that the Commonwealth is asking to apply res judicata to the agency decision alone. Opp. at 11-14. This is simply not true. The Commonwealth is requesting the Court to apply res judicata to issues that could and should

3

have been raised throughout two separate proceedings that both went all the way to the highest available courts for decision. First, the case where IPI sought an injunction to force the Commonwealth to go to non-binding arbitration which went to the Ninth Circuit and United States Supreme Court. *See Best Sunshine International, LTD (BVI) and Imperial Pacific International (CNMI), LLC v. Commonwealth Casino Commission, as Agency of the Commonwealth of the Northern Mariana Islands*, Appeal No. 22-16630 (Ninth Circuit Court of Appeals August 7, 2023) (Order). IPI then filed a petition for certiorari to the United States Supreme Court who denied certiorari. *See Imperial Pacific International (CNMI), LLC v. Commonwealth Casino Commission, as Agency of the Commonwealth of the Northern Mariana Islands*, No. 23-522 (United States Supreme Court Jan. 8, 2024) (Order Denying petition for writ of certiorari). Second, the agency decision which was reviewed by the NMI Superior Court and the NMI Supreme Court. *See IPI v. CCC*, 2023 MP 8. The agency was not the final say in either of these cases and IPI had its chance to raise the arguments it now makes in this Court in those courts.

Even more troublesome, Plaintiff attempts to have it both ways arguing that they could not have raised the issues they now seek to adjudicate (Opp. at 8-9) while simultaneously arguing they did raise them, but were ignored. Opp. at 11 n. 7 ("IPI disputes that it not raise the constitutionality of the $3M regulatory fee statue (sic) at the CCC suspension hearing…this defense was completely ignored by CCC"); Opp. at 4 ("On March 15, 2022 the Superior Court for the Commonwealth of the Northern Mariana Islands issued its order affirming the Commission Order…[a]s the constitutional issues were clearly not within the scope of the underlying Commission Order, the court ruling similarly does not address any of the constitutional concerns raised in IPI's affirmative defense before the Commission") and Opp. at 5 ("The Commonwealth Supreme Court's Order issued on August 25, 2023, primarily addresses the *force majeure* issue, and does not address any such constitutional arguments.").[1]

However, Plaintiff completely ignores that the reason the Courts never addressed the issues they now raise are because they did not raise them before the Court. *See* Exhibit 1 (collected filings of IPI in pursuing their judicial review of the revocation of their license). In none of these filings did IPI raise the issues which they now seek. They cannot blame the Courts for failing to address

---

[1] Plaintiff requests for the Court to take judicial notice of various NMI Court filings, however, Plaintiff does not provide clean copies of these documents, instead providing the Court with marked up versions that appear to highlight things Plaintiff wishes to emphasize. To the extent these versions are not original, clean copies of the filed versions, the Commonwealth objects to judicial notice of them.

an issue they failed to raise and brief. *See United States v Burke*, 504 U.S. 229, 246 (1992) (Scalia, J. concurring) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one."). Most telling is that in its Petition for Judicial Review, IPI fails to include any mention of the statutes being unconstitutional. *See* Exhibit A (Petition for Judicial Review at 2-3 raising the issues for which it sought review). Notably, the three issues it wished to the have the NMI Superior Court[2] review from the agency action were 1) that CCC made an arbitrary and capricious decision regarding force majeure; 2) the Order was unwarranted by the facts because of Amendment No. 9 to the CLA;[3] and 3) that the proceedings violated due process for relying on evidence outside the record.[4] Exhibit 1 at 2-3. Despite this, they blame the NMI Superior Court and NMI Supreme Court for failing to address what they never raised. As they had a clear opportunity and failed to raise their claims, res judicata should apply.[5]

**2. Plaintiff Failed To Address Collateral Estoppel.**

Plaintiff failed to address or oppose the Commonwealth's collateral estoppel arguments. Plaintiff conceded the parties to the suits as between the Commonwealth and IPI are the same. Opp. at 16-17 (acknowledging same parties for res judicate purposes). They also concede that as long as a party had the opportunity to rise the issue, they should be stopped from being able to later litigate the issue. Opp. at 17 ("There is no reason to believe the CCC was prevented or did not have a fair opportunity to litigate the issue…"). Further, the judgments against IPI were valid and final as the United States Supreme Court and the NMI Supreme Court reviewed the issues and made judgments. Therefore, collateral estoppel should be applied and the case should be dismissed.

**3. The CNMI Has Common Law Sovereign Immunity.**

Plaintiff concedes that the CNMI has sovereign immunity over claims arising under its own laws. Opp. at 18. Thus, its claims in the First Cause of Action under the CNMI Constitution,

---

[2] Plaintiff concedes that the NMI Superior Court does have jurisdiction and power to rule on its constitutional claims. FAC at ¶¶ 83 and 103.
[3] It is notable that IPI sought review of the CLA but failed to raise the claims it is now litigating.
[4] Again, IPI raises a due process argument, but failed to include that the scheme for violations was unconstitutional and impaired their contract with the CLA.
[5] Plaintiff seems to concede this point by arguing res judicata should apply to the Commonwealth for its alleged failures in allowing the CCC to be included as a party in these other suits. Opp. at 16-17. For the reasons discussed below regarding the CCC as a party, they are wrong.

its Second Cause of Action under the CNMI constitution, its Third Cause of Action which is brought entirely under the CNMI constitution, and its Fourth Cause of action for breach of contract under the CLA must all be dismissed.

As to the remaining causes of action (First and Second Causes of Action under the federal constitution), the CNMI has common law sovereign immunity and thus cannot be subjected to suit. The CNMI is the only place with United States jurisdiction that has been disallowed sovereign immunity based on common law sovereign immunity. This should change as not only is *Fleming* on shaky ground, but the primary issue has been ignored by the Courts.[6]

While *Fleming v. Department of Public Safety*, 837 F.2d 401 (9th Cir. 1988), clearly decided that the Eleventh Amendment immunity did not apply to the CNMI due to it not including it in the Covenant, its holding that common law sovereign immunity was waived by "implication" is on tenuous grounds.[7] The *Fleming* holding that the CNMI does not enjoy common law sovereign immunity, was expressly passed over by the Ninth Circuit because they held the waiver of sovereign immunity was broad:

> The Department also claims that the Commonwealth enjoys common law sovereign immunity, and that Fleming's suit is barred even if the eleventh amendment is not applicable. The Department cites *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), for the proposition that common law sovereign immunity constitutes an independent limitation on courts' Article III jurisdiction to hear cases against states. We do not reach this question, because we conclude that in entering into the Covenant the Commonwealth impliedly waived whatever immunity it might otherwise have enjoyed against suits in federal court arising under federal law.

*Id*. at 407 (emphasis added). From this it is clear that two types of sovereign immunity exist: common law sovereign immunity and eleventh amendment sovereign immunity. *Fleming*'s rationale is that by entering into the Covenant, the CNMI waived both because "**there is simply no meaningful distinction between eleventh amendment immunity and common law sovereign immunity insofar as federal suits are concerned**." *Id*. (emphasis added). *Fleming* never gets to the question of the Commonwealth's common law sovereign immunity because it finds there to be no distinction. It is this basis that provides the crack under which *Fleming*'s rationale and reasoning can no longer be reconciled with further developments. *See Manila v.*

---

[6] ABA Model Rule 3.1 allows for attorneys to argue in good faith for "extension, modification, or reversal of existing law."

[7] *Fleming*'s other primary holding that the CNMI was a "person" under § 1983 has already been overturned. *See Norita v. Northern Mariana Islands*, 331 F.3d 690, 696 (9th Cir. 2003).

*Department of Corrections*, 2019 WL 324424 at *3 (D. N. Mar. Is. Jan. 24, 2019) (basing its decision on *Fleming* not being "clearly irreconcilable with the reasoning or theory of intervening higher authority.").

*Alden v. Maine*, 527 U.S. 706 (1999) provides the hammer which shows that eleventh amendment immunity and common law sovereign immunity are not indistinguishable as the *Fleming* court found and thus this Court should find irreconcilable with *Fleming*. *Alden* specifically finds that there is immunity outside of the eleventh amendment:

> We have, as a result, sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but something of a misnomer, for **the sovereign immunity of the States neither derives from, nor is limited by**, the terms of the Eleventh Amendment.

*Alden*, 527 U.S. at 713 (emphasis added). When this Court examined the issue in *Manila*, it did not examine this portion of *Alden* or explain why it is not irreconcilable. Instead, the Court relied on *Norita v. Northern Mariana Islands*, 331 F.3d 690 (9th Cir. 2003) to find that *Alden* did was not irreconcilable with *Fleming*. However, *Norita*, carefully avoids the problem presented by *Alden* and sidesteps the issue.

*Norita* pays homage to *Alden* and its holding that sovereign immunity is derived not from the eleventh amendment, but by the inherent sovereign immunity of being a sovereign (i.e. common law sovereign immunity). However, when push comes to shove, *Norita* explicitly skips *Alden*: "The principles CNMI relies on from the Supreme Court's recently clarified Eleventh Amendment jurisprudence in support of its assertion of sovereign immunity here predate *Fleming*." The *Norita* court then lists our three cases which do predate *Fleming*: *Hans v. Lousisana*, 134 U.S. 1 (1980); *Principality of Monaco v. Mississippi*, 292 U.S. 313 (1934); and *Edelman v. Jordan*, 415 U.S. 651 (1974). Conspicuously absent is the 1999 case of *Alden v. Maine*, 527 U.S. 706 (1999). *Fleming* was decided in 1988 and *Alden* in 1999, so it is not clear why the Ninth Circuit did not discuss it. Further complicating the matter, the *Norita* court separates the issue of eleventh amendment and common law sovereign immunity and states: "We have found no closely-on-point intervening Supreme Court decision undermining *Fleming's* holding that the CNMI is not entitled to an Eleventh Amendment defense." *Norita*, 331 F.3d at 696. This is definitely true. But *Alden* again undermines this by finding sovereign immunity exists as an inherent status outside of the eleventh amendment. If that is not enough, another 1999 case also finds "that a waiver of sovereign immunity is to be strictly construed, in terms of its

scope, in favor of the sovereign." *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). The failure to include the eleventh amendment in the Covenant would only function to waive eleventh amendment immunity, and not common law immunity.

Thus, the decisions in *Fleming* and *Norita* continue to build upon one another, but start with a shaky foundation that proclaims there is no distinction between eleventh amendment and common law sovereign immunity, and then fail to analyze that *Alden* holds that there is a distinction and that *Department of Army* makes any waiver be strictly construed in terms of its scope to favor the sovereign. The shaky walls are then built by ignoring a Supreme Court precedent which was decided after *Fleming* and clearly makes the part of *Fleming* that there is no distinguishing between eleventh amendment sovereign immunity and common law sovereign immunity irreconcilable with each other. It is time to bring the Commonwealth into alignment with the other United States jurisdictions and find it has common law sovereign immunity because the holding of *Fleming* that the CNMI does not have common law sovereign immunity because eleventh amendment and common law sovereign immunity are not distinguishable cannot be reconciled with *Alden* any longer.

### 4. The CCC Is Not A Sue Or Be Sued Entity.

The CCC does not have enabling legislation which allows it "to sue or be sued." Other agencies which lack this capacity have been found to be immune from suit. *See Norita v. Commonwealth*, 2019 WL 150875 at *6-8 (D. N. Mar. Is. January 10, 2019) (finding that pursuant to the doctrine of *expression unius est exclusion alterius*, the lack of a sue or be sued clause in an agencies' enabling statute means the agency retains its sovereign immunity and cannot be sued). Thus, from the outset, even if Plaintiff's reading that the CCC has the ability to sue, it does not have the ability to be sued because such language was expressly excluded from the enabling statute. *Id.* at *6 ("The doctrine of *expression unius est exclusion alterius* as applied to statutory interpretation creates a presumption that when a statute designates persons, things, or manners of operation, all omissions should be understood as exclusions.") (cleaned up). From the express language of the statute, there is nothing indicating the CCC may be sued. *See Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (waivers of sovereign immunity are to be strictly construed in favor of the sovereign). Thus, without such an express grant of waiver, the CCC cannot be sued, even if it can sue.

But, for the following reasons, CCC does not have the power to sue in its own name. The language used in the statute does not expressly give the CCC the power to sue in its own name. *Compare* 4 CMC § 2314(q) ("The Commission may initiate regulatory proceedings or actions appropriate to enforce the provisions of gambling, or gaming laws of the Commonwealth…[and] when appropriate shall, in conjunction with the Attorney General, sue civilly to enforce the provisions of the gabling and gaming laws of the Commonwealth.") *with* 4 CMC § 8123(c) ("CUC shall have all of the powers conferred by law on a public corporation…including the power to [s]ue and be sued in its corporate name.") These two provisions highlight the vast difference between being granted the power to sue and be sued versus being able to request the Attorney General to civilly enforce gambling and gaming laws. In fact, the first part of the CCC statute makes it clear that its right to initiate proceedings on its own volition ends at regulatory proceedings. When it comes to civil enforcement, it must use powers beyond itself— i.e. the Commonwealth through the Attorney General. As such, the CCC does not have the power to sue in its own name and must rely on the Commonwealth to bring suit to enforce its provisions.

Plaintiff's argument regarding res judicata is completely wrong because it ignores the fundamental formulation of the NMI proceedings. Plaintiff only relies on the "State Actions" to support its assertion that res judicata bars the Commonwealth from raising the issue of CCC not being a sue or be sued entity and thus being entitled to dismissal. Opp. at 17. The Commonwealth will likewise only respond to the assertions raised by the Plaintiff. Plaintiff is patently wrong on the issue because the "State Actions" were brought as a request for judicial review in the NMI Courts. *See* Exhibit 1 (*CCC v. IPI*, Civil Action No. 21-0173 (NMI Super. Ct. May 26, 2021) (Petition for Judicial Review)). Judicial review actions are governed by 1 CMC § 9112. Judicial review actions follow the NMI Rules for Procedure for Administrative Appeals. Parties to a judicial review action are the Petitioner and Respondents; the "Petitioner" is the party who files a petition for judicial review, *see* NMI R. P. Admin. App. 1(f)(5), while the Respondent is "the party against whom the appeal is taken and other necessary parties." NMI R. P. Admin. App. 1(f)(6). Thus, the CCC is a proper party in a judicial review action as the Petitioner. This current suit is not an action for juridical review governed by the NMI Rule of Procedure for Administrative Appeals; thus, the "State Actions" were correctly brought against the CCC and there was no reason or basis to challenge the party in the suit.

Further, Plaintiff is well aware of all of this and that the Commonwealth argued it previously against them. In fact, the prior proceeding in 2023 is telling as to Plaintiff's knowledge of the issue and its ultimate conclusions. First, it filed its Complaint in *Imperial Pacific International (CNMI), LLC v. Commonwealth Casino Commission of the Commonwealth of the Northern Mariana Islands*, Civil Action No. 23-00016 (D. N. Mar. I. Dec 27, 2023) (Complaint) (ECF 1) it only included the CCC as a party. The Commonwealth then moved to dismiss the CCC as it lacked the capacity to sue or be sued. *Id*. (Motion to Dismiss at 11-12) (ECF 5-1). Plaintiff and Defendant agreed to dismissal without prejudice without further litigation of the matter; however, when Plaintiff refiled the case (which is now the two related cases 1:24-cv-00001 and 1:24-cv-00002), it included all of the commissioners of the CCC and the Commonwealth as well as the Governor, but did not initially include the CCC. *See IPI v. Commonwealth, et. al.*, Civil Action No. 24-00001 (D. N. Mar. I. Feb 23, 2024) (ECF 1). In fact, IPI never summoned nor served the CCC in this case. While the Commonwealth contends the CCC is not required to be served because it is not a proper party to the suit, should this Court hold otherwise, and the CCC should be dismissed for lack of service as well. But the more important part is that not even Plaintiff considered the CCC a party until it amended its suit in the FAC (EFC 38) as it understood and agreed with the Commonwealth that the CCC is not a proper party because it lacks the capacity to be sued.

Thus, there is no basis for continuing inclusion of the CCC and it should be dismissed with prejudice.

### III.   CONCLUSION

For the foregoing reasons, Defendants respectfully moves to dismiss this suit pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6).

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
EDWARD MANIBUSAN
Attorney General

Date:  May 23, 2024         /s/ *J. Robert Glass, Jr.*
                            J. Robert Glass, Jr. (F0523)
                            Chief Solicitor
                            Attorney for Defendant
                            Commonwealth of the Northern Mariana Islands