Bruce Berline, Esq.
Law Office of Bruce Berline LLC
Security Title Building, Second Floor
Isa Drive, Capitol Hill
P. O. Box 5682 CHRB
Garapan, Saipan, MP 96950
Tel: (670) 233-3663
Email: bberline@gmail.com

Aaron Halegua
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Tel: (646) 843-9061
Email: ah@aaronhalegua.com

*Attorneys for Defendant Arnold Palacios in his Personal Capacity*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| Imperial Pacific International (CNMI) LLC; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Commonwealth of the Northern Mariana Islands; *et al.*,<br><br>Defendants. | Case No. 1:24-cv-00001<br><br>**MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT AS TO DEFENDANT ARNOLD PALACIOS IN HIS PERSONAL CAPACITY PURSUANT TO RULE 12(b)(6) AND MEMORANDUM IN SUPPORT**<br><br>Hearing date: n/a<br>Hearing time: n/a<br>Judge: Hon. David O. Carter |

1

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..........................................................................................................ii

TABLE OF AUTHORITIES ................................................................................................ iii

I.      BACKGROUND ...............................................................................................1

II.     LEGAL STANDARD ......................................................................................8

III.    ARGUMENT ...................................................................................................9

   A. IPI's claim against Governor Palacios for violating the Contract Clause
      should be dismissed for failing to state a claim..........................................10

     1.  IPI did not state a claim under the Contract Clause because it does not
        allege any legislative action, only enforcement action..........................11

     2.  IPI only offers wholly-conclusory allegations with no factual basis
        linking Governor Palacios to the enforcement efforts by the CCC ......................13

   B. IPI fails to state a § 1983 claim against Governor Palacios because its
      allegations are conclusory and lack a factual basis.. ....................................17

IV.    CONCLUSION ..............................................................................................20

1

**TABLE OF AUTHORITIES**

2

<u>CASES</u>

3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................8–9, 14, 19

4

5

*Askins v. U.S. Department of Homeland Security*, 899 F.3d 1035 (9th Cir. 2018) ......................12

6

*Barrows v. Jackson*, 346 U.S. 249 (1953) ...................................................11

7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..............................................8, 15–16

8

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018)...................................9

9

*Commonwealth Casino Comm'n v. Imperial Pac. Int'l*, 2023 MP 8 (N. Mar. I. 2023)...............12

10

*Educ. Networks of Am., Inc. v. Wasden*, No. 1:16-CV-00379-BLW,

11

2017 WL 411206 (D. Idaho Jan. 30, 2017)............................................................11

12

*Fontana Water Co. v. City of Fontana*, 24 F.3d 246 (9th Cir. 1994)...........................11

13

*Gen. Motors Corp. v. Romein*, 503 U.S. 181 (1992) .........................................11

14

*Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018)..............................3

15

*Mancuso v. Dunbar*, No. 3:08-cv-1018, 2010 WL 466004, (D. Conn. Feb. 5, 2010) .................17

16

*Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338 (9th Cir. 1997).........................17

17

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009).................................8–9, 13, 15

18

*New Orleans Water–Works Co. v. La. Sugar Ref. Co.*, 125 U.S. 18 (1888) ...............11

19

*Pac. Rim Land Dev., LLC v. Imperial Pac. Int'l*, No. 19-cv-00016,

20

21

2022 WL 3587012 (D. N. Mar. I. Aug. 22, 2022)..........................................................12

22

*Reaper v. ACE Am. Ins. Co.*, No. 23-15178, 2024 WL 810697 (9th Cir. Feb. 27, 2024).........9, 14

23

*Rendell–Baker v. Kohn*, 457 U.S. 830 (1982) ..............................................17

24

*Solomon v. Las Vegas Metro. Police Dep't*, 441 F. Supp. 3d 1090 (D. Nev. 2020) .................18

25

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001)..........................16, 19

26

27

*Suever v. Connell*, 579 F.3d 1047, 1061 (9th Cir. 2009)..................................17

28

*Sullivan v. Nassau Cnty. Interim Fin. Auth.*, 959 F.3d 54 (2d Cir. 2020) ..................................... 12

*Taylor v. City of Gadsden*, 767 F.3d 1124 (11th Cir. 2014)........................................................... 11

*United States ex rel. Stenson v. Radiology Ltd., LLC*, No. 22-16571,

      2024 WL 1826427 (9th Cir. Apr. 26, 2024)........................................................................ 14

*Vazquez-Velazquez v. Puerto Rico Highways & Transportation Auth.,*

      73 F.4th 44 (1st Cir. 2023) ...................................................................................... 11

*Vierra v. Cochise Cnty.*, 301 F. App'x 727 (9th Cir. 2008) ............................................................ 19

*Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City*,

      473 U.S. 172 (1985) ............................................................................................... 17

*Woodrum v. Woodward Cnty., Okl.*, 866 F.2d 1121 (9th Cir. 1989)...................................... 17–19

## RULES

Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 9, 20

## CONSTITUTION

U.S. Const. art. I, § 10, cl. 1 ............................................................................................ 11

## STATUTES

42 U.S.C. § 1983 ........................................................................................................ 6–7

42 U.S.C. § 1988 .......................................................................................................... 10

4 CMC § 2314 ............................................................................................................... 6

4 CMC § 2316 ............................................................................................................. 10

REGULATIONS

NMIAC § 175-10.1.................................................................................................................1

NMIAC § 175-10.1-560 ........................................................................................................2

Defendant Arnold Palacios (the "Governor" or "Governor Palacios"), in his personal capacity, hereby moves under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims brought against him by plaintiffs Imperial Pacific International (CNMI), LLC and Best Sunshine International, Ltd (BVI) (collectively, "Plaintiff" or "IPI") in their Second Amended Complaint (ECF No. 56 ("SAC")) because they do not state a claim for which relief can be granted.

## I.   BACKGROUND[1]

### Casino License Agreement and Regulatory Framework

On July 8, 2014, the Commonwealth of the Northern Mariana Islands (the "CNMI") enacted Public Law 18-56, which provided for an exclusive gaming license to operate a casino in the Commonwealth. (SAC ¶ 15). Public Law 18-56 also provided for the establishment of a Commonwealth Casino Commission ("CCC") to regulate the casino licensee. (*Id*. ¶ 24). On August 12, 2014, the Commonwealth Lottery Commission, the entity with power to select the casino licensee but not to regulate it, entered into a Casino Licensing Agreement ("CLA") on behalf of the CNMI with IPI as the exclusive licensee. (*Id*. ¶ 21). The CLA obligates IPI to pay the CNMI a fifteen million dollar ($15,000,000) annual exclusive casino license fee. (*Id*. ¶ 27). The CLA provides that IPI's license may be suspended or revoked by the CCC upon a material breach of the CLA. (*Id*. ¶¶ 24, 34, 35).

On December 4, 2015, the CNMI, under Acting Governor Ralph D.L.G. Torres, enacted Public Law 19-24, which requires IPI to pay the CCC an additional three million dollar ($3,000,000) annual regulatory fee. (*Id*. ¶ 30). On October 28, 2016, the CCC promulgated the CCC Rules and Regulations, codified as NMIAC § 175-10.1, which impose, *inter alia*, a minimum

---

[1] The history of legislative, regulatory, and judicial events that form the basis for much of IPI's claims in the SAC are discussed at length in the Court's two decisions denying IPI's TROs (ECF Nos. 9, 36), and it is therefore only summarized here. This brief background section primarily focuses on those facts most relevant to the instant motion.

capital requirement on IPI. (*Id.* ¶¶ 32, 106, 107). (Although not cited in the SAC, the minimum capital requirement was established by NMIAC § 175-10.1-560). While IPI paid its various taxes and fees for several years, IPI has not paid the CLA's annual license fee or regulatory fee since 2020. (*Id.* ¶¶ 30, 33, 38, 41).

CCC Enforcement Actions

In 2020, Andrew Yeom, Executive Director of the CCC, initiated five complaints against IPI with the CCC for, *inter alia*, failing to pay the annual license fee and regulatory fee that had come due as well as failing to maintain adequate cash reserves. (*Id*. ¶¶ 36–41). On April 22, 2021, the CCC held a hearing on the enforcement of these actions, suspended IPI's gaming license, and ordered IPI to pay a total of $18.65 million due under the CLA's license fee and the regulatory fee statute. (*Id.* ¶¶ 42–43). On May 21, 2021, IPI sought judicial review of the CCC's order in the Superior Court for the CNMI and argued that "the CCC's Order was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and unwarranted by the facts." (*Id.* ¶ 44). On March 15, 2022, the order was affirmed by the Superior Court, and then, on August 25, 2023, the order was affirmed in part and reversed in part by the CNMI Supreme Court. (*Id.* ¶¶ 45–47). In its decision, the CNMI Supreme Court instructed the CCC to decide on a reasonable deadline for IPI to pay the annual license fees for 2020 and the following years. (*Id.* ¶ 47). On November 30, 2023, the CCC directed IPI to pay the $62,010,280.00 that it owed within 30 days. (*Id*. ¶ 50).

While the 2020 complaints were being litigated, on September 17, 2021, Executive Director Yeom filed five additional complaints with the CCC alleging that IPI failed to maintain the minimum capital requirements and breached the CLA by failing to pay the annual license fee and regulatory fee for 2020 and 2021. (*Id.* ¶¶ 59–64). A regulatory hearing was set to consider revocation of IPI's exclusive casino license. However, on May 23, 2022, IPI sought and was granted a temporary restraining order ("TRO") to prevent the hearing. (*Id.* ¶ 65). This Court's

order granting the TRO was later vacated by the Ninth Circuit Court of Appeals, and IPI's petition

for writ of certiorari was denied by the U.S. Supreme Court. (*Id*. ¶¶ 66–67). On or about December

13, 2023, the CCC's Executive Director then filed a motion requesting that the CCC set a

revocation hearing. (*Id*. ¶¶ 68).

<u>Revocation Proceedings and Settlement Negotiations</u>

Defendant Arnold Palacios was first inaugurated as Governor of the CNMI in January

2023—*after* the CLA was signed, the regulatory fee statute was enacted, the minimum capital

requirement was promulgated, and the various actions by the CCC were initiated.[2] The SAC does

not provide the date that Governor Palacios assumed office, but the Court should take judicial

notice of this fact. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not

subject to reasonable dispute because it . . . is generally known within the trial court's territorial

jurisdiction."); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("A court

may take judicial notice of matters of public record without converting a motion to dismiss into a

motion for summary judgment." (citation omitted)).

After the U.S. Supreme Court denied IPI's petition for certiorari concerning the 2021

complaints, on or about December 13, 2023, the CCC's Executive Director made a motion for the

CCC to schedule a revocation hearing. (*Id*. ¶¶ 68). Around this time, while IPI had been trying to

negotiate a settlement to avoid the revocation of its license, IPI filed two different lawsuits in this

Court against the CCC. The first lawsuit alleged that the regulatory fee and the CCC's demands

for payments of that regulatory fee unconstitutionally impaired the CLA, violated the takings

clauses of the U.S. Constitution and CNMI Constitution, violated IPI's due process rights, and

breached the CLA. (*See* Complaint, *IPI v. CCC*, 1:23-cv-00014, ECF No. 1 (D. N. Mar. I. Dec.

---

[2] *See, e.g.,* Office of the Governor, Arnold I. Palacios, https://governor.gov.mp ("The Honorable
Arnold I. Palacios is the 10th Governor of the Commonwealth of the Northern Mariana Islands,
serving alongside Lieutenant Governor David M. Apatang since January 2023.").

11, 2023)). The second lawsuit alleged that the CCC's power to adjudicate issues arising out of the CLA unconstitutionally impaired the CLA, violated IPI's due process rights, violated the separation of powers provision of the CNMI Constitution, and breached the CLA. (*See* Complaint, *IPI v. CCC*, 1:23-cv-00016, ECF No. 1 (D. N. Mar. I. Dec. 11, 2023)). IPI then filed an amended complaint in the first case, 1:23-cv-00014, that added as defendants the CCC Commissioners, CCC Executive Director, and Governor Palacios in both their official and personal capacities. (*See* First Amended Complaint, *IPI v. CCC*, 1:23-cv-00014, ECF No. 7 (D. N. Mar. I. Jan. 23, 2024)). The amended complaint, however, did not include any factual allegations concerning Governor Palacios. After the CCC stipulated to postpone the revocation hearing, IPI stipulated to dismiss both lawsuits without prejudice. (*See* ECF No. 3-2 (Decl. of Howyo Chi) ¶ 30; Order of Dismissal without Prejudice, *IPI v. CCC*, 1:23-cv-00014, ECF No. 12 (D. N. Mar. I. Jan. 30, 2024)).

<u>Current Litigation</u>

As no agreement had been reached and the date of the revocation hearing approached, on February 23, 2024—one week before the hearing date—IPI refiled its two lawsuits with the exact same causes of action as those previously dismissed. (*See* Complaint, ECF No. 1; Complaint, *IPI v. CNMI, et al.*, 24-cv-00002, ECF No. 1 (D. N. Mar. I. Feb. 23, 2024)). In both cases, IPI named Governor Palacios, in both his official and personal capacities, as a defendant for each cause of action. However, other than a single sentence stating that Defendant Arnold Palacios is a CNMI resident and the Governor of the CNMI, neither of these original complaints contained even a single factual allegation about the Governor or any action taken by him, let alone an allegation explaining his relationship to any of the events that are the subject of IPI's complaints. (*Id.*)

On February 26, 2024, five days before the scheduled date for the CCC's revocation hearing, IPI filed an emergency motion for a TRO to stop the hearing. (ECF No. 3). In that motion, IPI plainly stated that its purpose in filing the TRO, like the litigation more generally, was to "allow

IPI and Defendants to continue their settlement discussions and provide a levelled playground." (*Id.* at 28). This Court denied IPI's first request for a TRO because IPI was unlikely to succeed on the merits of its claims and failed to prove that the TRO would be equitable or serve the public interest, publishing its written decision on February 29, 2024. (ECF No. 9).

The CCC held its revocation hearing from February 28, 2024, to March 1, 2024. (SAC ¶ 75). Counsel for IPI made several motions for the Commissioners to disqualify themselves from serving as hearing officers, but they did not do so. (*Id.* ¶¶ 78–79). The CCC scheduled its deliberation on whether to revoke IPI's license for April 2, 2024. (*Id.* ¶ 82). During the hearing, IPI's manager and director, Howyo Chi, testified that Governor Palacios had backed out of a settlement deal with IPI and left $50 million on the table. (*See* ECF No. 38-12 ("Governor's Op-Ed")).[3] In response, Governor Palacios published an op-ed in the CNMI newspapers, in which he stated that this accusation by Mr. Chi was untrue. (Governor's Op-Ed*;* SAC ¶ 81).

In an effort to prevent the CCC's deliberations on the revocation hearing, on March 27, 2024, IPI filed another emergency motion for a TRO, raising a due process claim and a new basis for its contract impairment claim that was not alleged in any of its prior complaints. (ECF No. 23-1)*.* On April 5, 2024, this Court denied IPI's second TRO. (ECF No. 36).

On April 8, 2024, IPI filed a First Amended Complaint ("FAC") in this action. (ECF No. 38). The FAC removed Governor Palacios in his personal capacity as a defendant and raised the same causes of action as the original Complaint, but with slightly more detail about the CCC's orders and revocation hearings. (*Id.*) Governor Palacios in his official capacity remained a defendant only for one state law cause of action, the breach of the CLA. (*Id.* ¶¶ 102–14). After

---

[3] The SAC references an op-ed issued by the Governor in response to Mr. Chi's allegation and cites to an "Exhibit L." (SAC ¶ 81). Exhibit L to the SAC is clearly not the op-ed issued by the Governor. The document that IPI seemingly intended to attach was the "Exhibit L" filed along with its First Amended Compliant. (ECF 38-12).

Governor Palacios filed a motion to dismiss the FAC, however, IPI then moved to file another amended complaint.[4] On July 19, 2024, the Court granted IPI's motion for leave to file another amended complaint. (ECF No. 55).

On July 24, 2024, IPI then formally filed the SAC containing two causes of action—violation of the Contract Clause and violation of the Due Process Clause—against a wide swath of defendants, including the Governor in his official and personal capacities. (SAC ¶¶ 101–26). The first cause of action alleges that the regulatory fee and minimum capital requirement as applied to IPI during the COVID-19 pandemic, as well as the CCC's demand for payment of the annual license fees, unconstitutionally impaired a contractual relationship in violation of the Contract Clause of the U.S. Constitution. (*Id.* ¶¶ 101–118). The second cause of action, brought under 42 U.S.C. § 1983, alleges that the Commissioners' non-recusal from the revocation hearing and the CCC's regulatory power over IPI under 4 CMC § 2314 and NMIAC § 175-10.1 violated the Due Process Clause of the U.S. Constitution. (*Id.* ¶¶ 119–126).

 Only a handful of the 126 paragraphs in the SAC, however, even reference any action by Governor Palacios. (*Id.* ¶¶ 81, 92, 94, 95, 112, 114, 116, 125). The "Factual Allegations" section of the SAC includes only four such allegations:

- "After the adjournment of the revocation hearing, on March 6, 2024, Governor Arnold I. Palacios caused to publish an article on local newspapers. In the article, Mr. Palacios made remarks to contradict the testimony of IPI's witness, Mr. Howyo Chi and put the credibility of Chi into question. See Exhibit L." (*Id.* ¶ 81).

---

[4] IPI had already agreed to dismiss all claims against Governor Palacios in his personal capacity that were raised in its companion lawsuit. (Order Granting Stipulation of Dismissal, *IPI v. CNMI, et al.*, Case No. 1:24-cv-00002, ECF No. 21 (D. N. Mar. I., April 24, 2024)).

- "Based upon information and belief, under the direction of Governor Palacios, in recent months, CNMI loaned certain money to CCC to cover its expenses, including payments to the Commissioners of CCC." (*Id.* ¶ 92).

- "Based on information and belief, Defendant CNMI and Defendant Palacios in his official and personal capacity colluded with CCC and its commissioners, to initiate and maintain the revocation proceeding against IPI and use CCC as the collection agent to collect the unpaid and disputed annual license fees by exercising the power to revoke as a threat." (*Id.* ¶ 94).

- "Based upon information and belief, Defendants CNMI and Palacios conspired with CCC and its commissioners to conduct the revocation hearing by refusing to allow the commissioners to recuse from the revocation hearing as the hearing and voting commissioners." (*Id.* ¶ 95).

    In the "First Cause of Action" section, relating to IPI's Contract Clause claim, the SAC then alleges that the Commissioners demanded payment of the annual license fees "[u]nder the direction and/or in collusion with CNMI and the Governor." (*Id*. ¶¶ 112, 114, 116). In the "Second Cause of Action" section, relating to IPI's Due Process claim under 42 U.S.C. § 1983, the SAC's sole allegation against Governor Palacios is that "[b]ased upon information and belief, the refusal to disqualify themselves by the Commissioners from the revocation hearing and deliberation was at the direction of CNMI and Governor Palacios." (*Id.* ¶ 125).

    Notably, neither of the allegations that the Governor directed or conspired with the Commissioners to not recuse themselves from the revocation hearing (SAC ¶¶ 95, 125) appeared in the FAC, even though the FAC was filed after the revocation hearing had already concluded. (SAC ¶ 75; ECF No. 38).

## II. <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). While this holding does not establish a "probability requirement," it is not sufficient for a plaintiff to simply plead "a sheer possibility" that the defendant acted unlawfully or to plead facts "merely consistent with a defendant's liability." *Id.* (quotations and citations omitted). Rather, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679. (quoting Fed. Rule Civ. Proc. 8(a)(2)). *See also id.* at 680 (the claim of wrongdoing must be "plausible" not just "conceivable") (quoting *Twombly*, 550 U.S. at 570).

In assessing whether a plausible claim has been stated, a district court must consider whether the pleading standard set forth in Fed. R. Civ. P. 8(a)(2) has been satisfied. In this regard, a pleading that only offers "labels and conclusions" or that tenders "naked assertions devoid of further factual enhancement" does not suffice. *Id.* at 678 (quotations omitted) (cleaned up). Accordingly, while a district court is to treat proper factual allegations as true for purposes of a motion to dismiss, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal quotations omitted). Instead, legal conclusions "must be supported by factual allegations." *Id.* at 679*; see also Moss v. U.S. Secret Serv.,* 572 F.3d 962, 970 (9th Cir. 2009) (an allegation of discrimination "without *any* factual content to bolster it, is just the sort of conclusory allegation that the *Iqbal* Court deemed inadequate, and thus does nothing to enhance the plausibility of Plaintiffs' viewpoint discrimination claim") (emphasis in original).

Merely adding the phrase "upon information and belief" to an otherwise conclusory allegation does not magically render it non-conclusory. *Reaper v. ACE Am. Ins. Co.*, No. 23-15178, 2024 WL 810697, at *1 (9th Cir. Feb. 27, 2024) (*"The district court properly disregarded most of the allegations made on information and belief because they were conclusory"); *see id.* (rejecting contention that there is an "exception to federal pleading standards for allegations made on information and belief"). *See also Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018) ("Those magic words ['upon information and belief'] will only make otherwise unsupported claims plausible … where the belief is based on factual information that makes the inference of culpability plausible") (internal quotations omitted).

Therefore, in considering a motion to dismiss, the district court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Then, where "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*; *see also Moss*, 572 F.3d at 970 (following the "suggested sequence" of analysis set forth in *Iqbal* and finding plaintiffs failed to state a claim).

## III.  ARGUMENT

The SAC, despite being IPI's third attempt to file a proper complaint, fails to state a claim against Governor Palacios upon which relief can be granted and thus should be dismissed as to Governor Palacios under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6). In its first cause of action, IPI does not state a claim under the Contract Clause because it does not allege any legislative action, let alone an act by Governor Palacios, that substantially impaired a contractual relationship. Further, the wholly-conclusory allegations that the Governor directed or colluded with the Commissioners to have the CCC collect these fees lack an adequate factual basis. As to the second cause of action, once again, IPI's § 1983 Due Process claim must be dismissed because the

conclusory allegations in the SAC do not state a plausible claim that Governor Palacios either directed or conspired with the CCC Commissioners to have them refuse to recuse themselves from the revocation proceedings.

**A. IPI's claim against Governor Palacios for violating the Contract Clause should be dismissed for failing to state a claim.**

The thrust of the SAC's first cause of action seems to be that IPI's rights under the CLA were substantially impaired by the application of the regulatory fee statute, the minimum capital requirement under the CCC's regulations, and the CCC's demand for payment of annual license fees during the COVID 19-pandemic. (SAC ¶¶ 104–109). IPI's only allegation against Governor Palacios in this claim is that "[u]nder the direction and/or in collusion with CNMI and the Governor," the CCC and its Commissioners "demand[ed] payment," "demanded immediate payment," and "attempted to collect" the annual license fees accrued during the force majeure event "for the benefits of CNMI, by exercising CCC's regulatory power to revoke . . . ." (*Id.* ¶¶ 112, 114, 116).[5] This cause of action fails because: (1) the Contract Clause is only implicated by legislative action, but IPI's allegations only concern efforts to enforce existing law; and (2) IPI only offers wholly-conclusory allegations with no factual basis linking Governor Palacios to the enforcement efforts by the CCC.[6]

---

[5] IPI *cannot* allege that Governor Palacios played any role in enacting the law creating that fee, because PL 19-24 was signed into law by then-Acting Governor Ralph DLG. Torres. (*See* Exhibit A, *IPI v. CNMI, et al.*, No. 24-cv-00002, ECF No. 1-1 at 3 (D. N. Mar. I. Feb. 23, 2024)). The minimal capital requirement was established by a CCC regulation, not by an act of the Governor. (*See* 4 CMC § 2316(a) ("The Commission shall promulgate rules and regulations to carry out . . . compliance and internal controls")).

[6] IPI's claim that it is entitled to attorney's fees and costs for its Contract Clause claim under 42 U.S.C. § 1988(b) must also be denied. (SAC ¶ 118). This statute only provides attorney's fees for proceedings under Title 42, Sections 1981 (equal rights under the law), 1981a (damages in cases of intentional discrimination in employment), 1982 (property rights of citizens), 1983 (civil action for deprivation of rights), 1985 (conspiracy to interfere with civil rights against a protected class), and 1986 (action for neglect to prevent). 42 U.S.C. § 1988(b). However, IPI does not point to any of these sections in pleading its Contract Clause claim.

1. <u>IPI did not state a claim under the Contract Clause because it does not allege any legislative action, only enforcement action.</u>

IPI's claim lacks merit because the Contract Clause only concerns legislative action that impairs the rights of a party, not efforts to enforce an existing law. The U.S. Constitution's Contract Clause provides that "[n]o State shall . . . *pass any* . . . *Law* impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10, cl. 1 (emphasis added). The U.S. Supreme Court held that the Contract Clause "is aimed at the legislative power of the State, and not at the decisions of its courts, or the acts of administrative or executive boards or officers, or the doings of corporations or individuals." *New Orleans Waterworks Co. v. La. Sugar Refin. Co.*, 125 U.S. 18, 30 (1888); *Barrows v. Jackson*, 346 U.S. 249, 260 (1953) (holding that the Contract Clause is "directed against legislative action only"); *see also Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (the threshold inquiry to establish a Contract Clause claim "has three components: whether there is a contractual relationship, whether a *change in law* impairs that contractual relationship, and whether the impairment is substantial" (emphasis added)). While the Contract Clause may sometimes apply to legislative power exercised through executive action (such as the issuance of a regulation), "executive decisions with respect to how to implement [the] laws are not controlled by the Contract Clause." *Educ. Networks of Am., Inc. v. Wasden*, No. 16-CV-00379-BLW, 2017 WL 411206, at *10 (D. Idaho Jan. 30, 2017) (quoting *Fontana Water Co. v. City of Fontana*, 24 F.3d 246 (9th Cir. 1994)). This is because "case-by-case interpretation of an existing law, which necessarily arises in the context of enforcement, is distinguishable from the issuance of a prospective policy or regulation of general applicability, which characterizes legislative action." *Id.*; *see also Vazquez-Velazquez v. Puerto Rico Highways & Transportation Auth.,* 73 F.4th 44, 51–52 (1st Cir. 2023) (transportation authority's decision on how to implement law on compensation did not implicate Contract Clause); *Taylor v. City of Gadsden*, 767 F.3d 1124, 1132 (11th Cir. 2014) (municipality's execution of powers granted by a state law did not implicate the

Contract Clause); *Sullivan v. Nassau Cnty. Interim Fin. Auth.*, 959 F.3d 54, 61 (2d Cir. 2020) ("A prerequisite to any violation of that Clause is that the challenged action be a '[l]aw' or, as the Supreme Court has explained, that it be legislative in nature.") (citation omitted).

In its earlier complaints, IPI sought to challenge the legislation establishing the annual license fee and the regulatory fee. However, the Court noted that the CNMI Supreme Court has already upheld the appropriateness of the license fee, and this Court found that the regulatory fee did not substantially impair IPI's rights under the CLA.[7] In an effort to find a cause of action that sticks, IPI's first claim in the SAC now shifts to the efforts by the CCC to enforce the fees owed under existing legislation. In doing so, the SAC does not discuss any legislative action. Indeed, the SAC even explicitly states that the CCC was exercising its regulatory power, not a legislative one, when it demanded payment from IPI and held proceedings to revoke IPI's casino license. *See, e.g.,* SAC ¶ 104 (the annual regulatory fee statute "as applied to IPI during the Covid-19 period . . . is an unconstitutional impairment of its contractual right"); *id.* ¶ 105 ("the application of the annual regulatory fee statute . . . is unconstitutional"); *id.* ¶ 106 (the minimum capital requirement "as

---

[7] In denying IPI's first motion for a TRO, this Court determined that the statute establishing the regulatory fee, PL 19-24, did not constitute a "substantial impairment" of IPI's rights under the Contract Clause. (*See* ECF No. 9 at 9 (the Court "does not find that the imposition of the additional $3 million annual regulatory fee constitutes a substantial impairment . . . ")). Notably, IPI neither alleges any new facts or allegations that would justify a different result, nor does it offer any argument as to why the law-of-the-case doctrine should not apply to this issue. *See Pac. Rim Land Dev., LLC v. IPI*, No. 19-cv-00016, 2022 WL 3587012, at *3 (D. N. Mar. I. Aug. 22, 2022) ("The law-of-the-case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (internal quotation marks omitted) (quoting *Askins v. U.S. Department of Homeland Security*, 899 F.3d 1035, 1042 (9th Cir. 2018)). As to the annual license fee, this Court recognized that this issue has been adjudicated to finality and the CNMI Supreme Court held that IPI must pay the annual license fees accrued during the pandemic and that the CCC can determine a deadline to do so. *See Commonwealth Casino Comm'n v. IPI*, 2023 MP 8 ¶ 46 (N. Mar. I. 2023) ("While IPI would like us to find that the COVID-19 pandemic excused its obligation to pay outright, that would contradict the plain language of the CLA, which excuses IPI's default during a force majeure event, but not its obligation to pay"); *see also* ECF No. 36 at 10 ("The CNMI Supreme Court decision constitutes a final judgment on the merits of an action.").

applied to IPI during the Covid-19 period . . ."); *id.* ¶ 109 ("the application of the demand for payment of the annual regulatory fee . . ."); *id.* ¶ 112 (the demand for payment of fees "by exercising CCC's regulatory power to revoke . . ."); *id.* ¶ 114 ("demanded immediate payment from IPI . . . through exercising its regulatory power to revoke . . ."). Thus, as IPI has not identified or alleged any legislative action, the SAC fails to state a claim for a violation of the Contract Clause of the U.S. Constitution and thus should be dismissed.[8]

   2.  IPI only offers wholly-conclusory allegations with no factual basis linking Governor Palacios to the enforcement efforts by the CCC.

   While IPI's first cause of action should be dismissed for failing to allege any legislative action, the claim should also be dismissed as to Governor Palacios under the *Iqbal* analysis because IPI does not state any claim that would establish the Governor's personal liability. IPI's Contract Clause claim is almost entirely focused on the CCC's efforts to collect the fees owed by IPI. The sole allegation against Governor Palacios related to this cause of action, which almost appears as an afterthought, is that "[u]nder the direction and/or in collusion with CNMI and the Governor," the CCC and its Commissioners "demand[ed] … payment," "demanded immediate payment," and "attempted to collect" the annual license fees accrued during the force majeure event "for the benefits of [the] CNMI, by exercising CCC's regulatory power to revoke . . . ." (SAC ¶¶ 112, 114, 116). These allegations are "just the sort of conclusory allegation that the *Iqbal* Court deemed inadequate," *Moss*, 572 F.3d at 970, and therefore are not given any consideration in analyzing whether IPI has stated a plausible claim. *See Iqbal*, 556 U.S. at 681 (discounting allegations that

---

[8] In pleading this cause of action, IPI also argues that the nine-step dispute resolution process outlined in the CLA should be used to resolve "[t]he issue of whether IPI is obligated to pay, rather than merely delay, the annual license fee payment accrued during the force majeure event . . . ." (SAC ¶ 111). This claim is utterly frivolous as it is IPI, not Defendants, who have filed a case in court without using the procedures that IPI claims must be exhausted. Moreover, Plaintiffs do not provide any factual or legal basis why this violates, or relates to, the Contract Clause of the Constitution.

"amount to nothing more than a formulaic recitation" of the cause of action). Furthermore, IPI cannot save its conclusory allegations by tacking "on information and belief" to the beginning of the sentence. *See United States ex rel. Stenson v. Radiology Ltd., LLC*, No. 22-16571, 2024 WL 1826427, at *1 (9th Cir. Apr. 26, 2024) ("[A]llegations made on 'information and belief' must state the factual basis for such belief") (citation omitted); *Reaper*, 2024 WL 810697, at *1 (dismissing claim alleging "on information and belief" that defendant "authorized and instructed" certain practices by a third-party without providing factual support).

The next question in the *Iqbal* analysis, therefore, is whether IPI has alleged any other factual basis to support its allegation that Governor Palacios directed or colluded with the CNMI to demand payment or collect the accrued fees. Here, IPI also comes up far short. There are only two (arguably) factual allegations about any role played by Governor Palacios. First, IPI states that the Governor "caused to publish an article on local newspapers" (sic) making remarks that put the credibility of IPI's witness at the revocation proceedings, Howyo Chi, into question. (SAC ¶ 81). Second, IPI alleges that the CNMI, "under the direction of Governor Palacios," loaned money to CCC to cover its expenses, including payments to the Commissioners. (SAC ¶ 92). These alleged facts do not meaningfully bolster the conclusory allegations that the Governor directed or colluded with the CCC to revoke IPI's license—and IPI does not connect these facts to its allegations of direction or collusion in any way. Moreover, IPI does not provide any facts that relate to Governor Palacios either giving any instruction to the Commissioners or in any way communicating or "colluding" with the Commissioners, let alone about the specific issue of revoking IPI's license.

The Ninth Circuit routinely finds allegations like IPI's to be inadequate. For instance, in *Reaper*, the complaint alleged in conclusory fashion that the defendant-insurance company had "authorized and instructed" the National Marrow Donor Program (NMDP) how to decide particular insurance claims. *Reaper*, 2024 WL 810697, at *1. The plaintiff's only factual support

for this assertion was an allegation that the insurer provided the NMDP with claim forms to use. *Id.* The Ninth Circuit held that while providing the forms was consistent with the plaintiff's allegations, it is "insufficient" to establish an agency relationship and falls "short of the line between possibility and plausibility." *Id.* (quoting *Moss*, 572 F.3d at 969) (quotations omitted). Here, similarly, the fact that the Governor authorized an unspecified amount of funding to cover some expenses of the CCC certainly does not make it "plausible" that he also dictated to the Commissioners how to adjudicate particular issues before the CCC.

In *Moss*, the plaintiffs-protestors alleged that the defendants, Secret Service Agents who had directed the local police to relocate a demonstration, violated their First Amendment rights because the agents were motivated by discrimination against the protestors' particular political view. 572 F.3d at 969–970. The plaintiffs further alleged that the local police, after moving them, also subjected them to other forms of abuse. *Id.* at 965–966. The Ninth Circuit held that this was insufficient to save the "bald allegation of impermissible motive" because there were no facts alleged "tying the Agents to the actions of the local police" other than having them move the protestors. *Id.* at 970–71 ("we may not assume that [the Agents] did anything beyond ordering Plaintiffs moved to the east side of Fourth Street").

The U.S. Supreme Court's decision in *Twombly* also illustrates the inadequacy of IPI's factual allegations. In that case, the plaintiffs alleged a variety of practices engaged in by the defendants-telecommunications companies and then alleged that the defendants had engaged in a conspiracy to restrain competition in violation of the Sherman Act. *Twombly*, 550 U.S. at 551. However, in analyzing the business practices of the defendants, the Supreme Court found them to be "consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strateg[ies]." *Id.* at 554. The Supreme Court dismissed the plaintiffs' claims and held that "[f]actual allegations must be enough to raise a right to relief above the speculative

level." *Id.* at 545. Because there were several plausible lawful explanations for the defendants' conduct, the Supreme Court found that the plaintiffs had not "nudged their claims across the line from conceivable to plausible" and accordingly dismissed their complaint. *Id.* at 570.

Like in *Twombly*, the actions by Governor Palacios alleged by IPI have multiple plausible explanations, and have little bearing or relationship to IPI's claim that the Governor directed or "colluded" with the CCC. *Id.* at 545. The Governor's decision to issue an op-ed (SAC ¶ 81) was clearly a response to the false, public allegations by Howyo Chi that the Governor turned down a $50 million settlement proposal from IPI and left money on the table. (SAC ¶ 81). The need to set the record straight on this issue is an important and natural response by an elected official responsible to the citizenry for his decisions. It is too far of a stretch to infer from the op-ed that the Governor was directing or colluding with the Commissioners to revoke IPI's license in order to get IPI to pay the money that it owed.

Turning to IPI's second factual allegation—that the Governor directed the CNMI to loan money to the CCC (SAC ¶ 92)—this simply describes routine administrative conduct. To infer from the simple act of authorizing funds to pay the CCC's expenses that the Governor directed or colluded with the Commissioners to revoke IPI's license is too far of a logical leap. *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) (courts are not required to make "unreasonable inferences" or "unwarranted deductions of fact" to save a complaint from a motion to dismiss). Moreover, deeming IPI's allegations in the SAC to be sufficient would have the absurd result of creating potential personal liability for the Governor for *any* constitutional violation committed by *any* government-funded entity.[9]

---

[9] It is worth noting that in the adjacent context in which a plaintiff alleges a violation of their constitutional rights by a non-government entity that receives government funding, the U.S. Supreme Court has "made it clear that governmental funding and extensive regulation without more will not suffice to establish governmental involvement in the actions of a private entity".

**B.  IPI fails to state a § 1983 claim against Governor Palacios because its allegations are conclusory and lack a factual basis.**

The second cause of action almost entirely concerns the regulatory powers provided to the CCC and its Commissioners, the exercise of those powers, and the fact that the Commissioners did not recuse themselves from IPI's revocation proceedings. IPI then tacks on the wholly-conclusory allegations that "Palacios conspired with CCC and its commissioners … by refusing to allow the commissioners to recuse [themselves]" (SAC ¶ 95), and, similarly, that the Commissioners' refusal to recuse themselves "was at the direction of … Governor Palacios" (*Id.* ¶ 125). This claim against the Governor fails because, even if IPI's conclusory allegations are considered, the SAC still does not adequately plead the elements of a conspiracy claim under § 1983 or any other claim for personal liability under § 1983. Yet, the cause of action should also be dismissed because IPI's allegations are conclusory and lack an adequate factual basis.[10]

To succeed on a claim against a government official in his personal capacity under § 1983, the plaintiff must allege the specific actions taken by that official to violate the defendant's constitutional rights. *See Suever v. Connell*, 579 F.3d 1047, 1061 (9th Cir. 2009) (dismissing

---

*Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1341 (9th Cir. 1997) (citing *Rendell–Baker v. Kohn,* 457 U.S. 830, 842–43 (1982)).

[10] In addition, IPI's claim should be dismissed because IPI has not yet suffered any harm from the alleged deprivation of its rights. The CCC has not revoked IPI's license and may decide not to revoke IPI's license, in which case this cause of action is moot. *See Woodrum v. Woodward Cnty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) ("conspiracy allegation, even if established, does not give rise to liability under § 1983 unless there is an actual deprivation of rights") (citation omitted); *Mancuso v. Dunbar*, No. 3:08-cv-1018, 2010 WL 466004, at *6 (D. Conn. Feb. 5, 2010) ("Because the Plaintiff has not gone forward with the ERB hearing, it is unclear whether or not the conflict of which the Plaintiff complains will ever come to fruition. Thus, the Court would be in a better position to adjudicate the Plaintiff's due process claim at the conclusion of the administrative review process than it is now."); *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985) ("…a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.").

§ 1983 personal capacity claim that was "insufficient to put [the defendant] on notice of specific, individual actions for which he is personally liable"). As for a claim that a defendant engaged in a conspiracy under § 1983, "an agreement or meeting of the minds to violate the [plaintiff's] constitutional rights must be shown." *Woodrum*, 866 F.2d at 1126 (citing *Fonda v. Gray*, 707 F.2d 435 (9th Cir. 1983)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Solomon v. Las Vegas Metro. Police Dep't*, 441 F. Supp. 3d 1090, 1100 (D. Nev. 2020). The pleading standard is not satisfied by merely reciting the elements of the claim or simply inserting the word "agreement" into a pleading. *Id.*

The SAC falls far short of adequately pleading a claim that Governor Palacios conspired with the CCC to violate IPI's constitutional rights. The sole allegation about the alleged conspiracy is wholly-conclusory and provides no detail: "Palacios conspired with CCC and its commissioners … by refusing to allow the commissioners to recuse [themselves]." (SAC ¶ 95). In *Solomon*, the plaintiff was arrested by local police while filming a protest from a sidewalk outside a shopping mall. *Solomon*, 441 F. Supp. 3d at 1094. The plaintiff then sued the police and shopping mall for conspiring to violate his "First Amendment right as a media person" to film in a public forum. *Id.* at 1095. He alleged that the police had a policy of arresting journalists that were ejected from the mall, and that the police and the mall thus had an agreement to routinely make such arrests. *Id.* at 1100. However, the district court found that the plaintiff's conspiracy allegations were "too thin" to state a claim because there were no specific facts to show that "an agreement existed, what it entailed, what was each defendant's objective in the alleged conspiracy, or that they communicated before the arrest." *Id.*

Here, the allegations in the SAC are even more sparse. There are no allegations, let alone facts, stating that an agreement existed between the Governor and the CCC Commissioners, what

it entailed, the objective of the Governor and each Commissioner, or that they communicated prior to the Commissioners' decision not to recuse themselves. Because IPI has failed to allege facts that establish a conspiracy under § 1983, IPI's Due Process allegations should be dismissed. *See Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter … to state a claim to relief that is plausible on its face." (internal quotation and citation omitted)); *Woodrum*, 886 F.2d at 1126 (dismissing conclusory allegations that defendants conspired to violate plaintiff's constitutional rights); *Vierra v. Cochise Cnty.*, 301 F. App'x 727, 728 (9th Cir. 2008) ("Vierra failed to allege sufficiently a conspiracy to violate his rights").

The SAC also does not state a plausible claim that Governor Palacios "direct[ed]" the Commissioners to violate IPI's constitutional rights by not recusing themselves. The relevant allegation (SAC ¶ 125) is, once again, entirely conclusory, and therefore not afforded the assumption of truth. *Iqbal*, 556 U.S. at 679. After removing this conclusory allegation, the Court is again left with the two factual allegations discussed above: that the Governor contributed to an article about his interactions with IPI's witness (SAC ¶ 81), and that the Governor directed the CNMI to fund the CCC (*Id.* ¶ 92). The Governor's decisions to issue an op-ed to set the record straight on his negotiations with IPI and to provide funding to cover the costs of the CCC are easily explained without relying on any improper motive. These allegations by IPI do not permit a reasonable inference that Governor Palacios directed the Commissioners on how to conduct their operations—or, even more specifically, directed them not to recuse themselves from the IPI revocation hearing. *Sprewell,* 266 F.3d at 988 (courts not required to make "unreasonable inferences" or "unwarranted deductions of fact"). Accordingly, the second cause of action must be dismissed as to Governor Palacios for failure to state a claim.

19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the SAC as to Governor Palacios in his personal capacity because it fails to state a claim against him upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).


Dated: August 13, 2024

Respectfully submitted,

/s/ *Aaron Halegua*
Aaron Halegua
Bruce Berline

Attorneys for Defendant Arnold Palacios,
in his personal capacity
