OFFICE OF THE ATTORNEY GENERAL
EDWARD MANIBUSAN
Attorney General
J. Robert Glass, Jr. (F0523)
Assistant Attorney General
Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
Caller Box 10007, Capital Hill
Saipan, MP 96950
Telephone: 670-237-7500
Email: robby_glass@cnmioag.org
Attorney for Defendant Commonwealth of the
Northern Mariana Islands

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, the COMMONWEALTH CASINO COMMISSION, ARNOLD PALACIOS, GOVERNOR OF CNMI, in his official and personal capacities, et. al.,<br><br>　　　　Defendants. | CIVIL CASE NO. 1:24-CV-0001<br><br>**DEFENDANT COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) and (6)**<br><br>**Hearing Date:**<br>**Hearing Time:**<br>**Judge: Hon. Judge David Carter** |

　　　　Defendant Commonwealth of the Northern Mariana Islands, respectfully submits this memorandum in support of Defendant's motion to dismiss Plaintiff's Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 8(a), 17(b), 12(b)(1) and 12(b)(6).

//

# TABLE OF CONTENTS

I.    BACKGROUND ..................................................................................................................4

II.   FACTS ................................................................................................................................7

III.  LEGAL STANDARD .........................................................................................................7

IV.  ARGUMENT ......................................................................................................................9

    1.   PLAINTIFF, BEST SUNSHINE INTERNATIONAL LTD, IS NO LONGER AN ENTITY AND LACKS CAPACITY TO SUE… ..............................................................................................................9
    2.   PLAINTIFF MAKES NO ALLEGATIONS AGAINST THE COMMONWEALTH PERTAINING TO THEIR CAUSES OF ACTION. ...............................................................................................................10
    3.   THE ISSUES ARE NOT RIPE FOR JUDICIAL REVIEW. ..................................................11
    4.   RES JUDICATA BARS PLAINTIFF'S SUIT. .................................................................12
        *a.*   *There is an identity of claims.* ......................................................................15
        *b.*   *There has been a final judgment on the merits.* ...........................................16
        *c.*   *There is identity or privity between the parties.* ...........................................16
    5.   THE COMMONWEALTH ENJOYS SOVEREIGN IMMUNITY FROM SUITS IN FEDERAL COURT. ..................17
    6.   THE CCC SHOULD BE DISMISSED AS IT IS NOT A SUE OR BE SUED ENTITY. ..........................18

V.   CONCLUSION ................................................................................................................19

# TABLE OF AUTHORITIES

Cases                                                                                                                                    Page(s)

*Alden v. Maine*,
  527 U.S. 706 (1999) ................................................................................................ 17, 18
*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................ 7, 8, 10
*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................ 7, 8, 10
*Bonnichsen v. U.S. Dept. of the Army*,
  969 F.Supp. 614 (D. Or. 1997) ....................................................................................12
*Brown v. Felsen*,
  442 U.S. 127 (1979) ............................................................................................. 12, 13
*Chao v. A–One Med. Servs., Inc.*,
  346 F.3d 908 (9th Cir. 2003) .......................................................................................13
*Commonwealth Casino Comm'n v. Imperial Pac. Int'l*,
  2023 MP 8 ...................................................................................................... 5, 6, 14, 16
*Constantini v. Trans World Airlines*,
  681 F.2d 1199 (9th Cir. 1982) .....................................................................................15
*Davis v. Commonwealth Election Com'n*,
  990 F.Supp.2d 1089 (D. N. Mar. I. June 2012) ..........................................................11

*Fleming v. Department of Public Safety*,
  837 F.2d 401 (9th Cir. 1988) .................................................................................................. 17
*In re Schimmels*,
  127 F.3d 875 (9th Cir. 1997) .................................................................................................. 16
*Levin Metals Corp.v. Parr-Richmond Terminal Co.*,
  817 F.2d 1448 (9th Cir. 1897) .................................................................................................. 9
*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
  140 S. Ct. 1589, 206 L. Ed. 2d 893 (2020) ............................................................................ 13
*Manila v. CNMI Department of Corrections*,
  2019 WL 324424 (D. N. Mar. I. January 24, 2019) ........................................................ 17, 18
*Marrese v. Am. Acad. Of Orthopaedic Surgeons*,
  470 U.S. 373 (1985) ............................................................................................................... 13
*McKart v. United States*,
  395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969) ............................................................ 12
*Migra v. Warren City Sch. Dist. Bd. of Educ*,
  465 U.S. 75 (1984) ................................................................................................................. 13
*Mpoyo v. Litton Electro-Optical Sys.*,
  430 F.3d 985 (9th Cir. 2005) ................................................................................................. 13
*Norita v. Commonwealth of the Northern Mariana Islands Department of Public Safety*,
  No. 18-CV-00022, 2019 WL 150875 (D. N. Mar. I. Jan. 10, 2019) ................................. 16, 18
*Owens v. Kaiser Found. Health Plan, Inc.*,
  244 F.3d 708 (9th Cir. 2001) ................................................................................................. 13
*Pistor v. Garcia*,
  791 F.3d 1104 (9th Cir. 2015) .................................................................................................. 8
*Piteg v. Piteg*,
  2000 MP 3 ] ........................................................................................................................... 13
*Ramirez v. County of San Bernadino*,
  806 F.3d 1002 (9th Cir. 2015) .................................................................................................. 7
*Ramsey v. Muna*,
  849 F.3d 858 (9th Cir. 2017) ................................................................................................. 17
*Santos v. Santos*,
  4 NMI 206 (1994) .................................................................................................................. 13
*Scott v. Kuhlmann*,
  746 F.2d 1377 (9th Cir. 1984) ............................................................................................. 7, 8
*Sofamor Danek Gorup, Inc. v. Brown*,
  124 F.3d 1179 (9th Cir. 1997) ............................................................................................... 10
*Syverson v. International Business Machines Corp.*,
  472 F.3d 1072 (9th Cir. 2007) ............................................................................................... 15
*Texas v. United States*,
  523 U.S. 296 (1998) ............................................................................................................... 11
*Torres v. Manibusan*,
  2018 MP 4 .............................................................................................................................. 19
*Western Radio Servs. Co. v. Glickman*,
  123 F.3d 1189 (9th Cir. 1997) ............................................................................................... 13

**Statutes**

1 CMC § 102 .................................................................................................................... 10
1 CMC § 8315(d) ............................................................................................................. 18
1 CMC § 9112 .................................................................................................................. 12
4 CMC § 2306 .................................................................................................................... 4
4 CMC § 2313(a) ........................................................................................................ 14, 18
4 CMC § 2313(b) ............................................................................................................. 12
4 CMC § 2314 .................................................................................................................. 18
4 CMC § 2314(h) ............................................................................................................. 12
BVI Business Companies Act ............................................................................................ 9

**Rules**

Federal Rule of Civil Procedure 8(a)(2) ............................................................................ 7
Federal Rule of Civil Procedure 12(b)(1) .......................................................................... 8
Federal Rule of Civil Procedure 12(b)(6) .......................................................................... 8
Federal Rule of Civil Procedure 17(b)(2) ................................................................ 7, 9, 19

**Other Authorities**

6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1563 (1971) ....................... 9
NMI Const. Art. III, § 15 ................................................................................................. 11

### I.   Background

1.   The 2020 Enforcement Actions

In 2020, the CCC initiated five enforcement actions against Plaintiff:

   i.   Enforcement Action 2020-001, alleging that Plaintiff violated the Casino License Agreement by failing to pay the 2018 and 2019 Community Benefit Fund contributions.

   ii.  Enforcement Action 2020-002, alleging that Plaintiff failed to pay the Annual License Fee due August 12, 2020 in violation of 4 CMC § 2306(b) and CCC regulations (§§ 175-10.1-610(b) and 175-10.1-1805(b)(15)).

   iii. Enforcement Action 2020-003, alleging that Plaintiff failed to comply with Commission Order 2020-003 by failing to maintain the required cash or cash equivalents in a CNMI or United States bank.

   iv.  Enforcement Action 2020-004, alleging that Plaintiff violated Commission Order 2020-004 by failing to pay accounts payable that were over 89 days old.

  v.  Enforcement Action 2020-005, alleging Plaintiff violated 4 CMC § 2309 and § 175-10.1-1225 by failing to pay the Casino Regulatory Fee due by October 1, 2020.

*See* ECF No. 56 at 8-11; *See also* ECF No. 56-3.  Enforcement Actions 2020-001 and 2020-002 were consolidated into Enforcement Action 2020-001.  *See* ECF 56-3 (noting consolidation). Enforcement Actions 2020-003, 2020-004, and 2020-005 were consolidated into Enforcement Action 2020-003.  ECF 56-3 (noting consolidation).

### 2. The 2021 Evidentiary Hearings

On February 25, 2021, the CCC conducted evidentiary hearings on Enforcement Action 2020-001 (consolidated).  As to Enforcement Action 2020-001, Plaintiff argued that Amendment No. 9 to the Casino License Agreement extended the payment dates to 2025.  As to Enforcement Action 002, Plaintiff raise force majeure as a defense.  ECF No. 56-3.

"On March 2, 2021, CCC conducted an evidentiary hearing for Complaints 003, 004, and 005.  IPI did not dispute the violations and did not raise any affirmative defense."  ECF No. 56-3; s*ee also Commonwealth Casino Comm'n v. Imperial Pac. Int'l*, 2023 MP 8 ⁋ 8.

### 3. Commission Order No. 2021-002

On April 22, 2021, the CCC issued Order No: 2021-002. ECF No. 56-3.  "The Order suspended IPI's [Plaintiff's] gaming license, ordering IPI [Plaintiff] to pay a total of $18.65 million that it found was due under the Casino License Agreement's ("CLA") Annual License Fee and Annual Regulatory Fee, and imposing a total of $6.6 million in penalties against IPI [Plaintiff]."  ECF No. 23 at 7. There are two signatories to the Order: CCC Chairman Edward C. Deleon Guerrero and Defendant Demapan. ECF No. 56-3 at 10.  The Chairman is a signatory as to Enforcement Action 2020-003 (consolidated).  *Id*.  Defendant Demapan is a signatory as to Enforcement Action 2020-001 (consolidated). *Id*.

### 4. The NMI Court Proceedings

On November 5, 2021, Plaintiff appealed the Commission Order No. 2021-002 to the Commonwealth of the Northern Mariana Islands Superior Court. ECF No. 56-3 ¶ 44.  Plaintiff alleged the Order was "arbitrary, capricious, an abuse of discretion and otherwise not in

accordance with law and unwarranted by the facts." *Id.*; *See also* ECF No. 3-3 ("IPI appealed CCC's order to the Superior Court, arguing that COVID-19 and other factors like Super Typhoon Yutu and changes in federal immigration law constituted force majeure events that excused all its performance obligations." Additionally, IPI claimed that CCC violated its due process rights by discussing IPI's parent company's annual report at the April 2021 meeting. IPI asserted that CCC improperly considered evidence outside the record, leading it to decide against IPI's force majeure defense."). The Superior Court affirmed the Order, finding no due process violation and holding that it "was not arbitrary or capricious." ECF No. 3-3 at 5. The court did not "decide the question of force majeure." ECF No. 3-3 at 5. Instead, the court held that while Plaintiff raised the force majeure defense for Enforcement Actions 001 and 002, it did not raise the defense "or any other defense" as to Enforcement Actions 003, 004, and 005. ECF No. 3-3 at 5. The court thus reasoned that the CCC "had properly suspended" Plaintiff's license. ECF No. 3-3 at 5. The court further found no due process violation and held that CCC's order was not arbitrary or capricious." ECF No. 3-3 at 5. On April 11, 2022, Plaintiff appealed the Superior Court's order to the NMI Supreme Court. ECF No. 56 ¶ 47.

   On appeal, Plaintiff argued that the lower court erred by "failing to address force majeure, asserting that COVID-19 and other occurrences are force majeure events excusing performance in all five complaints." ECF No. 3-3 at 5; *See also* ECF No. 1 at 6. Plaintiff also argued that "Amendment No. 9 constitutes a deferment of its obligations to pay the Community Benefit Funds. ECF No. 3-3 at 5. Plaintiff also argued that it "suffered a due process violation" such that "all sanctions" should be set aside. ECF No. 3-3 at 5; *See also* ECF No. 1 at 6. "On August 25, 2023, the NMI Supreme Court affirmed the trial court's ruling in part and reversed in part and asked CCC to 'decide on a reasonable deadline for IPI to pay' the annual license fees for 2020 and the following years." ECF No. 56 ¶ 47.

   Notably, the NMI Supreme Court found that IPI did not raise the defense of force majeure for Complaints 003-005 and conceded the violations. The Court further found that IPI's change in tactics on appeal was barred by numerous procedural rules and hurdles such as failure to raise the issue before the agency and judicial estoppel. *CCC v. IPI*, 2023 MP 8 ¶¶ 56-62.

   //

5. <u>Recent Developments</u>

The CCC conducted a revocation hearing, and Plaintiff filed its Original Complaint in this action and in 1:24-cv-0002 alleging various deficiencies and allegations. This is Plaintiff's Second Amendment to their original Complaint. Procedurally, this mooted the all prior Motions to Dismiss that was directed at the prior Complaints. *See Ramirez v. County of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("Because Defendants' motion to dismiss targeted Plaintiff's First Amended Complaint, which was no longer in effect, we conclude the motion to dismiss should have been deemed moot…" Thus, Defendant, the Commonwealth now files this Motion to Dismiss that is directed towards the Second Amended Complaint.

## II.     Facts

The Commonwealth raises no facts in this motion to dismiss because for purposes of res judicata, a motion to dismiss is only appropriate if the defense raises no disputed issues of fact. *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). However, while the Commonwealth raises no disputed facts here, it reserves its right in any future proceedings in this case to contest the issues of fact as raised by Plaintiff.

## III.     Legal Standard

### Party Standard

Federal Rule of Civil Procedure 17(b)(2) reads, "[c]apacity to sue…is determined as follows… (2) for a corporation, by the law under which it was organized." If a company lacks the capacity to sue, it is axiomatic that it cannot bring a suit.

### Pleading Standard

Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required under the rule, it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The factual allegations must be sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is insufficient for a pleading to offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). 550

7

U.S., at 555, 127 S.Ct. 1955. The same goes for "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, 127 S.Ct. 1955.

A complaint must state a "plausible claim for relief" to "survive[] a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See also Id*. ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).   The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### Subject Matter Jurisdiction Standard

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12 (b)(1). Although sovereign immunity is only quasi-jurisdictional in nature, Rule 12(b)(1) is still a proper vehicle for invoking sovereign immunity from suit. *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (citation omitted).

### Failure to State a Claim Standard for Res Judicata

Dismissal under Federal Rule of Civil Procedure 12(b)(6) on the basis of res judicata is appropriate when "the defense raises no disputed issues of fact." *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). ("The defendants raised *res judicata* in their motion to dismiss under Rule 12(b)(6), rather than in a responsive pleading. Ordinarily affirmative defenses may not be raised by motion to dismiss…but this is not true when, as here, the defense raises no disputed issues of fact.").

## IV. Argument[1]

**1. Plaintiff, Best Sunshine International Ltd, is No Longer an Entity and Lacks Capacity to Sue.**

One of the Plaintiffs that is alleged to bring the SAC is Best Sunshine International Ltd. (BVI) ("Best Sunshine"). Best Sunshine is alleged to be "a corporation organized under the laws of the British Virgin Islands, with its principal place of business at P.O. Box 95, Offshore Incorporation Centre, Road Town, Tortola, British Virgin Islands." SAC ¶ 5 (ECF 56). Further, Best Sunshine is the sole member of Plaintiff IPI. SAC ¶ 4 (ECF 56). Best Sunshine, however, has been dissolved since April 7, 2023, and cannot be a party to this proceeding. *See* Exhibit 1 (Dissolution of Best Sunshine from BVI Registrar of Corporations).

Federal Rule of Civil Procedure 17(b)(2) reads, "[c]apacity to sue…is determined as follows… (2) for a corporation, by the law under which it was organized." Best Sunshine was organized in the British Virgin Islands, and thus that law would control. SAC ¶ 5 (ECF 56); *See also Levin Metals Corp.v. Parr-Richmond Terminal Co.*, 817 F.2d 1448, 1451 (9th Cir. 1897) (finding that Rule 17(b) requires the application of the law under which the corporation was organized and finding that Rule 17(b) applies to dissolved corporations) (citing 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1563 (1971)).

Under the British Virgin Islands Business Companies Act of 2014 (Revised 2020), "[t]he Registrar may strike the name of a company off the Register if the company does not have a registered agent." BVI Business Companies Act, Division 3—Striking Off and Dissolution § 213(1)(a)(i). Best Sunshine has no registered agent as the "Agent Resigned from Company" and thus, the status of Best Sunshine is that it has been dissolved as of April 7, 2023. *See* Exhibit 1. As a dissolved corporation, "the company and the directors, members and any liquidator or receiver thereof, may not—(a) commence legal proceedings, carry on any business or in any way deal with the assets of the company; (b) defend any legal proceedings, make any claim or claim any right for, or in the name of, the company; or (c) act in any way with respect to the affairs of the company." BVI Business Companies Act, Division 3 § 215 (1). Best Sunshine ceased to exist on April 7, 2023, thus under the laws of the British Virgin Islands, it could not commence legal

---

[1] Pursuant to Local Rule 5.2(b), attached to this memorandum is Exhibit 1 containing all authorities relied on by the Commonwealth which are not available on LexisNexis or Westlaw.

9

proceedings on any pertinent date of this suit.² Therefore, because Best Sunshine does not have the capacity to sue, Best Sunshine and its claims must be dismissed

**2. Plaintiff Makes No Allegations Against the Commonwealth Pertaining To Their Causes of Action.**

Under Federal Rule of Civil Procedure 8(a), Plaintiff is required to sufficiently plead a cause of action against the Defendant. IPI has not alleged any actions by the Commonwealth, and what little allegations it does raise against the Commonwealth are not actions of the Commonwealth as a government entity, but are accomplished by branches and agencies of the Commonwealth where such accusations are more properly brought against the government officials who enforce such statutory provisions.³ *See Sofamor Danek Gorup, Inc. v. Brown*, 124 F.3d 1179, 1183-84 (9th Cir. 1997) (for general principle that challenges to constitutionality of a statute are properly brought against officers of the state and not the state itself because of sovereign immunity). Plaintiffs only allegations directed at the Commonwealth are contained in paragraphs 6, 92-95, 112, 114, 116, and 125.

IPI's Complaint contains no specific allegations of any actions taken by Defendant Commonwealth to support its claims. It makes general "[b]ased upon information and belief," but contains no direct actions taken by the Commonwealth that would be considered collusion or direction. IPI's Complaint is woefully inadequate to provide any meaningful assertions against the Commonwealth. The SAC is required to provide more than mere "the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the factual allegations that the Commonwealth colluded or directed the CCC and its Commissioners to take specific actions is nothing more than "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiff's assertions are almost comical in that the Commonwealth is a government entity, lacking any mouth or ears in which to direct or collude. *See* 1 CMC § 102 ("Commonwealth means the government established under the Constitution which became effective on January 9, 1978"). Plaintiffs also acknowledge this fact. *See* SAC ¶ 6. The

---

² The Original Complaint was filed on February 23, 2024; the SAC was filed on July 23, 2024.

³ The Commonwealth also asserts sovereign immunity as a ground for dismissal. That argument is contained below.

Commonwealth government is required to act through its agents because as a sovereign government it cannot act on its own. NMI Const. Art. III, § 15 ("Executive branch offices, agencies and instrumentalities of the Commonwealth government and their respective functions and duties shall be allocated by law…[t]he functions and duties of the principal departments and of other agencies of the Commonwealth shall be provided by law").

The SAC asserts actions by the Commonwealth government itself which could not be accomplished by a government entity. For instance, Plaintiff alleges "[u]nder the direction and/or in collusion with CNMI and the Governor, CCC and its Commissioners demand payment of the disputed annual license fees…" SAC ¶ 112 (ECF 56). Such a bald face assertion without stating what steps the Commonwealth took to direct the CCC and the Commissioners to demand payment is insufficient to meet the pleading standard. Thus, the Commonwealth should be dismissed from both Causes of Action for failure to adequately plead actions taken directly by the Commonwealth as opposed to agents and agencies.[4]

### 3. The Issues are Not Ripe for Judicial Review.

IPI's claims are not ripe for judicial review because it is not clear that IPI's casino license will be revoked, and at the present time the hearing is stayed pending bankruptcy. Additionally, the CCC is lacking quorum to continue with the revocation hearing and decision. Claims are "not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed, may not occur at all." *See Davis v. Commonwealth Election Com'n*, 990 F.Supp.2d 1089, 1097 (D. N. Mar. I. June 2012) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

IPI is assuming that the revocation proceeding will go against them as they allege the CCC and its Commissioners cannot function as an impartial decision maker. However, such a conclusion is not foregone as the revocation proceeding has been stayed due to IPI filing for bankruptcy. Further, it is not clear IPI would suffer any imminent harm as no actions can proceed while IPI is in bankruptcy, and it appears that IPI's plan for bankruptcy will be the liquidation of its assets. *See In re IPI*, 1:24-bk-0002, (D. N. Mar. I. August 10, 2024) (Motion to Approve Bid Procedures For Sale of Substantially all of the Debtor's Assets and Related Relief). In its Motion for Sale, it is also clear that IPI intends to wind up its company with a sale of substantially all of

---

[4] The Commonwealth does acknowledge that the actions of certain officials in the official capacity and agencies are suits against the Commonwealth, but such suits would contain the adequate factual allegations of which agent/agency took the alleged action. Here, the allegation is directly against the Commonwealth without showing any furtive actions that would amount to collusion or direction.

its assets. Notably, a sale of the hotel is a default under the Casino License Agreement, so IPI by initiating this sale in the bankruptcy court is admitting its own default on the casino license as well as completing a liquidation of its other assets.

Further, the CCC currently does not have a quorum to conduct its revocation hearing or decision as it only has two members who can still participate. This will necessitate the appointment of a new commissioner by the Governor who will be subject to confirmation by the Senate. *See* 4 CMC § 2313(b). The new commissioner will not have participated in any prior proceedings or meetings of the CCC, and thus it is likely this new commissioner meets all of the present demands being made for an independent hearing officer. Further, as a unanimous vote of all commissioners is required for revocation, it is not a foregone conclusion that the new member would vote to revoke.

Lastly, Plaintiff is not without recourse for its alleged violations that occurred during the revocation hearing as that hearing, once it becomes final agency action, may be appealed to the NMI Superior Court for judicial review. *See* 4 CMC § 2314(h) and 1 CMC § 9112. In this way, Plaintiff's causes are not ripe because they have failed to exhaust their administrative remedies and the case should be dismissed. *See Bonnichsen v. U.S. Dept. of the Army*, 969 F.Supp. 614, 620 (D. Or. 1997) ("The exhaustion requirement is related to ripeness. As a general rule, no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). The agency ordinarily should be permitted to complete its procedures, develop the record, correct its own errors, and apply its special expertise before the matter is reviewed by the courts. The exhaustion requirement also ensures that the court is reviewing the final agency decision, and not a preliminary decision. In addition, until the prescribed administrative remedies have been exhausted there ordinarily is no imminent injury and the plaintiffs' cause of action is only speculative."). Thus, the claims being presented to the Court are not ripe for adjudication and the case should be dismissed.

**4. Res Judicata Bars Plaintiff's Suit.**

"Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (citation omitted); *See also*

12

*Western Radio Servs. Co. v. Glickman,* 123 F.3d 1189, 1192 (9th Cir. 1997) ("Res judicata, also known as claim preclusion, bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action."). Res Judicata also applies to §1983 suits. *Migra v. Warren City Sch. Dist. Bd. of Educ*, 465 U.S. 75, 84 (1984). The purpose of res judicata is to "encourage[] reliance on judicial decisions, bar[] vexatious litigation, and free[] the court to resolve other disputes." *Brown*, 442 U.S. at 131.

Res judicata applies when "there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties*." Owens v. Kaiser Found. Health Plan, Inc*., 244 F.3d 708, 713–14 (9th Cir. 2001). There is an identity of claims where the claims "arise from the same transaction" or where the claims "involve a common nucleus of operative facts." *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 140 S. Ct. 1589, 1595, 206 L. Ed. 2d 893 (2020); *See also Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) ("Whether the two suits involve the same claim or cause of action requires us to look at four criteria, which we do not apply mechanistically: (1) whether the two suits arise out of the same transactional nucleus of facts; (2) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (3) whether the two suits involve infringement of the same right; and (4) whether substantially the same evidence is presented in the two actions.") (citing *Chao v. A–One Med. Servs., Inc.,* 346 F.3d 908, 921 (9th Cir. 2003).

In applying res judicata, the District Court looks at the res judicata rule of the state where the judgment arises. *See Marrese v. Am. Acad. Of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985). Under NMI law for res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Santos v. Santos*, 4 NMI 206 (1994) (citation and quotations omitted). The burden of showing that the opposing party's claim was or should have been asserted in a prior claim rests with the party making the res judicata assertion. *Id*.; *see also Piteg v. Piteg*, 2000 MP 3 ¶ [5,6] (res judicata "not only bar matters which were previously litigated, but also those matters which should have been litigated.").

IPI and the Commonwealth (through its agency the CCC)[5] have been involved in numerous litigations in both federal and state level courts. IPI has filed suit in this Court against the CCC in order to force them into non-binding arbitration. That suit is still pending, but the order by the District Court to submit to non-binding arbitration was reversed by the Ninth Circuit Court of Appeals, and a petition for en banc rehearing banc was also denied. *See Best Sunshine International, LTD (BVI) and Imperial Pacific International (CNMI), LLC v. Commonwealth Casino Commission, as Agency of the Commonwealth of the Northern Mariana Islands*, Appeal No. 22-16630 (Ninth Circuit Court of Appeals August 7, 2023) (Order). IPI then filed a petition for certiorari to the United States Supreme Court who denied certiorari. *See Imperial Pacific International (CNMI), LLC v. Commonwealth Casino Commission, as Agency of the Commonwealth of the Northern Mariana Islands*, No. 23-522 (United States Supreme Court Jan. 8, 2024) (Order Denying petition for writ of certiorari). IPI did not raise any of these claims in any of that litigation despite the ability and knowledge that they could and should have.

IPI and the Commonwealth (through its agency the CCC) also litigated numerous issues regarding their suspension due to non-compliance with the regulatory fee. That litigation started at the agency level who held that IPI raised no defense to the required regulatory fee (Complaint 2020-005). *See Commonwealth Casino Comm'n v. Imperial Pac. Int'l.,* 2023 MP 8 ¶¶ 50-55 and 62.[6] The NMI Superior Court found likewise and it was affirmed by the NMI Supreme Court. *Id*. Despite the NMI cases being directly about the suspension and license fee which IPI is attempting to re-litigate in this Court, they did not raise the arguments when they could have. Thus, the doctrine of res judicata applies and their Complaint should be dismissed with prejudice. While IPI attempts to couch its new arguments as to whether or not they should be required to pay the license fee during the period of suspension, that issue was ripe for determination when they appealed their suspension. Likewise, the constitutionality of the assumption of jurisdiction of CCC to assume to have a suspension hearing, which is the same authority being used for the revocation hearing was also available for argument. IPI chose to not raise these issues when they were available, and should be barred from raising them now.

---

[5] The CCC is an agency of the Commonwealth and thereby a privy of the Commonwealth. *See* 4 CMC § 2313(a).

[6] These Complaints formed the foundation of the suspension of the exclusive casino license in enforcement action 2021-002. *CCC v. IPI*, 2023 MP 8 ¶ 50.

    *a. There is an identity of claims.*

To determine whether the two claims share an identity, the Court examines several criteria where no one single criteria controls, but where the last criteria is most important. Those criteria are:

    (1) Whether the rights or interests established in the prior judgment would be destroyed or impaired by the prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; (4) whether the two suits arise out of the same transactional nucleus of facts.

*Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982).

All four criteria are met in this case. The rights and interests of the prior judgment would be destroyed or impaired by the prosecution of the second action because IPI is literally requesting for this Court to undo the suspension proceedings which were affirmed by the NMI Supreme Court. *See* Second Amended Complaint Prayer for Relief (ECF 56) (requesting declarations of unconstitutionality and "to vacate, nullify any and all adverse administrative decisions against IPI that were based upon the assumption of jurisdiction by CCC to interpret the terms of the CLA and/or to adjudicate claims arising out of the CLA…"). It is clear IPI intends to undo that which became final when the NMI Supreme Court affirmed the sanctions imposed in Complaints 2020-002 (Annual License Fee), and 2020-005 (regulatory fee). The NMI Supreme Court then issued its mandate, finalizing the litigation for purposes of res judicata. *See Syverson v. International Business Machines Corp.*, 472 F.3d 1072, 1079 (9th Cir. 2007) ("…the proper query here is whether the court's decision *on the issue as to which preclusion is sought* is final.") (emphasis in original). The mere fact an appellate court has remanded parts of a matter back for determination does not leave the door open for all issues to continue to be litigated. *See Id*. (finding "The Eighth Circuit's decision on the [issue] is thus sufficiently "final" even though there are to be further proceedings on remand on the merits of [the action]"). To sum it up, "finality in the context of issue preclusion may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." *Id*. at 1079 (cleaned up). In its SAC, IPI alleges Unconstitutional Impairment of Contracts regarding the annual regulatory fee (SAC at ¶¶ 101-118). This issue was decided by the NMI Supreme Court, and IPI now requests this Court to declare the NMI

15

Supreme Court's Opinion void. While IPI attempts to couch its claims as only applying to the period of time from when its license was suspended to the present when the fees are due, it still requests for a full undoing of the prior actions and these arguments were available at the time.

The first element of res judicata favors dismissal.

    b.   *There has been a final judgment on the merits.*

The NMI Supreme Court ruled in favor of the Commonwealth Casino Commission as agency of the Commonwealth as to the requirement for salary reserves (Complaint 2020-003) and for the imposition of the regulatory fee (Complaint 2020-003). *See CCC v. IPI*, 2023 MP 8 ¶ 64 ("Finally, the sanctions CCC imposed against IPI for Complaint 003…0005—suspending its license and imposing fines—were proper"). The NMI Supreme Court also held that the Annual License Fee is due and payable after "a reasonable deadline" as decided by the CCC. *Id.* As the NMI Supreme Court is the highest court in the Commonwealth, its adjudication of the matter on the merits is final.[7] Because the NMI Supreme Court determined that the annual license fees had accrued and continue to accrue (*CCC. IPI*, 2023 MP 8 ¶64), the attempt by IPI to argue that such was not the case during Covid-19 time period is barred by res judicata. Further, by finding the license suspension "proper" the NMI Supreme Court was asserting that the CCC had jurisdiction to make such determination. That jurisdiction is the same for revocation. Thus, IPI could and should have raised the assumption of jurisdiction arguments when it had the chance. The second element favors application of res judicate.

    c.   *There is identity or privity between the parties.*

Privity is "a legal conclusion designating a person to identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997). Further, where a public authority has some supervisory or participatory authority in the action, they are bound by the judgment. *Id*. The Commonwealth and the Commonwealth Casino Commission share identity and privity. As discussed below, the Commonwealth Casino Commission is not "a sue or be sued" entity and thus the only proper party to sue in order to sue the CCC is the Commonwealth itself. *See Norita v. Commonwealth of the Northern Mariana Islands Department of Public Safety*, No. 18-CV-

---

[7] The remand to CCC to determine a reasonable time to pay concerned the Annual License fee, and not the regulatory fee or the payroll reserve complaints. *See CCC. IPI*, 2023 MP 8 ¶64 ("The Annual License Fees for 2020 and the following years have accrued and continue to accrue and CCC must now decide on a reasonable deadline for IPI to pay them.")

00022, 2019 WL 150875 at *7-8 (D. N. Mar. I. Jan. 10, 2019) (finding that to sue a government agency the law of the state where the court is located controls and a lack of a "sue or be sued" clause indicates the legislatures desire to not allow the agency to sue or be sued under Commonwealth law). As an agency of the Commonwealth, the CCC shares an identity with the Commonwealth. *See* 4 CMC § 2313(a) ("The Commonwealth Casino Commission is hereby established as an autonomous public agency of the government of the Commonwealth of the Northern Mariana Islands."). Lastly, the Commonwealth is bound by the judgments of the NMI Supreme Court and the NMI District Court's actions upon the CCC. As such, the parties clearly share identity and privity and meet this factor of res judicata.

The Court should therefore apply res judicata to the Causes of Action as the allegations are nothing more than attempts to relitigate issues that have already been decided.

**5. The Commonwealth Enjoys Sovereign Immunity From Suits In Federal Court.**

The Commonwealth of the Northern Mariana Islands enjoys sovereign immunity under its own laws in federal court. *See Ramsey v. Muna*, 849 F.3d 858, 860-861 (9th Cir. 2017). This immunity is beyond the 11th Amendment and is established based on the Commonwealth's own autonomy as a sovereign entity. *Id*. ("The drafters [of the Covenant][8] likely viewed inclusion of the Eleventh Amendment in § 501(a) as unnecessary to secure immunity, given the long line of authority holding that a State's immunity from private suits is an inherent aspect of sovereignty, not a principle derived solely from the Eleventh Amendment.") (citations omitted). Thus, "the Commonwealth may not be sued without its consent on claims arising under its own laws." *Id*. at 861.

The Commonwealth should also enjoy sovereign immunity from suit arising under federal law. While the Commonwealth acknowledges the holding of *Fleming v. Department of Public Safety,* 837 F.2d 401 (9th Cir. 1988) and the findings of this Court in *Manila v. CNMI Department of Corrections*, 2019 WL 324424 at *4 (D. N. Mar. I. January 24, 2019), it still believes an intervening change in law has taken place and that *Fleming* was implicitly overruled by United States Supreme Court precedent in *Alden v. Maine*, 527 U.S. 706, 728-29 (1999) ("These holdings reflect a settled doctrinal understanding, consistent with the views of leading

---

[8] The full title of the Covenant is a Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America.

advocates of the Constitution's ratification, **that sovereign immunity derives not from the Eleventh Amendment but from the structure of the original Constitution**.") (emphasis added). The Supreme Court even clarified "The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle; it follows that the scope of the States' immunity from suit is demarcated not by the text of the Amendment alone, but by fundamental postulates implicit in the constitutional design." *Id*. If this was not clear enough, the United States Supreme Court outright stated: "**the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment**." *Id*. (emphasis added). Under the holding in *Alden* that sovereign immunity is not derived from or limited by the Eleventh Amendment, *Fleming* can no longer be reconciled or recognized as good law. As such, and against the findings of this Court in *Manila*, the Court should hold that *Alden* was an intervening case which establishes the CNMI's sovereign immunity outside of the Eleventh Amendment. *Alden* is intervening because it was decided eleven years after *Fleming*. Both this Court and the Ninth Circuit have questioned the holding of *Fleming*. It is time for this Court to follow the United States Supreme Court in declaring that sovereign immunity is not derived from or limited by the Eleventh Amendment, and to hold the Commonwealth enjoys full sovereign immunity.

   **6. The CCC Should Be Dismissed As It Is Not A Sue Or Be Sued Entity.**

   IPI also lists the CCC as a party to this action. FAC (ECF 38) at ¶ 6. As the CCC is not a "sue or be sued" entity, the inclusion of the CCC in this action is just another claim against the Commonwealth. *See Norita v. Commonwealth*, 2019 WL 150875 at *6-8 (D. N. Mar. I. January 10, 2019) (finding that pursuant to the doctrine of *expression unius est exclusion alterius*, the lack of a sue or be sued clause in an agencies' enabling statute means the agency retains its sovereign immunity and cannot be sued). The CCC finds its enabling statute in 4 CMC § 2313(a) and its powers are enumerated in 4 CMC § 2314. Notably, the power to sue or be sued is not included. *Compare* 4 CMC § 2314 with 1 CMC § 8315(d). Thus, the CCC should be dismissed in its entirety because it cannot be sued in its own name

   To the extent Plaintiff intends to argue that the ability to bring a suit through the Office of the Attorney General is equivalent to a "sue and be sued" clause, it is not. *See* 4 CMC § 2314 (q) ("The Commission…when appropriate, shall, in conjunction with the Attorney General, sue civilly, to enforce the provisions of the gambling and gaming laws of the Commonwealth…").

Thus, the plain meaning of the statute is only that the CCC may sue through the Attorney General, who has control of directing litigation. *See Torres v. Manibusan*, 2018 MP 4 ¶ 21 (interpreting the constitutional provision of the Attorney General directing litigation and holding "an executive agency may prosecute criminal or civil action *only with the consent and through the representation of the attorney general*." (emphasis in original). Further, a plain reading of the statute shows it is only to sue civilly through the Attorney General and not to sue or be sued in its own name. *Id*. at ¶ 13 (finding it is a basic principle of construction to give language its plain meaning).

Additionally, Plaintiff is requesting for this Court "to issue an injunction that Defendant's may not exercise any power granted by 4 CMC § 2314" which would include the "sue civilly" clause they are intending to use to say the CCC should be a party to this suit. Clearly, Plaintiffs cannot argue that the CCC is empowered to be sued while also arguing the powers granted by the statute are unconstitutional and warrant an injunction.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully moves to dismiss this suit pursuant to Federal Rule of Civil Procedure 17(b)(2) and 12(b)(1) and (6).

Respectfully submitted,

                                            OFFICE OF THE ATTORNEY GENERAL
                                            EDWARD MANIBUSAN
                                            Attorney General

Date: August 13, 2024                      /s/ *J. Robert Glass, Jr.*
                                            J. Robert Glass, Jr. (F0523)
                                            Chief Solicitor
                                            Attorney for Defendant
                                            Commonwealth of the Northern Mariana Islands