# EXHIBIT F



**COMMONWEALTH CASINO COMMISSION**
Commonwealth of the Northern Mariana Islands
P.O. Box 500237
Saipan, MP 96950
Tel: 1 (670) 233-1857/58
Fax: 1 (670) 233-1856
Email: info@cnmicasinocommission.com



Commonwealth Casino Commission RECEIVED By: RPB Time: 12:18pm Date: 9/17/2021

Edward Manibusan
Attorney General
Keisha Blaise (T0151)
Assistant Attorney General
Hon Juan A. Sablan Mem. Bldg., 2nd Floor
Capitol Hill
Caller Box 10007 Saipan, MP 96950
Tel: (670) 237-7500 Fax: (670) 664-2349

## BEFORE THE COMMONWEALTH CASINO COMMISSION

ANDREW YEOM, in his official capacity as Executive Director of the Commonwealth Casino Commission,

Petitioner,

v.

IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC

Respondent.

COMPLAINT NO. 2021-002

COMPLAINT

**COMES NOW**, the Petitioner, Andrew Yeom, in his official capacity as Executive Director of the Commonwealth Casino Commission (the "CCC"), by and through undersigned counsel, and alleges as follows:

### JURISDICTION

1. The CCC has jurisdiction over the Petitioner's claims pursuant to 4 CMC §2314(a) and NMIAC §175-10.1-1501 *et seq*.

### PARTIES

2. Petitioner Andrew Yeom is the Executive Director of the CCC.

3. Imperial Pacific International (CNMI) LLC ("IPI") is a limited liability company

organized under the laws of the Commonwealth of the Northern Mariana Islands.

# FACTS

4. IPI is required by Commonwealth law and other controlling authority to follow the regulations promulgated and Orders issued by the CCC.

Commonwealth Law

5. One of the Commission's statutory responsibilities is to promulgate regulations which provide for supervision, monitoring and investigation or other means to ensure the suitability and compliance with the legal, statutory and contractual obligations of owners, operators, and employees of casinos and other persons licensed under the gaming act.

6. One of the Commission's statutory responsibilities is to promulgate regulations which provide for the examination, supervision and monitoring of the continuing fiscal and financial capability of casino owners, operators, concessionaires and other parties with any direct relation to the sole casino and to protect the public in the event that such capability is significantly diminished.

CCC Regulations

7. The Commission has, pursuant to the above statutory mandate, promulgated regulations found at NMIAC Chapter 175-10.1 et. seq. which addresses the financial suitability of the casino licensee for the protection of the gaming industry and the residents of the Commonwealth of the Northern Mariana Islands; and

8. Regulation §175-10.1-1805(a) states: "The Commission deems any activity on the part of the casino gaming licensee, its agents, or employees, that is inimical to the public health, safety, morals, good order, and general welfare of the people of the Commonwealth, or that would reflect or tend to reflect discredit upon the Commonwealth of the Northern Mariana Islands or the gaming industry, to be an unsuitable method of operation and shall be grounds for disciplinary

2

action by the Commission in accordance with the Act and the regulations."

9. Regulation §175-10.1-1805(b)(15) declares the breaching of any contract an unsuitable method of operation which subjects the casino licensee to discipline.

10. Regulation §175-10.1-560(a) allows the Commission to adopt or revise a bankroll formula that specifies the minimum bankroll requirements applicable to the casino gaming licensee, along with instructions for computing available bankroll. The formula adopted by the Commission may require the licensee to maintain a number of days of cash on hand, utilize a debt-to service ratio, or utilize any other ratio the Commission deems fit.

Violation of Commission Order 2020-003

11. Pursuant to the above-cited authority, the Commission issued Order 2020-003 in its June meeting.

12. In Commission Order 2020-003, the Commission stated that it deemed any licensee's unwillingness or inability to timely pay its employees is an unsuitable method of operation and indicia of unsuitability to hold a license, and further deemed that the failure to pay employees in a timely fashion is inimical to the public health, safety, morals, good order, and general welfare of the people of the Commonwealth and reflects discredit upon the gaming industry, and further calls into question the casino licensee's ability to pay winning patrons; and

13. In Commission Order 2020-003, the Commission also stated that it deemed it necessary and proper to ensure the casino licensee is financially suitable and operating suitably by requiring the casino licensee to maintain in the Commonwealth at all times funds sufficient to pay for three months operating expenses, in addition to the previous minimum bankroll required by Regulation §175-10.1-560(a).

14. In Commission Order 2020-003, the Commission ordered that, no later than thirty (30) calendar days from the effective date of this Order, the casino licensee shall maintain cash or

cash equivalents in a restricted account in a bank in the CNMI or United States of America an amount sufficient to reasonably protect the licensee's patrons, employee's, vendors and creditors against defaults of debts owed by the licensee as they become due; in no case shall the amount of cash or cash equivalents be less than three months worth of expected obligations, subject to the schedule listed in paragraph 13 of the Order.

15. In Commission Order 2020-003, the Commission ordered the following schedule which read, in part:

A. For the first three months from the effective date of the Order, the casino licensee must reserve One (1) month payroll in advance for the August 2020 through October 2020 payrolls. Amount in reserve to be no less than $1,400,000 regardless of actual payroll;

B. For the second three months, the casino licensee must reserve Two (2) months payroll in advance for the November 2020 through January 2021 payrolls. Amount in reserve to be no less than $2,800,000 regardless of actual payroll;

C. For all months thereafter the casino licensee must reserve Three (3) months payroll in advance beginning February 2021. Amount in reserve to be no less than $4,200,000 regardless of actual payroll;

16. In Commission Order 2020-003, the Commission ordered that, If at any time the licensee's available cash or cash equivalents should be less than the amount required by this Order, the licensee or operator shall immediately notify the Commission of this deficiency and shall also detail the means by which the licensee shall comply with the minimum capital requirements.

17. Commission Order 2020-003 stated that it is to take effect immediately or at the earliest time allowed by law, and shall remain in effect until it is repealed or replaced by

subsequent Order of the Commission.

18. Commission Order 2020-003 was published in the Commonwealth Register on or about June 28, 2020 in Volume 42 Number 6 pages 043707-044709 (inclusive).

19. On information and belief, on or about Tuesday, June 30, 2020, then-Acting Executive Director Charlie Atalig emailed IPI's management and general counsel a copy of Commission Order 2020-003 which was signed by the Chairman. Further, IPI was reminded of the deadline for Commission Order 2020-003 in a letter to CEO Browne dated August 5, 2020.

20. Imperial Pacific is required by Commonwealth law to follow the Orders of the Commonwealth Casino Commission.

21. Imperial Pacific is required by the casino license agreement to follow the Orders of the Commonwealth Casino Commission.

22. Imperial Pacific is required by the regulations promulgated by the Commonwealth Casino Commission, to follow the Orders of the Commonwealth Casino Commission.

23. At no time since its issuance has Commission Order 2020-003 been repealed, rescinded, or modified in any way.

24. Commission Order 2020-003 was validly promulgated and remains fully in effect.

Enforcement Action 2020-003

25. Then-Executive Director caused to be filed Enforcement Action 2020-003 because IPI failed to comply with Commission Order 2020-003 as ordered by the CCC.

26. Enforcement Action 2020-003 contained four claims. Claim One alleged that the casino licensee violated Commission Order 2020-003 because it failed to maintain the required amount of expected obligations in cash or cash equivalents in a restricted account in a bank in the CNMI or United States of America an amount sufficient to reasonably protect the licensee's patrons, employee's, vendors and creditors against defaults of debts owed by the licensee as they

become due. Claim Two alleged that the casino licensee violated Commission Order 2020-003 by failing to detail the means by which it will comply with the minimum capital requirements of Commission Order 2020-003.

27.  Claim Three of Enforcement Action 2020-003 was for declaratory relief and sought an order declaring that IPI's failure to comply with the minimum capital requirements of Commission Order 2020-003 and failure to detail the means by which it shall comply with the minimum capital requirements of Commission Order 2020-003 amount to unsuitable methods of operation per §175-10.1-1805(a), or otherwise, and requiring IPI to immediately come into compliance with Commission Order 2020-003 immediately upon the effective date of the Commission's Order. Claim Four was for declaratory relief and sought a declaration from the Commission providing notice to the Governor and the public, declaring that IPI's, fiscal and financial capability as owner and operator of the casino, has significantly diminished such that the public interest is no longer protected, and sought an order from the Commission ordering IPI to immediately obtain financial capability sufficient to pay all debts as they become due so the public interest is sufficiently protected.

28.  Enforcement Action 2020-003 was consolidated with Enforcement Actions 2020-004 and 2020-005 under the caption for Enforcement Action 2020-003 (Consolidated).

29.  In the First Stipulation as to Certain Fact(s) which Not (sic) Disputed by the Parties filed in Enforcement Action 2020-003 (consolidated), IPI specifically stipulated that the following facts concerning Order 2020-003 were undisputed:

(A) Respondent Imperial Pacific International (CNMI) LLC has on no day since August 8, 2020 up through and including March 2, 2021, maintained cash or cash equivalents in a restricted account in a bank in the CNMI or United States of America in the amounts required by paragraphs 12 and 13 of Commission Order 2020-003 as required by Commission Order 2020-003.

(B) Respondent Imperial Pacific International (CNMI) LLC has on no day since August 8, 2020 up through and including March 2, 2021, detailed the means by which it will

6

comply with the minimum capital requirements of Commission Order 2020-003 as required by Commission Order 2020-003.

(C) Respondent Imperial Pacific International (CNMI) LLC has violated Commission Order 2020-003 every day since August 8, 2020, up through and including March 2, 2021."

30. The CCC issued a final Order on or about April 22, 2021 resolving enforcement action 2020-003 (consolidated).

31. In Commission Order 2021-002, the CCC found, among other things, that by clear and convincing evidence, the casino licensee committed one initial violation of Claim One of Enforcement Action 2020-003 and additional violations every day from January 8, 2021 through March 1, 2021 for a total of fifty three major violations for that claim[1]; one initial violation of Claim Two of Enforcement Action 2020-003 and additional violations every day from January 8, 2021 through March 1, 2021 for a total of fifty three major violations for that claim. The Commission further found that the declatory relief requested in Count Three and Count Four should issue.

32. In Order 2021-002, the CCC, among other things, suspended indefinitely the portion of the Casino License Agreement which allows IPI to conduct gaming activities until such time as IPI is in complete compliance with Commission Order 2020-003. Further, the CCC penalized IPI One Million Five Hundred Thousand Dollars ($1,500,000.00) for the violations relating to Enforcement Action 2020-003.

Subsequent Violations

33. IPI did not completely comply with Commission Order 2020-003 on or before March 3, 2021.

---

[1] The Order mistakenly references the year 2020 for 2021 when referring to the additional violations alleged and found between January and March for every additional violation noted herein.

7

34. IPI did not completely comply with Commission Order 2020-003 on any day between March 3, 2021 and the filing of this Complaint.

35. Each instance of noncompliance with Commission Order 2020-003 is a separate violation of the Regulations.

36. Each day of noncompliance with Commission Order 2020-003 is a separate violation of the Regulations.

37. IPI has repeatedly committed numerous offenses by failing to comply with Commission Order 2020-003 on its effective date in 2020 and between January 8, 2021 through March 2, 2021 (inclusive).

38. IPI has repeatedly committed numerous offenses by failing to comply with Commission Order 2020-003 on every day between March 3, 2021 and the filing of this Complaint (inclusive).

39. IPI has knowingly and willfully failed to fully comply with Commission Order 2020-003 every day since March 3, 2021 through and including the filing of this Complaint by failing to maintain cash or cash equivalents in a restricted account in a bank in the CNMI or United States of America in the amounts required by Commission Order 2020-003.

40. IPI has knowingly and willfully failed to fully comply with Commission Order 2020-003 every day since March 3, 2021 through and including the filing of this Complaint by failing to detail the means by which it will comply with the minimum capital requirements of Commission Order 2020-003 as required by Commission Order 2020-003.

**FIRST CLAIM**
**MAJOR OFFENSE OF FAILING TO COMPLY WITH COMMISSION ORDER 2020-003 IN VIOLATION OF §175-10.1-2510(A).**

41. Petitioner incorporates herein by reference paragraphs 1-40 as hereinabove alleged as if set forth here in full.

42. The effective date of Commission Order 2020-003 was on or about July 8, 2020.

43. Per Commission Order 2020-003, IPI had until no later than August 8, 2020 to begin complying with the Order.

44. IPI did not, on August 8, 2020, maintain the required amount of expected obligations in cash or cash equivalents in a restricted account in a bank in the CNMI or United States of America an amount sufficient to reasonably protect the licensee's patrons, employee's, vendors and creditors against defaults of debts owed by the licensee as they become due as Ordered by the CCC in Commission Order 2020-003.

45. IPI failed to maintain in a bank in the CNMI or United States of America for the August 2020-October 2020 payrolls the amount of at least $1,400,000.00 as ordered by Section 13.A of Commission Order 2020-003.

46. IPI failed to maintain in a bank in the CNMI or United States of America for the November 2020- January 2021 payrolls the amount of at least $2,800,000.00 as ordered by Section 13.B of Commission Order 2020-003.

47. IPI failed to maintain in a bank in the CNMI or United States of America for the February 2021 and all subsequent payrolls the amount of at least $4,200,000.00 as ordered by Section 13.C of Commission Order 2020-003.

48. On information and belief, IPI failed to maintain in a bank in the CNMI or United States of America for the February 2021 at least $4,200,000.00 as ordered by Section 13.C of Commission Order 2020-003 every day between March 3, 2021 and the filing of this Complaint (inclusive).

49. The violation of an order of the Commission is an "offense" pursuant to §175-10.1-2510(a) which subjects the casino licensee to discipline.

50. On information and belief, IPI has knowingly and willfully violated Commission Order 2020-003 by failing to maintain the amount required by Section 13.C of Commission Order 2020-003 every day since March 3, 2021 (inclusive).

51. The above actions and omissions which were, on information and belief, committed by IPI are actions or inactions which are inimical to the public health, safety, morals, good order and general welfare of the people of the Commonwealth, or that would reflect or tend to reflect discredit upon the Commonwealth or the gaming industry, and the Commonwealth is damaged thereby.

52. The relative harm suffered by the Commonwealth by IPI's failure to comply with Commission Order 2020-003 from March 3, 2021 through the filing of this Complaint (inclusive) as alleged above is great in that the public's confidence in general and the gaming public specifically, is greatly harmed when the licensee repeatedly violates law and regulations, and repeatedly breaches contracts.

53. The failure to comply with an Order of the Commission is a major offense per §175-10.1-2540(c), and should be penalized as a major offense for each instance and day of noncompliance beginning March 3, 2021.

**SECOND CLAIM**
**MAJOR OFFENSE OF FAILING TO COMPLY WITH COMMISSION ORDER 2020-003 IN VIOLATION OF §175-10.1-2510(A).**

54. Petitioner incorporates herein by reference paragraphs 1-53 as hereinabove alleged as if set forth here in full.

55. Every day from the effective date of Commission Order 2020-003, Respondent IPI has been in violation of Commission Order 2020-003 because its available cash or cash equivalents in a bank in the CNMI or United States was less than $1,400,000.00.

10

56. Every day from and including March 3, 2021, Respondent IPI has been in violation of Commission Order 2020-003 because its available cash or cash equivalents in a bank in the CNMI or United States was less than at least $4,200,000.00 as ordered by Section 13.C of Commission Order 2020-003.

57. On information and belief, on no day since and including March 3, 2021 has IPI detailed the means by which it will comply with the minimum capital requirements of Commission Order 2020-003.

58. The violation of an order of the Commission is an "offense" pursuant to §175-10.1-2510(a) which subjects the casino licensee to discipline.

59. On information and belief, IPI has knowingly and willfully violated Commission Order 2020-003 by failing to detail the means by which it will comply with the minimum capital requirements of Commission Order 2020-003 every day since March 3, 2021 (inclusive).

60. The above actions and omissions which were, on information and belief, committed by IPI are actions or inactions which are inimical to the public health, safety, morals, good order and general welfare of the people of the Commonwealth, or that would reflect or tend to reflect discredit upon the Commonwealth or the gaming industry, and the Commonwealth is damaged thereby.

61. The relative harm suffered by the Commonwealth by IPI's failure to comply with Commission Order 2020-003 from March 3, 2021 through the filing of this Complaint (inclusive) as alleged above is great in that the public's confidence in general and the gaming public specifically, is greatly harmed when the licensee repeatedly violates law and regulations, and repeatedly breaches contracts.

62. The failure to comply with an Order of the Commission is a major offense per §175-10.1-2540(c), and should be penalized as a major offense for each instance and day of noncompliance beginning March 3, 2021.

### THIRD CLAIM
### DECLARATORY ORDER

63. Petitioner incorporates herein by reference paragraphs 1-62 as hereinabove alleged as if set forth here in full.

64. Petitioner seeks an Order from the Commission declaring that IPI's failure to comply with the minimum capital requirements of Commission Order 2020-003 and failure to detail the means by which it shall comply with the minimum capital requirements of Commission Order 2020-003 amount to unsuitable methods of operation per §175-10.1-1805(a), or otherwise, and requiring IPI to immediately come into compliance with Commission Order 2020-003 immediately upon the effective date of the Commission's Order.

### FOURTH CLAIM
### DECLARATORY ORDER

65. Petitioner incorporates herein by reference paragraphs 1-64 as hereinabove alleged as if set forth here in full.

66. Petitioner seeks a Declaration from the Commission providing notice to the Governor and the public, reiterating that IPI's, fiscal and financial capability as owner and operator of the casino, has significantly diminished such that the public interest is no longer protected.

67. Petitioner further seeks an Order from the Commission ordering IPI to immediately obtain financial capability sufficient to pay all debts as they become due so the public interest is sufficiently protected.

### FIFTH CLAIM
### DECLARATORY ORDER

68. Petitioner incorporates herein by reference paragraphs 1-67 as hereinabove alleged as if set forth here in full.

69. Petitioner seeks a Declaration from the CCC that, due to the numerous major violations of law and regulations that IPI has repeatedly committed, the Casino License Agreement is terminated and revoked.

## SELF-REPORTING DETERMINATION

70. Petitioner incorporates herein by reference paragraphs 1-69 as hereinabove alleged as if set forth here in full.

71. Regulation §175-10.1-2530 is entitled "Self-reporting Determination". It reads: "The CCC, the Executive Director, or the hearing examiner, as the case may be, shall determine whether the licensee immediately, promptly or belatedly self-reported the offense (and the facts giving rise thereto) to the CCC, or whether the licensee failed to report the offense in a timely manner or at all."

72. IPI did not immediately report the facts resulting in the above-alleged violations. IPI did not affirmatively inform the CCC in writing of each daily violation.

## DETERMINATION OF OFFENSE LEVEL

73. Petitioner incorporates herein by reference paragraphs 1-72 as hereinabove alleged as if set forth here in full.

74. Mandatory offense levels for certain offenses are established by Regulation § 175-10.1-2540.

75. For each offense not listed in §175-10.1-2540, the Commission, the Executive Director, or the hearing examiner, as the case may be, shall determine whether the offense should be penalized as a minor offense, and intermediate offense. § 175-10.1-2535(a).

13

76. The offenses alleged in Counts One and Two of this Complaint (failing to make any fee payment when due) are listed in §175-10.1-2540(c) as major offenses such that a determination of offense level need not be made pursuant to §175-10.1-2535(a). Notwithstanding the foregoing, Petitioner alleges that the violations alleged in Counts One and Two are major offenses pursuant to §175-10.1-2535(a), §175-10.1-2540, or otherwise.

77. Petitioner alleges, on information and belief, aggravating factors that violating duties specifically required by law, regulation, and contract by a casino licensee is extremely deleterious to the image of gaming in the Commonwealth, and that the harm caused by IPI is great in that the public's confidence in general and the gaming public specifically is greatly harmed when the licensee repeatedly violates law and regulations and repeatedly breaches contracts.

78. Petitioner alleges, on information and belief, more aggravating factors that: this is repeated conduct; the conduct is knowing and willful, and Respondent has, within the year, not disputed that it committed thousands of violations of law and regulations in Enforcement Action 2020-003 (consolidated).

**PENALTIES**

79. Petitioner incorporates herein by reference paragraphs 1-78 as hereinabove alleged as if set forth here in full.

80. Each minor offense may be punished by: no punishment; a written warning; a fine not to exceed ten thousand dollars; and/or (in the case of a licensee not the casino operator) suspension of the license for a period not to exceed one month. § 175-10.1-2545(a).

81. Each intermediate offense may be punished by: a fine not to exceed twenty thousand dollars and/or (in the case of a licensee not the casino operator) suspension of the license for a period not to exceed six months. § 175-10.1-2545(b).

82. Each major offense may be punished by: no punishment; a written warning; a fine not to exceed fifty thousand dollars; and/or (in the case of a licensee not the casino operator) suspension of the license for any period of time up to and including license revocation. § 175-10.1-2545(c).

83. The casino operator license may be suspended or modified at the discretion of the CCC upon a finding that one or more major offenses have occurred. § 175-10.1-2545(d).

84. The casino operator license may be terminated at the discretion of the CCC upon a finding that major offenses have repeatedly occurred. § 175-10.1-2545(e).

85. The violations herein are major offenses as established above.

86. Respondent Imperial Pacific International (CNMI) LLC has repeatedly committed numerous major offenses.

87. Due to the number of violations, the duration of IPI's non-compliance, and IPI's continued failure to achieve compliance, Petitioner alleges that IPI's violations as alleged in Counts One and Two warrant (a) a revocation and termination of the casino operator license, and (b) a penalty of a $50,000 fine per violation per day of noncompliance the fee went unpaid for each of the violations alleged in Counts One and Two.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner requests the following:

A. That the CCC finds and declares that IPI committed the violations alleged in this Complaint and that IPI did not immediately self-report to the CCC the facts which gave rise to the violation(s) prior to being contacted by the CCC's enforcement staff;

B. That the CCC declares that the violations committed by IPI in Counts One and Two were major offenses pursuant to CCC Regulation;

C. That the CCC finds, declares and orders that IPI's failure to fully comply with

1  Commission Order 2020-003 amounts to ==an unsuitable method== of operation per §175-10.1-
2  1805(b)(15) or §175-10.1-1805(a), or otherwise, and requiring IPI to come into complete
3  compliance immediately upon the effective date of the CCC's Order.

4        D.    That the CCC finds, declares and Orders that IPI's license to conduct gaming
5  operations in the Third Senatorial District be immediately revoked and terminated as disciplinary
6  action in accordance with the CCC Regulations;

7        E.    That the CCC Orders IPI to pay a fine of $50,000 per violation per day of
8  noncompliance with Commission Order 2020-003 for the major violations alleged in Counts One
9  and Two herein.

10       F.    Such other or further relief as the CCC may deem just and proper under the
11 circumstances.

12     DATED this 17th day of September 2021.

                                                        /s/
                              Keisha Blaise (T0151)
                              Assistant Attorney General
                              Attorney for Petitioner