# EXHIBIT A



To: Governor Office of CNMI Government
Re: Presentation of Dispute re Annal Casino License Fees
From: Imperial Pacific International (CNMI), LLC
Date: August 12, 2024

Dear Governor Palacios:

Under Article 30 of the Casino License Agreement between the Commonwealth of the Northern Mariana Islands Lottery Commission and Imperial Pacific International (CNMI) LLC ("IPI') dated August 12, 2024, IPI, as the Initiating Party, presents a dispute related to the annual license fee to the Governor's Office of CNMI government, as the Responding Party, for consideration.

The disputed issue is whether IPI is liable for the Annual License Fee under the Casino License Agreement during the period when its license was suspended by Commonwealth Casino Commission since April 22, 2021.

IPI takes the position that IPI is not liable for the Annual License Fees during the period when its license was suspended by Commonwealth Casino Commission. We believe that the Commonwealth takes an opposite position. Therefore, we would like to formally resolve this dispute by following the dispute resolution process as outlined in Article 30 of the Casino License Agreement by presenting this brief for your consideration. ("Presentation of Dispute.")

### Introduction

Imperial Pacific International (IPI) contends that it is not liable for the annual license fee of $15 million per year during the period when its casino license was suspended by the Commonwealth Casino Commission (CCC). This argument is based on the interpretation of the Casino License Agreement (CLA), relevant statutory provisions, legal and equitable principles.

### Relevant Legal Authorities

1. **Casino License Agreement (CLA)**:

   Article 5 of the Casino License Agreement is silent on the issue whether IPI remains liable for the annual license fee when its license was suspended.

   Article 31 addresses the situation when the casino license was revoked, "[i]n the event of Casino License revocation, any prepayment of the annual License Fee shall be forfeited to the Commonwealth." This Article is silent on whether the Commonwealth has right to demand payment for annual license fee in the event of Casino License suspension.



2. **4 CMC § 2306**:

> The statute mandates an annual license fee of $15 million with adjustment for inflation. However, it does not explicitly address the scenario where a license is suspended and whether the fee accrues during such periods.

3. Decision by CNMI Supreme Court: **2023 MP 8**

CNMI Supreme Court took a close look at the Casino License Agreement ("CLA") in a reported case: **2023 MP 8.** In its opinion, at *¶ 46*, the Court stated that:

> *"The question, then, is not when IPI's obligation to pay the 2020 Annual License Fee accrued, but whether it accrued. The grounds or purpose for payment of the 2020 Annual License Fee would appear simple: the maintenance of IPI's status as exclusive licensee for the year 2020. By this measure, IPI's obligation as Licensee to make the Annual License Fee payment each year accrues for the purpose of maintaining its status as Licensee. As such, every year that IPI continues as the exclusive licensee under the CLA, the grounds and or purpose of its obligation to pay the Annual License Fee accrue."*

The Court made it clear that IPI's obligation to make the annual License Fee payment each year depends upon whether IPI continues as the exclusive licensee under the CLA.

Although the Court did not specifically address the issue whether IPI "continues as the exclusive licensee under the CLA" during the period when its license was suspended since April 22, 2021, since that was not the issue before the court, some language found within the Opinion can be instructive:

> At *¶ 48*, the Court stated that:

> *"IPI's failure to terminate the CLA under sentence three of the force majeure clause demonstrates IPI's intention to remain the exclusive licensee under the CLA, with **all the rights and duties thereof**."*

A fair reading of the Opinion suggests that the status of an "exclusive licensee" under the CLA, for the purpose of making the annual license fee payment to the Commonwealth



implies a condition where IPI retains "all the rights and duties thereof" as an exclusive licensee.

When IPI's casino license is suspended, it no longer has "all the rights and duties thereof," including its ability to operate a casino and collect revenue, therefore IPI did not and could not "continue as an exclusive licensee under the CLA," the ground for the accrual of the license fee does not exist.

It is within the authority for Commonwealth Casino Commission to impose the penalty of license suspension upon IPI, however, the Commonwealth may not take a step even further to demand annual license fee payment from IPI when the license was suspended, absent clear contractual or statutory language.

### Suspension and Financial Impact

We believe that it is self-evident that since the Commonwealth Casino Commission (CCC) suspended IPI's casino license, IPI has ceased operations involuntarily as of April 22, 2021. This suspension has effectively halted IPI's ability to generate revenue from casino operations, severely impacting its financial capacity to meet its obligations. As a direct result thereof, IPI filed Chapter 11 bankruptcy petition in April 2024.

### Legal Arguments

1. **Lack of Contractual and Statutory Basis**

Absent clear contractual or statutory language, the interpretation by the Commonwealth that IPI remains liable for the annual license fee even for the period when its license was suspended by an agency within the Commonwealth is unsupported by legal authorities. [1]

---

[1] According to 27 CFR 478. 43, no refund of any part of the amount paid as a license fee shall be made where the operations of the licensee are discontinued during the period of an issued license. However, the license fee submitted with an application for a license shall be refunded if that application is denied or withdrawn by the applicant prior to being acted upon § 478.43 License fee not refundable.. This implies that fees are not typically refunded once operations have commenced, but it does not explicitly require payment during suspension.

50 USCS § 3992(b) provides that if a licensee enters military service, the permit or license may be suspended for the period of military service and for 180 days after termination or release from military service, with regulations allowing for the remission, reduction, or refund of fees during the period of such suspension § 3992. Rights in public lands.



There are situations where the license fees paid to the government may be subject to forfeiture when the license was suspended. However, such forfeiture must be based upon explicit statutory mandates. There is no such statutory mandate here.

Similarly, the CLA specifically states that any prepaid of the annual license fee would be subject to forfeiture in case of revocation. The absence of such language with respect to suspension negates IPI's obligations to make annual license fee payment when its license was suspended.

The demand by the Commonwealth for IPI to make annual license fee payments during the suspension of IPI's license runs afoul of several key legal doctrines and principles. These doctrines collectively support the argument that IPI should not be liable for the license fee during the suspension period.

A. **Doctrine of Frustration**
The doctrine of frustration in contract law provides that contractual obligations may be discharged when an unforeseen event renders performance impossible or radically changes the party's principal purpose for entering the contract. The suspension of IPI's license qualifies as such an unforeseen event, occurring after the contract was formed and beyond the control of both parties. This suspension radically alters the nature of the contract, as it prevents IPI from operating its business and benefiting from the license. Thus, the principal purpose of the contract—the ability to operate under the license—has been frustrated, justifying the discharge of IPI's obligation to pay the annual license fee.

B. **Lack of Consideration**
Consideration, a fundamental element of any contract, refers to something of value exchanged between the parties. During the suspension period, IPI receives no benefit from the license, as it cannot legally operate. This absence of benefit means there is no exchange of value, and the consideration that justifies the payment of the license fee is lacking. Without this consideration, the demand for payment is unjust and unenforceable.

C. **Doctrine of Impossibility**
The doctrine of impossibility holds that a party is relieved from performing its contractual obligations when an unforeseen event renders performance objectively impossible. The suspension of IPI's license makes it impossible for IPI to legally operate its business. Since the primary purpose of paying the license fee is to enable IPI to

---

33 USCS § 1507(c) states that the Secretary may suspend or revoke the license of a licensee not complying with its obligations, but it does not specify that fees must continue to be paid during the suspension period § 1507. Common carrier status.

While there are provisions for the suspension of licenses and potential adjustments to fees during such periods, there is no explicit requirement for the continued payment of licensing fees during a suspension when operations are halted. This suggests that fees may not be required during such periods, especially if the suspension is due to compliance issues or other regulatory actions.

IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC. ● PMB 895, P.O. Box 10001, Saipan, MP 96950



conduct its operations, the impossibility of performing this operation should discharge the obligation to pay the fee.

### D. Doctrine of Unconscionability

The doctrine of unconscionability provides that a contract or a term within a contract is unenforceable if it is deemed excessively unfair or oppressive to one party. Requiring IPI to pay the annual license fee during the suspension period, when it cannot derive any benefit from the license, imposes an undue financial burden and creates a one-sided arrangement. This excessive hardship and lack of reciprocity render the payment requirement unconscionable.

### E. Principle of Good Faith and Fair Dealing

Most contracts include an implied covenant of good faith and fair dealing, which requires both parties to act honestly and fairly towards each other and to uphold the intentions of the contract. Demanding that IPI pay the license fee during the suspension period violates this principle because it is not fair for the Commonwealth to demand payment when IPI cannot use the license. This demand contradicts the honest expectations of the parties, who likely entered into the contract with the understanding that the license fee corresponded to the ability to operate.

The combined application of these legal doctrines and principles—doctrine of frustration, lack of consideration, doctrine of impossibility, doctrine of unconscionability, and principle of good faith and fair dealing—provides a robust argument against IPI's liability for the license fee during the suspension period. These doctrines collectively emphasize fairness, equity, and the prevention of unjust enrichment, underscoring that requiring IPI to pay the annual license fee during the suspension period is unjust and unenforceable. Therefore, IPI should be relieved of this financial obligation until the license is reinstated and the company can benefit from it once again.

## 2. Equitable Considerations

Equity principles support the argument that IPI should not be liable for the annual license fee during the suspension period. Requiring payment while the license is suspended and operations are halted would impose an undue hardship on IPI, contrary to the following equitable doctrines that prevent such unjust outcomes.

### A. Equity Principles and Undue Hardship

Equity principles aim to ensure fairness and prevent unjust outcomes. Requiring IPI to pay the annual license fee during the suspension period, when it cannot operate or benefit from the license, would impose an undue hardship. This situation could be viewed as inequitable because it would force IPI to bear a financial burden without receiving any corresponding benefits.



B. **Negation of License Benefits**

The suspension of IPI's license effectively negates the benefits that the company would normally receive from holding the license. The purpose of a license fee is to allow the holder to engage in specific activities or operations that are regulated by the licensing authority. When the license is suspended, the holder is prohibited from engaging in these activities. Consequently, it would be unfair to require payment for a benefit that cannot be utilized.

C. **Unjust Enrichment and Fairness**

Requiring IPI to pay the license fee during the suspension period could lead to unjust enrichment of the licensing authority. Unjust enrichment occurs when one party benefits at the expense of another in a manner deemed unjust by legal and equitable standards. Since IPI is not receiving any benefit from the suspended license, continuing to collect fees from IPI would unjustly enrich the licensing authority without providing corresponding value to IPI.

D. **Proportionality and Reasonableness**

Equitable relief often considers proportionality and reasonableness. It would be disproportionate and unreasonable to require IPI to pay the full annual license fee during a period when its operations are halted due to the suspension. This consideration further supports the argument for suspending the fee obligation.

## CONCLUSION

Based on the interpretation of the CLA, statutory provisions, and principles of equity and contract law, IPI should not be held liable for the annual license fee during the period when its casino license was suspended by the CCC. The suspension excuses IPI from its payment obligations during this period.

Therefore, demand by the Commonwealth for the license fee during the suspension is legally and equitably unjustifiable.

Under Article 30 of the CLA, both IPI and the Commonwealth have the obligation to "Meet and Confer" within ten working days of Presentation of Dispute in an attempt to Clarify and resolve issue.

IPI remains available for a "Meet and Confer" conference within the next ten working days upon your notice.

Sincerely,

X: *Howyo Chi*

Howyo Chi
Director of IPI