OFFICE OF THE ATTORNEY GENERAL
EDWARD MANIBUSAN
Attorney General
J. Robert Glass, Jr. (F0523)
Assistant Attorney General
Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
Caller Box 10007, Capital Hill
Saipan, MP 96950
Telephone: 670-237-7500
Email: robby_glass@cnmioag.org
Attorney for Defendant Commonwealth of the
Northern Mariana Islands

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| IMPERIAL PACIFIC INTERNATIONAL (CNMI) LLC<br><br>        Plaintiffs,<br>  vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, the COMMONWEALTH CASINO COMMISSION, ARNOLD PALACIOS, GOVERNOR OF CNMI, in his official and personal capacities, et. al.,<br><br>        Defendants. | CIVIL CASE NO. 1:24-CV-0001<br><br>**DEFENDANT COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 8(a), 17(b), 12(b)(1) and 12(b)(6)**<br><br>**Hearing Date:**<br>**Hearing Time:**<br>**Judge: Hon. Judge David Carter** |

      Defendant Commonwealth of the Northern Mariana Islands respectfully submits this Reply in support of its motion to dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 8(a), 17(b), 12(b)(1) and 12(b)(6).

//

1

**I.       Background**

On August 13, 2024, the Commonwealth of the Northern Mariana Islands filed its Motion to Dismiss the Second Amended Complaint of Plaintiffs arguing that Plaintiff Best Sunshine lacks capacity to be sued; that the SAC fails to allege any actions taken by the Commonwealth proper; that the suit is not ripe for adjudication; that res judicata bars Plaintiffs from seeking to overturn the prior decisions of the agency which were affirmed by the NMI Supreme Court and United States Supreme Court and bars them from raising issues which could and should have been raised in the prior litigations; that the Commonwealth should enjoy sovereign immunity like every other state and territory in federal court as such sovereign immunity is found outside the Eleventh Amendment; and that the Commonwealth Casino Commission ("CCC") is not a sue or be sued entity and as such any action against the CCC would be an action against the Commonwealth.

On August 27, 2024, Plaintiffs filed their Opposition arguing that they should be granted leave to amend to correct their continued deficiencies. This Court should deny the Motion to Amend and grant the Defendant's Motion to Dismiss with prejudice.

**II.      Legal Standard**

**III.     Argument**

**1. Plaintiff Admits Best Sunshine International Ltd, is No Longer an Entity and Lacks Capacity to Sue Since 2023.**

Plaintiff Best Sunshine International Ltd. (BVI) ("Best Sunshine") admits that it has lacked a registered agent since April 7, 2023 when it was dissolved. [CITE] However, after attempting to hoodwink the parties and Court, Plaintiffs now ask for leave to remove Best Sunshine as a party in the Third Amended Complaint ("TAC"). By tacitly admitting that Best Sunshine does not exist, Plaintiffs are admitting that they did not do their due diligence in including Best Sunshine as a party in the SAC. Such a gaffe in representation should be met by this Court with sanctions under its inherent powers by dismissing Best Sunshine from the suit with prejudice. The Court should also sanction counsel under its inherent powers for causing delays in litigation. *See Chambers v. NASCO*, *Inc*. 501 US 32, 44-45 (1991) (finding inherent power to sanction outside of Rule 11 and statutes). In *Chambers*, the Supreme Court found that district courts had inherent power found outside the civil rules and statutes to sanction parties and counsel. *Id*. ("We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described

2

above."). The type of bad conduct that could result in sanctions is exactly the behavior exhibited in this case.

Best Sunshine was included in the SAC without any investigation into its status as a company. This clearly raises concerns about who authorized anyone to file on its behalf, as the company did not exist. Further, the filing of the SAC required a whole new round of motions and briefing. *See* ECF 59 (motion to dismiss), ECF 60 (motion to dismiss), ECF 61 (motion to dismiss). In turn, Plaintiffs seek another amendment to drop Best Sunshine from litigation, which would have the effect of once again mooting all the responsive pleadings. This tactic shows that Plaintiffs are causing delay because Plaintiffs could have easily corrected this through their own motion to dismiss or by seeking a stipulation to dismiss. Instead, it is clear Plaintiffs intend to use this material error to give it the opportunity to file a TAC, and then (if it is able to re-instate Best Sunshine as a company that has capacity to sue) include it in a Fourth Amended Complaint. This clearly is a pattern to seek delay, which the United States Supreme Court found sufficient for sanctions. *See Chambers*, 501 US at 46 (finding a court may assess sanctions and attorney's fees under its inherent power "when a party shows bad faith by delaying or disrupting the litigation"). Therefore, the Court should dismiss Best Sunshine from the litigation with prejudice and assess attorney's fees against its counsel.

**2. Plaintiff Materially Misunderstands and Mischaracterizes the Commonwealth's Arguments.**

Under Federal Rule of Civil Procedure 8(a), Plaintiff is required to sufficiently plead a cause of action against each Defendant. IPI has not alleged any actions by the Commonwealth itself, and what little allegations it does raise against the Commonwealth through its agencies are not actions of the Commonwealth as a government entity, but rather are allegations against its branches and agencies where such accusations would be more properly brought against the government officials who enforce such statutory provisions.[1] *See Sofamor Danek Gorup, Inc. v. Brown*, 124 F.3d 1179, 1183-84 (9th Cir. 1997) (stating the general principle that challenges to constitutionality of a statute are properly brought against officers of the state and not the state itself because of sovereign immunity).  Plaintiffs' only allegations directed at the Commonwealth's agencies are contained in paragraphs 6, 92-95, 112, 114, 116, and 125.

---

[1] The Commonwealth also asserts sovereign immunity as a ground for dismissal. That argument is contained below.

Plaintiffs materially misunderstand the Commonwealth's arguments regarding why the SAC is insufficient to make claims against the Commonwealth proper directly.

For Plaintiffs' First Cause of Action, Plaintiffs argue that both the annual regulatory fee statute and the requirement for minimal capital violate the contracts clause of the United States Constitution for the period during which it was shut down for Covid-19, which it argues was a *force majeure* event. SAC ¶¶ 105-107. Plaintiffs make the same argument as to the application for the demand of payment. SAC ¶ 109. Plaintiffs then allege collusion as part of their unconstitutional impairment claim. SAC ¶¶ 112 and 114.

As to the constitutional claims, the mere enactment of a statute is not enough to bring a charge against the Commonwealth proper, and such charges should be brought against officials responsible for the enforcement of the statutory provisions. *See Sofamor Danek Gorup, Inc. v. Brown*, 124 F.3d 1179, 1183-84 (9th Cir. 1997). To the extent Plaintiffs are bringing claims against the Commonwealth for enacting a statute, the Commonwealth is the wrong party, and the allegations of merely passing a law are insufficient to establish a cause of action against it. *See Sofamor*, 124 F.3d at 1183. As to the claims of collusion, the mere passing of a statute does not establish collusion and thus Plaintiffs failed to properly plead any collusion at all between the Commonwealth and any other individual. Therefore, to the extent Plaintiffs seek action against the Commonwealth for merely passing a law, Plaintiffs are going against the wrong party. The First Cause of Action also is not brought under 19 USC § 1983, which also does not apply to the Commonwealth proper.

Plaintiffs then counter that the proper thing would be to substitute the Commonwealth out and bring in the parties against whom it can bring suit. The cases relied on by Plaintiffs are in error and actually support the Commonwealth's position. In *Norita v. Commonwealth of the Northern Mariana Islands DPS*, the claims were brought pursuant to the Government Liability Act ("GLA") where substitution is required by statute for when employees of the Commonwealth are sued for actions undertaken in their scope of employment. 2019 WL 150875 (D. N. Mar. I. January 10, 2019). This is not a GLA claim. Further, the Court dismissed the agency which was improperly sued because it was not a sue or be sued entity. *Id*. at *6-8. ("Because DPS lacks the capacity to sue or be sued under Commonwealth law, it is DISMISSED from the case"). As such, the Commonwealth should be dismissed from the First Cause of Action.

For the Second Cause of Action, Plaintiffs bring a § 1983 claim against the Commonwealth for alleged due process clause violations. The only mention of the Commonwealth proper is paragraph 125, which alleges that the Commonwealth directed the Commissioners to not disqualify themselves. SAC ¶ 125. This is a bald assertion with no factual allegations surrounding it. Further, it does not allege any way in which the Commonwealth directed the Commissioners other than by passing a statute. Merely passing a law cannot sustain an allegation that the Commonwealth engaged in acts directing the Commissioners to take any specific action regarding their recusal decisions.

Plaintiffs next argue that § 1983 claims are allowed against the government directly when requesting injunctive relief. Opp. at 10. However, Plaintiff is not requesting *the Commonwealth* to do or not do anything. It is requesting for the Commissioners of CCC to stop the revocation proceeding and to stop enforcement of a statute and regulations during a specific period of time. *See* Prayer for Relief. Neither of these implicate the Commonwealth directly. If a statute is declared unconstitutional as applied during a *force majeure* event, that does not render the whole statute unconstitutional, but only as applied during a specific time period that has now passed. If the Court were to declare the whole statutory scheme unconstitutional, the Court cannot order the passing of a new statute; rather, it would be up to the Legislature to pass a new statute that meets the constitutional qualifications as outlined by the Court. Either way, the Commonwealth sovereign is not enjoined from any action. Thus, even as to a § 1983 claim, Plaintiffs have not made sufficient allegations and requests for relief against the Commonwealth, and the Commonwealth should be dismissed from the Second Cause of Action.

Finally, Plaintiffs contend that the Commonwealth is arguing both sides of the same coin. Opp. at 9. However, Plaintiffs are incorrect in assuming that the law must provide a remedy against either the Commonwealth or CCC in this forum. Plaintiffs cannot sue either party in federal court because CCC is not a sue or be sued entity and the Commonwealth has sovereign immunity. Thus, Plaintiffs are more properly left to their state law remedies through a judicial review action to address the actions taken by CCC.

**3. The Issues are Not Ripe for Judicial Review.**

Plaintiffs' claims are not ripe for judicial review because it is not clear that the casino license will be revoked.

Plaintiffs argue that no decision by CCC regarding revocation of its license even needs to be reached because their right to a hearing officer means the case is ripe. For support, Plaintiffs rely on one single case: *Foothills Christian Ministries v. Johnson*, 2024 WL 2305282 (S.D. Cal. May 20, 2024) (currently on appeal). First, it is notable that the lawsuit challenging the scheme of licensure and regulation under the California Child Day Care Facilities Act is not brought against California, but against the individuals in their official capacity assigned to enforce the Act. Second, the challenge is against the entire Act and not just as applied in a particular way and instance in time— both arguments Plaintiffs raise get them around the res judicata issue. Third, the case does not support Plaintiffs.

The *Foothills* case deals primarily with standing (who can sue) as opposed to ripeness (whether the suit can be decided at this time). *Id*. While certain aspects of standing and ripeness may overlap and be analyzed the same in some cases, there is also the prong of ripeness that deals with "prudential ripeness," which is what the Commonwealth alleges here— that the case is not fit for judicial intervention because the harm to be suffered may not happen at all. *See Colwell v. Department of Health and Human Services*, 558 F.3d 1112, 1123-24 (9th Cir. 2009). In *Colwell*, the primary issue was whether the new guidance issued by the Department of Health and Human Services was a regulation or a policy statement. The Court found the issue was not fit for judicial determination because it was not clear which way the agency would go in its enforcement. Here, quite similarly, there is no guarantee that CCC will revoke the casino license. Indeed, as Plaintiffs concede, a new member is in the process of being appointed and confirmed (although this too is not guaranteed). If such were to occur, that new member would lack the taint complained of by Plaintiffs and would be the neutral third party Plaintiffs seek. Thus, the suit is not ripe for judicial decision. Further, waiting until CCC has made a decision to allow an action to proceed would also serve the purpose of judicial economy, as Plaintiffs would have no reason to further amend the Complaint to fit every circumstance. Thus, the Court should dismiss the case for lack of ripeness until a revocation decision is made.

4. **Res Judicata Bars Plaintiff's Suit.**

Plaintiff argues that res judicata does not apply because the "bright-line rule" of *Flores v. Life Insurance Company of North America*, 2024 WL 222265 (9th Cir. 2024) applies in a way that any "events" occurring after the filing of the first complaint are not barred. Opp. at 12. This is not what *Flores* actually holds. *Flores* acknowledges the bright line rule, but the purpose of

the rule is to analyze the fourth factor (whether the suits arise out of the same transactional nucleus of facts) of the test to identify whether there is an identity of claims for applying res judicata. Further, the test is not mechanistic and the fourth factor is most important. *Flores*, 2024 WL 222265 at *1.

The issue here is that each of Plaintiffs' claims alleging that the entire statutory and regulatory scheme of licensing and regulating the casino license is unconstitutional could have been brought in the prior suits. The ability of such claims to have been brought previously is clear from Plaintiffs' request to "vacate, nullify any and all adverse administrative decisions against IPI that were based upon the assumption of jurisdiction by CCC to interpret the terms of the CLA and/or to adjudicate claims arising out of the CLA, when such disputes are not related to the gaming operations of IPI, and the scope of such disputes shall be narrowly construed." Prayer for Relief ¶ 6. Plaintiffs also request for the entire scheme to be held unconstitutional. This too could have been raised in the prior litigation, as it was the same decision-making body applying the same statutes and regulations that decided the suspension. As such, Plaintiffs' suit should be barred by res judicata.

**5. The Commonwealth Should Be Granted Full Sovereign Immunity.**

Plaintiffs merely contend that it issue of sovereign immunity is settled, but ignore that the Commonwealth may still argue in good faith for reversal of existing law. Further, the implications that a court decision barring this suit on grounds of sovereign immunity would have on this case and future cases is immense. Thus, the Commonwealth continues to argue for its proper place among United States jurisprudence in seeking its own self-determination and governance. As such, it should be afforded the sovereign immunity that is found outside of the Eleventh Amendment as the Supreme Court established in *Alden v. Maine*, 527 U.S. 706 (1999). Such arguments in good faith for the reversal of existing precedent have recently succeded in the U.S. Supreme Court. *See, e.g., Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) & *Loper Bright Enter. V. Raimondo*, 144 S.Ct. 2244 (2024). In order for those cases to reach the United States Supreme Court, both cases had to traverse the district and appellate courts. The Commonwealth intends to do the same here as such is allowed under ABA Model Rule 3.1.[2]

---

[2] ABA Model Rule 3.1 allows attorneys to argue in good faith for "extension, modification, or reversal of existing law."

While *Fleming v. Department of Public Safety*, 837 F.2d 401 (9th Cir. 1988), clearly decided that the Eleventh Amendment immunity did not apply to the CNMI due to the amendment's omission from the Covenant, *Fleming*'s holding that common law sovereign immunity was waived by "implication" is on tenuous grounds.[3] The *Fleming* holding that the CNMI does not enjoy common law sovereign immunity was expressly passed over by the Ninth Circuit because it held the waiver of sovereign immunity was broad:

> The Department also claims that the Commonwealth enjoys common law sovereign immunity, and that Fleming's suit is barred even if the eleventh amendment is not applicable. The Department cites *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984), for the proposition that common law sovereign immunity constitutes an independent limitation on courts' Article III jurisdiction to hear cases against states. We do not reach this question, because we conclude that in entering into the Covenant the Commonwealth impliedly waived whatever immunity it might otherwise have enjoyed against suits in federal court arising under federal law.

*Id*. at 407 (emphasis added). From this, it is clear that two types of sovereign immunity exist: common law sovereign immunity and eleventh amendment sovereign immunity. *Fleming*'s rationale is that by entering into the Covenant, the CNMI waived both because "**there is simply no meaningful distinction between eleventh amendment immunity and common law sovereign immunity insofar as federal suits are concerned**." *Id*. (emphasis added). *Fleming* never gets to the question of the Commonwealth's common law sovereign immunity because it finds there to be no distinction. It is this basis that provides the crack under which *Fleming*'s rationale and reasoning can no longer be reconciled with further developments. *See Manila v. Department of Corrections*, 2019 WL 324424 at *3 (D. N. Mar. Is. Jan. 24, 2019) (basing its decision on *Fleming* not being "clearly irreconcilable with the reasoning or theory of intervening higher authority").

*Alden v. Maine*, 527 U.S. 706 (1999) provides the hammer which shows that eleventh amendment immunity and common law sovereign immunity are not indistinguishable (as the *Fleming* court found), and thus this Court should find *Alden* irreconcilable with *Fleming*. *Alden* specifically finds that there is immunity outside of the eleventh amendment:

> We have, as a result, sometimes referred to the States' immunity from suit as "Eleventh Amendment immunity." The phrase is convenient shorthand but

---

[3] *Fleming*'s other primary holding that the CNMI was a "person" under § 1983 has already been overturned. *See Norita v. Northern Mariana Islands*, 331 F.3d 690, 696 (9th Cir. 2003).

8

something of a misnomer, for **the sovereign immunity of the States neither derives from, nor is limited by**, the terms of the Eleventh Amendment.

*Alden*, 527 U.S. at 713 (emphasis added). When this Court examined the issue in *Manila*, it did not examine this portion of *Alden* or explain why it is not irreconcilable. Instead, the Court relied on *Norita v. Northern Mariana Islands*, 331 F.3d 690 (9th Cir. 2003) to find that *Alden* was *not* irreconcilable with *Fleming*. However, *Norita*, carefully avoids the problem presented by *Alden* and sidesteps the issue.

*Norita* pays homage to *Alden* and its holding that sovereign immunity is derived not from the eleventh amendment, but by the inherent sovereign immunity of being a sovereign (*i.e.,* common law sovereign immunity). However, when push comes to shove, *Norita* explicitly skips *Alden*: "The principles CNMI relies on from the Supreme Court's recently clarified Eleventh Amendment jurisprudence in support of its assertion of sovereign immunity here predate *Fleming*." The *Norita* court then lists out three cases that do predate *Fleming*: *Hans v. Lousisana*, 134 U.S. 1 (1980); *Principality of Monaco v. Mississippi*, 292 U.S. 313 (1934); and *Edelman v. Jordan*, 415 U.S. 651 (1974). Conspicuously absent is the 1999 case of *Alden v. Maine*, 527 U.S. 706 (1999). *Fleming* was decided in 1988 and *Alden* in 1999, so it is not clear why the Ninth Circuit did not discuss it. Further complicating the matter, the *Norita* court separates the issue of eleventh amendment and common law sovereign immunity and states: "We have found no closely-on-point intervening Supreme Court decision undermining *Fleming's* holding that the CNMI is not entitled to an Eleventh Amendment defense." *Norita*, 331 F.3d at 696. This is definitely true. But *Alden* again undermines this by finding sovereign immunity exists as an inherent status outside of the eleventh amendment. If that is not enough, another 1999 case also finds "that a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Department of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). The failure to include the eleventh amendment in the Covenant would only function to waive eleventh amendment immunity, and not common law immunity.

Thus, the decisions in *Fleming* and *Norita* continue to build upon one another, but start with a shaky foundation that proclaims there is no distinction between eleventh amendment and common law sovereign immunity, and then fail to analyze *Alden's* holding that there is a distinction and that *Department of Army* makes any waiver be strictly construed in terms of its scope to favor the sovereign. The shaky walls are then built by ignoring Supreme Court precedent

that was decided after *Fleming* and clearly makes the holding of *Fleming* that there is no distinguishing between eleventh amendment sovereign immunity and common law sovereign immunity irreconcilable with that subsequent precedent. It is time to bring the Commonwealth into alignment with the other United States jurisdictions and find that the Commonwealth has common law sovereign immunity because the holding of *Fleming* that the CNMI does not have common law sovereign immunity because eleventh amendment and common law sovereign immunity are not distinguishable can no longer be reconciled with *Alden*.

### 6. The CCC Should Be Dismissed As It Is Not A Sue Or Be Sued Entity.

Plaintiffs also list CCC as a party to this action. FAC (ECF 38) at ¶ 6. Plaintiffs argue that the issue is moot because CCC filed an answer and thus waived its right to make such a challenge. However, Plaintiffs ignore their own argument that CCC is a way to get at the Commonwealth. The implications for this are important. If CCC is not a sue or be sued entity, then CCC cannot be sued and the claims against it would need to be alleged against the Commonwealth (assuming that the Court finds against the Commonwealth as to sovereign immunity). Further, if the claim is against the Commonwealth, then CCC's filing of an Answer is a non-issue because the right is held by the Commonwealth as the party to be sued.

### IV.   CONCLUSION

For the foregoing reasons, Defendant respectfully moves to dismiss this suit pursuant to Federal Rule of Civil Procedure 17(b)(2) and 12(b)(1) and (6).

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL
EDWARD MANIBUSAN
Attorney General

Date: September 3, 2024          /s/ *J. Robert Glass, Jr.*
                                 J. Robert Glass, Jr. (F0523)
                                 Chief Solicitor
                                 Attorney for Defendant
                                 Commonwealth of the Northern Mariana Islands