Bruce Berline, Esq.
Law Office of Bruce Berline LLC
Security Title Building, Second Floor
Isa Drive, Capitol Hill
P. O. Box 5682 CHRB
Garapan, Saipan, MP 96950
Tel: (670) 233-3663
Email: bberline@gmail.com

Aaron Halegua
AARON HALEGUA, PLLC
524 Broadway, 11th Floor
New York, New York 10012
Tel: (646) 843-9061
Email: ah@aaronhalegua.com

*Attorneys for Defendant Arnold Palacios in his Personal Capacity*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| Imperial Pacific International (CNMI) LLC; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>Commonwealth of the Northern Mariana Islands; *et al.*,<br><br>Defendants. | Case No. 1:24-cv-00001<br><br>**OPPOSITION BY ARNOLD PALACIOS IN HIS PERSONAL CAPACITY TO IPI'S MOTION SEEKING LEAVE TO FILE A THIRD AMENDED COMPLAINT**<br><br>Hearing date: n/a<br>Hearing time: n/a<br>Judge: Hon. David O. Carter |

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

I.    **INTRODUCTION** ........................................................................................... 1

II.   **LEGAL STANDARD** ..................................................................................... 2

III.  **ARGUMENT** .................................................................................................. 3

A. **IPI has been afforded more than sufficient opportunities to state a plausible cause of action but has repeatedly failed to cure its deficiencies.** ................................................................................................ 4

B. **IPI has exhibited bad faith and caused undue delay by repeatedly filing claims that lack either a legal or factual basis, by exhibiting a complete lack of diligence, and by forcing the parties to file motions to dismiss and then seeking leave to amend before the motions are decided.** ................. 5

   1. In the original complaint, IPI filed claims against the Governor and other parties alleging breaches of CNMI law, even though these parties were immune from claims arising under CNMI law in federal court. .......................... 6

   2. In the SAC, IPI then brought a baseless Contract Clause claim contrary to established precedent, refused to withdraw it after the Governor sent a Rule 11 letter, and forced the Governor to file a motion to dismiss before acknowledging the claim was meritless. ...................................................... 6

   3. IPI added a corporate plaintiff to the case without disclosing (or researching) that the entity had been dissolved more than one year prior. ............ 8

   4. In the companion case, IPI filed baseless claims against the Governor that it then dismissed upon receiving a Rule 11 letter. ...................................... 8

C. **Permitting IPI to continue engaging in this game of "whack-a-mole" by amending its pleading once again prejudices the Governor.** ................... 9

D. **The Motion to Amend should be denied because granting IPI leave to file the TAC would be futile.** ......................................................................... 10

   1. IPI's claim against the Governor is not ripe because IPI has not suffered any harm. ................................................................................................. 12

i

2.  The factual allegations added to the TAC still do not state a plausible claim for relief. ...................................................................12

a.  *IPI's elaborations on allegations in the SAC do not state a plausible claim for relief.* ..........................................................13

b.  *The only factual allegation in the TAC that is actually "new" also fails to bolster IPI's claim against the Governor.* ....................15

IV.  **CONCLUSION** ...................................................................16

# TABLE OF AUTHORITIES

*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946 (9th Cir. 2006) ..............................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................13–14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................13

*Bioiberica Neb., Inc. v. Nutramax Manufacturing, Inc.*,

    No. 1:18-cv-03133-SAG, 2021 WL 242494 (D. Md. 2021) ....................................1

*Carter v. SNC-Lavalin Constructors, Inc.*,

    No. DKC-17-3198, 2019 WL 918382 (D. Md. Feb. 25, 2019)........................2, 11

*Chabrowski v. Bank of New York Mellon Tr. Co. NA*,

    No. CV-17-03867-PHX-DWL, 2019 WL 132350 (D. Ariz. Jan. 8, 2019) ...........5, 9, 11, 16

*Chodos v. W. Publ'g Co.*, 292 F.3d 992 (9th Cir. 2002) ..................................2–4, 10, 16

*Cordes v. Boulder Brands USA, Inc.*,

    No. CV 18-6534 PSG (JCX), 2019 WL 1002513 (C.D. Cal. Jan. 30, 2019) .................2, 10

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).........................2–3

*Finicum v. United States*,

    No. 2:18-CV-00160-SU, 2021 WL 3502462 (D. Or. Aug. 5, 2021)....................1–2, 4–5, 9

*Foman v. Davis*, 371 U.S. 178 (1962) .........................................................................3

*Fontana Water Co. v. City of Fontana*, 24 F.3d 246 (9th Cir. 1994) ..............................7

*Gen. Motors Corp. v. Romein*, 503 U.S. 181 (1992) ....................................................7

*Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877 (9th Cir. 1999) ...................................2

*Jackson v. Bank of Hawaii*, 902 F.2d 1385 (9th Cir. 1990) ........................................10

*Kittel v. City of Oxnard*,

    No. CV 17-6709-MWF (GJSx), 2018 WL 6004522 (C.D. Cal. July 9, 2018)...........3, 9, 11

*Mancuso v. Dunbar*, No. 3:08-cv-1018, 2010 WL 466004 (D. Conn. Feb. 5, 2010) .................12

*Moss v. U.S. Secret Serv.*, 572 F.3d 962 (9th Cir. 2009) ................................................ 14

*Oceanside Organics v. Cnty. Of San Diego*, 341 F. Supp. 3d 1129 (S.D. Cal. 2018) .................. 11

*Placencia v. United States*,

     No. 3:16-cv-02354-BEN-MDD, 2017 WL 3017708 (S.D. Cal. 2017) ............................... 10

*Ramsey v. Muna*, 849 F.3d 858 (9th Cir. 2017) ......................................................... 6

*Roberto v. Clever Care of Golden State, Inc.*,

     No. 8:22-cv-01301-DOC-ADS, 2023 WL 3551965 (C.D. Cal. April 6, 2023) ................. 11

*Walker v. Trans Union, LLC*, No. PWG-16-3926, 2017 WL 4786625 (D. Md. Oct. 24, 2017) ..... 4

*Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City*,

     473 U.S. 172 (1985) .......................................................................... 12

*Woodrum v. Woodward Cnty., Okl.*, 866 F.2d 1121 (9th Cir. 1989) .............................. 12

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) ....................... 4

iv

## I.  **INTRODUCTION**

On August 13, 2024, Governor Palacios filed a Motion to Dismiss (ECF No. 59 ("MTD")) the SAC filed by IPI.[1] In response, IPI simultaneously filed its half-hearted opposition to the MTD (ECF No. 64 ("Opposition")) and an even more paltry, three-page motion to amend (ECF No. 65 ("Motion to Amend")), which attached a proposed Third Amended Complaint (ECF No. 65-1) ("TAC"))). On September 3, 2024, the Governor filed a reply brief in support of his MTD. (ECF No. 68 ("MTD Reply")). The MTD Reply also requested and briefly presented arguments as to why the SAC warrants dismissal with prejudice by the Court without further leave to amend. (*Id.* at 4–5, 12). Governor Palacios, in his personal capacity, now files this Opposition to the Motion to Amend that further elaborates why the SAC should be dismissed with prejudice and IPI's Motion to Amend denied.[2]

"[A] plaintiff who treats his complaint like the game of Battleship, moving the target across the board every time it suffers a fatal blow, acts in bad faith, and should not be entitled to leave to amend." *Bioiberica Neb., Inc. v. Nutramax Manufacturing, Inc.*, No. 1:18-cv-03133-SAG, 2021 WL 242494, at *2 (D. Md. 2021). From the beginning, IPI filed this litigation in order to delay the revocation of its casino license and for the improper purpose of seeking to gain leverage in its settlement negotiations with the CCC and the Governor. Accordingly, IPI has conducted this litigation in bad faith with the sole purpose of maintaining some threat of litigation over the Governor and other officials. Throughout this case, IPI has repeatedly filed claims totally lacking in legal merit, only to then withdraw those claims and plead other meritless claims. *See Finicum v. United States*, No. 2:18-CV-00160-SU, 2021 WL 3502462, at *4 (D. Or. Aug. 5, 2021) ("Federal pleading is not a game of

---

[1] The defined terms herein have the same meaning as set forth in the Governor's MTD, unless otherwise stated.

[2] Since the relevant procedural history and background is presented in the MTD (MTD at 1–7), it is not restated here.

whack-a-mole in which plaintiffs plead, defendants defend, courts consider and rule, and then the process starts all over to satiate a plaintiff's hope she'll luck into something."). Three times now, IPI has filed a complaint, defendants prepared and filed motions to dismiss, and IPI moved to amend before the motions were even decided. In the companion case filed by IPI, Case No. 24-cv-00002, IPI employed the same bad faith tactics by filing a complaint, waiting for defendants to prepare and then file motions to dismiss, and then moving to amend before those motions were decided. This has gone on long enough. Granting leave to amend the complaint yet again would cause undue prejudice to the Governor (and other defendants) by forcing them to spend additional time and resources defending themselves. *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCX), 2019 WL 1002513, at *4–5 (C.D. Cal. Jan. 30, 2019) (denying leave to amend because unduly prejudicial to force defendant go through another round of briefing). Moreover, granting IPI leave to amend again would be futile. IPI's claims are still not ripe because the CCC has not revoked the casino license. Further, the "new" factual allegations in the TAC were not only previously available to IPI, but also still fail to state a plausible claim for relief. *Carter v. SNC-Lavalin Constructors, Inc.*, No. DKC-17-3198, 2019 WL 918382, at *3 (D. Md. Feb. 25, 2019) ("Bad faith generally involves changing legal theories and the belated presentation of facts which the pleader was already aware of in an effort to delay ultimate resolution"). For all these reasons, the Motion to Amend should be denied.

## II.  LEGAL STANDARD

"When a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is 'particularly broad.'" *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Griggs v. Pace Am. Group, Inc.,* 170 F.3d 877, 879 (9th Cir. 1999)). Factors that a district court should consider when assessing whether to grant leave to amend include: (i) undue prejudice to the opposing party; (ii) undue delay; (iii) bad faith; (iv) repeated failure to cure deficiencies via prior amendments; and (v) futility of amendment. *Eminence Cap., LLC v. Aspeon,*

*Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *See also Chodos*, 292 F.3d at 1003 ("When considering a motion for leave to amend, a district court must consider whether the proposed amendment results from undue delay, is made in bad faith, will cause prejudice to the opposing party, or is a dilatory tactic.").

IPI relies on the 1962 decision in *Foman* to argue that leave to amend a complain should be "freely given" (Motion to Amend at 3); however, in that case, the U.S. Supreme Court found that the district court had abused its discretion by denying the plaintiff's *first request* to amend her complaint. *Foman*, 371 U.S. at 182. As even *Foman* notes, this is not the standard when a party has been operating in bad faith and already had multiple attempts to amend. *Id.* (identifying several legitimate bases to deny leave to amend, including a "repeated failure to cure deficiencies" in the complaint). *See also Kittel v. City of Oxnard*, No. CV 17-6709-MWF (GJSx), 2018 WL 6004522, at *3 (C.D. Cal. July 9, 2018) (denying leave to amend where factual bases for claims was already present and "Plaintiff has already had several opportunities to plead her claims"); *Chodos*, 292 F.3d at 1003 (affirming district denial of motion to amend complaint where "new" facts could have been added previously).

### III.  ARGUMENT

The SAC should be dismissed with prejudice and IPI's Motion to Amend should be denied. This is not IPI's first request for leave to amend its complaint, but rather its second such request, and third opportunity to amend, which has caused delays in these proceedings and prejudice to the parties. Each time, IPI has failed to correct the deficiencies in the pleading. IPI has also exhibited bad faith by filing frivolous claims contrary to established precedent and claims lacking any factual basis. IPI has exhibited further bad faith by refusing to withdraw those claims after defendants pointed out those flaws, forcing the defendants to file a motion to dismiss, and then seeking leave to amend before those motions to dismiss can be adjudicated—thus unnecessarily burdening defendants. Furthermore, IPI's efforts to amend will be futile because the TAC still fails to plead a plausible claim against the

Governor. For these reasons, the Motion to Amend should be denied. *Chodos*, 292 F.3d at 1003 (affirming denial of motion to amend upon finding that "new" facts had been available prior to filing the prior amended complaint and thus plaintiff engaged in undue delay, and where permitting an amendment would prejudice the defendant).

**A. IPI has been afforded more than sufficient opportunities to state a plausible cause of action but has repeatedly failed to cure its deficiencies.**

IPI has been afforded multiple opportunities to put forth a plausible claim against the Governor and has repeatedly failed to do so.[3] However, it is not as if IPI has been refining its claim or comes closer to stating a plausible cause of action in each iteration. Rather, IPI has either failed to correct the problems that were identified or has entirely abandoned its causes of action and instead pleaded new, equally-meritless causes of action. However, IPI is not entitled to an unlimited number of attempts to plead a plausible claim, and it is now proper for this Court—and well within the Court's discretion— to end IPI's gamesmanship and deny its request to amend yet again. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009), as amended (Feb. 10, 2009) (affirming dismissal with prejudice where district court dismissed the First Amended Complaint and found "the Second Amended Complaint was no better"); *Finicum*, 2021 WL 3502462, at *4–5 (dismissing with prejudice where plaintiff had three chances to submit a proper pleading); *Walker v. Trans Union, LLC*, No. PWG-16-3926, 2017 WL 4786625, at *2–3 (D. Md. Oct. 24, 2017) ("When a party is granted leave to amend but fails to address the problem, that party should not be surprised when the court does not give it a third or fourth chance.") (internal quotations omitted).

---

[3] IPI also had brought similar claims against the Governor in a prior lawsuit (Case No. 23-cv-00014) and in a companion lawsuit to this one (Case No. 24-cv-00002), as well as filed two failed motions for a TRO in this action (ECF Nos. 2, 23).

**B. IPI has exhibited bad faith and caused undue delay by repeatedly filing claims that lack either a legal or factual basis, by exhibiting a complete lack of diligence, and by forcing the parties to file motions to dismiss and then seeking leave to amend before the motions are decided.**

As a preliminary matter, it has been clear from the beginning that IPI is pursuing this litigation with the twin goals of (1) delaying the CCC's license revocation proceedings, and (2) gaining leverage over the Governor in settlement negotiations to try to save its license. Indeed, the declaration submitted in the TRO briefing by IPI's manager and director, Howyo Chi, explicitly stated that the purpose of the filing was to "allow IPI and Defendants to continue their settlement discussions and provide a levelled playground." (ECF No. 3 at 28). When IPI filed its second TRO, it once again argued that the TRO would "level the [playing] field and allow IPI and CCC to resume the settlement discussion for lifting the suspension" of its license. (ECF No. 23-1 at 23). Therefore, IPI has been trying to manufacture a cause of action—any cause of action—that it can make stick against the Governor. Yet, in doing so, IPI has exhibited a total lack of diligence or good faith as it has repeatedly filed claims that lack any merit, forcing the Governor to draft multiple Rule 11 letters and motions to dismiss briefs in response to IPI's baseless claims.[4] *Finicum*, 2021 WL 3502462, at \*4. Furthermore, IPI has also demonstrated bad faith by failing to immediately correct flaws when the Governor has pointed them out in a Rule 11 letter. Instead, IPI has forced the Governor to file a motion to dismiss, but then moved to amend its pleading before the Court could decide the motion to dismiss. *Chabrowski v. Bank of New York Mellon Tr. Co. NA*, No. CV-17-03867-PHX-DWL, 2019 WL 132350, at \*10 (D. Ariz. Jan. 8, 2019) ("Plaintiffs' attempts to amend their complaint in piecemeal fashion, even before the Court could rule on Defendants' motion to dismiss, appear to be dilatory tactics to avoid

---

[4] To be clear, Governor Palacios is not requesting sanctions pursuant to Rule 11. The purpose of referencing the Rule 11 letters and attached draft motions is solely to demonstrate that Governor Palacios has been prejudiced by IPI's repeated filing of frivolous claims insofar as he has been required to perform significant work in order to get IPI to withdraw those claims.

foreclosure on their Anthem property."). This demonstration of bad faith and delay by IPI is another reason that it should be denied leave to amend.

1. <u>In the original complaint, IPI filed claims against the Governor and other parties alleging breaches of CNMI law, even though these parties were immune from claims arising under CNMI law in federal court.</u>

In both its original complaint and the FAC, IPI filed claims against the Governor and other defendants based on CNMI law (ECF No. 1 ¶¶ 52, 61, 69, 77; ECF No. 38 ¶¶ 81, 86, 98, 106, 112, 113), disregarding the fact that these defendants were all immune to causes of action arising under CNMI law in federal court. (ECF Nos. 39 at 6–7, 40-1 at 15–17) (citing *Ramsey v. Muna*, 849 F.3d 858, 860–61) (9th Cir. 2017)). In response, Defendants Governor Palacios (in his official capacity), the CNMI, Andrew Yeom, and the CCC were forced to file motions to dismiss. (ECF Nos. 39, 40, 41, 42). Only after these were filed, concurrently with its opposition to these motions to dismiss, did IPI then file a motion for leave to amend. (ECF No. 50). In that motion, IPI finally acknowledged that the CNMI, the Governor, the CCC, and the Commissioners are all immune to the claims arising under CNMI law and withdrew the relevant causes of action. (ECF No. 50 at 3; ECF No. 49 at 18–19). It is bad enough that IPI filed these claims without researching the relevant law. However, even worse is that IPI's total lack of diligence forced all these parties to file motions to dismiss.

2. <u>In the SAC, IPI then brought a baseless Contract Clause claim contrary to established precedent, refused to withdraw it after the Governor sent a Rule 11 letter, and forced the Governor to file a motion to dismiss before acknowledging the claim was meritless.</u>

After IPI recognized the claims in the FAC were contrary to established precedent, rather than exercising increased diligence in drafting its new complaint, IPI simply alleged different frivolous claims in the SAC that are also contrary to established precedent. The first cause of action in the SAC alleged that Governor Palacios violated the Contract Clause of the U.S. Constitution by seeking to enforce IPI's obligations to pay various fees owed under existing laws. (SAC ¶¶ 111–117). In bringing this claim, IPI blatantly ignored clear Ninth Circuit and U.S. Supreme Court precedent that the

Contract Clause only pertains to legislative acts, not executive actions to enforce existing laws. *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992); *Fontana Water Co. v. City of Fontana*, 24 F.3d 246 (9th Cir. 1994). Moreover, on August 6, 2024, the Governor alerted IPI to this deficiency by sending IPI's counsel a Rule 11 letter, which attached a draft Motion for Rule 11 Sanctions. Nonetheless, IPI did not withdraw this cause of action from the SAC. Instead, IPI forced the Governor to spend even more resources by filing a Motion to Dismiss. (*See* MTD at 10–16). Only then did IPI finally withdraw this utterly baseless claim against the Governor. IPI explained its reason as "Defendants other than CNMI and CCC are not responsible for the enactment of the annual regulatory fee statute, public law 19-24, and CCC regulations NMIAC § 175 -10.1." (Motion to Amend at 2). However, the fact that Governor Palacios played no role in enacting this legislation (which predates his tenure in office) is publicly available, and thus IPI has no excuse for not determining this fact prior to filing the SAC. This is an excellent example of the complete lack of diligence conducted by IPI. In addition, the fact that IPI refused to withdraw the claim after the Rule 11 letter presented IPI with legal authority demonstrating that its claim lacked merit further exemplifies IPI's bad faith, IPI's efforts at delay, and the prejudice to the Governor who was forced to file a motion to dismiss.[5]

---

[5] The Rule 11 Letter and attached motion also addressed the inadequacy of the SAC's second cause of action against the Governor. Yet, rather than immediately withdraw that claim, IPI forced the Governor to file his MTD. IPI then stated in its Motion to Amend that, "Based upon communication with the counsel for Governor Palacios in his personal capacity, it would be prudent to amend its pleading to remove some allegations that were based upon information and belief against Governor Palacios, and substitute them with allegations that are based upon facts currently available to IPI." (Motion to Amend at 3). The Governor does not know to what "communications" IPI is referring. To the extent that IPI is seeking to suggest that the Governor has agreed that IPI should be permitted to amend its pleading again, this is absolutely not the case. The Governor's position has always been that the SAC did not state a plausible claim that the Governor conspired with the Commissioners to not recuse themselves, that this claim is completely baseless, and that IPI has been afforded more than enough opportunities to amend.

3. IPI added a corporate plaintiff to the case without disclosing (or researching) that the entity had been dissolved more than one year prior.

When IPI filed the SAC on May 17, 2024, it added a new plaintiff to the case—Best Sunshine International Ltd. (BVI) ("Best Sunshine"). The SAC stated that Best Sunshine is organized under the laws of the British Virgin Islands and is a wholly owned subsidiary of Imperial Pacific International Holdings Ltd. ("IPIH"), a publicly traded company in Hong Kong. (SAC ¶ 5). IPI added this plaintiff without even checking Best Sunshine's registration and thus failed to discover that the company was dissolved on April 7, 2023. (*See* Motion to Amend at 2; ECF No. 61-2 at 4). IPI also did not disclose that the Hong Kong courts had ordered the winding down of Best Sunshine's parent company, IPIH, and the appointment of a liquidator more than one month prior.[6] Only upon the CNMI pointing out that Best Sunshine had been dissolved—i.e. doing IPI's diligence for it—did IPI agree to withdraw Best Sunshine as a plaintiff. (Motion to Amend at 2).

4. In the companion case, IPI filed baseless claims against the Governor that it then dismissed upon receiving a Rule 11 letter.

IPI exhibited this same bad faith behavior in the sister case filed the same day as the instant action. The complaint in the companion case alleged, *inter alia*, claims against the Governor in his official and personal capacities because he violated the Contracts Clause of the U.S. and CNMI Constitutions, violated the Taking Clause of the U.S. Constitution, committed due process violations, and breached the CLA. (Complaint, *IPI v. CNMI, et al.*, No. 24-cv-00002 ("Second IPI Case"), ECF No. 1 (D. N. Mar. I. Feb. 23, 2024)). Yet, apart from the sole paragraph stating that Arnold Palacios is a U.S. citizen residing in Saipan and is the Governor of the CNMI (*id.* ¶ 6), this Complaint did not contain a *single* allegation involving the Governor. On April 13, 2024, the Governor sent IPI a Rule

---

[6] *See* "HK High Court orders liquidation of IPI Holdings," *Marianas Variety*, April, 17, 2024, https://www.mvariety.com/news/local/hk-high-court-orders-liquidation-of-ipi-holdings/article_858171d0-fbd4-11ee-b409-df1566376046.html, attached as Exhibit A.

11 letter that attached a draft Motion for Rule 11 Sanctions and Memorandum of Law. Unable to deny

that its claims were entirely meritless, IPI then stipulated to dismiss the claims against the Governor,

in his personal capacity, with prejudice. (Second IPI Case, ECF Nos. 20, 21).

The examples described in this section make clear that IPI is treating this federal court action

like a game. IPI is willing to simply manufacture claims in order to prolong this litigation without

performing even the most basic legal research and regardless of whether the claims have any factual

basis. Instead, IPI happily forces the defendants to do the research and identify the problems with its

pleadings, and then simply moves to amend before the Court can decide on the defendants' motions

to dismiss. This is not how litigation in the federal courts is supposed to proceed, and it should end

here. *See Finicum*, 2021 WL 3502462, at *4 (dismissing complaint with prejudice because "[f]ederal

pleading is not a game of whack-a-mole …"); *Chabrowski*, 2019 WL 132350, at *10 (attempting to

amend complaint before court can rule on motion to dismiss is an inappropriate "dilatory tactic[]").

### C. Permitting IPI to continue engaging in this game of "whack-a-mole" by amending its pleading once again prejudices the Governor.

The Governor did not oppose IPI's prior motions to amend its pleadings, but rather gave IPI

its fair opportunity to plead a proper cause of action. But enough is enough. Granting IPI leave to

amend again would cause the Governor undue prejudice by forcing him to incur additional time and

expense in defending himself against baseless claims. *See Kittel*, 2018 WL 6004522, at *3 (denying

leave to amend because the defendant had "already expended significant time and resources in

securing the dismissal of [claims]" and because the proposed amendments would require the defendant

to "incur the burden of expense of preparing a fourth motion to dismiss"); *AmerisourceBergen Corp.*

*v. Dialysist W., Inc.*, 465 F.3d 946, 953–54 (9th Cir. 2006) (affirming denial of leave to amend because

amendment would have "unfairly imposed potentially high, additional litigation costs on

defendants."). Already, the Governor has expended significant resources defending himself against

IPI's meritless claims. The Governor's attorneys have issued two Rule 11 letters, argued against IPI's two TROs, and filed multiple briefs related to motions to dismiss. Moreover, the sole claim that IPI is now seeking to pursue against the Governor in its TAC is not new; it is the same claim that it alleged in the SAC and prior complaints. *Chodos*, 292 F.3d at 1003 (affirming denial of leave to amend where "new" facts were available before the plaintiff had filed the previous amended complaint and motion to amend was made after undue delay). Therefore, it is unfair to force the Governor to continue relitigating this same issue because IPI failed to research and prepare a proper pleading the first, second, or even third time. Indeed, numerous courts have found prejudice in such circumstances, even where discovery in the case has not yet commenced. *See Placencia v. United States*, No. 3:16-cv-02354-BEN-MDD, 2017 WL 3017708, at *5 (S.D. Cal. 2017) (denying leave to amend at the pleading stage because the defendant "indicated that granting leave to amend would cause undue prejudice and waste judicial resources in light of the unmeritorious claims."); *Cordes*, 2019 WL 1002513, at *4 (denying leave to amend at the pleading stage because "Defendant has already been forced to expend resources moving to dismiss an amended complaint that suffered from the same defects as the original" and "it would be unduly prejudicial to force it to go through yet another round of briefing"), *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (affirming denial of motion for leave to amend complaint after recognizing "the opportunity costs to the [defendant] Bank when its officers spend time in the discovery process rather than engaging in their normal duties").

**D. The Motion to Amend should be denied because granting IPI leave to file the TAC would be futile.**

After IPI's many amended complaints, companion cases, and TROs, the TAC now only alleges a single claim against the Governor—a muddled and confusing claim under § 1983 relating to his relationship with the CCC and its Commissioners. (TAC ¶¶ 121–123). In the SAC, IPI alleged that the Governor engaged in a "conspiracy" to direct the Commissioners not to recuse themselves from

1   the revocation proceeding. (SAC ¶ 95). The MTD pointed out that this claim was not yet ripe because

2   IPI had not yet suffered any harm, and that IPI both failed to allege an "agreement" or any related

3   details of the alleged conspiracy and failed to plead facts to make such a claim plausible. As for the

4   TAC, frankly, it is less clear what constitutional violation IPI is alleging. The TAC no longer uses the

5   word conspiracy and does not directly allege that the Governor instructed the Commissioners on the

6   revocation issue. Instead, it states the Governor "had the incentive, resources and opportunity to direct

7   or encourage CCC Commissioners not to recuse themselves" and then says more discovery is needed

8   into the Governor's communications. (TAC ¶ 122). IPI also seems to allege that the statement issued

9   by the Governor and published in the newspaper was an "ex parte statement" that was "designed to

10  prejudice" IPI by influencing the Commissioners. (TAC ¶ 123). Nonetheless, both of these allegations

11  of improper conduct by the Governor still suffer from the same fatal problems identified in the MTD:

12  the claim is not ripe because IPI has not yet suffered any harm; and IPI does not plead a sufficient

13  factual basis to state a plausible claim. Accordingly, permitting IPI leave to amend to file the TAC

14  will be futile. *Oceanside Organics v. Cnty. Of San Diego*, 341 F. Supp. 3d 1129, 1147 (S.D. Cal. 2018)

15  ("…there is a strong showing that amendment would be futile because of Plaintiffs' repeated failures

16  to cure known deficiencies."); *Roberto v. Clever Care of Golden State, Inc.*, No. 8:22-cv-01301-DOC-

17  ADS, 2023 WL 3551965, at *4 (C.D. Cal. April 6, 2023) (motion for leave to amend denied where

18  amendment would be futile); *Chabrowski*, 2019 WL 132350, at *10. Moreover, IPI should be denied

19  leave to amend because virtually all of its "new" allegations could have been raised by IPI in the SAC,

20  and the one fact alleged that post-dated the SAC does not make IPI's claim any more plausible. *See*

21  *Carter*, 2019 WL 918382, at *3 (belated presentation of facts of which pleader was already aware

22  constitutes bad faith and undue delay); *Kittel*, 2018 WL 6004522, at *4 (denying leave to amend where

23  plaintiff filed three prior complaints).

1      1.   IPI's claim against the Governor is not ripe because IPI has not suffered any harm.

2          The Governor's MTD asserted that IPI's claims should be dismissed because the CCC has not

3   revoked IPI's license, and may ultimately decide not to, which would render IPI's cause of action

4   moot. (MTD at 17 n.10). The Governor cited numerous legal authorities in support of this argument.

5   *E.g.*, *Woodrum v. Woodward Cnty., Okl.*, 866 F.2d 1121, 1126 (9th Cir. 1989) ("conspiracy allegation,

6   even if established, does not give rise to liability under § 1983 unless there is an actual deprivation of

7   rights") (citation omitted); *Mancuso v. Dunbar*, No. 3:08-cv-1018, 2010 WL 466004, at \*6 (D. Conn.

8   Feb. 5, 2010); *Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City*, 473

9   U.S. 172, 186 (1985)). In its Opposition to the MTD, IPI did not address this ripeness issue, which

10  should be construed as IPI conceding the issue. (*See* MTD Reply at 3–4). Moreover, IPI still has not

11  addressed this issue either in its Motion to Amend or in the TAC. In fact, the TAC still claims that the

12  "ex parte communication made by the Governor … was *designed* to prejudice IPI" (TAC ¶ 123)

13  (emphasis added), but does not allege any harm or prejudice actually suffered by IPI. Therefore, as no

14  harm is alleged, IPI's second cause of action is still not ripe and fails to state a claim. Therefore, it is

15  futile to grant IPI leave to amend to file this TAC.[7]

16      2.   The factual allegations added to the TAC still do not state a plausible claim for relief.

17          After the MTD noted that the two non-conclusory factual allegations in the SAC failed to

18  provide a sufficient factual basis for IPI's conspiracy claim, IPI now seeks to add a few factual

19  allegations in the TAC. Specifically, there are four "new" allegations pertaining to Governor

20  Palacios—all of which could have been added in the SAC—but they either lack any factual basis or

21  they fail to nudge IPI's claim of improper conduct by the Governor from "conceivable" to "plausible."

22

23  _____

[7] IPI argues that discovery is necessary to uncover the "nature of communication" between the
Governor and the CCC Commissioners (TAC ¶ 122); yet, this still would not change the fact that IPI
has not suffered any harm.

1    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

2    (2007)). The one "new" allegation that post-dates the SAC simply does not support the inference that

3    IPI seeks to draw and therefore does not save IPI's claim.

4              a.  *IPI's elaborations on allegations in the SAC do not state a plausible claim for relief.*

5        With one exception, all the "new" factual allegations in the TAC were readily available to IPI

6    at the time that the SAC was filed. Indeed, in the Motion to Amend, IPI itself describes the

7    modifications made by the TAC as: "Alleging additional factual allegations *that were part of the SAC*,

8    but less apparent in the SAC." (Motion to Amend at 2). IPI has provided no explanation for why it did

9    not make these allegations in the SAC. Regardless, these new "factual allegations"—some of which

10   are merely inferences by IPI, not facts—do not make its cause of action any more plausible.

11       <u>First</u>, IPI cites to an email sent by Keisha Blaise, the attorney for Andrew Yeom, the CCC's

12   Executive Director, to IPI's attorney, Michael Chen, on February 20, 2024—months before either the

13   FAC or SAC were filed—in which Blaise writes that "The Executive Director has not received a

14   request for an extension from the Governor. Therefore, the revocation hearing will proceed on

15   February 28, 2024 as scheduled." (TAC ¶ 71, Ex. L). After entirely ignoring the context of this email,

16   IPI alleges that this email contradicts the Governor's statement that the CCC has exclusive authority

17   over revoking IPI's license. (TAC ¶ 81). Yet, the inference that IPI seeks to draw is not supported by

18   the email, and even if it were, it does not make its cause of action plausible. A review of the complete

19   email shows that Michael Chen had written to Blaise that the revocation hearing is scheduled for

20   February 28, but "[it] seems that the Governor still needs more time to prepare a counter proposal."

21   (ECF No. 01-12 at 2). While IPI tried to use its negotiations with the Governor to delay the revocation

22   hearing, Blaise's response evidences that the Governor did *not* make any request as to the timing of

23   those proceedings. Further, if anything, the email suggests potential correspondence with Executive

     Director Yeom, not with the CCC Commissioners. Thus, the idea that this email between Blaise and

Chen somehow evidences an effort by the Governor to have the Commissioners not recuse themselves is utterly baseless.

Second, the TAC refers to the statement issued by the Governor about Howyo Chi's inaccurate testimony that was published in the newspaper, which was referenced in the SAC. The TAC only adds the statement that, in the statement, "Mr. Palacios expressed his hostile attitude towards IPI, [and] alleged that IPI owed money to the Commonwealth." (TAC ¶ 80). As this article was already incorporated into the SAC, IPI's interpretation that the article exhibits the Governor's hostile attitude towards IPI is simply its own inference; it does not add any further factual basis to make its claim more plausible. Further, even IPI's inference is questionable. Numerous courts have already determined that IPI owed money to the Commonwealth. Therefore, setting aside the fact that this allegation could have been brought in prior versions of the complaint, it also does nothing to nudge IPI's claim of improper conduct by the Governor from conceivable to plausible. *Iqbal*, 556 U.S. at 678.

Third, IPI has slightly reformulated the allegations in the SAC, and now states that the Governor "directed the Executive Director of CCC to initiate and maintain the revocation proceeding against IPI and use CCC as the collection agent to collect the unpaid and disputed annual license fees by exercising the power to revoke as a threat." (TAC ¶ 94). This claim is not supported by any factual allegations, and accordingly, should be deemed conclusory. *Iqbal,* 556 U.S. at 679; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009).

Fourth, the TAC includes a picture of Executive Director Yeom speaking to one of the CCC Commissioners during the hearing. (TAC ¶ 79). This picture had previously been included in the SAC. (SAC ¶ 80). In the SAC, IPI used this picture along with a picture of a Commissioner using his cell phone to allege that a "garden variety of irregularities" took place at the hearing. (*Id.*). Now, in the TAC, IPI adds the allegation that this communication in the picture "exhibited an occurrence of

14

potential impermissible communication between Governor Palacios and the hearing Commissioners." (TAC ¶ 121). This is not a new factual allegation; this is purely a baseless speculation by IPI. The Executive Director could have been saying *anything* to the Commissioner. There is simply no reasonable basis to infer that the Executive Director was delivering a message from the Governor, let alone a message in which the Governor sought to influence the proceedings. Accordingly, the allegation should be rejected as it lacks any factual basis, and it therefore does nothing to make IPI's cause of action against the Governor more plausible.

      b.  *The only factual allegation in the TAC that is actually "new" also fails to bolster IPI's claim against the Governor*.

The only truly new factual allegations in the TAC concerns statements made by the Governor in a letter that he sent to IPI on August 20, 2024. Prior to that, on August 12, 2024—four months after IPI filed for bankruptcy—IPI emailed a letter to the Office of the Governor, pursuant to Article 30 of the CLA (the dispute resolution procedure), stating that it is not obligated to pay the Annual License fee while its license was suspended. (TAC, Ex. O at 2). In response, the Governor issued a letter stating, *inter alia*, that the Office of the Governor is not a party to the CLA; that the authority to enforce the CLA was transferred to the CLA pursuant to PL 18-56; the CCC is therefore "the appropriate party to demand payment of the Annual License Fee…"; and IPI's letter should be directed to the CCC, not the Governor. (*Id.* at 3). Based on this statement of the structure of the CLA and its enforcement, IPI tries to allege that the "Governor believes that CCC can and ought to act on behalf of the Governor to further the agenda of the Governor." (*Id.* ¶¶ 98–99). This inference has no basis in the letter. The Governor is not a party to the CLA, and thus the CCC is not enforcing IPI's obligations under the CLA "on behalf of the Governor." (*Id.*, Ex. O at 3). If anything, the Governor states that the CCC has an independent legal basis to oversee the CLA, over which the Governor has no oversight. (*Id.*). Therefore, despite what IPI may desire, this letter does not provide any further factual basis to

support its allegation that the Governor and the CCC are involved in a conspiracy to have the

Commissioners not recuse themselves from the revocation hearing. Furthermore, it has now become

evident that IPI initiating this dispute resolution procedure was nothing more than a bad faith attempt

to create a basis to keep this frivolous lawsuit alive, as IPI has not taken the next step in the process

of conducting a meet and confer within ten days of presenting the dispute. (*See* ECF No. 56 at Art.

30).[8] This is more evidence of IPI's bad faith.

## IV.  **CONCLUSION**

For the foregoing reasons, the Court should deny IPI's motion for leave to amend the

complaint. Throughout these proceedings, IPI has demonstrated an utter disregard for the time and

resources of the Governor and this Court. IPI has failed to conduct even remotely adequate diligence

with respect to its claims, and has failed to withdraw baseless claims in a timely manner even after

they were notified of the claims' deficiencies. This pattern of conduct shows IPI's bad faith in

litigating these proceedings. Even more importantly, though, the TAC lacks merit. IPI still has not

responded to the Governor's allegations that their claim against the Governor is not yet ripe because

the CCC proceedings are still ongoing. Further, the "new" factual allegations in the TAC do nothing

to bolster IPI's claims against the Governor. For this reason, permitting IPI to amend the complaint

again would be futile, and forcing the Governor (or other defendants) to continue to expend time

resources defending against these meritless claims would unduly prejudice him. *Chodos*, 292 F.3d at

1003; *Chabrowski*, 2019 WL 132350, at *10.

---

[8] Howyo Chi's letter to the Governor presented a dispute, pursuant to Article 30 of the CLA, regarding IPI's obligation to pay its annual license fee for the years during which its casino license was suspended by the CCC. (TAC, Ex. O at 2; CLA, Art. 30). Under the CLA, after the presentation of a dispute, "[p]arties must agree to meet and confer within ten working days … in an attempt to clarify and resolve [the] issue." (CLA, Art. 30(c)). The response from the Governor stated that it was prepared to meet and confer with IPI within ten days. (TAC, Ex. O at 4). Although more than ten days have passed, IPI has not actually met and conferred about its alleged dispute.

Dated: September 9, 2024

Respectfully submitted,

/s/ *Aaron Halegua*
Aaron Halegua
Bruce Berline

Attorneys for Defendant Arnold Palacios,
in his personal capacity

Exhibit A

https://www.mvariety.com/news/local/hk-high-court-orders-liquidation-of-ipi-holdings/article_858171d0-fbd4-11ee-b409-df1566376046.html

# HK High Court orders liquidation of IPI Holdings

Emmanuel T. Erediano
Apr 17, 2024

THE High Court of Hong Kong has ordered Imperial Pacific International Holdings Ltd. to be "wound up," with a provisional liquidator appointed, according to GGRAsia, a Macau-based website and newsletter that reports on the Asian gaming industry.



IPI Holdings, a Hong Kong-listed company, is the parent company of Imperial Pacific International (CNMI) LLP, which holds an exclusive casino license on Saipan.

IPI Holdings acknowledged that on April 15, 2024, it was "ordered to be wound up by the High Court … pursuant to the provisions of the Companies Ordinance," GGRAsia reported.

"The affairs, business and property of the company are now being managed by Phyllis McKenna, an official appointed by the High Court to act as the liquidator of Imperial Pacific.

Case 1:24-cv-00001   Document 73   Filed 09/10/24   Page 25 of 25

"Monday's court decision stems from a winding-up petition filed in September last year for alleged failure by Imperial Pacific 'to settle the judgment amount' of just above HKD20.83 million (US$2.6 million), together with interest and cost.

"In October, a second winding-up petition against Imperial Pacific was filed for alleged failure to settle the judgment amount of HKD5.3 million [about US$676,000] together with interest and costs.

"Imperial Pacific did not make any comment on the winding up order."

GGRAsia also noted that trading in the shares of Imperial Pacific on the Hong Kong Stock Exchange has been suspended since April 1, 2022, "and will remain suspended until further notice," said the firm.

"In February, a Listing Review Committee of the Hong Kong bourse decided to uphold a previous decision to delist Imperial Pacific, with the listing of the firm's shares to be cancelled with effect from February 22. The company has appealed to the city's High Court for judicial review of the delisting decision."

On Saipan, IPI's casino license has been suspended since 2021 and the Commonwealth Casino Commission is seeking the revocation of the permit.

"Negotiations between the company and the regulator for a settlement are said to be ongoing," GGRAsia said, citing CNMI media reports.

## Emmanuel Erediano

Reporter

A bachelor of arts in journalism graduate, he started his career as a police beat reporter. Loves to cook. Eats death threats for breakfast.